UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
IN RE SEPTEMBER 11 LITIGATION        :    **ORDER RECLASSIFYING AND**
                                     :    **DENYING WORLD TRADE**
                                     :    **CENTER PROPERTIES**
                                     :    **PLAINTIFFS' MOTION FOR**
                                     :    **RECONSIDERATION**
                                     :
                                     :    21 MC 101 (AKH)
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

    This Order concerns the "Supplemental Submission" filed by the World Trade Center Properties ("WTCP") Plaintiffs on March 31, 2009. Although so styled, it is essentially a motion for reconsideration of my December 10, 2009 opinion ("Opinion"). I order that the Clerk of Court accept it for filing as a motion for reconsideration. I now deny that motion, because it fails to present the grounds for granting consideration and because it lacks merit.[1]

    I ruled in the Opinion that the WTCP Plaintiffs' recovery against the Aviation Defendants, under New York law, would be limited to the lesser of the diminution of value of the WTCP leaseholds, or the buildings' replacement value. Plaintiffs paid the equivalent of $2.805 billion for the 99-year leaseholds on July 16, 2001, less than two months before September 11, 2001. I ruled that the price paid by the WTCP Plaintiffs was presumptively the diminished value of the leaseholds on September 11, 2001, because the terrorists had caused the total destruction of all that the WTCP Plaintiffs had leased. Since, however, the record was insufficient as to the value on September 11, 2001, I gave the WTCP Plaintiffs leave to file a motion by February 28, 2009[2] to show that values had changed in the weeks between July 16

---

[1] The Opinion was filed December 11, 2001. The parties, the WTCP Plaintiffs and the Aviation Defendants, are defined in that Opinion, and are the same in this Order.

[2] I then granted the parties' joint request for a 30-day enlargement.

1

and the early hours of September 11, noting that market values can fluctuate and be affected by the change from public to private ownership and management.

The WTCP Plaintiffs' "Supplemental Submission" should have been that motion. Instead, it is an attack on my Opinion, seeking to correct "errors of fact and law" and "unfounded and incorrect assumptions." WTCP Memo at 1. It is a motion for reconsideration, and I treat it as such, even though, as the Aviation Defendants point out, it was filed late, well beyond the ten-day period provided by the Federal and Local Rules. Fed. R. Civ. P. 59(e); S.D.N.Y. R. 6.3; see Condon & Forsyth Letter, April 6, 2009.

The WTCP Plaintiffs attack my ruling that the presumptive value of the destroyed properties was $2.805 billion. This was a negotiated figure as of July 16, 2001, when the WTCP Plaintiffs, prevailing in a world-wide auction, agreed to pay that value for the 99-year lease granted by the Port Authority. Neither of the WTCP Plaintiffs' experts gives a higher figure. The only alternative figure is lower. One of the WTCP Plaintiffs' experts judges the net present value of the leaseholds to be $1.459 billion, as of August 29, 2001, measured by rental payments owed and projected by tenants of the WTCP Plaintiffs. Declaration of Kerry D. Vandell, March 30, 2009, ¶ 31. The expert notes also that rents payable to WTCP Plaintiffs by the World Trade Center tenants were well below market, that "minimal tenant rollover" was expected for five years, and that "no more than 5% of space in the office complex will come to market in any single year." If anything, the $2.805 billion paid by the WTCP Plaintiffs to the Port Authority exceeded the then-current market value of the leaseholds.

The WTCP Plaintiffs argue that I mistakenly treated the WTCP/Port Authority lease as destroyed, and that I confused the value of the World Trade Center Towers with the

2

value of the lease. These are false arguments. I set out the terms of the WTCP/Port Authority lease extensively, and held that the properties providing value to the lease were destroyed, not the lease itself. With the destruction of the properties, the rents being paid to WTCP ended, and therefore the value of WTCP's lease ended. That was why the WTCP Plaintiffs sued, to recover the value it lost because of the Aviation Defendants' alleged fault.

The WTCP Plaintiffs argue that the terrorists' destruction caused their leasehold to have a negative value, based on the WTCP leases' special covenants requiring replacement of the destroyed properties, and that the Aviation Defendants should be liable to pay that negative value. Specifically, the WTCP Plaintiffs argue, the estimated cost of replacement, as of August 2002, was $4.699 billion. Vandell Decl. ¶ 36. Thus, the diminished value that the WTCP Plaintiffs seek in damages against the Aviation Defendants is $1.459 billion less negative $4.699 billion, or $6.158 billion.[3]

The argument of negative value is the very same argument that the WTCP Plaintiffs presented in opposition to the Aviation Defendants' motion for summary judgment. The argument then was that the Aviation Defendants were required to pay the replacement value of the destroyed World Trade Center towers because they were "unique" "specialty properties." As "specialty properties," the WTCP Plaintiffs argued, their replacement value, not their fair market value, should constitute the proper measure of recovery. Now, they argue that the costs of replacement required under the lease created a negative market value, and that the Aviation Defendants are obligated to pay that negative value. The arguments are the same; only the dress is different.

