UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
IN RE SEPTEMBER 11 LITIGATION             :
                                                                        :   **OPINION AND ORDER**
                                                                        :   **DENYING MOTION TO SET ASIDE**
                                                                        :   **CONFIDENTIALITY DESIGNATIONS**
                                                                        :
                                                                        :   21 MC 101 (AKH)
                                                                        :
-------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        On October 29, 2007, the Personal Injury & Wrongful Death Plaintiffs moved to set aside all confidentiality designations made by the Aviation Defendants with respect to documents produced in the course of discovery.  They withdrew the motion without prejudice on March 19, 2008, but renewed it on January 14, 2009.  The motion is joined by the Property Damage & Business Loss Plaintiffs, the World Trade Center Properties Plaintiffs, and, as intervenors, the New York Times Company and the Reporters Committee for Freedom of the Press.[1]  The parties appeared before me on March 25, 2009 for oral argument on the motion.  For the reasons described below and those stated on the record, I hold that the designations of confidentiality shall remain in effect.  Accordingly, I deny the motion.

        On March 30, 2004, I issued a Confidentiality Protective Order ("CPO") in 21 MC 97, which was applied to 21 MC 101 on August 12, 2005.  The CPO, which was submitted jointly by the parties, created a procedure by which any party may designate as confidential documents that it produces during discovery.  Paragraph 2.1 of the CPO defines the "Confidential Information" that may be designated:

> 'Confidential Information' shall mean and include, without
> limitation, any information that concerns or relates to confidential
> and proprietary information, trade secrets, other confidential
> technical information, research or marketing information, financial

---

[1] In this Opinion and Order, I refer to all movants, collectively, as "Plaintiffs."

1

records and analyses, agreements and business relationships, non-public commercial, financial, pricing, budgeting and/or accounting information, non-public information about existing and potential customers, marketing studies, performance and projections, non-public business strategies, decisions and/or negotiations, personnel compensation, evaluations and other employment information, and confidential proprietary information about affiliates, parents, subsidiaries and third-parties with whom the parties to this action have or have had business relationships.

Paragraph 3.1 imposes a "good faith" requirement on the designating party:

> Claims of confidentiality will be made only with respect to documents, information or other materials that the asserting party in good faith believes are within the definition set forth in subparagraph 2.1 of this Confidentiality Protective Order. Objections to such claims made pursuant to paragraph 5 shall also be made in good faith.

Paragraph 5.1 describes how another party may challenge a designation of confidentiality:

> Any party objecting to a designation of Confidential Information, including objections to portions of designations of multipage documents, shall notify in writing, within one hundred twenty (120) days of service of the document designated as Confidential Information, the designating party and all other parties of the objection, specifically identifying each document that the objecting party in good faith believes should not be designated as Confidential Information, and providing a brief statement of the grounds for such belief.  In accordance with the Federal Rules governing discovery disputes, the objecting and the designating parties thereafter shall confer within seven (7) days after the date of such objection in an attempt to resolve their differences.  If the parties are unable to resolve their differences, the designating party shall have fourteen (14) days after the conference concludes to file with the court a motion to maintain the Confidential Information designation. . . . All documents, information and other materials initially designated as Confidential Information shall be treated as Confidential Information in accordance with this Order unless and until the Court rules otherwise . . . . If a designating party elects not to make such a motion with respect to documents, information or other materials to which an objection had been made, the designation shall be deemed withdrawn.  If such a motion is made, the moving party shall bear the burden of proving that the document, information or other material is Confidential Information pursuant to subparagraph 2.1 of this Confidentiality Protective Order.

Plaintiffs argue that the Aviation Defendants have abused the CPO by designating nearly their entire document discovery as confidential, and propose that I vacate the CPO and make all discovery public, except for information marked as Sensitive Security Information ("SSI") by the Transportation Security Administration ("TSA").[2] The Aviation Defendants argue that over-designating documents as confidential is common, even within this litigation, and that Plaintiffs have not abided by the objection procedure of the CPO. In essence, the parties dispute the propriety of making the bulk of the Aviation Defendants' document discovery public at this stage of the case.

This dispute requires me to determine which of two legal standards governs Plaintiffs' motion. Typically, to obtain a protective order, a party must show good cause. Fed. R. Civ. P. 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." It applies both to the issuance and continuation of a protective order. See In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 142 (2d Cir. 1987) ("The party seeking to prevent dissemination had the burden of showing that good cause existed for continuation of the order with respect to the discovery material in question."). The crucial requirement, good cause, exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006).

Once a protective order is in place, however, the applicable standard is that of Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979). Martindell requires a plaintiff seeking to modify a protective order to show "improvidence in the grant of a Rule 26(c)

---

[2] I have explained elsewhere the procedure for TSA review of discovery in this case. See In re Sept. 11 Litig., 600 F. Supp. 2d 549, 552 (S.D.N.Y. 2009); Stipulated Protective Order Governing Access to, Handling of, and Disposition of Potential Sensitive Security Information (Mar. 21, 2007).

