# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
                                          :
IN RE SEPTEMBER 11 LITIGATION             :        21 MC 101 (AKH)
                                          :
                                          :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF THE AVIATION DEFENDANTS' AND
CERTAIN PROPERTY DAMAGE PLAINTIFFS' MOTION TO MAINTAIN THE
CONFIDENTIALITY OF SETTLEMENT INFORMATION**


CLIFFORD LAW OFFICES, P.C.
Robert A. Clifford (RC 9805)
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Fax: (312) 251-1160
rac@cliffordlaw.com

*Property Damage/Business Loss
Plaintiffs' Liaison Counsel*

CONDON & FORSYTH LLP
Desmond T. Barry, Jr. (DB 8066)
7 Times Square
New York, New York 10036
Telephone: (212) 490-9100
Fax: (212) 370-4453
dbarry@condonlaw.com

*Aviation Defendants' Liaison Counsel*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................6

ARGUMENT...............................................................................................................10

    I.    The Parties Could Not Have Negotiated Toward A Settlement
        But For Their Expectation That Confidential Settlement
        Information Would Remain Confidential. ...................................................10

    II.   The Court Has The Power To Maintain The Confidentiality Of
        The Confidential Settlement Information. ...................................................12

    III.  Maintaining The Confidential Settlement Information In
        Confidence Is Consistent With The Practice With Respect
        To Earlier Settlements In The September 11 Litigation. ............................16

CONCLUSION.............................................................................................................19

## TABLE OF AUTHORITIES

__Cases__  __Page(s)__

*AT&T Corp. v. Sprint Corp.*,
    407 F.3d 560 (2d Cir. 2005)....................................................................................16

*City of Hartford v. Chase*,
    942 F.2d 130 (2d Cir. 1991).........................................................................11, 12, 13

*F.D.I.C. v. Ernst & Ernst*,
    677 F.2d 230 (2d Cir. 1982)................................................................................12, 13

*Gambale v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004)....................................................................................14

*IIT v. Int'l Controls Corp.*,
    No. 76 Civ. 1547, 2009 WL 3094942 (S.D.N.Y. Sept. 28, 2009) ...............................12

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985)....................................................................................11

*In re Franklin Nat'l Bank Sec. Litig.*,
    92 F.R.D. 468 (E.D.N.Y. 1981) ......................................................................13, 15, 17

*In re Sept. 11 Litig.*,
    262 F.R.D. 274 (S.D.N.Y. 2009) ........................................................................16, 17

*Martindell v. Int'l Tel. & Tel. Corp.*,
    594 F.2d 291 (2d Cir. 1979)....................................................................................16

*Palmieri v. New York*,
    779 F.2d 861 (2d Cir. 1985)....................................................................................16

*Schoeps v. Museum of Modern Art*,
    603 F. Supp. 2d 673 (S.D.N.Y. 2009).......................................................................14

*SEC v. TheStreet.com*,
    273 F.3d 222 (2d Cir. 2001)....................................................................................16

*United States v. Glens Falls Newspapers, Inc.*,
    160 F.3d 853 (2d Cir. 1998).......................................................................11, 12, 14, 17

*United States v. Town of Moreau, N.Y.*,
    979 F. Supp. 129 (N.D.N.Y. 1997) .....................................................................11, 12

**STATUTES**

Air Transportation Safety and System Stabilization Act § 408(a)(1),
   49 U.S.C. § 40101 note (2001) ................................................................................3, 4

## PRELIMINARY STATEMENT

Further to the settlement agreement-in-principle previously announced to the Court, the

Aviation Defendants[1] and the Settling Plaintiffs[2] (collectively the "Settling Parties") submit this

memorandum of law, the accompanying Declaration of Desmond T. Barry, Jr., dated February 5,

2010 and the exhibits attached thereto (the "Barry Decl."); the Declaration of Robert A. Clifford,

dated February 5, 2010 (the "Clifford Decl." attached as Ex. A to the Barry Decl.); the

Declaration of Kathryn Koorenny, Associate General Counsel, American Airlines, Inc., dated

---

[1]   The "Aviation Defendants" joining in this motion and memorandum of law include American Airlines, Inc.;
AMR Corporation; United Air Lines, Inc.; UAL Corporation; US Airways, Inc.; US Airways Group, Inc.; Colgan
Air, Inc.; Globe Aviation Services Corporation; Globe Airport Security Services, Inc.; Huntleigh USA Corporation;
ICTS International N.V.; The Boeing Company; Massachusetts Port Authority; Burns International Security
Services Company, LLC (formerly known as Burns International Security Services Corporation); Burns
International Services Company, LLC (formerly known as Burns International Services Corporation); Pinkerton's
LLC (formerly known as Pinkerton's, Inc.); and Securitas AB.

