Gerald G. Paul, Esq.
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York  10006
(212) 412-9500

Attorneys for WTCP Plaintiffs and 7 World Trade Company, L.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE SEPTEMBER 11 LITIGATION              :
------------------------------------------------------------X   21 MC 101 (AKH)
WORLD TRADE CENTER PROPERTIES LLC, et :
al.,                                       :
                                           :
            Plaintiffs,                    :   08 CIV 3719 (AKH)
      v.                                   :
                                           :
UNITED AIRLINES, INC., et al.,             :
                                           :
            Defendants.                    :
------------------------------------------------------------X
WORLD TRADE CENTER PROPERTIES LLC, et :
al.,                                       :
                                           :
            Plaintiffs,                    :   08 CIV 3722 (AKH)
      v.                                   :
                                           :
AMERICAN AIRLINES, INC., et al.,           :
                                           :
            Defendants.                    :
------------------------------------------------------------X

**AFFIDAVIT OF GERALD G. PAUL
IN RESPONSE TO THE JULY 28, 2010 ORDER
<u>REGARDING CERTAIN UNINSURED LOSS PLAINTIFFS</u>**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )

   GERALD G. PAUL, being duly sworn, deposes and says:

   1.   I am a member of the Bar of this Court, and of Flemming Zulack

Williamson Zauderer LLP, counsel for the WTCP Plaintiffs[1] and 7 World Trade Company, L.P. ("7 WTC") in this litigation.[2] I make this affidavit in response to the Court's July 28, 2010 Order directing that the WTCP Plaintiffs and 7 WTC explain why they have not consented to an early release of settlement proceeds to eight uninsured loss plaintiffs (in contravention of the terms of the settlement agreement itself and a negotiated stipulation pursuant to which the WTCP Plaintiffs and 7 WTC withdrew a cross-motion for a preliminary injunction). As we explain more fully below, the WTCP Plaintiffs and 7 WTC have not consented to an early release of settlement proceeds because, unbeknownst to Your Honor, the eight uninsured loss plaintiffs have refused to comply with Your Honor's directive that they establish financial "hardship." *See* May 27, 2010 Tr., at 59 ("If there is hardship, I think Mr. Williamson will agree on a hardship basis that payments can be made on some provisional basis.").

2. The WTCP Plaintiffs and 7 WTC agree with the Court that financial hardship may be grounds for allowing early payouts to a small group of uninsured loss plaintiffs. Just as in the aftermath of 9/11, when Larry Silverstein and his related companies worked closely with many small tenants of the World Trade Center, returning security deposits and any post-9/11 rent without any disputes or legal proceedings, the WTCP Plaintiffs and 7 WTC are now willing to work with the uninsured loss plaintiffs and will consent to an early distribution of settlement proceeds as long as it is based on a showing of financial hardship.

---

[1] The WTCP Plaintiffs are World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC (formerly known as "5 World Trade Center LLC") and 4 World Trade Center LLC.

[2] World Trade Center Properties LLC, 2 World Trade Center LLC and 4 World Trade Center LLC are plaintiffs in 08 CIV 3719 (AKH). World Trade Center Properties LLC, 1 World Trade Center LLC, 3 World Trade Center LLC and 7 WTC are plaintiffs in 08 CIV 3722 (AKH).

2

3.      Toward that end, the WTCP Plaintiffs and 7 WTC have tried to ascertain whether any of the uninsured loss plaintiffs has a genuine hardship. However, **none** of the uninsured loss plaintiffs has offered support for a good faith hardship request. They just want their money sooner rather than later.

**Preliminary Statement**

4.      In the July 28, 2010 letter that apparently prompted the July 28, 2010 Order, Liaison Counsel for the Settling Plaintiffs, Robert Clifford, suggests to the Court that the eight "minor" uninsured loss plaintiffs face real financial hardship and that the WTCP Plaintiffs and 7 WTC are standing in their way and unjustifiably preventing them from immediately collecting their respective shares of settlement proceeds. Nothing could be further from the truth. The uninsured loss plaintiffs' refusal to comply with Your Honor's directive puts the lie to their purported hardship claims.

