UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                   :

IN RE SEPTEMBER 11 LITIGATION      :    21 MC 101 (AKH)

------------------------------------------------------------X
WORLD TRADE CENTER PROPERTIES LLC,  :
et al.,
                                    :    08 CV 3719 (AKH)

                        Plaintiffs,    :

                        v.            :

UNITED AIRLINES, INC., et al.,      :

                     Defendants.  :

------------------------------------------------------------X
WORLD TRADE CENTER PROPERTIES LLC,  :
et al.,
                                    :    08 CV 3722 (AKH)

                        Plaintiffs,    :

                        v.            :

AMERICAN AIRLINES, INC., et al.,    :

                     Defendants.  :

------------------------------------------------------------X

## WTCP PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500

Attorneys for the WTCP Plaintiffs:
World Trade Center Properties LLC
1 World Trade Center LLC
2 World Trade Center LLC
3 World Trade Center LLC
4 World Trade Center LLC

Of Counsel:

    Cathi A. Hession, Esq.
    Thomas A. Egan, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I:    THE WTCP PLAINTIFFS HAVE DEMONSTRATED THAT THEIR
      REQUEST FOR A § 1292(b) CERTIFICATION IS TIMELY.......................... .......... 2

II:   THE WTCP PLAINTIFFS HAVE DEMONSTRATED COMPLIANCE
      WITH ALL THREE PRONGS OF THE TEST FOR A § 1292(b)
      CERTIFICATION.................................. ............................................................... 6

      A.  The Issues To Be Appealed Involve A Controlling Question Of Law .............................. 6

      B.  There Is Substantial Ground For Difference Of Opinion On A Controlling
          Question Of Law......................................................................................... 9

      C.  Appellate Review Of The Court's Orders Will Materially Advance The
          Ultimate Termination Of The Litigation............................................................ 11

III:  THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT
      THE REQUESTED § 1292(b) CERTIFICATION.......................................…........ ... 14

CONCLUSION................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*,
    03 MDL 1529 (LMM), 2006 WL 708303, (S.D.N.Y. Mar. 20, 2006),
    *rev'd sub nom.*, *W.R. Huff Asset Mgmt. Co.*, 549 F.3d 100 (2d Cir.
    2008), *cert. denied*, --- U.S. ---, 129 S. Ct. 2011 (2009) ...................................12

*In re Air Crash off Long Island, N.Y. on July 17, 1996*,
    27 F. Supp. 2d 431 (S.D.N.Y. 1998), *aff'd*, 209 F.3d 200 (2d Cir. 2000) ..........................8

*In re Amer. Preferred Prescription, Inc.*,
    265 B.R. 13 (E.D.N.Y 1999), *rev'd*, 255 F.3d 87 (2d Cir. 2001).......................................9

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1982) ......................................................................................8

*Century Pac., Inc. v. Hilton Hotels Corp.*,
    574 F. Supp. 2d 369 (S.D.N.Y. 2008) ..........................................................................2

*Consol. Edison, Inc. v. Northeast Utils.*,
    318 F. Supp. 2d 181 (S.D.N.Y. 2004), *rev'd in part*, 426 F.3d 524 (2d Cir. 2005) ....12, 14

*Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.*,
    780 F. Supp. 978 (E.D.N.Y. 1992) ...............................................................................2

*Fargo v. Browning*,
    45 A.D. 507, 61 N.Y.S. 301 (1st Dep't 1899) .............................................................10

*Green v. City of New York*,
    No. 05-CV-0429, 2006 WL 3335051 (E.D.N.Y. Oct. 23, 2006) ........................................2

*Kuzinski v. Schering Corp.*,
    Civil No. 3:07cv233 (JBA), 2009 WL 1035297 (D. Conn. Apr. 17, 2009) .....................12

*Litzler v. CC Investments, LDC*,
    2003 U.S. Dist. LEXIS 11009 (S.D.N.Y. Mar. 5, 2003),
    *vacated and remanded*, 362 F.3d 203 (2d Cir. 2004)...........................................6

*LNC Investments, Inc. v. First Fidelity Bank*,
    No. 92 Civ.7584 (CSH), 2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) ........................8, 12

