UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
                                                            :
IN RE SEPTEMBER 11 LITIGATION       :   NO.: 21MC101(AKH)
                                                            :
                                                            :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF HUNTLEIGH USA CORPORATION TO DISMISS
REMAINING CLAIMS AGAINST IT, OR IN THE ALTERNATIVE,
<u>TO STAY ACTION DURING PENDENCY OF SETTLEMENT APPEAL</u>**

Defendant Huntleigh USA Corporation ("Huntleigh") has in settlement paid the maximum amount available in relief against it. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), Huntleigh moves to dismiss as moot the remaining property damage and wrongful death claims against it. In the alternative, Huntleigh moves to stay the remaining causes of action as to Huntleigh pending the resolution of the appeal by WTCP[1] challenging this Court's decision to apply the property damage settlement amounts against the limits on liability under the Air Transportation Safety and System Stabilization Act ("ATSSSA").

**PRELIMINARY STATEMENT**

By Order of July 1, 2010, this Court determined that Huntleigh's insurers have exhausted the limits of Huntleigh's liability insurance coverage, and thus have reached the statutory limit required by ATSSSA. As such, by statute, Huntleigh can no longer be liable to plaintiffs for further money damages for any claims arising from the terrorist attacks of September 11. It has long been the rule in federal courts that when a development in the course of litigation "renders it impossible" for the court "to grant [the plaintiff] any effectual relief" against a defendant, the

---
[1] "WTCP" includes World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4 World Trade Center LLC, and 7 World Trade Center Company, L.P.

claim shall be dismissed as moot. *Mills v. Green*, 159 U.S. 651, 653 (1895). That is the situation here, for even if plaintiffs prevail on the merits against Huntleigh, it is not possible for this Court to grant any further effectual relief against it. As such, further action against Huntleigh is now moot, and Huntleigh should be dismissed from any and all remaining causes of action against it arising from the terrorist attacks of September 11, 2001.

The remaining claims against Huntleigh should also be dismissed for prudential reasons. A court may dismiss a case on prudential grounds where the Court "can no longer afford . . . any meaningful relief," *Greenbaum v. U.S. Environmental Protection Agency*, 370 F.3d 527, 534 (6th Cir. 2004), including where there "will never be any assets with which to satisfy a judgment," *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38 (5th Cir. 1991). It would be an unnecessary burden on Huntleigh and a waste of judicial resources to keep Huntleigh in the case when plaintiffs can no longer avail themselves of relief as against Huntleigh.

Alternatively, if the Court determines that the remaining claims against Huntleigh should not be dismissed, Huntleigh asks that further action against it be stayed pending the outcome of WTCP's appeal challenging this Court's decision to apply the property damage settlement amounts against the limits on defendants' liability under ATSSSA and to find Huntleigh's limits exhausted (the "PD Settlement Appeal"). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The authority to issue a stay "is not limited to cases involving identical parties or issues," *Fagan v. Republic of Austria*, 2009 WL 1423338, at *4 (S.D.N.Y. May 19, 2009), and "[c]ourts may stay proceedings in a number of situations, includ[ing] when a higher court is

about to decide a pertinent issue of law." *Id.* Indeed, "a stay may be granted any time an expected appellate decision may be relevant to the case at hand." *Id.* at *5.

The Court recently set the remaining wrongful death claim for trial beginning June 13, 2011, with discovery, expert reports, and motion practice to be completed in the interim. Yet the pending PD Settlement Appeal by WTCP is unlikely to be decided by the Second Circuit before the scheduled trial date. Huntleigh reached a good faith settlement of claims against it at a mediation directed by the Court, in part to avoid the continuing expense of litigation. To require Huntleigh's involvement in time-consuming and expensive preparations to defend itself at trial—despite having paid out settlement proceeds exhausting applicable insurance limits—would be manifestly unjust. Huntleigh believes the Second Circuit will affirm this Court's ruling. If this Court is of similar belief, Huntleigh should not be required to proceed to trial. Efficiency and fairness favor staying the claims against Huntleigh until the Second Circuit has determined WTCP's PD Settlement Appeal.

