UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE SEPTEMBER 11 LITIGATION | ) ) ) ) ) ) ) ) | 21 MC 101 (AKH)<br>This relates to:<br>*Bavis v. United Airlines, Inc.*,<br>02 CIV 7154 (AKH) |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS OF HUNTLEIGH USA CORPORATION AND ICTS INTERNATIONAL, N.V. TO DISMISS, <u>OR IN THE ALTERNATIVE TO STAY, THE *BAVIS* CLAIMS</u>

MOTLEY RICE LLC
Donald A. Migliori
Mary F. Schiavo
Vincent I. Parrett
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC 29465
Telephone:   (843) 216-9000
Facsimile:   (843) 216-9450
*Counsel for Bavis Plaintiff*

Dated: November 23, 2010
       Mount Pleasant, South Carolina

**TABLE OF CONTENTS**

**INTRODUCTION**......................................................................................................................1

**ARGUMENT**............................................................................................................................2

    1. As relief can be granted because of the agency relationship between United and Huntleigh, the *Bavis* wrongful death claims against Huntleigh are not moot....2

    2. Trial of the *Bavis* wrongful death claims against Huntleigh will be practical and fair................................................................................................................8

    3. The *Bavis* wrongful death claims against Huntleigh should not be stayed....... 11

    4. ICTS's motion to dismiss or stay the *Bavis* wrongful death claims against ICTS fails ............................................................................................................ 13

**CONCLUSION** ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992) ............................................................................................... 1

*Citibank, N.A. v. Nyland Ltd.,*
    878 F.2d 620 (2d Cir. 1989) ...................................................................... 5, 7, 8, 9

*Clark v. Martinez,*
    543 U.S. 371 (2005) ........................................................................................ 11

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ......................................................................................... 9

*De Ronde v. Gaytime Shops, Inc.,*
    239 F.2d 735 (2d Cir. 1956) ..................................................................... 5, 7, 8, 9

*First Indiana Federal Sav. Bank v. Federal Deposit Ins. Corp.,*
    964 F. 2d 503 (5th Cir. 1992) ......................................................................... 10

*In Re Kurtzman,*
    194 F.3d 54, (2d Cir. 1999) ........................................................................ 1, 6, 8

*In Re September 11 Litigation,*
    21 MC 97 (AKH), 2007 U.S. Dist 48864 (S.D.N.Y. July 5, 2007) .............................. 12

*In Re September 11 Litigation,*
    21 MC 101 (AKH), 594 F. Supp. 2d 374 (S.D.N.Y. 2009) ........................................... 2

*In Re September 11 Litigation,*
    21 MC 101 (AKH), 2010 U.S. Dist. LEXIS 66905 (S.D.N.Y. July 1, 2010) ............. 10, 13

*Kiobel v. Royal Dutch Petroleum Co.,*
    621 F.3d 111 (2d Cir. 2009) ...................................................................... 5, 7, 8, 9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................... 9

*Marbury v. Madison,*
    1 Cranch 137 (1803) ................................................................................... 10, 11

*Merrill Lynch Inv. Mgrs. v. Optibase, Ltd,*
    337 F.3d 125 (2d Cir. 2003) ........................................................................... 2, 4


*Meyer v. Holley,*
    537 U.S. 280 (2003) .......................................................................................... 5, 7, 8, 9

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,*
    389 F.3d 973 (10th Cir. 2004), ..................................................................................... 9


**Federal Statute & Code**

Air Transportation Safety and System Stabilization Act (ATSSSA),
codified at 49 U.S.C.S. §40101 note, §408(a)(1) ............................................................ *passim*

ATSSSA §405(c)(3)(B) ................................................................................................. 10

14 C.F.R. Part 108 Aircraft Operator Security,
Final Rule, §108.103(a)(1) (July 17, 2001) .................................................................... 4

14 C.F.R. Part 108 Aircraft Operator Security,
Final Rule, §108.201 (July 17, 2001) ............................................................................. 4

