UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
                                                            :
                                                            :
IN RE SEPTEMBER 11 LITIGATION        :   NO.: 21MC101(AKH)
                                                            :
                                                            :
------------------------------------------------------------x

**REPLY BRIEF IN SUPPORT OF
MOTION OF HUNTLEIGH USA CORPORATION TO DISMISS
REMAINING CLAIMS AGAINST IT, OR IN THE ALTERNATIVE,
TO STAY ACTION DURING PENDENCY OF SETTLEMENT APPEAL**

Huntleigh USA Corporation submits this reply in support of its motion to dismiss as moot the remaining property damage and wrongful death claims against it, or in the alternative, to stay such Remaining Claims as to Huntleigh pending the resolution of the appeal challenging this Court's Settlement Approval Order applying the PD Settlement amounts against the limits on defendants' liability under the Air Transportation Safety and System Stabilization Act.[1] Separate briefs in opposition were filed by plaintiffs Mary Bavis, individually, and as personal representative of the Estate of Mark Bavis (collectively, "Bavis") and plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4 World Trade Center LLC, and 7 World Trade Center Company, L.P. (collectively, "WTCP").

## INTRODUCTION

Huntleigh's liability limits under ATSSSA have been exhausted by payments made to settle certain wrongful death, personal injury, and property damage claims arising from the terrorist attacks of September 11. *See* Mot. Dismiss, at 4-6; Declaration of Charles Eskridge, Docket No. 1330 ("Eskridge Decl."), Ex. 5, at 18. Because the Remaining Claims against

---

[1] Defined terms from Huntleigh's original moving papers will have the same meaning here.

1

Huntleigh only seek damages, and because Huntleigh cannot be required to pay any further damages, the Remaining Claims are moot as to Huntleigh. This mootness is both constitutional (*i.e.*, there is no case or controversy because the plaintiffs can no longer avail themselves of any relief as against Huntleigh) and prudential (*i.e.*, it would be imprudent, wasteful, and unfair to require Huntleigh to defend against claims if, by statute, no relief is available as against Huntleigh). Huntleigh's request for a stay, which is sought only if the Court denies the motion to dismiss, is premised on the common-sense notion that Huntleigh should not be forced to defend against moot claims unless and until the Second Circuit reverses this Court's finding that Huntleigh's liability limits have been exhausted.

In response, Bavis argues that the Remaining Claims against Huntleigh are not moot because defendant United Air Lines, Inc. ("United"), whose liability limit has not yet been exhausted, may be found vicariously liable for Huntleigh's allegedly tortious conduct. *See* Bavis Br., at 5-8. Bavis also suggests that trial against Huntleigh would not be imprudent because "[b]asic fairness and avoidance of further delay . . . would be served by having an impartial jury . . . hear and find the facts of Huntleigh's security-screening failures . . ." and that "[d]etermining those facts and accountability are eminently 'practical purposes' for a trial by jury of the *Bavis* wrongful death claims against Huntleigh." Bavis Br., at 10. These arguments miss the point entirely. The claims are moot <u>as to Huntleigh</u> because there is no relief that can be recovered <u>against Huntleigh</u>—a fact which Bavis does not challenge. New York law is crystal clear that Huntleigh is not a necessary party to any vicarious liability theory that Bavis might press against United. Forcing Huntleigh to prepare for and defend itself at a trial on the merits, when no relief can be awarded against Huntleigh, would be imprudent and wasteful both for the parties and this Court.

WTCP argues that Huntleigh should be forced to remain in the case because this Court has made no finding "that Huntleigh or ICTS has made liability payments for claims arising from the terrorist-related aircraft crashes of September 11, 2001 'in an amount' equal to 'the limits of liability insurance coverage maintained by' Huntleigh and ICTS on 9/11." WTCP Br., at 2. This is nothing more than an improper collateral attack on this Court's finding that the liability limits have been exhausted, and should be rejected. It is contrary to the facts of this case, and indeed, is contrary to WTCP's prior argument when opposing approval of the PD Settlement that Huntleigh "will have paid all its coverage and be entitled to a discharge of further liability." Eskridge Decl., Exhibit 5 (Order, at 17).

WTCP also contends that the Remaining Claims against Huntleigh are not moot because the Second Circuit might reverse this Court's Settlement Approval Order applying the PD Settlement payments against ATSSSA's liability limits. This argument completely ignores the key issue that requiring Huntleigh to prepare for and defend itself at trial is inefficient and unfair given the high likelihood that the Second Circuit will affirm this Court's ruling. While WTCP may prefer to keep Huntleigh in as a party, that preference cannot outweigh the unfairness to Huntleigh and the waste of judicial resources that will result from trying a case against Huntleigh in the absence of any available relief.