---

[3] WTCP's calculation of damage modifies their original demand of $8.4 billion.

## I.  WTCP Plaintiffs Fail to Present the Grounds for Reconsideration

The purpose of a motion for reargument is to present facts or laws that the court previously did not consider, not to present old arguments in new clothing. The grounds for reconsideration are narrow. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("The standards for granting such a motion are strict."); In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (finding reconsideration an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources"). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d at 257. A party moving for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id.; see S.D.N.Y. R. 6.3 (requiring movant to "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked"). A motion to reconsider is not intended to give the losing party an opportunity to shift grounds from those advanced earlier, or introduce arguments or expert opinions that could have been presented, but were not, in opposing the original motion. See Carribean Trading and Fid. Corp. v. Nigerian Nat. Petroleum, 948 F.2d 111, 115 (2d Cir. 1991) (finding that local "rule has been interpreted as precluding arguments raised for the first time on a motion for reconsideration").

No argument in the original opposition motion discussed a negative fair market value. Andrew R. Berman, plaintiffs' expert supporting reconsideration, did not submit any declaration in the original motion. Plaintiff's second expert Kerry D. Vandell, did present a declaration in the original motion, but on different topics, focusing on the issue of replacement value for allegedly comparable properties. Declaration of Kerry D. Vandell, August 15, 2008,

4

¶ 3.  None of Vandell's conclusions in that declaration mentioned negative fair market value. A new argument is not to be introduced by a motion for reconsideration.  Shrader v. CSX Transp., Inc., 70 F.3d at 257; see Pfizer, Inc. v. Stryker Corp., 2005 WL 383702 (S.D.N.Y. Feb. 17, 2005) ("[A] motion for reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party . . . advance[s] new theories or adduce[s] new evidence in response to the court's rulings, much less rehash[es] arguments already made and rejected.") (quotation marks and citation omitted).

## II.    WTCP Plaintiffs' Argument for Recovery of Negative Value Is Without Merit

The natural and probable consequences of an aviation disaster are the deaths and injuries of people in the airplane and in the area of a crash, and the injuries and destruction of property in and around the area.  See, e.g., In re September 11 Litig., 280 F. Supp. 2d 279, 291 (S.D.N.Y. 2003); Rehm v. United States, 196 F. Supp. 428, 430 (E.D.N.Y. 1961).  The Aviation Defendants are not liable for the specific performance obligations of tenants and owners, for such liability would be uncontrolled and potentially ruinous.  Derdiarian v. Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980) (finding that proximate cause analysis "stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct"); W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on The Law of Torts § 43, at 293 (5th ed. 1984) (Decisions that do not limit tort liability by foreseeability "may impose a ruinous liability which no private fortune could meet, and which is out of all proportion to the defendant's fault.").

1833 Assocs. v. Frying Carpets Co., Inc., cited by the WTCP Plaintiffs, imposes liability for specific performance under a contract, on the contracting parties, and not as a measure of tort liability.  594 N.Y.S.2d 121, 123 (N.Y. Civ. Ct. 1992).  The WTCP Plaintiffs

also rely on Plouffe v. Rogers, which imposes an extra and minor payment under an automobile lease, not multiple billions of dollars as the WTCP Plaintiffs urge. 534 N.Y.S.2d 731, 733 (App. Div. 1988).

I held in the Opinion that the measure of tort damages for destroyed property is the lesser of the diminished value of the property (i.e., the leaseholds) or its replacement value. That is New York law—the governing law and the law most consistent with the limitations of recoveries provided by the Air Transportation Safety and System Stabilization Act. § 408(a)(1) & (b)(2); 49 U.S.C. § 40101. The WTCP Plaintiffs, having lost their argument for replacement value, cannot now argue for the equivalent of replacement value, a negative fair market value that would impose contract obligations of specific performance on the Aviation Defendants and their insurers.

### III. Aviation Defendants are Entitled to Partial Summary Judgment

The WTCP Plaintiffs have failed to submit a showing that the value of their leaseholds prior to the attacks was larger than $2.805 billion. Accordingly, no triable issues remain as to this aspect of the Aviation Defendants' partial summary judgment motion. I hold that any recovery by the WTCP Plaintiffs against the Aviation Defendants shall not exceed $2.805 billion.

The parties are in the process of submitting briefs regarding the only remaining issue with respect to damages in this litigation, that is the effects of N.Y. C.P.L.R. § 4545 on subrogated claims.

SO ORDERED.
Dated:   April 29 2009
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

6