3

protective order or some extraordinary circumstance or compelling need." Id.  Importantly, this heightened standard applies only if a party has "reasonably relied" on the protective order.  SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."); see AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005).  "An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonably relied on the protective order:  (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." In re EPDM Antitrust Litig., No. 3:03md1542 (SRU), 2009 U.S. Dist. LEXIS 5591, at *29 (D. Conn. Jan. 26, 2009).  In particular, the Court of Appeals has noted that protective orders "that are on their face temporary or limited may not justify reliance by the parties," and so may not qualify for the Martindell standard.  TheStreet.com, 273 F.3d at 231.

      I hold that the Martindell standard applies to Plaintiffs' motion because the Aviation Defendants have reasonably relied on the CPO.  Their reliance has been reasonable because Plaintiffs have never objected to the Aviation Defendants' confidentiality designations within 120 days, as required by Paragraph 5.1 of the CPO.  Had Plaintiffs done so, the CPO would have shifted the burden to the Aviation Defendants to justify those designations.  However, as the periods have lapsed with no objections, the Aviation Defendants have become entitled to rely on the CPO in settling cases, producing documents and witnesses for depositions, and reconciling discovery disputes.  See Allen v. City of New York, 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006) ("The classic situation in which a party 'relies' on a protective order is where the party creates material during the course of litigation on the understanding that it will be kept confidential.").  Plaintiffs do not address their failures to object within 120 days of particular

4

confidentiality designations. In fact, they have not challenged any designations through the procedure established by the CPO, which they proposed with the Aviation Defendants in 2004. They note that they filed their initial motion to set aside designations promptly in October 2007, after the Aviation Defendants had produced only 50,000 pages of discovery. However, they cannot explain why they have ignored the CPO procedure, and why they seek to set aside the Aviation Defendants' designations now, after about one million pages have been produced.

Moreover, it is not feasible for me to review the Aviation Defendants' confidentiality designations as to so many documents. For instance, The Boeing Company notes in a supplemental brief that it has produced over 1.7 million pages of document discovery, 99% of which was created after September 11, 2001, and argues that that this production contains clearly confidential information, including design information blueprints, internal test reports, contract negotiations, third party documents (e.g., trade secrets of component manufacturers), customer inquiries, and employee personal information. In response to this logistical concern, Plaintiffs suggest that I vacate the CPO entirely, citing the Aviation Defendants' alleged abuses, and make public one million pages of discovery. However, the Aviation Defendants have trusted in their confidentiality stamps, which have allowed the parties to resolve discovery disputes among themselves without my intervention. The CPO and its objection procedure have created certainty with respect to the risk of publicity. As a result, the litigation has moved forward. If Plaintiffs want the discovery materials in this case to become public now, before trial and the attendant evidentiary determinations, they should not have agreed to the CPO in 2004, or, alternatively, they should have agreed to it and abided by its objection procedure.

I acknowledge that one reason why some of the Plaintiffs, particularly the three Wrongful Death Plaintiffs, say they continue to pursue their claims is to expose information about the state of aviation security at the time of the terrorist attacks. However, such a record

5

will be established at a public trial of those claims, if there is a trial, and if such information is relevant.  Pretrial civil discovery produces an array of material, some of which may be admissible if and when Plaintiffs' claims are tested in court.  It is not the proper means to achieve the exposure that Plaintiffs seek.

In <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984), the Supreme Court expressed principles that apply to this case.  In <u>Seattle Times</u>, a newspaper challenged a pretrial protective order, granted pursuant to a state equivalent of Rule 26(c), as a prior restraint that violated the First Amendment.  The Court held that protective orders, if supported by good cause and applicable only to pretrial civil discovery and the materials gained through that discovery, are consistent with the First Amendment.  <u>Id.</u> at 37.  The Court noted that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action," and that, accordingly, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."  <u>Id.</u> at 33.  The "sole purpose" of discovery in the American system, the Court held, is to "assist[] in the preparation and trial, or the settlement, of litigated disputes."  <u>Id.</u> at 34.  Protective orders like the CPO in this case help the discovery process to perform this task.  For that reason, both sides stipulated and agreed to the CPO in 2004.  Like pretrial civil discovery generally, the CPO points toward trial.