[2]   The "Settling Plaintiffs" are Certain Underwriters at Lloyd's of London Comprising Syndicates No. 33, 1003,
2003, 1208, 1243, 0376; Great Lakes Reinsurance (UK), PLC; Underwriter at Lloyd's, Syndicate No. 1225;
Munich- American Risk Partners 7244 GmbH; Greater New York Mutual Insurance Company; Insurance Company
of Greater New York; Munich Reinsurance Company UK General Branch; Muenchener Rueckversicherungs-
Gesellschaft; Woburn Insurance, Ltd.; Great Lakes Reinsurance U.K. PLC; American Alternative Insurance
Corporation; The Princeton Excess & Surplus Lines Insurance Company; Munich Reinsurance America, Inc.
formerly known as American Re-Insurance Company; Colisee Re (formerly known as AXA Re and successor to the
interests and liabilities of SPS Reassurance); Colisee Re Canadian Branch (formerly known as AXA Re Canadian
Branch and formerly known as AXA Corporate Solutions Reassurance Canadian Branch); Colisee Re Madeira
Branch (formerly known as Axa Re Madiera Branch); Portman Insurance Limited (formerly known as AXA Global
Risks (UK) Ltd and successor to the interests and liabilities of Axa Reinsurance UK Plc); AXA Corporate Solutions
Assurance UK Branch; AXA Insurance Company (formerly AXA CS Insurance Co); Coliseum Reinsurance
Company (formerly AXA CS Reinsurance Co US); AXA Versicherung AG; AXA Cessions; AXA Corporate
Solutions Services UK Ltd and AXA Corporate Solutions Assurance (for itself and as Successor to the Interests and
Liabilities of AXA Corporate Solutions Assurance Canadian Branch); AXA Art Insurance Corporation; Paris Re
Asia Pacific Pte. Ltd. (formerly known as AXA Re Asia Pacific Pte. Ltd.); Paris Re (Successor to the Interests and
Liabilities of Compagnie Generale De Reassurance De Monte Carlo); Industrial Risk Insurers, defined herein to
include Industrial Risk Insurers and its members (together, "IRI"); Aegis Insurance Services, Inc.; Liberty Insurance
Underwriters, Inc.; National Union Insurance Company of Pittsburgh; Nuclear Electric Insurance Limited; Certain
Underwriters at Lloyds Comprising Syndicates No. 1225 and 1511; Consolidated Edison Company of New York,
Inc.; QBE International Insurance Ltd.; Certain Underwriters at Lloyd's, London, as members of Syndicates
Numbered 1212, 1241, 79, 506, and 2791; Assurances Generales De France Iart; Assurances Generales De France;
Allianz Global Risks US Insurance Company F/K/A Allianz Insurance Company; Allianz Insurance Company of
Canada; Allianz Suisse Versicherungs-Gesellschaft; Allianz Versicherungs-Aktiengesellschaft; Fireman's Fund
Insurance Company; Mayore Estates, LLC; 80 Lafayette Associates, LLC.; Barcley Dwyer Co., Inc.; Karoon
Capital Management, Inc.; N.S. Windows LLC; Tower Computer Services, Inc.; Wall Street Realty Capital, Inc.;
World Trade Farmers Market, Inc.; Adem Arici; Omer Ipek; MVN Associates, Inc.; Marsha Van Name; Daniel
D'Aquila; and Floyd Van Name.

February 4, 2010 (the "Koorenny Decl." attached as Ex. B to the Barry Decl.); and the Declaration of Ricks Frazier, the Acting General Counsel of United Air Lines, Inc. dated February 4, 2010 (the "Frazier Decl." attached as Ex. C to the Barry Decl.), all in support of the Settling Parties' motion for an Order maintaining under seal a very limited category of Confidential Settlement Information, as that term is defined in the draft, unexecuted Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement")[3].  As defined, the Confidential Settlement Information is the aggregate settlement amount, the allocation of that amount among the various Aviation Defendants' insurers, and the portion of the amount allocated to each Settling Plaintiff.[4]  The public at large has at most a very limited interest in disclosure of this information, while disclosure will:  (i) undermine the public interest in the peaceful resolution of disputes; (ii) cause significant harm to the parties who arrived at their settlement with every expectation that this core sensitive information would be kept confidential; and (iii) make settlement of any remaining claims in the September 11 litigation even more difficult.

The Aviation Defendants believe that publication of the settlement number would create a false implication of fault in the public's mind.  Of course, defendants settle all the time without admitting liability.  But in this case, not only are the Aviation Defendants not admitting liability, they are not the entities making any payment and not the decisionmakers as to how much to pay.

---

[3]    References throughout these motion papers to the Settlement Agreement are references to the draft, unexecuted Settlement Agreement and Mutual Release of Claims dated as of February 4, 2010.