5.      The eight uninsured loss plaintiffs all agreed that there would be no distribution of settlement proceeds until all appeals have been exhausted – an agreement that was So Ordered by this Court. Nevertheless, the WTCP Plaintiffs and 7 WTC have said that they are prepared to make an exception, and consent to an early distribution, with respect to any uninsured loss plaintiff with a genuine financial hardship. This is the exact position Your Honor took during the oral argument on May 27, 2010. *See* May 27, 2010 Tr., at 59 ("**If** there is hardship, I think Mr. Williamson will agree **on a hardship basis** that payments can be made on some provisional basis.") (emphases added).

6.      Despite the express contemplation that any exception to the May 5, 2010 Stipulation and Order would be based on financial hardship, the uninsured loss plaintiffs – which include, among others, a real estate investment bank that has been involved in

3

more than $6 billion of real estate transactions and a medical consulting firm whose sole owner reportedly has vast real estate holdings throughout Brooklyn and Manhattan – have refused to provide satisfactory evidence of financial hardship. During our many communications with the uninsured loss plaintiffs that came forward, some flat out refused to provide any evidence of financial hardship, claiming that our request is "offensive" or "demeaning." One of them repeatedly threatened to go to the press if our clients did not relent, irrespective of whether he could make a showing of hardship. Others said they would produce evidence of financial hardship, but, then, we never heard from them again. As for the remaining uninsured loss plaintiffs that contacted us, they provided information that is so incomplete that it seems specifically designed to obscure whether there is any actual hardship. When we asked that these uninsured loss plaintiffs supply us with the missing information, they declined.

7. In short, the WTCP Plaintiffs and 7 WTC have tried in good faith to ascertain whether any of the eight uninsured loss plaintiffs has any actual hardship. The eight uninsured loss plaintiffs have not been forthcoming. If the uninsured loss plaintiffs have a real need for an immediate distribution of settlement proceeds, then they should be directed to cooperate with our efforts. To date, their lack of responsiveness suggests that none has a genuine financial hardship.

**The Eight Uninsured Loss Plaintiffs Agreed That No Settlement
Proceeds Would Be Distributed Until All Appeals Had Been Exhausted**

8. The eight uninsured loss plaintiffs that now seek an early distribution of settlement proceeds do so in direct contravention of their prior agreement, So Ordered by this Court, that no distribution of settlement proceeds shall be made to any of the Settling Plaintiffs, including the eight uninsured loss plaintiffs, until all appeals from this Court's

4

decision approving the settlement have been exhausted. *See* Stipulation and Order Regarding Cross-Motion by the WTCP Plaintiffs and 7 WTC for a Preliminary Injunction, dated May 5, 2010 (the "May 5, 2010 Stipulation and Order").

9. The May 5, 2010 Stipulation and Order – which was signed by Liaison Counsel Robert Clifford on behalf of *all* of the Settling Plaintiffs – effectively granted the WTCP Plaintiffs and 7 WTC all of the relief that they had requested in their April 16, 2010 cross-motion for a preliminary injunction. In that motion, the WTCP Plaintiffs and 7 WTC asked this Court to enter an Order enjoining the Settling Parties from paying, or directing their insurance companies, their agents, and their escrow agent to pay, any of the settlement amount until a final judgment had been entered, with all appeals exhausted. The equitable principle underlying the motion was that it would be unfair, and cause the WTCP Plaintiffs and 7 WTC to suffer irreparable harm, if any of the settlement proceeds were distributed before all competing claims have been liquidated.

10. Because the Settling Parties represented in the May 5, 2010 Stipulation and Order that there would be no early distribution of the settlement proceeds, the WTCP Plaintiffs and 7 WTC withdrew their cross-motion for a preliminary injunction without prejudice.

**The Eight Uninsured Loss Plaintiffs Subsequently Changed Their Minds And Decided That They Did Not Want To Wait To Get Their Settlement Money**

11. A few weeks after inducing the WTCP Plaintiffs and 7 WTC to withdraw their preliminary injunction motion, the eight uninsured loss plaintiffs changed their minds and decided that they no longer wanted to wait until after the exhaustion of all appeals to get their settlement money.

12. During the May 27, 2010 oral argument on the motion for approval of the

settlement, Mr. Clifford stated that certain uninsured loss plaintiffs, which he disingenuously (and inaccurately, as it turns out) characterized as "little guy[s]," might be prejudiced if they were forced to wait out the appellate process before collecting their respective shares of settlement proceeds. May 27, 2010 Tr., at 58-59. Counsel for three of the uninsured loss plaintiffs, Terry Cummings, similarly told the Court that she was concerned about delaying the distribution of the settlement money to her clients, which she referred to as the "small guys." *Id.* at 60.