*New York v. United Boatmen of New York, Inc.*,
    08-CV-2503 (CPS)(RLM), 2009 WL 962250 (E.D.N.Y. Apr. 7, 2009)...........................8

## TABLE OF AUTHORITIES (CONT'D)

**Cases**                                                                                                        **Page(s)**

*Plouffe v. Rogers,*
    144 A.D.2d 218, 534 N.Y.S.2d 731 (3d Dep't 1988)......................................................................10

*Poulos v. Badala,*
    227 A.D.2d 118, 641 N.Y.S.2d 313 (1st Dep't 1996) .....................................................................10

*Rose Lee Mfg., Inc. v. Chem. Bank,*
    186 A.D.2d 548, 588 N.Y.S.2d 408 (2d Dep't 1992).......................................................................11

*In re September 11 Litig.,*
    21 MC 101 (AKH), 2009 WL 1181057 (S.D.N.Y. Apr. 30, 2009).................................................11

*In re September 11th Litig.,*
    590 F. Supp. 2d 535 (S.D.N.Y. 2008) ...........................................................................................11

*Skylon Corp. v. Guilford Mills,*
    901 F. Supp. 711 (S.D.N.Y. 1995) ................................................................................................10

*Weir v. Propst,*
    915 F.2d 283 (7th Cir. 1990) ......................................................................................................2, 3

*Young v. Nationwide Life Ins. Co.,*
    2 F. Supp. 2d 914 (S.D. Tex. 1998)...........................................................................................9-10

*Zakrewska v. The New School,*
    598 F. Supp. 2d 426 (S.D.N.Y. 2009) ..........................................................................................14

**Statutes & Rules**

28 U.S.C. § 1292(b) ............................................................................................................. *passim*

## PRELIMINARY STATEMENT

Plaintiffs World Trade Center Properties LLC ("WTCP LLC"), 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC (formerly known as 5 World Trade Center LLC), and 4 World Trade Center LLC (collectively, the "WTCP Plaintiffs") submit this reply memorandum of law in further support of their motion for an Order certifying the Damages Orders[1] of this Court for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Copies of the Damages Orders are attached as Exhibits 1-5, respectively, to the September 28, 2010 Declaration of Thomas A. Egan (the "Egan Moving Decl.") in support of the WTCP Plaintiffs' motion for certification.)

The Aviation Defendants' Opposition to World Trade Center Properties Plaintiffs' Motion for 28 U.S.C. § 1292(b) Certification, dated October 8, 2010 (the "AD Opposition Brief"), attempts in many different ways to mislead this Court into denying the WTCP Plaintiffs' motion. Using obfuscation, misleading and incomplete citations and outright misstatements of fact, the Aviation Defendants try to overcome the WTCP Plaintiffs' showing that certification of the Damages Orders for immediate interlocutory appeal is warranted at this time to advance the ultimate resolution of this litigation.[2] *See* AD Opposition Brief, *passim*. However, as this reply

---

[1] The terms defined in the previously submitted  WTCP Plaintiffs' Memorandum of Law in Support of Motion for Certification Pursuant to 28 U.S.C. § 1292(b), dated September 28, 2010 (the "WTCP Plaintiffs' Moving Memorandum"), have the same meaning here in this reply memorandum.

[2] In addition to the AD Opposition Brief, the "Settling Plaintiffs" have filed their own Opposition to World Trade Center Property Plaintiffs' Motion for 28 U.S.C. § 1292(b) Certification, dated October 12, 2010 (the "SP Opposition Brief"). Beyond the fact that the "Settling Plaintiffs" have no standing to oppose the WTCP Plaintiffs' motion for a 28 U.S.C. § 1292(b) certification of the Damages Orders, which were entered by this Court in two actions in which the "Settling Plaintiffs" are not parties, the SP Opposition Brief adds very little and instead essentially adopts the AD Opposition Brief *in toto*. *See* SP Opposition Brief, p. 3. Thus, this reply memorandum will also serve as the WTCP Plaintiffs' response to the SP Opposition Brief.

memorandum will demonstrate, the Aviation Defendants' efforts to confuse this Court operate to further substantiate the rationale for certifying the Damages Orders for immediate appeal pursuant to § 1292(b).