In light of the foregoing, and for the reasons below, Huntleigh respectfully asks the Court to dismiss the remaining claims against Huntleigh as moot or, in the alternative, to stay the remaining claims as to Huntleigh pending resolution of WTCP's PD Settlement Appeal.

## BACKGROUND

1.   Following the terrorist attacks of September 11, 2001, Congress passed the Air Transportation Safety and System Stabilization Act, codified at 49 U.S.C. § 40101 note, for the purpose of preventing the American aviation industry from being ruined by liability for harm caused by the attacks. Under ATSSSA, Huntleigh's liability for claims arising from the September 11 terrorist attacks is capped at an amount "not . . . greater than [Huntleigh's] limits of liability insurance coverage." *See* ATSSSA § 408(a)(1).

2.   On February 23, 2010, Huntleigh entered into the Confidential Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement"), resolving all property damage and insurance subrogation claims pending against Huntleigh except those by WTCP (the "PD Settlement"). *See* Exhibit 1. The Settlement Agreement was specifically conditioned on a finding by this Court that Huntleigh's contributing insurers would exhaust their coverage. *Id.* ¶ 6(b). Furthermore, in addition to its representation and warranty that it was exhausting its limits, Huntleigh affirmatively stated that it would file "motions to dismiss it from any remaining causes of action in the consolidated cases based upon its having exhausted its limits of liability insurance coverage." *Id.* ¶ 14.

3.   In proceedings to approve the Settlement Agreement, Huntleigh submitted evidence setting forth the payments it had made under previous settlements with respect to wrongful death and personal injury claims. *See* Exhibit 2, ¶ 3 (Declaration of Jonathan Ross). Huntleigh further demonstrated that, together with the previous payments made with respect to wrongful death and personal injury settlements, the PD Settlement exhausted Huntleigh's remaining limits of liability coverage. *Id.*, ¶ 5.

4.   The two remaining property damage lawsuits in which Huntleigh is a defendant are *World Trade Center Properties LLC v. United Airlines, Inc.*, 08 Civ. 3719 (AKH), and *World Trade Center Properties LLC v. American Airlines, Inc.*, 08 Civ. 3722 (AKH). The two remaining wrongful death lawsuits in which Huntleigh is a defendant are *Bavis v. United Airlines, Inc.*, 02 Civ. 7154 (AKH) (the "*Bavis* Action"), and *Mariani v. UAL Corporation*, 01 Civ. 11628 (AKH).[2] Each of these lawsuits (together, the "Remaining Claims") seeks only

---

[2] As this Court knows, a settlement with respect to Louis Neal Mariani has been reached. However, due to disputes with respect to the Mariani estate, that settlement has not yet been finally approved by this Court, although approval papers in that regard are now filed and pending. Given the exhaustion of Huntleigh's limits of liability insurance under the Settlement Agreement, United will fund the Mariani settlement itself at such time as approval is obtained.

money damages, and each names various other defendants in addition to Huntleigh. *See* Declaration of Charles Eskridge, ¶ 5. This Court previously struck wrongful death claims for punitive damages. *See In re September 11th Litigation*, 494 F. Supp. 2d 232, 240 (S.D.N.Y. 2007) (Opinion and Order Regarding Punitive and Compensatory Damages, dated July 3, 2007).

5.  Only WTCP opposed approval of the Settlement Agreement. In its opposition papers, WTCP stated:

> The Settlement would entirely exhaust Huntleigh's insurance, leaving none of Huntleigh's limited fund available for competing claimants even if Huntleigh were found liable for part (or all) of their damages – <u>effectively rendering a trial against Huntleigh moot</u> and depriving the Competing Limited Funds Claimants of their due process rights to have their claims against Huntleigh determined and to receive an equitable share of Huntleigh's limited fund.

Exhibit 3, at 18 (WTCP Memorandum of Law in Opposition to "Joint Motion for Orders Approving the Settlement Agreement Among the Aviation Defendants and the Settling Plaintiffs" and in Support of Cross-Motion for a Preliminary Injunction) (emphasis added). Plaintiffs in the *Bavis* Action filed no opposition. *See* Declaration of Charles Eskridge, ¶ 6.