**Other Authorities**

Restatement (Second) of Agency §1 (1958) ................................................................. 2, 4

Restatement (Second) of Agency §219 (1958) ....................................................... 5, 7, 8, 9

Air Carrier Standard Security Program (ACSSP) ............................................................ 4

Plaintiff Mary Bavis, individually, and as personal representative of the Estate of Mark Bavis, deceased, opposes the motions to dismiss, or alternatively to stay, the *Bavis* wrongful death claims against Huntleigh USA Corporation ("Huntleigh") and ICTS International, N.V. ("ICTS"), filed at 21 MC 101 (AKH) Dkt. 1328 & 1332 respectively.

## INTRODUCTION

Huntleigh's central argument is that it should be dismissed for lack of jurisdiction because (it says) the *Bavis* wrongful death claims are "moot." Huntleigh Br. at 7-11, Dkt. 1329. But Huntleigh forgets the Second Circuit's instruction that "a case becomes moot only when it is 'impossible for the court to grant *any* effectual relief whatever to a prevailing party.'" *In Re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999)(emphasis in original)(quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Under the Second Circuit's standard, the *Bavis* claims against Huntleigh are not moot because there is a straightforward path to relief if Bavis wins before the jury on its claims against Huntleigh for its tortious security screening of the hijackers boarding United Air Lines Flight 175. As Huntleigh performed screening at Logan Airport as the agent of defendant United Air Lines, Inc. ("United"), a judgment on the merits against Huntleigh at trial can be paid and satisfied by *United*. As principal, United is liable for the tortious conduct of its agent Huntleigh—and Bavis at trial has the right to show the jury exactly what Huntleigh did wrong at the Terminal C checkpoint while screening the hijackers who boarded and crashed United's Flight 175 on September 11, 2001.

Moreover, nothing in the plain text of ATSSSA[1] §408(a)(1) prevents the Court from granting such relief to Bavis from United "because the limits of the liability insurance coverage maintained by that air carrier"—United—have not been reached. ATSSSA §408(a)(1). And as the Court can grant that "effectual relief" to Bavis upon winning at trial, the claims against

---

[1] Air Transportation Safety and System Stabilization Act ("ATSSSA") codified at 49 U.S.C.S. §40101 note.

Huntleigh are not "moot," let alone "impractical," as Huntleigh insists. Nor is there any reason to stay the *Bavis* wrongful death claims now on the eve of trial after nearly a decade of hard-fought litigation.

ICTS did not even bother to file a supporting memorandum of law, but rather adopted by reference the same arguments of Huntleigh (and nothing more). As Huntleigh's motion fails, so fails ICTS's motion.

## ARGUMENT

**1.     As relief can be granted because of the agency relationship between United and Huntleigh, the *Bavis* wrongful death claims against Huntleigh are not moot.**

Huntleigh acted as the agent of United in screening passengers for United's Flight 175 at Logan Airport on September 11, 2001. "'Agency is the fiduciary relationship which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control and consent by the other so to act.'" *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003)(quoting *Restatement (Second) of Agency* §1 (1958)). This Court has already found that "[t]he terrorists who had boarded United Air Lines Flight 175 had passed through the security administered by Huntleigh USA Corp. ('Huntleigh') under the aegis of United Air Lines, Inc. and UAL Corp. (collectively, 'United')." *In Re September 11 Litigation,* 21 MC 101 (AKH), 594 F. Supp. 2d 374, 376 (S.D.N.Y. 2009). The Court also accepted the facts reported by the 9/11 Commission on the hijackings, *id.* at 378 & 378 n. 2, which specifically found for United Flight 175 that:

> [t]o reach their departure gate, after checking in, the hijackers had to pass through a checkpoint in Terminal C before boarding. The checkpoint was under the custodial responsibility of United Air Lines. It had contracted the screening duties to Huntleigh USA Corporation.