I. **Huntleigh Is Not A Necessary Party For Bavis To Press Its Vicarious Liability Theory Against United**

As explained in detail in Huntleigh's motion to dismiss, the Remaining Claims are moot as to Huntleigh because they seek only damages and, by statute, Huntleigh cannot be required to pay any further damages for any claims arising from the terrorist attacks of September 11. In its opposition, Bavis cannot and does not point to any scenario in which Huntleigh itself can be required to pay damages. Instead Bavis argues that the Remaining Claims are not moot as to

Huntleigh because United, whose liability limits have not been exhausted, may be found vicariously liable for Huntleigh's allegedly tortious acts. Such argument, of course, implicitly concedes that Bavis cannot be awarded any relief as against Huntleigh. More important, such argument is inapposite.

Bavis's argument is premised on the notion that Huntleigh is a necessary party to any action seeking to hold United vicariously liable for Huntleigh's actions. This is plainly incorrect under both New York and federal law, where it is well-established that an agent is not a necessary party to a lawsuit seeking to hold a principal vicariously liable for the agent's acts. *See Reit v. Post Props., Inc.*, No. 09 Civ. 5455, 2010 WL 743533, at *2 (S.D.N.Y. Feb. 24, 2010) (collecting cases); *Rose v. Simms*, No. 95 CIV. 1466, 1995 WL 702307, at *3-4 (S.D.N.Y. Nov. 29, 1995) (collecting cases); *Shapiro v. Good Samaritan Regional Hosp. Med. Center*, 865 N.Y.S.2d 680 (App. Div. 2008).[2] This black-letter rule reflects the fact that a vicarious liability claim against a principal is separate from any underlying claim against the agent, and that the plaintiff may obtain complete relief by suing the principal alone. *See, e.g., Royal Indus., Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 414-15 (S.D.N.Y. 1996) ("[I]f plaintiff establishes an agency relationship and ultimately prevails at trial, it can obtain complete relief whether or not [the agent] is a party defendant.").

Huntleigh's relationship to Bavis's vicarious liability theory against United is an evidentiary one at best. Nowhere does Bavis's opposition explain why Huntleigh should remain a party defendant in this case and prepare for and defend itself at trial merely to provide evidence

---

[2] *See also, e.g., Nottingham v. Gen. Am. Commns. Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) ("[I]t is well-established that Rule 19 does not require the joinder of joint tortfeasors. Nor does it require joinder of principal and agent."); *Milligan v. Anderson*, 522 F.2d 1202, 1207-08 (5th Cir. 1975); *Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp.*, 354 F. Supp. 2d 1338, 1344-45 (S.D. Fla. 2005); *Roberts v. Smith Barney, Inc.*, No. CIV. A. 97-2727, 1998 WL 1753646, at *1 (E.D. Pa. Feb. 11, 1998) ("[A]n injured party pursuing a theory of vicarious liability may sue either the principal or the agent as he elects."); *Hall v. Nat. Serv. Indus., Inc.*, 172 F.R.D. 157, 159 (E.D. Pa. 1997) ("It is well established that Rule 19 does not require the joinder of principal and agent.").

4

necessary to Bavis's vicarious liability theory against United. To the contrary, the law is clear that the mere fact that a party may be called upon to provide evidence at trial is not sufficient to make it a necessary party. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188-89 (2d Cir. 1999) (collecting cases); *Reit*, 2010 WL 743533, at *3; *Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326, 330 (D. Conn. 2009); *Stern*, 354 F. Supp. 2d at 1344 ("[Alleged agent's] participation as a party is not necessary for the[] factual issues [as to whether agent disclosed the alleged principal] to be resolved. [The alleged agent] may obtain this information through deposition or document discovery, or by trial testimony.").

Bavis has already taken dozens of depositions of current and former Huntleigh employees, and has collected tens of thousands of pages of documents from Huntleigh. If there is further discovery Bavis desires from Huntleigh, it can pursue it whether or not Huntleigh remains a party. Moreover, by act of Congress, Bavis has the power of nationwide service of process to compel testimony at trial. While Bavis suggests a scenario where Huntleigh is found liable at trial, and then United is <u>later</u> found vicariously liable for the damages attributed to Huntleigh, this is the least efficient and most contrived way for Bavis to proceed against United, essentially suggesting separate proceedings that Bavis professes a wish to avoid. Such contrivance ignores the far more obvious, prudent, and efficient approach of proceeding directly against United on its vicarious liability theory and using any evidence gathered in the ordinary course of discovery or elicited at trial. In short, nothing in Bavis's vicarious liability theory suggests efficiency or fairness in forcing Huntleigh to prepare for and defend itself at a trial that can never result in an award of any relief as against Huntleigh.