Plaintiffs argue that it was unreasonable for the Aviation Defendants to rely on the CPO, because they knew that they have never made a showing of good cause to support their designations, as Rule 26(c) requires.  In other words, Plaintiffs argue that the Aviation Defendants could not reasonably have expected their unilateral designations of confidentiality to shield them forever from the obligation to show good cause, and that the Aviation Defendants would entirely skirt their obligation to do so if the <u>Martindell</u> standard were to apply.  Plaintiffs

6

rely on Schiller v. City of New York, No. 04 Civ. 7922 (KMK) (JCF), 2007 U.S. Dist. LEXIS 4285 (S.D.N.Y. Jan. 19, 2007), in which Magistrate Judge Francis held that the Martindell standard did not apply to a motion to set aside the City of New York's confidentiality designations, because the City had never made an initial showing of good cause.  He reasoned that, "[w]here a protective order permits the parties to designate discovery materials as 'Confidential' without a showing of good cause, and one party challenges a designation made by another, the challenging party is not seeking to modify the protective order and therefore does not bear the burden of demonstrating that the confidentiality designations should be lifted." Id. at *10.  Judge Francis concluded that, because the Schiller protective order allowed the City to make confidentiality designations unilaterally without showing good cause, the City's reliance on the order was unreasonable.  Id. at *14-*16.  Other cases have contained similar reasoning. See In re EPDM Antitrust Litig., 2009 U.S. Dist. LEXIS 5591, at *40 ("The heightened Martindell 'extraordinary circumstances' standard applies where a court has already 'considered each document in the first instance according to a "good cause" standard' and is not appropriate in cases with stipulated protective orders that grant parties 'open-ended and unilateral deference' to protect whichever discovery materials they choose." (quoting Fournier v. McCann Erickson, 242 F. Supp 2d 318, 341 (S.D.N.Y. 2003))); id. at *41 ("[T]o automatically apply Martindell's strong presumption against modification to *all* protective orders would permanently shield stipulated, all-encompassing orders from ever receiving the type of court review contemplated by Rule 26(c)."); Allen, 420 F. Supp. 2d at 300-01 (holding reliance unreasonable because protective order allowed plaintiffs to challenge defendants' confidentiality designations, which triggered defendants' obligation to show good cause).

       However, the CPO in this litigation differs from the protective orders in Schiller and the other cases cited by Plaintiffs.  The CPO here was not meant to be temporary or limited,

7

see TheStreet.com, 273 F.3d at 229, as Paragraph 8 of the CPO states that the CPO "shall survive the final conclusion of the action" and that the Court shall have continuing jurisdiction to enforce its terms.  Moreover, the protective order in Schiller did not specify the types of documents that could be designated confidential, and did not set a time period within which the parties must object to designations.  These features—unilateral designation of any type of document, and objections at any time—made it unreasonable for the City to rely on the protective order in Schiller.  Here, however, the CPO makes only certain types of documents eligible for designation, and assures a designating party that, although objections can be made, the time to make them is limited to 120 days after service of the affected document.  Further, the plaintiffs' motion in Schiller was brought pursuant to the terms of the protective order, whereas Plaintiffs here do not seek to enforce the CPO through the objection procedure of Paragraph 5.1, but rather to bypass it, to set aside all non-SSI confidentiality designations, and effectively to vacate the CPO.  See Schiller, 2007 U.S. Dist. LEXIS 4285, at *3 ("[T]he plaintiffs have exercised a right reserved to them under the terms of the Protective Order, which allows a party that 'disagrees with the designation of particular materials as "Confidential"' to raise the matter with the Court if the parties cannot resolve the disagreement.").

    I hold that Plaintiffs have not satisfied the Martindell standard, requires a showing of "improvidence in the grant of [the CPO] or some extraordinary circumstance or compelling need."  594 F.2d at 296.

    Plaintiffs contend that there is a vital public interest in understanding the nature of any aviation security breakdown, and that redactions can prevent truly confidential information from being released.  See "Agent Orange", 821 F.2d at 148 (finding "extraordinary circumstances" to exist where there was "enormous public interest" in the litigation and the defendants had received "exceptionally pervasive" pretrial protection despite never having

8

shown good cause pursuant to Rule 26(c)). Historical and public interest in this litigation has not been frustrated by the CPO. Indeed, in light of my decision on July 28, 2009 to begin trial of a wrongful death action in April 2010, any claim to a historical and public interest that would not be served fully by a public trial is outweighed by the undue delay and harm to security and commercial interests that would result from disclosure. "[P]ublic interest in particular litigation does not generate a public right of access to all discovery materials." In re Terrorist Attacks, 454 F. Supp. 2d at 222 (citing United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)). Further, Plaintiffs' reliance on cases involving sealed grand jury testimony is misplaced, for, in those cases, a historical or public interest in particular testimony is only one of nine factors that courts must consider in deciding a petition for unsealing, see In re Craig, 131 F.3d 99, 106 (2d Cir. 1997), and this litigation is not decades old, but rather is closely approaching trial. The persons whose privacy would be affected by disclosure are still living, and many are employed the same capacity as on the date of the attacks. Reviewing each confidentiality designation would divert this litigation from its legitimate course toward a public trial of Plaintiffs' claims or other resolution.

Accordingly, I hold that Plaintiffs have failed to satisfy the standard of Martindell, 594 F.2d at 296, and deny the motion to set aside the confidentiality designations of the Aviation Defendants.

The Clerk shall mark the motions (Docs. #688, #694, #700) as terminated.

SO ORDERED.

Dated:   July 30, 2009
         New York, New York

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

9