[4]    Section 1(g) of the Settlement Agreement defines "Confidential Settlement Information" as "(i) the Settlement Amount, (ii) its allocation among the Contributing Insurers as set forth in the Allocation Agreement attached as Exhibit A and Schedule of Insurer Participation attached as Exhibit B and (iii) the amounts to be received by each Settling Plaintiff according to the Settling Plaintiff Allocation and Plan of Distribution attached as Exhibit C."  On January 6, 2010, at the conference at which the agreement in principle to settle was announced, the Court indicated its reluctance to maintain the entire Settlement Agreement in confidence.  The parties took the Court's views into account and have limited their request for confidential treatment to only the Settlement Amount and its components.

The Aviation Defendants, as detailed in the Declarations of Kathryn Koorenny of American Airlines and Ricks Frazier of United Air Lines, believe strongly that a trial on the merits would have vindicated them and established that the sole cause of the horrific events of September 11 was an unprecedented attack on the United States launched by dedicated, fanatical terrorists. Nonetheless, in the interests of closure and working in good faith with their insurers, who are faced with the ongoing costs and uncertainties of complex litigation, the Aviation Defendants were willing to participate in the negotiation of a settlement of the property damage litigation, but only on the expectation that the Confidential Settlement Information would, in fact, be maintained in confidence.

As both Mr. Frazier and Ms. Koorenny have indicated, the Aviation Defendants are deeply concerned about the false light in which the disclosure of the Confidential Settlement Information could place them.[5] The Aviation Defendants believe that to publicize the aggregate dollar figure of the settlement would falsely suggest to the public that the Aviation Defendants regarded their case as weak or a trial as likely to expose them to opprobrium, when nothing could be further from the case. Without assurance that this minimal set of core information can be kept confidential, the Aviation Defendants believe that the settlement goes from being of limited benefit to the Aviation Defendants to being significantly harmful to them.[6]

---

[5]   The operation of the Air Transportation Safety and System Stabilization Act ("ATSSSA"), § 408(a)(1), 49 U.S.C. § 40101 *note* (2001), has created a unique situation. The parties whose conduct is at issue are not the parties whose assets are at risk. In the typical litigation, the defendant measures the strength of the liability case against it and the costs of ongoing litigation, as well as the possible impact of an adverse verdict or judgment, and arrives at a cost-benefit analysis as to whether to settle. Here, by operation of ATSSSA, the monetary benefits associated with this settlement are entirely for the benefit of the Aviation Defendants' insurers, because the Aviation Defendants are protected by ATSSSA's liability cap.

[6]   The Settling Plaintiffs do not endorse or agree with the Aviation Defendants' views as to the merits of the liability defenses and take no position here with respect to the Aviation Defendants' stated beliefs and reasons for settlement. However, the Settling Plaintiffs do agree that the preservation of confidentiality for the Confidential Settlement Information to the maximum extent possible was a central factor in the settlement and fully support the relief requested herein. *See* Clifford Decl. ¶ 11.

3

Further, disclosure of the allocation of payment among the Aviation Defendants' insurers and of the payment among the recipient Settling Plaintiffs would indirectly reveal the settlement amount. It would further reveal the contributions of each Aviation Defendant's contributing insurers. The allocation of the settlement amount among the Settling Plaintiffs is similarly information of business sensitivity that is of no public value. The Settling Plaintiffs in this case include insurers of various properties in lower Manhattan and their co-insurers, as well as a small number of businesses.

The Settling Parties' unexecuted Settlement Agreement recognizes their mutual interest in keeping the settlement information confidential and the central role that assurance of confidentiality played in permitting them to come as close as they have to reaching a deal:

> The Parties recognize that maintaining the confidentiality of the Confidential Settlement Information is in the best interests of each settling Party and serves the public interest in settling litigation. The Parties recognize that preserving to the maximum extent possible the confidentiality of the Confidential Settlement Information was a central factor in the Parties' decision to settle their disputes. Accordingly, all Parties will join in an immediate motion described in Section 11(c). In addition, the Parties recognize that disclosure of Confidential Settlement Information could cause severe harm to the Parties (including significant harm to their preservation of closely-held business information) and to the public interest in the settlement of disputes. Accordingly, each Party shall not disclose and shall maintain the confidentiality of the Confidential Settlement Information to the maximum extent possible.

Barry Decl. ¶ 15.

The public interest in maintaining the confidentiality that was a central factor in leading to the settlement far outweighs any minimal public interest in disclosure of the settlement amount and its allocation. The settlement is an arm's length transaction negotiated among private commercial parties. But for the Aviation Defendants' understandable need for assurance that the payment will be credited against ATSSSA's limits of liability, there would be no Court proceeding involving the settlement. The payment will be made by literally dozens of insurance

4

entities acting in turn on behalf of multiple entities, so that no plausible conclusion can be drawn from the settlement amount that is of any public relevance whatsoever. Nor will the settlement amount be subject to public disclosure otherwise; some of the contributing insurers and Settling Plaintiffs may report their payment or receipt of their share of the settlement amount, but others will not, and no single entity would ever be called upon to disclose the entire amount.