13. Neither Mr. Clifford nor Ms. Cummings informed Your Honor that these so-called "little guys" or "small guys" include: (a) Wall Street Realty Capital, Inc., a privately held real estate investment bank, which, according to publicly available information, has participated in excess of $6 billion in real estate transactions, including funding the development of a Marriott Courtyard Hotel on Manhattan's Upper East Side; (b) Barcley-Dwyer, Co., a medical consulting firm, which, according to internet research, is solely owned by Jack Lefkowitz, who also owns many other companies in New York, including a mortgage brokerage firm and vast real estate holdings throughout Brooklyn and Manhattan; and (c) NS Windows LLC, which we believe, according to information also available on the internet, is part of a group of affiliated companies that purchased a $22 million residential building in the South Street Seaport Historic District in 2008 and also owns and/or operates top New York restaurants Beacon and Ouest as well as the Oak Room and Oak Bar in the Plaza Hotel.

14. In response to the concerns expressed by Mr. Clifford and Ms. Cummings at the May 27, 2010 hearing, Your Honor proposed making an exception to the May 5, 2010 Stipulation and Order and permitting a provisional payment of settlement proceeds

to uninsured loss plaintiffs who are experiencing a financial hardship. May 27, 2010 Tr., at 59.

**The WTCP Plaintiffs and 7 WTC Have Tried To Ascertain Whether Any Of The Eight Uninsured Loss Plaintiffs Has A Financial Hardship, But They Have Refused To Come Forward With Evidence Of Hardship**

15. Since then, we asked each of the seven uninsured loss plaintiffs that contacted us to provide us some evidence that they would suffer financial hardship if the release of the settlement money were postponed during the pendency of our appeal to the Second Circuit. In order to assess the hardship claims of the uninsured loss plaintiffs, we asked for current financial statements and/or net worth statements and recent tax returns. None of the uninsured loss plaintiffs has been willing to supply this information to back up its purported hardship claim.

16. Some of the uninsured loss plaintiffs told us outright that they have no intention of making any showing of hardship. For example, counsel for uninsured loss plaintiff Mayore Estates/80 Lafayette Associates, LLC dismissed out of hand any suggestion that her client should demonstrate financial hardship before an exception is made, and she refused to do so. (We cannot attach or quote from the e-mail counsel sent us since she labeled it as "confidential.")

17. Anthony Labozzetta, Esq., the President of uninsured loss plaintiff Wall Street Realty Capital, Inc., similarly told us that our request for evidence of financial hardship was "demeaning." When we directed his attention to the May 27, 2010 transcript, Mr. Labozzetta replied, "I don't need to read the transcript." He then made good on earlier threats and planted an inflammatory article in the *New York Post* in which he accused the WTCP Plaintiffs and 7 WTC of "unfairly punishing" the eight "small"

7

uninsured loss plaintiffs. *See* Bruce Golding, *Silverstein puts brake on small-biz WTC payouts*, N.Y. POST, July 24, 2010.

18. Other uninsured loss plaintiffs told us that they would provide proof of financial hardship but never did so. For example, the last time we spoke with uninsured loss plaintiffs MVN Associates, Inc. and World Trade Farmers Market, they said that they would get back to us. We never heard from either plaintiff again.

19. The few uninsured loss plaintiffs that have provided us with some proof of hardship provided information with such glaring gaps that it is impossible to evaluate whether their hardship claims are genuine.

20. For example, uninsured loss plaintiff NS Windows, LLC, the owner and operator of the Windows on the World restaurant, provided an affidavit purporting to establish financial hardship. We cannot attach or quote from the affidavit here since NS Windows, LLC designated it as Confidential, but the affidavit conspicuously failed to mention – as we discovered through internet research – that NS Windows, LLC's affiliate companies own Ouest and Beacon, both of which are, by all outward appearances, successful, highly-rated, fine dining establishments, and that in 2008, the parent company of NS Windows, LLC landed the coveted contract to operate the Oak Room and Oak Bar in the Plaza Hotel.