## ARGUMENT

### POINT I

### THE WTCP PLAINTIFFS HAVE DEMONSTRATED THAT THEIR REQUEST FOR A § 1292(b) CERTIFICATION IS TIMELY

The Aviation Defendants' first attempt to mislead this Court occurs when they miss-cite multiple cases for the false proposition that the mere passage of time can render a motion for § 1292(b) certification untimely. *See* AD Opposition Brief, p. 4 (*citing Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369 (S.D.N.Y. 2008); *Green v. City of New York*, No. 05-CV-0429, 2006 WL 3335051 (E.D.N.Y. Oct. 23, 2006); *Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 978 (E.D.N.Y. 1992); *Weir v. Propst*, 915 F.2d 283 (7th Cir. 1990)). The Aviation Defendants fail to tell this Court that in each and every case that they cite, the mere passage of time was **not** the basis upon which the motion for certification was deemed untimely; instead, each case turned on the movants' failure to explain why certification was appropriate at that later time. *See Century Pac.*, 574 F. Supp. 2d at 371 (holding that delay in seeking § 1292(b) certification must be "reasonable" and that failure to provide "sufficient explanation" for timing of request merely "weigh[ed] against" -- but did not resolve -- motion for certification); *Green*, 2006 WL 3335051 at *2 (failure to provide any justification for delay in seeking certification made motion unreasonable and untimely); *Ferraro*, 780 F. Supp. at 979 (certification denied because "there was no justification" for waiting to seek that certification);

*Weir*, 915 F.2d at 287 (refusing to accept certified appeal where "[n]either the parties nor the district judge ha[d] presented any reason for the delay in certification").

Here, however, the WTCP Plaintiffs have presented multiple reasons why, although certification might not have been appropriate at an earlier time, the requested certification for immediate interlocutory appeal is appropriate and necessary at the present time. First, the WTCP Plaintiffs demonstrated that intervening events have eliminated or ameliorated the concerns that this Court expressed in its denial of the WTCP Plaintiffs' original motion for § 1292(b) certification of the first three of the five subject Damages Orders. In resolving that motion, this Court expressed reservations that an appeal at that time (a) would slow the many remaining wrongful death and property damage actions, and (b) would yield few benefits due to the then less-than-fully developed factual record. *See* May 26, 2009 Order (copy attached as Exhibit 4 to the Egan Moving Decl.), at 2; *see also* WTCP Plaintiffs' Moving Memorandum at pp. 4-5 (discussing May 26, 2009 Order).

Since the entry of the May 26, 2009 Order, subsequent events have eliminated or reduced these concerns. Following this Court's approval of the settlement(s) of the property damages actions that is the subject of the current appeals, only one wrongful death and only one other property damage case are left on this Court's docket, and that remaining property damage case is the subject of pending potentially partially-dispositive motions. Thus, permitting the WTCP Plaintiffs to take a present appeal of the Damages Orders will not impede the progress of the last two other cases before this Court.

Similarly, the concerns about the factual record expressed in the May 26, 2009 Order denying certification have been addressed: the submissions made in connection with Aviation Defendants' subsequent motion seeking to impose CPLR 4545(c) offsets (which resulted in the

September 30, 2009 Order for which the WTCP Plaintiffs seek certification) will provide the Second Circuit with a fuller factual record upon which to reach any mixed question of law and fact that might be implicated by the issues raised by the Damages Orders.[3]

Second, the WTCP Plaintiffs have also demonstrated that this request for certification of all of the Damages Orders is made in an entirely different context than that prevailing at the time of the September 30, 2009 Order. *See* WTCP Plaintiffs' Moving Memorandum, pp. 2-5. Since that time, this Court has approved a $1.2 billion settlement of almost all of the other property damage actions: granted the WTCP Plaintiffs' intervenor status in each of the settling actions to challenge those settlement(s) and to appeal from the approval of those settlements; and has further entered Rule 54(b) Judgments in each of the settling actions and in the actions brought by the WTCP Plaintiffs to facilitate those appeals.  In seeking approval of those settlements, however, the settling parties specifically relied on the Damages Orders as a reason why the settlement should be approved -- arguing that the settlement would leave plenty of insurance money for a recovery by the WTCP Plaintiffs against each of the Aviation Defendants because the WTCP Plaintiffs' damages "are now worth little or nothing" or "approach zero" as a result of the Damages Orders. *See* Memorandum in Support of Motion to Approve (Exhibit 6 to the Egan Moving Decl.), at pp. 9-11; Aviation Defendants' Reply Memorandum on Motion to Approve (Egan Moving Decl., Exhibit 7), at pp. 40-47; Settling Plaintiffs' Reply Memorandum on Motion to Approve (Egan Moving Decl., Exhibit 8), at pp. 1, 4-6.