6.  At the approval hearing on May 27, 2010, counsel for WTCP fully argued this position, explicitly recognizing that the PD Settlement would entirely exhaust Huntleigh's remaining liability insurance limits established by ATSSSA, and that Huntleigh would thus move to dismiss all other claims against it due to such exhaustion. Exhibit 4, at 24 (transcript). WTCP opposed approval of the Settlement Agreement on that basis. *Id.*, at 24-27. Counsel in the *Bavis* Action voiced no objection. *See* Declaration of Charles Eskridge, ¶ 7.

7.  On July 1, 2010, this Court entered its Order and Opinion Granting Joint Motion Approving Property Damage Settlements ("Settlement Approval Order") *See* Exhibit 5 (also reprinted at *In re September 11 Litig.*, -- F.Supp.2d --, 2010 WL 2628642 (S.D.N.Y. Jul. 1,

2010)). This Court considered and rejected WTCP's arguments, finding that the fact that the settlement would exhaust Huntleigh's liability "does not prevent me from approving the settlement as fair and reasonable," and further, that WTPC has "not shown that Huntleigh is the only defendant against whom they can prove a case of liability, or a more important defendant than others." *Id.* at 17. In approving the PD Settlement, this Court specifically found that "payment by Huntleigh's insurers has exhausted the limits of Huntleigh's liability insurance coverage" under ATSSSA. *Id.* at 18.

8.  On July 22, 2010, WTCP filed its notice to the Second Circuit with respect to the PD Settlement Appeal, challenging this Court's decision to apply the property damage settlement amounts against the limits on defendants' liability under ATSSSA. Briefing has not yet commenced. The latest Order from the Second Circuit on these issues, entered October 5, 2010, is attached as Exhibit 6. That Order notes that the Aviation Defendants' have moved to dismiss two of the appeals noticed by WTCP; that such motion has been "referred to a motions panel and shall be heard as soon as possible"; and that once such motion is decided, "the Court shall entertain a stipulation for a briefing schedule and request that the appeal be expedited." *Id.*

10.  At the Status Conference on October 20, 2010, this Court set the *Bavis* Action for trial commencing July 13, 2011. Exhibit 7, at 9 (transcript). With respect to concerns raised by Huntleigh, the Court stated: "You can make your motion to be excluded or not. … Maybe you're not exposed. Maybe there's no more insurance. Maybe you're limited to insurance. I don't know. You'll tell me in your motion." *Id.* at 14.

9.  Assuming an expedited briefing schedule is enforced in the PD Settlement Appeal, briefing could perhaps close by January 2011 at the earliest, with argument to follow thereafter. Huntleigh believes it unlikely that the PD Settlement Appeal will be resolved on the

1341966v1/005989

6

merits prior to any trial commencing in the *Bavis* Action on June 13, 2011. *See* Declaration of Charles Eskridge, ¶ 11.

## ARGUMENT

Huntleigh exhausted the limits of its liability coverage with the PD Settlement. Under the litigation path established by Congress, Huntleigh cannot be held to answer for further damages. This Court should dismiss the Remaining Claims against Huntleigh as moot or, in the alternative, enter a stay as to Huntleigh pending resolution of WTCP's appeal.

### I.   Plaintiffs' Remaining Claims With Respect to Huntleigh Should Be Dismissed

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings." *Fox v. Board of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added).

As detailed below, the Court lacks subject-matter jurisdiction over the Remaining Claims because they are moot, and it is well-established that "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983). Huntleigh respectfully asks the Court to dismiss the Remaining Claims pursuant to Rules 12(b)(1) and 12(h)(3).

### A.  Plaintiffs' Remaining Claims Against Huntleigh Are Now Moot

When Huntleigh raised concerns about the *Bavis* Action being set for trial at the recent Status Conference, the Court invited this motion, observing, "Maybe you're not exposed. Maybe there's no more insurance. Maybe you're limited to insurance. I don't know. You'll tell me in your motion." Exhibit 7, at 14. In point of fact, this Court specifically found Huntleigh's insurance to be exhausted when approving the Settlement Agreement. Huntleigh has no other applicable insurance, and its liability is limited thereto under ATSSSA. As such, all other claims against it in this litigation are moot.