2

9/11 Commission Records, Staff Monograph, "Four Flights and Civil Aviation Security," at 18 (September 12, 2005), *available at* http://www.archives.gov/legislative/research/9-11/staff-report-sept2005.pdf.[2]  Moreover, during this litigation, multiple deponents from both Huntleigh and United have testified and confirmed that Huntleigh was United's agent for security screening for Flight 175 at Logan Airport on September 11, 2001.  *See, e.g.,* April 19, 2007 deposition transcript of William Bourque, General Manager of Huntleigh, at p. 21, lines 14-22:

> Q.  In terms of the security operations being operated at Logan on September 11th, 2001, it would be accurate to say that Huntleigh was under contract with United Airlines?
> A.  Yes, we were.
> Q.  Pursuant to the agreement with United Airlines, Huntleigh was to provide preboard screening for Terminal C?
> A.  That's correct.

*See also,* April 27, 2009 deposition transcript of Richard C. Davis, Manager of Corporate Security for United, at p. 33, lines 13-17:

> Q.  You understand as you sit here now that Huntleigh was retained by United Airlines to conduct screening at Boston Logan on or before September 11th, 2001?
> A.  Yes.

*See also,* September 3, 2009 deposition transcript of John M. McDonald, Senior Staff Representative of Corporate Security for United, at p. 33, lines 14-21:

> Q.  You understood though there was a security company conducting preboard screening for United Airlines at Logan as of September 11, 2001?
> A.  Yes.
> Q.  Do you now know that company to have been Huntleigh?
> A.  Yes.

Indeed, the plain text of the "Security Services Agreement" between Huntleigh (as "Vendor") and United, effective October 1, 2000, makes clear that Huntleigh acted as the agent of United in performing screening for United at Boston Logan International Airport ("Airport"):

> Security Services.  Vendor will provide airport security services to United at the Airport, including as directed by United concourse or gate x-ray/table, international bag x-ray and hand search.  These services are hereafter referred to as "Security Services."

---

[2] For ease of reference, the relevant pages of this Staff Monograph are attached as Exhibit 1 hereto.

3

>Standard of Services. Vendor will adhere strictly to the standards specified by United.

United Contract 146858, Exhibit A, Security Services Agreement at p. 1 ¶1, p. 4 ¶11 (at bates-stamped pages UAL053408 & UAL053411).[3] United was responsible for hiring Huntleigh, training Huntleigh screeners, and overseeing Huntleigh's performance; United was responsible for the way Huntleigh employees did or did not perform their jobs at the security screening checkpoint at Logan Airport on September 11, 2001.[4]

Indeed, the "Huntleigh Screener Policy and Procedure Manual" on September 11, 2001, made clear that "[e]ach screener is employed by Huntleigh, but you are also a representative of the airline you serve…. People passing through the screening point do not see you as an employee of Huntleigh, but as an employee and representative of the Airline."[5]

Hence, in light of the above findings of fact by the Court, findings of fact by the 9/11 Commission, sworn testimony by Huntleigh and United representatives in this case, and the plain text of the Security Services contract between United and Huntleigh, it is clear that with the "control and consent"[6] of United, Huntleigh was acting as the agent of United by providing checkpoint security screening services at Logan Airport in Terminal C that the hijackers passed through to board United Flight 175 on September 11, 2001. Moreover, when it was providing security screening services as an agent of United at that checkpoint at Terminal C at Logan