## II. Where No Relief Can Be Taken Against Huntleigh, Requiring Its Participation Would Be Imprudent And Wasteful

As explained in Huntleigh's motion to dismiss, courts routinely dismiss claims as moot on prudential grounds when there is "no practical purpose in requiring their adjudication on the merits." *First Indiana Federal Savings Bank v. Federal Deposit Ins. Corp.*, 964 F.2d 503, 507 (5th Cir. 1992); *see also Nasoordeen v. Federal Deposit Ins. Corp.*, No. CV 08-05631, 2010 WL 1135888, at **5-9 (C.D. Cal. Mar. 17, 2010) (collecting cases). These courts have found that there is "no practical purpose" where, as here, the plaintiff, even if victorious, could obtain no relief from the defendant. Moreover, these decisions recognize that taking claims to trial demands significant expenditure of time and money from the parties and the court, and that where "this expenditure of time and money will never result in [plaintiff's] obtaining the relief it seeks, a trial on the merits would be a completely hollow act." *First Indiana*, 964 F.2d at 508.

Bavis does not address these cases, and instead responds that "[b]asic fairness and avoidance of further delay . . . would be served by having an impartial jury . . . hear and find the facts of Huntleigh's security-screening failures . . ." and thus, that "[d]etermining those facts and accountability are eminently 'practical purposes' for a trial by jury of the *Bavis* wrongful death claims against Huntleigh." Bavis Br., at 10. These vague assertions miss the point of prudential mootness, and again confuse the necessity for proof from Huntleigh as a witness with a necessity to keep Huntleigh in this case as a party. If the only "practical purpose" that Bavis can identify for keeping Huntleigh in this case is to have a jury hear and find facts about Huntleigh's alleged "security-screening failures," this can be done in the course of trying Bavis's vicarious liability theory against United. Evidence may still be gathered from Huntleigh, and indeed, copious evidence has already been gathered through years of discovery; Huntleigh's actions may be scrutinized in open court, where Huntleigh witnesses may still be called to testify; and if Bavis

6

can prove that United is vicariously liable, Bavis may still collect damages from United. But it would be imprudent and wasteful to require Huntleigh to spend hundreds of thousands of dollars preparing for and defending itself at trial, and likewise would be a waste of judicial resources for this Court to oversee that trial, when in the end no relief can be taken against Huntleigh.

### III.  Huntleigh Has Established, And This Court Has Already Found, That Applicable Insurance Limits Established By ATSSSA Have Been Exhausted

WTCP suggests that this Court has made no finding "that Huntleigh or ICTS has made liability payments for claims arising from the terrorist-related aircraft crashes of September 11, 2001 'in an amount' equal to 'the limits of liability insurance coverage maintained by' Huntleigh and ICTS on 9/11," and argues that ATSSSA limitations of liability therefore do not apply. WTCP Br., at 2 (quoting ATSSSA). Of course, this flies in the face of WTCP's prior argument when opposing the PD Settlement as to Huntleigh on the grounds that Huntleigh "will have paid all its coverage and be entitled to a discharge of further liability." Eskridge Decl., Exhibit 5 (Order, at 17).

The argument is nonsense in any event. When approving the PD Settlement, this Court clearly stated, "I order all amounts paid pursuant to the settlement agreement to be credited against the settling defendants' respective liability ceilings under § 408(a)(1) of the ATSSSA." *Id.* (Order, at 18). Similar statements have appeared in each of the wrongful death and personal injury statements this Court has previously approved. Such statements directly refute WTCP's collateral attack with respect to whether and how Huntleigh's settlement payments should be counted against ATSSSA limits. While WTCP goes on to argue that Huntleigh has not shown to whom insurance payments have been made or for what purpose, and suggests such insurance may have been frittered away on fees and expenses, WTCP Br., at 2-3, this is contrary to the facts. The Ross Declaration attached a copy of the applicable insurance policy indicating that

7

Huntleigh's liability limits were $150 million, and that the payments made in settlement to 9/11 victims or representatives totaled the same $150 million. *See* Eskridge Decl., Exhibit 2 (Ross Decl., at ¶¶ 3-5).