The Settling Parties are not seeking to shield from public view the fact of the settlement, the identities of the Settling Parties, the remaining landscape of the September 11 litigation, nor even any of the other terms and conditions of the settlement, except for a very narrowly-tailored category of highly sensitive commercial information. The Settling Parties also have agreed to provide all non-settling property damage plaintiffs to the September 11 litigation with all of the Confidential Settlement Information to assess the effect of the settlement on the remaining insurance limits available to satisfy their claims (so long as those materials are maintained in confidence). But the Confidential Settlement Information is of no value to the public at large. Its disclosure will only serve to harm the Aviation Defendants, their insurers and the Settling Plaintiffs, and the well-established public interest in fostering settlement of complex litigation.

Courts have universally recognized that the peaceful resolution of disputes is a substantial benefit to the public. Resolution of the Settling Plaintiffs' claims inures to the public benefit, because the public would otherwise have to finance a complex series of trials of the Settling Plaintiffs' claims and provide jurors to decide difficult issues not just of liability, but of damages. The resolution of this complicated, multi-party litigation was predicated on the expectation that this core settlement information would be kept confidential to the maximum extent possible, and disclosure would harm the Settling Parties' private interests as well. For all of these reasons, the

5

Settling Parties join in requesting that the Court issue an Order maintaining the Confidential

Settlement Information under seal.

## STATEMENT OF FACTS

The Settlement Agreement is the result of an extensive fact-gathering and mediation

process that, in the end, enabled multiple parties on both sides of the litigation to assess the value

of claims, evaluate the insurance available to satisfy them, account for a multitude of liability

and damages factors, calculate the legal and factual arguments for and against liability and

successfully reach a mutually acceptable settlement amount.   Resolution of these cases

eliminates the public burden of dozens of trials, frees scores of New Yorkers from difficult and

time-consuming jury service, and brings closure to long-running complex litigation.   The

settlement could only have been negotiated, however, with the expectation that limited core

terms of the Settlement Agreement would be maintained in confidence.   At every step of a

lengthy and complicated process, the Settling Parties have affirmed the central importance of

confidentiality to the negotiations, as set forth below.

The path to the Settlement Agreement began in May of 2008 with the establishment of

the "Damages Protocol."   The Court's May 22, 2008 Stipulated Order established the damages

protocol (the "Protocol Order"), which was a process for the Aviation Defendants and the

property damage plaintiffs[7] to conduct informal discovery and to try and reach agreement on the

extent of each plaintiff's legally recoverable damages (the Protocol Order is attached as Ex. D to

the Barry Decl.).   The Protocol Order turned out to be the first step toward the mediation and

---

[7]   The damages protocol included the direct subrogation, assignment and uninsured loss claims of the property damage plaintiffs coordinated by the Property Damage Plaintiffs' Executive Committee in 21 MC 101.   The protocol did not include the separate claims asserted by World Trade Center Properties originally in 21 MC 97 (then transferred to 21 MC 101) or the claim filed after the creation of the protocol by Cedar & Washington pursuant to the Comprehensive Environment Response, Compensation, and Liability Act of 1980.

6

resolution of the Settling Plaintiffs' claims, and confidentiality was a fundamental component of the process. Protocol Order at p. 7, Barry Decl., Ex. D. Paragraph IV.15 of the Protocol Order states that "documents and information shall not be disclosed to any person other than the Magistrate Judge, the Special Master, and the Parties, their counsel, experts, consultants, and representatives, and only for the purposes of furthering the requirements and objectives of this Order." *Id.* The damages protocol provided for a Special Master to oversee discussion of the various plaintiffs' damages claims and the parties retained a retired federal judge, the Honorable John S. Martin, to serve as Special Master. Barry Decl. ¶ 11. As part of that engagement, Judge Martin agreed to sign a confidentiality agreement providing that all information that he obtained during the damages protocol would be kept confidential. *Id.*

The damages protocol began in June 2008. Barry Decl. ¶ 12. In September 2009, the Court directed the parties to the damages protocol to mediate their claims before Judge Martin. *Id.* The parties' fundamental concern for confidentiality was not abated by the transformation of the protocol process into mediation. The expectation of strict confidentiality continued. *Id.* As a reflection of this expectation, Judge Martin served as mediator and agreed to the same confidentiality conditions that applied to the damages protocol. *Id.*

All of the parties to the mediation were provided a copy of the confidentiality agreement and agreed to its terms. Barry Decl. ¶ 13. Thus, all information exchanged during the mediation was considered confidential by the parties and remains confidential. *Id.* ¶ 14. The pertinent provisions of the confidentiality agreement are as follows:

- All discussions, statements, comments and exchanges of information made before, during or after the [mediation] were to be kept strictly confidential.

- Even after the conclusion of all discussions in furtherance of the objectives of the [mediation], the Parties were required not to disclose any information about the discussions, their outcome, the positions taken therein, the

7

information exchanged, the fact that such discussions took place or any other matter without the other Parties' written consent.