21. The information that Barcley-Dwyer, Co. provided was also patently incomplete. Barcley-Dwyer, Co. supplied an affidavit of its sole shareholder, Jack Lefkowitz, which, like the affidavit from NS Windows, LLC, was designated as "Confidential." Because Mr. Lefkowitz is the sole shareholder of Barcley-Dwyer and because Barcley-Dwyer's hardship claim is based, in part, on the alleged financial

difficulties of a subsidiary, we advised counsel for Barcley-Dwyer that we would need financial information about Mr. Lefkowitz and Barcley-Dwyer's subsidiary. Counsel advised that she thought it was "overreaching" on our part to seek to "pierce the corporate veil." We explained that this was not a matter of collecting on a judgment; we were merely trying to assess whether her client had a hardship sufficient to warrant an exception to the stay put in place in the May 5, 2010 Stipulation and Order. We received no further information from Barcley-Dwyer.

22. We suspect that the reason for this utter lack of cooperation on the part of the uninsured loss plaintiffs is that the uninsured loss plaintiffs – hardly the "little guys" that they seek to portray themselves as – do not have any bona fide financial hardship.

**If Any Order Is Appropriate, The Court Should Direct The Uninsured Loss Plaintiffs To Cooperate With Our Efforts To Determine Whether They Are Facing Genuine Financial Hardship**

23. If the uninsured loss plaintiffs continue to insist that they need an immediate distribution of the settlement money, then we respectfully request that the Court direct them to cooperate and provide complete information demonstrating financial hardship (consistent with Your Honor's prior directive).

24. To the extent that the Court is inclined to order any early distribution of settlement proceeds to the uninsured loss plaintiffs without proof of hardship, we respectfully request that the Court issue a stay of that decision. Any early distribution of the settlement proceeds to the eight uninsured loss plaintiffs without the consent of the WTCP Plaintiffs and 7 WTC would, in effect, constitute a denial of the prior motion by the WTCP Plaintiffs and 7 WTC for a preliminary injunction. That decision would be immediately appealable to the Second Circuit. *See* 28 U.S.C. § 1292(a)(1) (giving the

courts of appeals jurisdiction to hear appeals from district court orders "refusing or dissolving injunctions"). And a stay would be necessary in order to preserve the rights of WTCP Plaintiffs and 7 WTC and prevent irreparable harm pending appeal.

25. Any order allowing an early distribution also should be limited to an amount exclusive of any contingent attorneys' fees. No one has contended that the lawyers are experiencing financial hardship.

26. The WTCP Plaintiffs and 7 WTC very much respect the Court's concept that financial hardship may be grounds for allowing early payouts to a small group of uninsured loss plaintiffs. Indeed, as previously noted, since 9/11, Larry Silverstein and his related companies have established a record of close cooperation with small businesses. In the days and months after 9/11, Mr. Silverstein worked closely with the many small tenants of the World Trade Center, returning security deposits and any post-9/11 rent without any disputes or legal proceedings – even though the WTCP Plaintiffs were forced to continue paying their own rent to the Port Authority at pre-9/11 levels.

27. In response to the request by eight uninsured loss plaintiffs for an early distribution of settlement proceeds, the WTCP Plaintiffs and 7 WTC attempted to ascertain the validity of those plaintiffs' claims of hardship. The WTCP Plaintiffs and 7 WTC will not oppose any distribution in the amounts sought by the uninsured loss plaintiffs if it is made on the basis of a showing of financial hardship. Further, the WTCP Plaintiffs and 7 WTC are willing to comply with any additional procedures or guidelines that the Court may establish, or to effectuate this evaluation process with the assistance of the Court or the Court's representative.

28. However, the Court was correct in its inclination to limit early payouts to

those uninsured loss plaintiffs with financial hardship. The core principle at stake here – that a limited fund should not be dissipated until final resolution of the entire dispute – is not only legally significant, it is also central to the Court's larger goal to accomplish a timely resolution of the entire dispute. The WTCP Plaintiffs and 7 WTC cannot – and would not – make a claim of financial hardship. However, the delay in resolving this litigation has created a hardship with respect to the very important goal of achieving the full rebuilding of Downtown in the wake of the terrorist attacks of 9/11. As the Court has recognized, other than in instances of financial hardship, it makes no sense to dissipate the funds available to accomplish the comprehensive settlement that will resolve this litigation and secure prompt and complete rebuilding of what was destroyed almost nine years ago.

_____
GERALD G. PAUL

Sworn to before me this
6th day of August, 2010

_____
Notary Public

CYNTHIA R. WATKINS
Notary Public, State of New York
No. 02WA5013853
Qualified in New York County
Commission Expires July 15, 2011

11