---

[3]  Although this Court correctly realized that the factual presentation made in connection with that motion was insufficient to demonstrate the necessary "correspondence" under CPLR 4545(c), *see* September 30, 2010 Order, p. 1, the evidentiary submissions made in connection with that motion do shed further light on the nature, scope and amount of the WTCP Plaintiffs' claimed damages.

Furthermore, there is obvious uncertainty as to whether the current appeals from the Rule 54(b) Judgments effectuating this Court's July 1, 2010 Opinion and Order Granting Joint Motion Approving Property Damage Settlements (as further explicated by the Court's July 23, 2010 Order Clarifying Order and Opinion Approving Settlement and Granting Intervenor Status (together, the "Approval Orders")) will call up the issues determined by the Damages Orders for review by the Second Circuit.  Indeed, even this Court itself raised the question of what impact the Damages Orders might have on the current appeals.  *See* Transcript of August 25, 2010 conference (copy attached as Exhibit 11 to Egan Moving Decl.), at pp. 4-5 (questioning whether appeals raised Damages Orders; colloquy quoted at length at p. 3 of the WTCP Plaintiffs' Moving Memorandum).  As that colloquy from the August 25th conference demonstrates, the patent lack of clarity as to what is covered by the pending appeals makes certification of the Damages Orders appropriate at this time -- even if such a certification would not have been appropriate prior to the approval of the settlement(s).[4]  If the Second Circuit should reach the issues implicated by the Damages Orders in determining the current appeals, it should do so based on the complete record on which the Damages Orders were issued.  Furthermore, absent such certification, the lack of clarity as to the scope of the present appeals may result in piecemeal appeals and remands for clarification, thereby further extending this already lengthy litigation.

---

[4]  The Aviation Defendants have contributed to the uncertainty as to the issues raised by the current appeals by moving in the Second Circuit to dismiss the appeals taken from the Rule 54(b) Judgments entered in the WTCP Plaintiffs' actions because, supposedly, those Judgments as entered by this Court are "jurisdictionally defective."  *See* Aviation Defendants' Motion To Dismiss Certain Appeals For Lack Of Appellate Jurisdiction (copy attached as Exhibit 10 to the Egan Moving Decl.).  Recognizing that the Aviation Defendants' Second Circuit motion to dismiss could potentially further muddy the scope of the present appeals, the WTCP Plaintiffs filed the present motion one day after the Aviation Defendants filed their appellate motion in order to give this Court the opportunity to provide the missing clarity.

Therefore, because the WTCP Plaintiffs have shown that recently changed circumstances (all occurring many months after the entry of the Damages Orders) have now made the requested certification for immediate appeal appropriate, the WTCP Plaintiffs have demonstrated the timeliness of this motion. The Aviation Defendants' misleading argument to the contrary should be rejected.

## POINT II

### THE WTCP PLAINTIFFS HAVE DEMONSTRATED COMPLIANCE WITH ALL THREE PRONGS OF THE TEST FOR A § 1292(b) CERTIFICATION

In response to the WTCP Plaintiffs' showing that the requested certification meets all three prongs of the test under 28 U.S.C. § 1292(b) for immediate interlocutory appeal, the Aviation Defendants offer misstatements of fact, miscitations of law and outright obfuscations to attempt to overcome. *See* AD Opposition Brief, pp. 4-10. As this reply memorandum demonstrates, their efforts are unpersuasive.

Under § 1292(b), "a district court may certify an order for interlocutory appeal when: (1) the issues to be appealed involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Litzler v. CC Investments, LDC*, 2003 U.S. Dist. LEXIS 11009, at *3 (S.D.N.Y. Mar. 5, 2003), *vacated and remanded*, 362 F.3d 203 (2d Cir. 2004). Plainly, each of these three prongs is satisfied here.