### 1.  Huntleigh's Liability Limit Under ATSSSA Is Exhausted.

In the wake of 9/11, Congress passed ATSSSA for the purpose of preventing the American aviation industry from being ruined by liability for harm caused by the terrorist attacks. Exhibit 5, Settlement Approval Order, at 4 (citing 147 Cong. Rec. S9589-01, S9594 (Sept. 21, 2001)); *see also In re WTC Disaster Site Litig.*, 414 F.3d 352, 376-77 (2d Cir. 2005) (noting that "statements during debate on the legislation made clear that Congress's principal goals were to provide relief without litigation to individuals harmed as a result of the crashes and to limit the liability of entities that were likely to be sued for injuries suffered in connection with the crashes"). To that end, ATSSSA provides "the <u>exclusive remedy</u> for damages arising out of the hijacking and subsequent crashes of . . . flights" on September 11, and caps Huntleigh's "liability for <u>all</u> claims . . . arising from the terrorist-related aircraft crashes of September 11, 2001," to "the limits of [Huntleigh's] liability insurance coverage." *See* ATSSSA § 408(a)(1) (emphasis added).

As set forth above, Huntleigh was a party to the Settlement Agreement approved by this Court on July 1, 2010. In connection with that approval, this Court found that "payment by

Huntleigh's insurers has exhausted the limits of Huntleigh's liability insurance coverage" established by ATSSSA. Exhibit 5, Settlement Approval Order, at 18. Indeed, when addressing arguments against approval of the Settlement Agreement, the Court noted WTCP's acknowledgement that if the PD Settlement was credited against Huntleigh's liability insurance caps, Huntleigh would be "entitled to a discharge of further liability." *See* Exhibit 5, Settlement Approval Order, at 17; *see also* Background, *supra*, paras. 4-5. This Court approved the Settlement Agreement over such objections. It is now time to discharge Huntleigh from the potential of further liability.

> 2. **Because No Further Relief Can Be Taken Against Huntleigh, This Court Should Dismiss For Lack of Jurisdiction.**

When opposing approval of the Settlement Agreement, WTCP recognized the reality that if Huntleigh's settlement portion were credited against its ATSSSA limit of liability, that limit would be exhausted, thus "effectively rendering trial against Huntleigh moot." *See* Background, para. 4. The Remaining Claims against Huntleigh are, indeed, moot. Because ATSSSA prohibits the relief requested by plaintiffs in the Remaining Claims against Huntleigh (*i.e.*, money damages), those claims should be dismissed.

A case is moot "[w]hen 'it [is] impossible for [a] court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever.'" *Adams v. Resolution Trust Corp.*, 927 F.2d 348, 354-55 (8th Cir. 1991) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). That is, "[t]o satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury <u>that can be redressed by a favorable judicial decision</u>." *Iron Arrow Honor Society*, 464 U.S. at 70-71 (emphasis added). "When a case becomes moot, the federal courts 'lack[] subject matter jurisdiction over the action.'" *Fox*, 42 F.3d at 140 (quoting *New York City Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992)). In this

context, "'the feasibility or futility of effective relief should a litigant prevail' remains a crucial consideration in this court's determination of whether to adjudicate a claim on its merits." *Adams*, 927 F.2d at 354 (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147-48 (D.C. Cir. 1986)); *see also Iron Arrow*, 464 U.S. at 70-71 (dismissing claim as moot where "no resolution of the present dispute between these parties can redress [plaintiff's] asserted grievance"); *Independence Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 255 (2d Cir. 2005) (case moot where "impossible for the court to grant any effectual relief whatever to a prevailing party").

An analogous context exists with respect to actions whereby a plaintiff seeks to recover damages from the FDIC as receiver for a failed financial institution. Federal law requires a party claiming against the FDIC as receiver to look only to the assets of the failed institution to satisfy any of its claims against the institution. *See, e.g., Henrichs v. Valley View Development*, 474 F.3d 609, 615 (9th Cir. 2007); *First Indiana Federal Savings Bank v. Federal Deposit Ins. Corp.*, 964 F.2d 503, 507 (5th Cir. 1992) (noting that Congress expressly limited the maximum liability of the FDIC). In these cases, courts routinely dismiss unsatisfied damages claims against the FDIC as moot because there is no possible relief the court could order consistent with limits imposed by Congress. That is, the plaintiffs' remedies are rendered unavailable by operation of federal law, and thus, the claims are dismissed as moot. *See, e.g., Henrichs*, 474 F.3d at 615 ("No assets remain in the receivership to satisfy a late-filed claim, thus rendering the claim moot."); *Maher v. Federal Deposit Ins. Corp.*, 441 F.3d 522, 526 (7th Cir. 2006) ("Since the FDIC's corporate liability is limited to the assets of the receivership, and since the receivership is now terminated and without assets, there is no possible relief for this court to order for [plaintiffs] against the FDIC in its corporate capacity. We therefore dismiss for lack of a justiciable case or controversy.").