---

[3] For ease of reference, this Security Services Agreement is attached as Exhibit 2 hereto.
[4] *See* AVSEC DEP Exhibit 2B, "Air Carrier Standard Security Program," p. 91 ("…the air carrier covered by this security program is responsible for the actions of its agents and/or contractors that perform functions that are subject to provisions of this security program."); AVSEC DEP Exhibit 69, "July 17, 2001 14 C.F.R. Part 108 Aircraft Operator Security; Final Rule," §108.103(a)(1) (requiring United as air carrier to "[p]rovide for the safety of persons and property traveling on flights provided by the aircraft operator against acts of criminal violence and air piracy, and the introduction of explosives, incendiaries, or deadly or dangerous weapons aboard an aircraft."); AVSEC DEP Exhibit 69, "July 17, 2001 14 C.F.R. Part 108 Aircraft Operator Security; Final Rule," §108.201 (requiring United as air carrier to carefully screen its passengers, their luggage and carry-on items to prevent the carriage of deadly or dangerous weapons aboard aircraft).
[5] AVSEC DEP Exhibit 132 at HUSA 001246 & HUSA 001249.
[6] *Merrill Lynch Inv. Mgrs.*, 337 F.3d at 130 (quoting *Restatement (Second) of Agency* §1), *supra*.

Airport on September 11, 2001, Huntleigh was acting *within the scope* of its authority and agency. *See, e.g.,* United Contract 146858, Exhibit A, Security Services Agreement at p. 1 ¶1, p. 4 ¶11; April 19, 2007 deposition transcript of William Bourque, General Manager of Huntleigh, at p. 21, lines 14-22; April 27, 2009 deposition transcript of Richard C. Davis, Manager of Corporate Security for United, at p. 33, lines 13-17, *supra.*

And as Huntleigh was acting within the scope of that agency when it performed security screening services at the Terminal C checkpoint at Logan Airport on September 11, 2001, United as the principal is liable for the acts and failures of Huntleigh that enabled the hijackers to pass through that checkpoint, board United Flight 175, and murder Mark Bavis. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 258 (2d Cir. 2009)("A principal is liable for the acts of an agent acting within the scope of the agency.")(*citing Meyer v. Holley*, 537 U.S. 280, 285 (2003)(Supreme Court explaining that it is well established that traditional vicarious liability rules make principals vicariously liable for acts of their agents in the scope of their authority) *and* Restatement (Second) of Agency §219); *Citibank, N.A. v. Nyland Ltd.*, 878 F.2d 620, 623-24 (2d Cir. 1989)("The established rule is that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority."); *De Ronde v. Gaytime Shops, Inc.*, 239 F.2d 735, 738 (2d Cir. 1956)("One corporation may act as agent for another, and if the agent, while acting within the scope of the agency, commits a tort, the principal will be held liable for it."). Hence, once Plaintiff proves at trial that Huntleigh committed tortious conduct by its acts at the Terminal C checkpoint at Logan Airport, then United will be held vicariously liable for those security screening breakdowns.

Because United is vicariously liable for Huntleigh's security screening failures at Logan, which enabled the hijackers to board United Flight 175 and kill Mark Bavis, once a jury finds

5

that Huntleigh is liable then this Court can provide relief to the *Bavis* Plaintiff by making United (as principal) pay damages.  And as that "effectual relief" of payment of damages by United is available to the *Bavis* Plaintiff when the jury finds against United's agent Huntleigh, thus the *Bavis* wrongful death claims against Huntleigh are *not* moot.  *In Re Kurtzman*, 194 F.3d at 58, *supra.*

Moreover, Huntleigh, United (and United's insurers) cannot claim to be surprised by this well-established agency rule that United as principal would be liable to pay damages if the jury found that its agent Huntleigh committed tortious conduct acting within the scope of the agency agreement to perform security screening services at Logan Airport for United on September 11, 2001.  Indeed, in its own motion to dismiss the *Bavis* "Remaining Claims" against it, Huntleigh describes at length the Confidential Settlement Agreement and proceedings before this Court to approve that Agreement.  Huntleigh Br. at 4-6, 9, 13, Dkt. 1329.  On page two of Exhibit A of *that* Confidential Settlement Agreement (as filed by Huntleigh in redacted form in support of its motion here), that precise principle of agency is set forth and acknowledged by Huntleigh and United (and United's insurers):