Even if the foregoing were somehow in doubt, WTCP's argument in no way disturbs the mootness analysis. ATSSSA plainly states that "liability for all claims ... arising from the terrorist-related aircraft crashes of September 11, 2001 ... shall not be in an amount greater than the limits of liability insurance coverage maintained ...." ATSSSA § 408(a)(1). WTCP does not dispute that this Court has found Huntleigh's liability insurance limits to have been exhausted due to various settlement payments during the course of this litigation. *See* Eskridge Decl., Exhibit 5 (Order, at 18). Whether or not WTCP's curious argument that these payments were somehow not made for liability "arising from" the events of 9/11, ATSSSA states that Huntleigh's liability cannot exceed those limits. With that liability policy exhausted, there is no further source of recovery. Thus, further action against Huntleigh is moot.

IV.  **Alternatively, Further Action Against Huntleigh Should Be Stayed During Pendency Of WTCP's Appeal.**

As Huntleigh predicted, WTCP argues that mootness does not pertain where appeal to the Second Circuit might potentially reverse this Court's Settlement Approval Order and return escrowed funds to Huntleigh. WTCP Br., at 3-4. Left utterly unaddressed by WTCP are considerations of fairness to Huntleigh, which Huntleigh submits counsels in favor of a stay as to it in these circumstances rather than forcing it to the expense and uncertainty of preparation for and defense at trial when the limits of its liability have been paid. Alternatively, this Court could dismiss Huntleigh now, without prejudice to its being brought back in on the slim chance that the Second Circuit reverses the Settlement Approval Order.

WTCP suggests that Huntleigh witnesses will be called at trial, and so "Huntleigh will be a participant in any event." WTCP Br., at 5. The Bavis family makes a similar, though less specific, argument. Bavis Br., at 12. Yet most of those witnesses (former screeners) are no longer Huntleigh employees. Even as to witnesses still at Huntleigh, the cost of providing a witness at trial pales in comparison to the fees and expenses attendant on Huntleigh as a party—and yet to be incurred—with respect to the conclusion of liability discovery, expert discovery, summary judgment and other motion practice, pretrial preparations, and trial. WTCP suggests that "judicial resources, as well as the resources of the injured plaintiffs, will have been unnecessarily wasted if Huntleigh is allowed to sit on the sidelines now and has to be prosecuted separately." WTCP Br., at 5. The far more likely result, however, is that the Second Circuit will uphold this Court's Settlement Approval Order, in which case the many hundreds of thousands of dollars to be spent in further defense of Huntleigh can in no way be recouped.[3]

Indeed, in opposing a stay, both WTCP and Bavis ignore the fact that the most likely outcome on appeal is affirmance by the Second Circuit. If affirmed, it is clear that neither WTCP nor Bavis have in any way undermined Huntleigh's showing of mootness due to its payment of liability limits established by ATSSSA. As such, this Court should either stay further action against Huntleigh, or else dismiss it without prejudice without prejudice to its being brought back in if the Second Circuit reverses.

---

[3] WTCP suggests that Huntleigh and ICTS "expressly contemplated" that they might be forced to defend claims at trial during the pendency of appeal. Yet the list quoted from the Settlement Agreement included only "the WTCP Actions, the Cantor Action, and the CERCLA Action and to defend against any New Claims that are filed." WTCP Response, at 4. None of those encompass the Bavis claim, and indeed it was simply not fathomed that Huntleigh might be forced to trial on that claim, particularly where Huntleigh in the Settlement Agreement expressly sought a finding of exhaustion, and stated it would be seeking dismissal on that basis. See Eskridge Decl., Exhibit 1 (Settlement Agreement, at ¶¶ 6(b), 14).

## CONCLUSION

For the foregoing reasons, Huntleigh respectfully requests that the Court dismiss plaintiffs' Remaining Claims against Huntleigh, or in the alternative, to stay the proceedings in the remaining causes of action as to Huntleigh pending resolution of WTCP's appeal.

Respectfully submitted,

COUNSEL FOR DEFENDANT
HUNTLEIGH USA CORPORATION


BY: /s/ Jonathan J. Ross
H. Lee Godfrey (HG1204)
Charles R. Eskridge III
Jonathan J. Ross (JR5100)

**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
lgodfrey@susmangodfrey.com
ceskridge@susmangodfrey.com
jross@susmangodfrey.com