- The Parties agreed that money damages would not be a sufficient remedy for breach of confidentiality agreement and that the Parties would suffer irreparable harm from any breach thereof.

Barry Decl. ¶ 13.

Accordingly, from the inception of any settlement discussions in this litigation, through the damages protocol and mediation, during the ongoing negotiations regarding the terms and conditions of the Settlement Agreement and the ongoing process of obtaining the signature of all parties, co-insurers and reinsurers, the Aviation Defendants, the Settling Plaintiffs and the Special Master/Mediator operated under the express agreement and expectation that all information concerning settlement was confidential and that such information would remain confidential. Barry Decl. ¶ 14. The Settlement Agreement itself memorializes the central role confidentiality played in permitting the parties to work towards a settlement of their disputes.

The magnitude and complexity of the Settling Plaintiffs' claims and the mediation is staggering. There are a total of forty Settling Plaintiffs who collectively asserted more than $6 billion dollars in total damages. Barry Decl. ¶ 6. The Settling Plaintiffs mainly consist of insurance companies suing in subrogation for insurance payments they made to hundreds of property owners and businesses that sustained property damage on 9/11, along with private businesses that sustained property damage not covered by insurance. *Id.* The mediation involved numerous high-level officers and employees of the various parties and insurers, accomplished counsel on both sides, and one of the most respected complex litigation mediators in the United States. *Id.*

As the Court recognized at the January 6, 2010 status conference, the property settlement is an enormous undertaking and could not be accomplished without the "extraordinary work" of

Judge Martin who "kept people talking when there was every incentive to break away." Tr. of Status Conference at 3:9-12, *In re Sept. 11 Litig.*, 21 MC 101 (S.D.N.Y. Jan. 6, 2010) (attached as Ex. E to the Barry Decl.). The backdrop of the parties' ability and willingness to "keep talking" was the environment of confidentiality that the Court created in its Protocol Order, that the Settling Parties agreed to in mediation, and that Judge Martin recognized, endorsed and himself agreed to throughout the protocol and mediation process. There was a clear expectation among the Settling Parties that the negotiations and ultimate settlement were confidential and that the results of the settlement would remain confidential. Barry Decl. ¶ 14; Clifford Decl. ¶ 7; Koorenny Decl. ¶ 11; Frazier Decl. ¶ 9. The Aviation Defendants submit that it is highly unlikely that the Aviation Defendants would even have participated in the mediation without the expectation that the results of the Settling Parties' laborious and intensive settlement negotiations would remain confidential. Barry Decl. ¶ 14; Koorenny Decl. ¶ 11; Frazier Decl. ¶ 3.

American and United in particular state that they would never have entered into or continued the discussions leading to the Settlement Agreement absent an anticipation of confidentiality. Koorenny Decl. ¶ 3; Frazier Decl. ¶ 3. These defendants steadfastly maintain that they too were victims of 9/11; that they acted properly at all times; that they fully complied with applicable law; that their conduct was neither negligent nor a proximate cause of the terrorist attacks; and, that they would be fully vindicated if this matter were tried. Koorenny Decl. ¶ 4; Frazier Decl. ¶ 4. However, the decision regarding the appropriate settlement amount was made by their insurers as a practical business judgment after weighing the large dollar amounts at stake against the risks and uncertainties of litigation and concluding that the settlement was reasonable in light of the settlement amount that was negotiated. Koorenny Decl. ¶ 6; Frazier Decl. ¶ 5. American and United are deeply concerned that disclosure of the

9

aggregate settlement amount or the allocations thereof may be wrongly taken by the public as in some way an admission they were at fault in failing to prevent the attacks or an indication that they expected to be found liable to the Settling Plaintiffs if the matter proceeded to trial. Koorenny Decl. ¶ 6; Frazier Decl. ¶ 6. Indeed, their feeling on this topic is so strong that it was only with the greatest of reluctance, and with the assurances that all parties would actively seek to preserve the confidentiality of the settlement, that they agreed to negotiate a settlement. Koorenny Decl. ¶ 5; Frazier Decl. ¶ 5, ¶ 10. While the Settling Plaintiffs do not endorse or agree with American's and United's views as to the strength of the Aviation Defendants' case, the Settling Plaintiffs do recognize that those views are firmly held. Clifford Decl. ¶ 11.

**ARGUMENT**

I.   **The Parties Could Not Have Negotiated Toward A Settlement But For Their Expectation That Confidential Settlement Information Would Remain Confidential.**

Negotiation of a settlement of the property damage claims covered by the Settlement Agreement has been a complex process involving the parsing of scores of separate claims, each of which presented their own unique damages issues, as well as a candid discussion of the liability issues common to all of the claimants. For the settlement process to have had any chance at success, an atmosphere of candor was required and that atmosphere could not have been established absent the Settling Parties' belief that the core categories of Confidential Settlement Information would be maintained in confidence.