A.  **The Issues To Be Appealed Involve A Controlling Question of Law**

On the issue of whether the Damages Orders involve a controlling question of law, the Aviation Defendants respond to the WTCP Plaintiffs' presentation by claiming that their reliance on those Damages Orders in obtaining approval of the settlements currently on appeal was "at most, a fallback argument" and "was of tertiary importance," which, therefore, could not be of

controlling importance.  *See* AD Opposition Brief, p. 6.  That assertion is less than accurate, to say the least.

 First, the Aviation Defendants would have this Court believe that their reliance on the Damages Orders occurred only in passing and "late in their brief (at pp. 40 and 47)".  *See id.* Simply put, that is not true.  A review of the settling parties' submissions on the motion to approve the settlement(s) contained early and frequently repeated arguments on this exact issue. Again and again, they contended that, given the limitation of the WTCP Plaintiffs' damages resulting from the Damages Orders, the funds remaining to satisfy those damages would be more than sufficient even after the disbursement of the payments called for by those settlements.  *See* Memorandum in Support of Motion to Approve (Exhibit 6 to the Egan Moving Decl.), at pp. 9-11; Aviation Defendants' Reply Memorandum on Motion to Approve (Egan Moving Decl., Exhibit 7), at pp. 40-47; Settling Plaintiffs' Reply Memorandum on Motion to Approve (Egan Moving Decl., Exhibit 8), at pp. 1, 4-6.

 Second, nowhere in their papers do the Aviation Defendants renounce that argument, or state that the Aviation Defendants (or any of the other Appellants) will not press that argument before the Second Circuit on the current appeals.  Thus, the Aviation Defendants keep their options open so they can continue to rely on the argument that the Damages Orders' limitation on the WTCP Plaintiffs' recovery provides a basis upon which this Court and the Second Circuit could find the settlement(s) reasonable while also simultaneously attempting to deny the Second Circuit the ability to evaluate the correctness of the Damages Orders upon which that argument is founded.  Simply put, this Court should not allow the Aviation Defendants to "have their cake and eat it too" in a manner that is fundamentally unjust and prejudicial to the WTCP Plaintiffs.

Third, given that the Aviation Defendants continue to press the Damages Orders-based argument before the Second Circuit, the real possibility exists that the Second Circuit may rely on that argument to resolve the current appeals.[5] Should the Second Circuit do so, it should do so based upon the full record on which the underlying Damages Orders were rendered.[6]

Finally, the Aviation Defendants' argument misapprehends (perhaps deliberately) the nature of a "controlling question of law". A controlling question of law exists if reversal of the district court's opinion "could significantly affect the conduct of the action." *See New York v. United Boatmen of New York, Inc.*, No. 08-CV-2503 (CPS)(RLM), 2009 WL 962250, at *4 (E.D.N.Y Apr. 7, 2009) (quotation marks and citation omitted). Thus, "'[c]ontrolling' does not mean 'dispositive.' . . . 'Rather, all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could *materially affect* the outcome of litigation in this district court.'" *LNC Investments, Inc. v. First Fidelity Bank*, No. 92 Civ. 7584 (CSH), 2000 WL 461612, at *3-4 (S.D.N.Y. Apr. 18, 2000) (emphasis in original; *quoting In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)); *see also In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 434 (S.D.N.Y. 1998) (certifying "one of the controlling questions of law affecting the naming of the appropriate plaintiffs and beneficiaries and the *availability and measure of damages*" (emphasis added)), *aff'd*, 209 F.3d 200 (2d Cir. 2000).

---

[5] For this reason, the Aviation Defendants' argument that the issues raised by the Damages Orders are not "controlling" questions of law here because this Court did not rely on the Damages Orders in issuing the Approval Orders, *see* AD Opposition Brief, pp. 5-6, makes no sense. Given that it is impossible to predict whether or not the Second Circuit will adopt the Aviation Defendants' argument in resolving the current appeals, the fact that this Court employed an alternative rationale does not demonstrate that the appeals may not turn on that very argument advanced by the Aviation Defendants predicated on the Damages Orders.

[6] Of course, should the Second Circuit reach the questions of law raised by the Damages Orders, it will surely recognize the deficient nature of the record before it, which, in turn, would likely lead to a time-consuming and unnecessary remand to this Court. *See* pp. 11-13, below.