A second analogous context is where a defendant makes an offer of judgment under Federal Rule of Civil Procedure 68 that would provide the plaintiff with all the relief legally available to him, such as where damages are subject to a statutory cap. Such an offer "eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction." *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 562 (D. Minn. 2003) (dismissing claim as moot where defendant offered to pay maximum amount plaintiff would be permitted to recover under statutory cap on damages) (collecting cases); *see also Abrams v. Interco Inc.*, 719 F.2d 23, 26 n.1, 32-34 (2d Cir. 1983) (dismissing claim where defendant offered to pay "more than the plaintiff could possibly obtain from litigation").

Just as in the FDIC context, Congress here has limited the amount of damages that Huntleigh can legally be required to pay, and Huntleigh has reached that limit. It is not pertinent whether or not plaintiffs' damages claims have yet been fully satisfied. Likewise, although Huntleigh has not offered judgment to plaintiffs under Rule 68, the same logic applies: Huntleigh has emptied its pockets to the full extent required by law. Because no further relief is legally available to plaintiffs from Huntleigh, their Remaining Claims are moot. Consequently, the Court should dismiss for lack of jurisdiction.

B. **Requiring Huntleigh to Remain in The Litigation Would Be Imprudent and Wasteful.**

Plaintiffs may well wish to keep Huntleigh involved in this action for some asserted strategic reason. Such argument is of no avail. Even where a claim technically constitutes a "case or controversy" under Article III—and to be clear, in the present posture the Remaining Claims against Huntleigh do not—a court may dismiss claims on the grounds of "prudential mootness" if there is "no practical purpose in requiring their adjudication on the merits." *First*

*Indiana*, 964 F.2d at 507; *see also Nasoordeen v. Federal Deposit Ins. Corp.*, No. CV 08-05631, 2010 WL 1135888, at *5-9 (C.D. Cal. Mar. 17, 2010) (collecting cases).

For example, in *First Indiana*, the court of appeals upheld the district court's decision to dismiss plaintiff First Indiana's claims against the FDIC (as receiver for Old United) because the liability of the FDIC was limited by statute, and First Indiana would not be able to recover, even if victorious at trial in its claims against Old United. The court of appeals found that:

> Irrespective of the abstract validity of any of First Indiana's claims against Old United, there are no set of circumstances under which First Indiana can recover any money or property as a result of those claims. It follows that litigating such claims would require a significant dedication of resources by First Indiana, the FDIC, and the district court. Because this expenditure of time and money will never result in First Indiana's obtaining the relief it seeks, a trial on the merits would be a completely hollow act. Consequently, the district court's dismissal of First Indiana's claims . . . were proper on grounds of prudential mootness.

*Id.* at 508 (footnote omitted). The same analysis applies in this case. Even if the remaining plaintiffs technically have a valid claim against Huntleigh, a trial on the merits against Huntleigh would be a hollow act because the plaintiffs are statutorily barred from obtaining the only requested relief: money damages.

Huntleigh has already paid the maximum amount required by Congress under ATSSSA. It should not be required to remain a defendant in this litigation and continue to incur legal fees and costs. Litigating plaintiffs' Remaining Claims against Huntleigh would require significant time and resources, would complicate the already complex proceedings, and yet could never result in any further legal relief to plaintiffs <u>from Huntleigh</u>. Even if plaintiffs would prefer to keep Huntleigh in the proceedings for some strategic reason, Huntleigh should be dismissed out of fairness to Huntleigh, to simplify the proceedings, and to conserve the Court's and parties' resources. *See Adams*, 927 F.2d at 355 (dismissing claim against corporate defendant as moot

where no relief was available from that defendant even though plaintiff wanted to keep that defendant in litigation as part of larger litigation strategy). Efficient and fair management of this complex multi-party litigation requires that Huntleigh be dismissed from the proceedings and discharged from further liability.