> WHEREAS, because it is contemplated that upon approval and consummation of the Property Damage Settlement the policy limits payable by Huntleigh's insurers on behalf of Huntleigh will be exhausted it has been agreed, assuming consummation of the Property Damage Settlement and payments by Huntleigh's Insurers exhausting Huntleigh's coverage limits, ***that United's Insurers will thereafter pay*** [redacted] ***of the amounts necessary to*** settle or ***discharge judgments rendered with respect to the Remaining Known Claims.***

Confidential Settlement Agreement, Exhibit A ("Allocation Agreement") at 2, filed at 21 MC 101 (AKH) Dkt No. 1330-2 (at p. 4 of 73)(emphasis added).  And while Huntleigh may be quick to reply that the "Remaining Known Claims" in *that* provision referred to certain property damage, business interruption loss and insurance subrogation claims, the same principle of

6

agency holds true and applies with equal force to the *Bavis* wrongful death claims—i.e., United's Insurers will pay amounts necessary to discharge judgments for Remaining Claims rendered *against Huntleigh* at trial because under well-established agency law United is liable to pay for damages caused by its agent Huntleigh's security screening failures on September 11, 2001. *Kiobel,* 621 F.3d at 258; *Meyer,* 537 U.S. at 285; Restatement (Second) of Agency § 219; *Citibank,* 878 F.2d at 623-24; *De Ronde,* 239 F.2d at 738, *supra.*

Indeed, Huntleigh's own brief, although it tellingly tries to obscure the point in a footnote, recognizes this agency principle—that United is liable to pay damages for Huntleigh's tortious conduct on September 11—applies with equal force to the Remaining *wrongful death* Claims. Huntleigh admits in a footnote that "[g]iven that exhaustion of Huntleigh's limits of liability insurance under the Settlement Agreement, **United will fund the Mariani** [wrongful death] ***settlement itself*** at such time as approval is obtained." Huntleigh Br. at 4 n. 2, Dkt. 1329 (emphasis added). As demonstrated above, the reason United is funding the *Mariani* settlement even after Huntleigh has exhausted its own liability insurance is because United is still liable as the principal to pay damages for Huntleigh's tortious conduct at the Terminal C checkpoint that enabled the hijackers to board United Flight 175. United is funding that wrongful death settlement itself because the law of agency *requires* United to pay for Huntleigh's tortious conduct on September 11, 2001; to be sure, United is not paying that wrongful death settlement out of the goodness of its corporate heart.

Moreover, the fact that United is funding the *Mariani* wrongful death settlement in accordance with agency law, even after Huntleigh's liability insurance has been exhausted, proves the point that some "effectual relief" is available in the *Bavis* wrongful death case: if and when the jury finds against Huntleigh, United (and its insurers) can pay to discharge that

7

judgment.  As that "effectual relief" is available, the *Bavis* case against Huntleigh is not moot.  *In Re Kurtzman*, 194 F.3d at 58, *supra*.  As such, Huntleigh's motion to dismiss fails.

Oddly, Huntleigh's brief leans heavily on an objection made by *WTCP's counsel* who argued that the Settlement Agreement would exhaust Huntleigh's liability "—effectively rendering a trial against Huntleigh moot."  Huntleigh Br. at 5, Dkt. 1329.  With all due respect, that statement by WTCP's counsel is wrong and has no effect on the *Bavis* case.  As Huntleigh itself recognizes, counsel for *Bavis* never joined that objection by WTCP.  *See* Declaration of Charles R. Eskridge III at ¶¶6, 7 ("Counsel in the *Bavis* Action voiced no objection"), Dkt. 1330.  More importantly, that statement about a trial against Huntleigh being "moot" is wrong under the Second Circuit precedent set forth above on mootness and agency.  Because "effectual relief" is available to Bavis by making United (as principal) pay a damages judgment against its agent Huntleigh for tortious security screening at Logan Airport that enabled the hijackers to board United Flight 175, the *Bavis* wrongful death claims against Huntleigh are *not* moot.  *In Re Kurtzman*, 194 F.3d at 58, *supra; Kiobel,* 621 F.3d at 258; *Meyer,* 537 U.S. at 285; Restatement (Second) of Agency § 219; *Citibank,* 878 F.2d at 623-24; *De Ronde,* 239 F.2d at 738, *supra*.