Both the Aviation Defendants and the Settling Plaintiffs worked to ensure that confidentiality would be a ground rule of the mediation that led to the settlement. As Ms. Koorenny's Declaration attests, American was in many ways a reluctant settler. Koorenny Decl. ¶ 5. Absent the expectation of confidentiality, American would not participate. *Id.* ¶ 3. United was of the same view. Frazier Decl. ¶ 5. Moreover, if this Court were to decline to maintain the

10

confidentiality of the Confidential Settlement Information, settlement of any of the remaining September 11 litigation will become extraordinarily challenging, if not impossible.

The parties' Settlement Agreement memorializes the key role played by the anticipation and expectation of confidentiality. The parties pledged themselves to maintain the confidentiality of the Settlement Agreement and agreed to jointly invoke the Court's assistance in maintaining the confidentiality of the key information. Barry Decl. ¶ 15.

As this Court is well aware, settlement requires trust. And as a multitude of courts have recognized, trust often requires confidentiality, just as it did in this case. Federal courts have a fundamental interest in encouraging settlements and the continued assurance of confidentiality is a key factor in fostering the conditions necessary to allow parties to reach such agreements. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998). To this end, the Second Circuit has stated:

> There is no question that fostering settlement is an important Article III function of the federal district courts. Every case must be dropped, settled or tried, and a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.

> We have recognized that the trial judge "has the power to prevent access to settlement negotiations when necessary to encourage the amicable resolution of disputes." *City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991). We have recognized that a federal court may aid in crafting a settlement by enjoining the interference of others. *See, e.g., In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985).

> \* \* \*

> In addition to recognizing that federal trial judges have an important role in settling cases, we have specifically endorsed the "larger role" of the court in the resolution through settlement of suits "affecting the public interest." *City of Hartford*, 942 F.2d at 136. *Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement. The trial court must protect the public interest, as well as the interests*

11

> *of the parties, by encouraging the most fair and efficient resolution.  This includes*
> *giving the parties ample opportunity to settle the case.*

*Id.* at 856-57 (emphasis added).

Confidentiality of settlement negotiations and the resulting settlement terms has been recognized by the Courts as essential to the efficient resolution of claims.  *Id.* at 856.  In *Glens Falls*, the Second Circuit affirmed the district court's decision to maintain the confidentiality of settlement information and adopted the following language from the district court's opinion: "[i]n a perfect world, the public would be kept abreast of all developments in the settlement discussions of lawsuits of public interest.  In our world, such disclosure would, as discussed above, result in no settlement discussions and no settlements."  *Id.* (quoting *United States v. Town of Moreau, N.Y.*, 979 F. Supp. 129, 136 (N.D.N.Y. 1997), *aff'd sub nom. United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998)).  Thus, a strong, judicially recognized interest exists in maintaining the confidentiality of settlements to ensure a confidential arena in which parties can resolve their disputes.  *See City of Hartford v. Chase*, 942 F.2d 130, 136-37 (2d Cir. 1991) (approving district court's original order ensuring the confidentiality of documents related to settlement agreement, including settlement agreement filed under seal); *F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) (approving the district court's order ensuring the confidentiality of settlement agreement); *IIT v. Int'l Controls Corp.*, No. 76 Civ. 1547, 2009 WL 3094942, at \*1 (S.D.N.Y. Sept. 28, 2009) (denying motion to unseal court file containing settlement agreements).

## II.   The Court Has The Power To Maintain The Confidentiality Of The Confidential Settlement Information.

The Court is empowered to maintain the confidentiality of the Confidential Settlement Information.  As the Second Circuit has held, the Court "has the power to prevent access to

12

settlement negotiations when necessary to encourage the amicable resolution of disputes . . . ." *City of Hartford*, 942 F.2d at 135. The Court's protection of settlement terms that resulted from the negotiations is also well established. *See In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981) ("Secrecy of settlement terms under such conditions is a well-established American litigation practice."), *aff'd sub nom. F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982).

Importantly, the parties here are not seeking to shield all aspects of their settlement from public view. Instead, they are seeking to preserve the confidentiality of only the settlement amount and its allocation among the paying insurers and the receiving parties (which allocations would indirectly reveal the aggregate settlement amount). This is information that the courts have recognized is particularly worthy of protection. In *Franklin*, Judge Weinstein recounted the intensive negotiations that led to a settlement in a case relating to the insolvency of what was at the time one of the largest banks in the United States. *See In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. at 470. The court recognized that "[t]his result could not have been achieved without an agreement that the amounts paid would not be revealed." *Id.* Two years later, a non-profit consumer organization sought to intervene and set aside the confidentiality of the settlement payment. *Id.* Judge Weinstein rejected the intervenors' arguments and affirmed the balance that had been struck at the time of the settlement, stating:

> At the time its sealing order was entered, the court considered the historical importance of the FNB failure and the public interest in disclosure against the private and public interests that would be furthered by a resolution of the matter without further litigation. The latter was more compelling. Secrecy of settlement terms under such conditions is a well-established American litigation practice.