Here, the Damages Orders limited the WTCP Plaintiffs' recovery to $2.805 billion (plus consequential damages). Whether this was correct, or whether the WTCP Plaintiffs can seek to recover their claimed damages of more than $6 billion (plus over nine years of prejudgment interest, totaling in excess of 81%) for the diminution in the market value of its leasehold interests, including needed rebuilding costs, could very well be the question upon which the Second Circuit's review of this Court's approval of the settlement(s) hinges. If the Second Circuit finds that an insufficiency of insurance coverage remaining after the consummation of the settlement(s) to satisfy the WTCP Plaintiffs' damages would require the rejection of the settlement(s) under the Air Transportation Safety and System Stabilization Act, as amended, codified at 49 U.S.C. § 40101, note ("ATSSSA"), then the resolution of current appeals from the approval of the settlement(s) will turn entirely on the rightness of the Damages Orders. As such, there should be little doubt that the rightness of the Damages Orders is a controlling question of law, and one which should be determined on a complete record.

**B.      There Is Substantial Ground For Difference Of Opinion On A Controlling Question Of Law**

The Aviation Defendants also attempt to mislead this Court by wrongly claiming that a "substantial ground for a difference of opinion" on the controlling question of law can only be established by "a substantial division among courts or commentators regarding the issue." *See* AD Opposition Brief, pp. 7-8. The Aviation Defendants simply fail to inform the Court that such a substantial ground for difference of opinion can also be established by a paucity of relevant cases on a difficult question. *See, e.g., In re Amer. Preferred Prescription, Inc.*, 265 B.R. 13, 26 (E.D.N.Y 1999) (finding substantial ground for difference of opinion where question was one of first impression), *rev'd on other grounds*, 255 F.3d 87 (2d Cir. 2001); *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) (paucity of case law supported

finding of substantial ground for difference of opinion as to controlling question of law); *Skylon Corp. v. Guilford Mills,* 901 F. Supp. 711, 718 (S.D.N.Y. 1995) ("[s]ubstantial ground for difference of opinion may arise where an issue is difficult and of first impression").

This Court has already acknowledged the paucity of authority related to whether a net lessee can recover tort damages resulting from losses caused by the need to fulfill contractual obligations as a result of the tort. *See* September 24, 2008 Transcript of Proceedings in 21 MC 101 (Exhibit 13 to the Egan Moving Decl.), at p. 39 ("here, there is a contract clause that puts an obligation on the part of the holder of the net lease. And we've looked for cases, and we haven't found any cases."). On this basis alone, this Court could and should find that there is a substantial ground for a difference of opinion on this difficult and complex question.

Moreover, even beyond the paucity of case law on the controlling question here, the WTCP Plaintiffs have cited at least two pertinent New York Appellate Division cases that cut against the Court's conclusion. While not directly on point, each of those cases permitted the recovery of tort damages suffered where the tortious conduct involved activated the injured party's existing contract obligations. *See Poulos v. Badala*, 227 A.D.2d 118, 119, 641 N.Y.S.2d 313, 314 (1st Dep't 1996); *Plouffe v. Rogers*, 144 A.D.2d 218, 219-20, 534 N.Y.S.2d 731, 733 (3d Dep't 1988). In addition, the WTCP Plaintiffs have also presented to this Court another Appellate Division decision arising from a condemnation and destruction of a building that permitted a lessee to recover all its leasehold damages, including rebuilding costs, where the lease obligated the lessee to rebuild. *See Fargo v. Browning,* 45 A.D. 507, 510, 61 N.Y.S. 301, 303 (1st Dep't 1899) ("items of the damages awarded to the lessees were plainly the general damage to their leasehold by the taking of the land, and the particular damage inflicted on them by the demolition of the building, making it necessary for them to reconstruct it").