## II. Alternatively, Further Action Against Huntleigh Should Be Stayed During Pendency Of WTCP's Appeal.

Huntleigh's potential liability has been extinguished under ATSSSA, due to its payment of available insurance limits under the PD Settlement. Should the Court decline to dismiss the Remaining Claims against Huntleigh at present due to the pendency of WTCP's appeal, and its potential to revive such extinguished claims, Huntleigh asks in the alternative that the Court stay the Remaining Claims as to Huntleigh until such time as the Second Circuit rules.

As succinctly recognized by the court in *In re Literary Works in Electronic Databases Copyright Litig.*, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001):

> "A district court's power to stay proceedings was settled in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936): '[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants.'"

*In re Literary Works in Electronic Databases Copyright Litig.*, 2001 WL 204212, at *2. In deciding whether to grant a stay, courts traditionally consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). Courts routinely find this balance

favors granting the stay where there is an appeal pending that is relevant to the case at hand. *See, e.g., Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977); *In re Literary Works*, 2001 WL 204212, at *2 ("A court may properly exercise this power when a higher court is close to settling an important issue of law bearing on the action.") (collecting cases); *Goldstein v. Time Warner New York City Cable Group*, 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998). Indeed, when granting a stay in *Fagan*, the court found it compelling that a pending appeal could decisively render certain claims moot, *Fagan*, 2009 WL 1423338, at *4, and ultimately granted the stay, finding that "a stay may be granted any time an expected appellate decision may be relevant to the case at hand." *Id.*, at *5.

With respect to the *Bavis* Action that has recently been set for trial, Huntleigh is sensitive to the family's need for closure. But in the current posture, Huntleigh has already parted with the entirety of its available insurance limits. If this Court's order approving the PD Settlement is upheld on appeal—which Huntleigh believes will be the result—it is beyond peradventure that the family may take no relief from Huntleigh. Any question regarding the propriety of Huntleigh's dismissal will be removed, which would likewise simplify the issues to be tried. On the other hand, if the *Bavis* Action is not stayed as to Huntleigh, it will be forced to prepare for and defend itself at trial, having already paid out the full limit of its liability under ATSSSA. Should the Second Circuit affirm in that posture, Huntleigh will have been put to the expense of discovery, pretrial preparation, and a trial for which it cannot be held liable. Such a result would squander the resources of all parties and the Court. Such result would also be exceedingly unfair in light of Huntleigh's good faith settlement at a mediation directed by this Court.

Efficiency and fairness favor a brief stay to resolve the pending appeal that bears directly on the potential of reviving Huntleigh's extinguished liability. The Court will benefit from a stay

in that the issues and parties to be tried could be substantially narrowed and simplified if the Second Circuit affirms this Court, and Huntleigh is ultimately dismissed from the action. Even if this Court is not inclined to stay progress of the entire action, the balance of equities clearly favors granting a stay in the *Bavis* Action, at least as to Huntleigh, until the resolution of WTCP's appeal.

## CONCLUSION

For the foregoing reasons, Huntleigh respectfully requests that the Court dismiss plaintiffs' Remaining Claims against Huntleigh, or in the alternative, to stay the proceedings in the remaining causes of action as to Huntleigh pending resolution of WTCP's appeal.

Dated:  New York, New York
November 10, 2010

>Respectfully submitted,
>
>COUNSEL FOR DEFENDANT
>HUNTLEIGH USA CORPORATION
>
>BY:   s/ Jonathan J. Ross
>H. Lee Godfrey (HG1204)
>Charles R. Eskridge III
>Jonathan J. Ross (JR5100)
>
>**SUSMAN GODFREY L.L.P.**
>1000 Louisiana Street Suite 5100
>Houston, Texas 77002
>Telephone: 713-651-9366
>lgodfrey@susmangodfrey.com
>ceskridge@susmangodfrey.com
>jross@susmangodfrey.com