Hence, Huntleigh's sudden embrace of WTCP is no reason to dismiss Bavis's wrongful death case.

**2.      Trial of the *Bavis* wrongful death claims against Huntleigh will be practical and fair.**

All but conceding that the *Bavis* claims are not moot because the well-established agency principles set forth above provide "effectual relief" by requiring United to satisfy a judgment against its agent Huntleigh at trial, Huntleigh makes a vague back-up argument that the *Bavis* claims should be dismissed because a trial against Huntleigh would be "imprudent" and serve "no practical purpose."  Huntleigh Br. at 11-12, Dkt. # 1329.  Plaintiff respectfully disagrees.

8

First, Huntleigh's assertion that the *Bavis* wrongful death claims against Huntleigh do not present an Article III case and controversy is wrong. *Id.* at 11. The *Bavis* wrongful death claims "present an injury that is concrete, particularized, and actual…; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(explaining elements of standing as *the* "essential and unchanging part of the case-or-controversy requirement of Article III"). The injury alleged is concrete—Mark Bavis was murdered by the hijackers on United Flight 175; fairly traceable to Huntleigh's challenged behavior in allowing those armed and dangerous hijackers to pass through Huntleigh's security screening checkpoint at Logan Airport to board United Flight 175; and likely to be redressed by a favorable judgment against Huntleigh—as explained above, United as the principal would satisfy that judgment against Huntleigh for its tortious conduct in performing security screening at Logan Airport on September 11, 2001. *Kiobel,* 621 F.3d at 258; *Meyer,* 537 U.S. at 285; Restatement (Second) of Agency § 219; *Citibank,* 878 F.2d at 623-24; *De Ronde,* 239 F.2d at 738, *supra*.

As *Bavis* does present an Article III case and controversy, Huntleigh's vague "imprudence" argument is not enough to overcome this Court's "virtually unflagging obligation" to resolve cases or controversies within its jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "Judicial power is inseparably connected with the judicial duty to decide cases and controversies by determining the parties' legal rights and obligations." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1014 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006). Plaintiff Mary Bavis, individually and as personal representative of the Estate of her son Mark Bavis, has chosen to assert legal rights to try this case in this Court to hold Huntleigh responsible for its security screening failures that contributed

9

to her son's murder aboard Flight 175.  *See, e.g.*, *In Re September 11 Litigation*, 21 MC 101 (AKH), 2010 U.S. Dist. LEXIS 66905, * 35 (S.D.N.Y. July 1, 2010)(recognizing that under ATSSSA §405(c)(3)(B), victims have the choice to seek compensation from VCF *or* sue in the U.S. District Court for the Southern District of New York).  As such, this Court has both the authority and duty to allow Plaintiff to litigate its wrongful death claims against Huntleigh.

And the Court should allow the *Bavis* claims against Huntleigh to be resolved at trial not only for constitutional reasons, but also for practical reasons.  Basic fairness and avoidance of further delay (almost a decade later) would be served by having an impartial jury in June 2011—according to the trial schedule the Court has already set—hear and find the facts of Huntleigh's security-screening failures that enabled the hijackers to board United's Flight 175 and turn it into a weapon of mass destruction that caused massive death and destruction on September 11, 2001.  Determining those facts and accountability are eminently "practical purposes" for a trial by jury of the *Bavis* wrongful death claims against Huntleigh.  Especially as a judgment at trial against Huntleigh can easily and effectively be satisfied by its principal United under the agency rules explained above, Huntleigh's "no practical purpose" argument fails.[7]