*Id.* at 472.

13

The same balance applies here: the private and public interests furthered by a resolution

of the property damage claims covered by the Settlement Agreement (if approved and signed by

all concerned) more than overwhelm any public interest in disclosure of the limited terms subject

to confidentiality.  While there is significant public curiosity regarding the events of September

11 and their causes, the purely financial terms of this private settlement do not implicate that

public interest.  No public funds are at issue in this settlement, and the settlement amount is the

product of an arm's length negotiation between purely private actors (for the most part, insurers)

on both sides.  The mere fact that a settlement touches upon events of public interest, or even

historic significance, does not mean that all settlement terms must or should be publicized.  In

*Schoeps v. Museum of Modern Art*, 603 F. Supp. 2d 673, 675-76 (S.D.N.Y. 2009), for example,

the district court recognized the strong public interest in the resolution of a dispute over whether

two of New York's premier art museums had acquired paintings sold under Nazi coercion.

Nonetheless, the court acknowledged that "the Second Circuit strongly endorses the

confidentiality of settlement agreements in virtually all cases." *Id.* at 676.[8]

Moreover, the public interest in this settlement is considerably less than the public

interest in the wrongful death and personal injury settlements that the Court has, as discussed

below, found to be confidential.  The public may have had a legitimate interest in knowing

whether personal injury and wrongful death victims of September 11 who elected to sue received

compensation greater, lesser or of roughly equal value to that received by those victims who

---

[8]    The fact that the Settlement Agreement, if executed by all parties, will be submitted to the Court for assurance
that the ATSSSA limits of liability apply does not meaningfully alter the strong Second Circuit policy in favor of
confidentiality.  As the *Schoeps* court recognized, "even [where it is] a 'judicial document,' the Second Circuit has
found, in similar cases, that the presumption of access is weak when settlement confidentiality is concerned." *Id.* at
676 n.2 (citing *Glens Falls* and *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143-44 (2d Cir. 2004)); *see also
Glens Falls*, 160 F.3d at 858 (holding that presumption of access to documents concerning settlement negotiations is
"negligible to nonexistent").

chose to pursue their claims through the publicly funded Victim Compensation Fund. By contrast, the cases involved in the property damage settlement largely involve claims by subrogated insurers and do not involve claims by any plaintiff that could have brought a claim before the Victim Compensation Fund. The public has limited, if any, interest in knowing what one set of insurers will pay another set of insurers, even if the occasion for the lawsuit that led to the settlement amount is of historic significance.

The public and private interests "furthered by a resolution of this matter without further litigation" in Judge Weinstein's words are, by contrast, profound. *In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. at 472. The September 11 litigation is clearly a case where the public has a strong interest in settlement. The case requires a tremendous amount of judicial and government resources, and this Court has recognized that "[t]here is an extraordinary public benefit in having these cases resolved and not allowing through them the wounds of 9/11 suffered by our entire society to keep festering." Tr. of Status Conference at 4:8-4:11, *In re Sept. 11 Prop. Damage and Bus. Loss Litig.*, No. 21 MC 101 (AKH) (S.D.N.Y. Dec. 11, 2006) (attached as Ex. F to the Barry Decl.). Settlement of the property damage claims at issue clearly advances these public interests and providing a confidential arena for the Settling Parties to resolve their dispute was a central factor in bringing the Parties together to negotiate. To strip the Settling Parties of their expectation of confidentiality at this stage, would not only be manifestly unfair to the Settling Parties, but would endanger the confidential "arena" necessary to achieve settlement and have a chilling effect on the potential settlement of future highly publicized litigation. *See In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. at 472 ("Secrecy of settlement terms under such conditions is a well-established American litigation practice.").

15

III.   **Maintaining The Confidential Settlement Information In Confidence Is Consistent With The Practice With Respect To Earlier Settlements In The September 11 Litigation.**

Courts are especially unwilling to permit access to confidential settlement information where doing so would upset the parties' settled expectations based on a prior court order. This Court previously addressed the issue of the parties' reliance on earlier orders in its July 30, 2009 Order denying the wrongful death plaintiffs' motion to set aside certain confidentiality designations made by the Aviation Defendants concerning documents produced in the course of discovery. The Court stated that once a protective order is in place, the applicable standard is that of *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). *See In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (attached as Ex. G to the Barry Decl.). *Martindell* dealt with a more traditional discovery dispute and the applicability of a protective order, but the Second Circuit subsequently held that the *Martindell* standard applies to sealing orders. *See Palmieri v. New York*, 779 F.2d 861, 864 (2d Cir. 1985).