Arrayed against these cases, this Court cited no authority for its ruling that WTCP's damages for rebuilding the World Trade Center buildings (as its leases required) did not result directly from the Aviation Defendants' tortious conduct, but rather, flow "from WTCP's contract clauses". *See* December 10, 2008 Order (Exhibit 3 to the Egan Moving Decl.), 590 F. Supp. 2d at 543-44; *see also* April 29, 2009 Order (Exhibit 4 to the Egan Moving Decl.), 2009 WL 1181057 at *3 (citing a breach of contract case, *Rose Lee Mfg., Inc. v. Chem. Bank*, 186 A.D.2d 548, 588 N.Y.S.2d 408 (2d Dep't 1992), in finding that "[t]he Aviation Defendants are not liable for the specific performance obligation of tenants and owners").  Thus, given that the WTCP Plaintiffs have provided this Court with authority contrary to its rulings in the Damages Orders, a substantial ground for a difference of opinion on this controlling question of law undeniably exists.

The Aviation Defendants' perfunctory efforts to distinguish the cases cited by the WTCP Plaintiffs fail.  Their *ipse dixit* claims that these cases are "inapposite", made without any meaningful analysis, *see* AD Opposition Brief, p. 9, simply does not overcome the WTCP Plaintiffs' demonstration that there is authority under the governing New York law for the proposition that a plaintiff may recover tort damages arising from tortious conduct that triggers a plaintiff's contractual obligations.

Accordingly, a substantial ground for a difference of opinion exists on the controlling question of law concerning whether a tort victim can recover damages caused where the tortfeasor's conduct activates the victim's pre-existing contractual obligation.

**C.      Appellate Review Of The Court's Orders Will Materially Advance The Ultimate Termination Of The Litigation**

The WTCP Plaintiffs demonstrated in their Moving Memorandum (at pp. 10-12) that certification of the Damages Orders for immediate appeal would materially advance the ultimate

termination of the litigation by, *inter alia*, (1) permitting the Second Circuit to reach the questions raised by the Damages Orders on the current appeals on a full record and without the need to remand matters to this Court for additional findings germane to the pending appeal (which will certainly delay any final resolution of this already lengthy litigation), and (2) resolving a question that has put the WTCP Plaintiffs and the Aviation Defendants at an impasse (each side being convinced that it will eventually prevail on these important damages questions) that prevents any consensual resolution of the WTCP Plaintiffs' claims.  Under such circumstances, prompt certification and appeal of the Damages Orders for immediate appeal would materially advance the ultimate determination of this litigation.  *See, e.g., Kuzinski v. Schering Corp.*, Civil No. 3:07cv233 (JBA), 2009 WL 1035297, at *3 (D. Conn. Apr. 17, 2009) ("permitting Defendant to appeal now would ensure that significant expenditure of resources would not be futile"); *Consol. Edison, Inc. v. Northeast Utils.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004) (resolution of question would materially advance termination of litigation where it would "substantially change the face of the litigation") , *rev'd in part*, 426 F.3d 524 (2d Cir. 2005); *In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006) (resolution on appeal of whether plaintiff had standing would result in the "elimination of uncertainty [that] would contribute positively to the possibility of settlement, which is the Court's ultimate goal to the extent possible"), *rev'd sub nom., W.R. Huff Asset Mgmt. Co.*, 549 F.3d 100 (2d Cir.2008), *cert. denied*, --- U.S. ---, 129 S. Ct. 2011 (2009); *LNC Investments, Inc.*, 2000 WL 461612, at *4 (certification granted where, "[i]f the parties are subjected to a full plenary trial and on appeal the Second Circuit concludes I decided that question incorrectly, then there will have to be a third trial").

The Aviation Defendants' principal effort to overcome this showing is their new claim that "[i]f WTCP were to succeed on its appeal [from the Damages Orders], extensive damages discovery would be required before any trials could be held." AD Opposition Brief, p. 9. Thus, the Aviation Defendants threaten more delay if the Damages Orders are reversed. The Aviation Defendants instead propose that this Court refuse to certify the Damages Orders and proceed to some kind of proceeding -- for the third time -- under CPLR 4545(c) that would supposedly "marshal[] the evidence and expert testimony the Court needs to decide once and for all that WTCP's insurance proceeds correspond with its potential tort recovery" "after which the Court can determine if it is appropriate to direct entry of a Fed. R. Civ. P. 54(b) final judgment". *See id.*, p. 10. Of course, if the premise of the Aviation Defendants' first argument -- a successful appeal by the WTCP Plaintiffs on the Damages Orders -- is correct, that entire proposed proceeding would be wasteful and unnecessary and would delay the resolution of this litigation for months or years to no purpose whatsoever. Moreover, the Aviation Defendants fail to explain how the "extensive damages discovery" that they fear would be avoided if the dreaded reversal of the Damages Orders happened later rather than sooner. No matter when the reversal occurred, that discovery would still be necessary. Thus, the Aviation Defendants' arguments do not overcome the WTCP Plaintiffs' demonstration that a present certification for immediate interlocutory appeal will materially advance the ultimate resolution of this litigation. In fact, when analyzed with care, the Aviation Defendants' arguments prove the opposite -- that the failure to certify will undoubtedly hinder and delay the eventual resolution of this litigation.