Moreover, nothing in the plain text of ATSSSA §408(a)(1) prevents the Court from granting such relief to Bavis from United "because the limits of the liability insurance coverage maintained by that air carrier"—United—have not been reached.  ATSSSA §408(a)(1).  Indeed, as the claims-stripping interpretation of ATSSSA §408(a)(1) urged by Huntleigh would raise serious constitutional doubts by taking away Plaintiff's right to prove this case and resolve this controversy against Huntleigh through trial by jury, *see Marbury v. Madison*, 1 Cranch 137, 163

---

[7] Likewise, because the fact of the agency relationship between United and Huntleigh enables *Bavis* to recover money from United as a result of wrongful death claims against Huntleigh for security-screening failures on September 11, 2001, this case is distinguishable from *First Indiana Federal Sav. Bank. v. Federal Deposit Ins. Corp.*, 964 F.2d 503 (5th Cir. 1992)(cited by Huntleigh Br. at 12) where there was "no set of circumstances under which [plaintiff] First Indiana can recover any money or property as a result of those claims." *Id.* at 508.

(1803)("'[it] is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded'"(quoting 3 W. Blackstone, Commentaries *23), Huntleigh's statutory interpretation should be rejected under the canon of constitutional *avoidance*.  *See Clark v. Martinez*, 543 U.S. 371, 381-82 (2005)(explaining that "one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.")(emphasis in original).  As a plausible, *practical* interpretation of ATSSSA §408(a)(1) does not require the Court to dismiss Bavis's claims against Huntleigh in light of the facts and circumstances here whereby a judgment against Huntleigh at trial can be paid and satisfied by United, Huntleigh's interpretation of ATSSSA §408(a)(1)—mandating dismissal—fails.

**3.      The *Bavis* wrongful death claims against Huntleigh should not be stayed.**

As the Court will recall, at the recent October 20, 2010 hearing in this case, counsel for Huntleigh advised the Court that Huntleigh would bring this motion to stay the *Bavis* wrongful death claims against Huntleigh.  In response, the Court told Huntleigh's counsel:

> THE COURT:  You can make your motion to be excluded or not.
>
> > *I'm not staying anything in this case.*
> >
> > Bavis is going inexorably to trial….
> >
> > I'm not staying anything.
> >
> > You can ask me to, but you already know the answer.

Transcript at p. 14, lines 18-20, & p. 15, lines 2-3 (Oct. 20, 2010 hearing)(emphasis added), filed by Huntleigh at Dkt. 1330-9 (Ex. 7 to Decl. of Charles R. Eskridge III).  Despite the Court's

11

clear instruction on this point, Huntleigh now moves for "a stay in the *Bavis* Action, at least as to Huntleigh…." Huntleigh Br. at 15, Dkt. 1329. The Court should give Huntleigh the same answer as it did at the October 20, 2010 hearing, deny this motion for a stay, and let the *Bavis* claims against Huntleigh proceed to trial by jury as scheduled in June 2011.

Huntleigh's argument that "[e]fficiency and fairness favor a stay" is untenable. *Id.* at 14. Huntleigh does not and cannot show how it would be "efficient" to try this aviation security case against the other Aviation Defendants with the security-screening claims against Huntleigh being stripped and cut out from the heart of the case presented to the jury. Huntleigh does not and cannot show how it would be "fair" after nearly a decade since the September 11th aviation security breakdowns to *further* delay *Bavis* from trying its case to the jury to determine whether Huntleigh's security-screening failures enabled the hijackers to board United's Flight 175 and kill Mark Bavis. As so eloquently put by the Court, more than three years ago, in this wrongful death litigation:

> Time heals, but time also works against us. Elderly parents who brought actions on behalf of their deceased children will not live forever. Grieving widows and friends waiting for these proceedings to bring them closure may wait too long. And the public, in measures both large and small, share the families' concerns. Many would like to see Plaintiffs' assertions tested in a trial and either found or rejected in a jury verdict.