According to the Court's July 30, 2009 Order, *Martindell* requires a party seeking to modify a protective order to show "'improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need.'" *In re Sept. 11 Litig.*, 262 F.R.D. at 277 (quoting *Martindell*, 594 F.2d at 296), Barry Decl. Ex. G. The Court explained that:

> Importantly, this heightened standard applies only if a party has "reasonably relied" on the protective order. *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which parties have reasonably relied."); *see AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005).

*Id.* at 277. The Court ultimately determined that the *Martindell* standard applied to the prior confidentiality dispute between the Aviation Defendants and wrongful death plaintiffs because

16

the Aviation Defendants had reasonably relied on the March 30, 2004 Confidentiality Protective Order in this litigation.  *Id.*[9]

Here, the parties were well aware that every prior settlement in the September 11 litigation was given confidential treatment pursuant to the April 10, 2006 Stipulated Order Regarding Settlements (the "Settlements Order"), and that knowledge led to their expectation that at least the most sensitive financial terms of the property damage settlement would also be entitled to confidentiality (the Settlements Order is attached as Ex. H to the Barry Decl.).  The Aviation Defendants have made very clear, as stated in the Koorenny and Frazier Declarations, that they would never have entered into or continued the discussions leading to the property damage settlement but for their reasonable belief that the amount and allocation of the property damage settlement would be accorded confidential treatment.   Koorenny Decl. ¶ 11; Frazier Decl. ¶ 3.

The Settlements Order was negotiated and agreed by all parties in connection with the then-anticipated settlement of personal injury and wrongful death claims and was subsequently endorsed by the Court.  Confidentiality is a fundamental component of the Settlements Order, which provides that: "[a]ll [settlement information], unless otherwise in the public domain, is confidential and must not be disclosed to any party in this litigation or any other person except as provided in this paragraph or by Order of the Court."  Settlements Order at p. 4, Barry Decl., Ex. H.  To date, 92 of the 95 personal injury and wrongful death cases have been settled.  Barry

---

[9]     Absent reliance on a prior order, the standard for determining whether confidential settlement information should be sealed is as set forth in the cases discussed *supra*, including *Glens Falls*, 160 F.3d at 858 and *In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. at 472.  Under all applicable standards, the Confidential Settlement Information is clearly the kind of information that courts have determined can and should be maintained in confidence.

Decl. ¶ 9. The Court approved these settlements in accordance with the Settlements Order and all settlement information concerning these cases remains confidential. *Id.*

The Settlements Order also requires the Aviation Defendants to provide the property damage plaintiffs (and others) with confidential information regarding remaining available insurance as the death and injury cases were settled and the amount of available insurance diminished. Settlements Order at p. 3, Barry Decl., Ex. H. The Settlements Order requires that disclosure of this confidential information "be made pursuant to a protective order requiring that the information be kept confidential." *Id.* at p. 2. The Settlements Order provides that the property damage plaintiffs may object to any settlement, but has the following restrictions on how confidential settlement information must be handled:

> In any papers submitted in opposition to a motion seeking approval of any settlement, all references to settlement amounts or to confidential information contained in any Settlement Statement or Settlement Evaluation Materials must be redacted from the service copies. The unredacted opposition papers shall be filed with the Court under seal and unredacted courtesy copies must be provided to Judge Hellerstein.

Settlements Order at p. 5, Barry Decl., Ex. H. The Aviation Defendants provided the confidential insurance and settlement information to the property damage plaintiffs and, to date, all of that information concerning these cases remains confidential and none of the property damage plaintiffs have objected to any of the personal injury or wrongful death settlements. Barry Decl. ¶ 9.

The Settling Parties have worked through very difficult and complicated issues in order to arrive at the present juncture, and their ability to do so depended on an their expectations of confidentiality, which were in part fostered by the Settlements Order. The existence of this prior order offers yet another reason to grant the relief the Settling Parties seek.

## CONCLUSION

For all of the above reasons, the Settling Parties respectfully request that the Court enter the attached proposed Order maintaining under seal: (i) the settlement amount; (ii) its allocation among the Aviation Defendants' contributing insurers; and (iii) the allocation of the settlement amount among the Settling Plaintiffs, as set forth in the definition of Confidential Settlement Information in Section 1(g) of the Settlement Agreement.

Dated: New York, New York
       February 5, 2010

Respectfully submitted,

CONDON & FORSYTH LLP

By: _____
      Desmond T. Barry, Jr. (DB 8066)
7 Times Square
New York, New York 10036
Telephone: (212) 490-9100
Fax: (212) 370-4453
dbarry@condonlaw.com

*Aviation Defendants' Liaison Counsel*

- and -

CLIFFORD LAW OFFICES, P.C.

By:_____/s/ Robert A. Clifford_____
      Robert A. Clifford (RC 9805)
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Fax: (312) 251-1160
rac@cliffordlaw.com

*Property Damage/Business Loss Plaintiffs'
Liaison Counsel*

19