## POINT III

### THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE REQUESTED § 1292(b) CERTIFICATION

The Aviation Defendants correctly note that, even if all prongs of the § 1292(b) certification standard are met, this Court retains discretion to deny that certification. *See AD Opposition Brief, p. 5.* However, given the "unusual significance" of the WTCP Plaintiffs' claims, this Court should exercise that discretion to permit the immediate appeal from the Damages Orders. *See Zakrewska v. The New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) (§ 1292(b) certification is appropriate where "ruling is of practical significance going well beyond run-of-the-mill concerns of the parties before the Court", quotation marks, footnote and citations omitted); *Consol. Edison, Inc.*, 318 F. Supp. 2d at 196 (granting certification where, *inter alia*, "the implications of the decision in this case are far-reaching, potentially affecting billion-dollar transactions in this case and others").

Here, there can be little debate that these cases are of "unusual significance" and that the "practical significance" of a prompt final determination of the scope of damages which the WTCP Plaintiffs are entitled to seek from a jury goes well beyond the "run of the mill" concerns of the parties. As this Court has acknowledged many times, the cases committed to its care by ATSSSA (such as these cases) have particular public significance and interest, as is evidenced by the very existence of ATSSSA itself.

Moreover, insofar as the resolution of these actions may have a direct impact on the rebuilding of the World Trade Center, the "unusual significance" of these cases is self-evident. That the World Trade Center be rebuilt and be rebuilt as quickly as possible is a national concern and a matter of national pride. Any interference with that rebuilding runs counter to pervasive national will. Yet, due to a shortage of funds, it is possible that two out of the four office/retail

building sites on the World Trade Center site might remain indefinitely in an unbuilt or half-built condition. Conversely, if the WTCP Plaintiffs are finally made whole from billions of dollars of insurance now held for more than nine years by the insurers of the Aviation Defendants (which allowed the terrorist attacks to happen), then that recovery can be put to the high use of rebuilding the complete World Trade Center site. *See* September 17, 2001 letter from Richard A. Williamson to Hon. Alvin K. Hellerstein (Exhibit 12 to the Egan Moving Decl.) (describing current rebuilding status and needs). Accordingly, public confidence in our judicial system demands that this Court do what it can to bring these disputes to their final conclusion.[7] Thus, this Court should exercise its discretion to direct a present certification of the Damages Orders for immediate interlocutory appeal in order to serve and vindicate that important public interest.

---

[7] The WTCP Plaintiffs' desire to rebuild as quickly as possible demonstrates the absurdity of the Settling Plaintiffs' claim that the WTCP Plaintiffs are seeking to delay these proceedings. *See* SP Opposition Brief, p. 3. The WTCP Plaintiffs' only desire here is advance these proceedings as swiftly as possible so that they may obtain their eventual recovery on their claims and thereafter use that recovery to aid in the complete rebuilding of the World Trade Center site. Delay of any kind is antithetical to that goal.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the Egan Moving Decl. and in the WTCP Plaintiffs' Moving Memorandum, the WTCP Plaintiffs respectfully request that this Court certify its Damages Orders for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: New York, New York
        October 15, 2010

                              FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

                              By: _Thomas A. Egan_____
                                    Thomas A. Egan, Esq.
                              One Liberty Plaza
                              New York, New York  10006
                              (212) 412-9500

                              Attorneys for the WTCP Plaintiffs:
                              World Trade Center Properties LLC,
                              1 World Trade Center LLC,
                              2 World Trade Center LLC,
                              3 World Trade Center LLC,
                              4 World Trade Center LLC

361710

16