*In Re September 11 Litigation*, 21 MC 97 (AKH), 2007 U.S. Dist. 48864,**2-3 (S.D.N.Y. July 5, 2007). And that is all that Plaintiff Mary Bavis respectfully asks for now: let these claims against Huntleigh be tried in June 2011, and either be found or rejected in a jury verdict. As time does indeed work against us, there should be no stay of these wrongful death claims.

4.  **ICTS's motion to dismiss or stay the *Bavis* wrongful death claims against ICTS fails.**

In its "me too" motion, ICTS International, N.V. ("ICTS"), which admits that on September 11, 2001 it was the sole owner of ICTS USA, Inc., which in turn was the sole owner of Huntleigh, *see* Decl. of Jon Paul Robbins at ¶4, Dkt. 1332-1, says without further explanation or argument that the *Bavis* claims against ICTS should be dismissed or stayed because the "arguments made by Huntleigh in its motion papers apply equally to ICTS and ICTS hereby adopts those arguments with respect to this motion." *Id.* at ¶6. ICTS literally makes no further arguments—and did not even bother to file a supporting memorandum of law.

ICTS's motion fails for three reasons:

First, if and when the Court denies Huntleigh's motion for the reasons explained above, then ICTS's motion, which makes only the same arguments as Huntleigh (and nothing more), likewise must be denied.

Second, even if the Court grants Huntleigh's motion to dismiss, it does not logically follow that ICTS's motion to dismiss should be granted. Huntleigh's central argument reasons from the premise that because the Court in its July 1, 2010 Order found that "payment by Huntleigh's insurers has exhausted the limits of Huntleigh's liability coverage," *In Re September 11 Litigation*, 2010 U.S. Dist. LEXIS at * 59, that "therefore" the *Bavis* claims against Huntleigh should be dismissed. Huntleigh Br. at 8. But that premise does not apply to ICTS because the Court has never found that payment by *ICTS's* insurers have exhausted the limits of ICTS's liability coverage. So even if the Court accepts Huntleigh's fallacious "mootness" argument, that argument still does not compel dismissal of the *Bavis* claims *against ICTS*.[8]

---

[8] As explained in Section 1 above, Huntleigh's own "mootness" argument is fallacious because even though the Court found that Huntleigh exhausted its liability coverage, "effectual relief" is still available here because United as the principal of Huntleigh can be made to satisfy a judgment rendered against Huntleigh for its tortious security screening at Logan Airport on September 11, 2001—and United has *not* exhausted its liability insurance coverage.

13

Third, even if the Court grants Huntleigh's motion for a stay, fundamental fairness suggests that the Court should allow Plaintiff to press forward and present to the jury at the June 2011 trial its security-screening claims against Huntleigh's corporate parent ICTS. Without question, ICTS has failed to carry its own burden to show that there should be a stay of the *Bavis* claims against ICTS, especially in light of this Court's recent instruction that: "*I'm not staying anything in this case. Bavis is going inexorably to trial.*" Transcript at p. 14, lines 19-20 (Oct. 20, 2010 hearing)(emphasis added). As justice delayed is justice denied, there is no reason to stay the *Bavis* claims against ICTS on the eve of trial after nearly a decade of hard-fought litigation.

## CONCLUSION

For the above reasons, the motions to dismiss, or alternatively to stay, the *Bavis* wrongful death claims against Huntleigh and ICTS should be denied in all respects.

Dated: November 23, 2010
       Mount Pleasant, South Carolina

Respectfully submitted,

MOTLEY RICE LLC

By:   /s/Mary F. Schiavo
      Donald A. Migliori
      Mary F. Schiavo
      Vincent I. Parrett (VP-5092)
      28 Bridgeside Boulevard
      Post Office Box 1792
      Mount Pleasant, SC 29465
      Telephone:   (843) 216-9000
      Facsimile:    (843) 216-9450
      *Counsel for Bavis Plaintiff*