UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                           :

IN RE SEPTEMBER 11 LITIGATION

                           :

---------------------------------------------------------x

| | |
|---|---|
| : | NO.:  21 MC 101 (AKH) |
| : | |
| : | This document relates to: |
| : | *Bavis v. United Airlines, Inc., et al.* |
| : | 02 Civ. 7154 (AKH) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR AN ORDER:

**(1) DIRECTING PLAINTIFF TO FULLY COMPLY WITH THE COURT'S PRIOR DIRECTIVES AND TO PROVIDE CLEAR, CONCISE CLAIM INFORMATION;**

**(2) ESTABLISHING AN EXPEDITED BRIEFING SCHEDULE FOR THE STANDARD OF CARE AND COLLATERAL ESTOPPEL ISSUES; OR ALTERNATIVELY,**

**(3) GRANTING RECONSIDERATION OF DEFENDANTS UNITED AIR LINES, INC., UAL CORPORATION, AND HUNTLEIGH USA CORPORATION'S PRIOR REQUEST FOR A DAMAGES-ONLY TRIAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

I.   THE COURT SHOULD DIRECT PLAINTIFF TO SUBMIT A FACTUAL  NARRATIVE AND TRIAL WITNESS LIST THAT COMPLY WITH THE COURT'S DIRECTIVES AND SIMULTANEOUSLY REQUIRE PLAINTIFF TO SUBMIT CLEAR, CONCISE LIABILITY CLAIM INFORMATION. ...................................................................... 2

Plaintiff's "Statement of the Court" and "May Call Witness List" Do Not Comply With the Court's Directives. ........................................................................................ 3

Need for Clear and Concise Liability Claim Information. ........................................ 8

II.   AN EXPEDITED MOTION SCHEDULE TO RESOLVE THE STANDARD OF CARE AND COLLATERAL ESTOPPEL ISSUES WILL STREAMLINE THE LIABILITY ISSUES, ALLOW THE PARTIES TO EXPEDITOUSLY PREPARE THEIR CLAIMS AND DEFENSES AND ENABLE THE COURT TO BRING THIS LITIGATION TO A FAIR AND EFFICIENT RESOLUTION. .......................................................... 10

Standard of Care ........................................................................................ 10

Collateral Estoppel ...................................................................................... 12

III.   PLAINTIFF'S PRE-TRIAL PROPOSALS DEMONSTRATE THAT THE AMOUNT OF TIME THAT WOULD BE EXPENDED TO CONDUCT A FAIR TRIAL WILL SO FAR OUTWEIGH THE AMOUNT OF TIME TO DECIDE A FEW EVIDENTIARY RULINGS RELATED TO A QUESTIONABLE DAMAGE CLAIM THAT THE BASIS FOR THIS COURT'S PRIOR DENIAL OF A DAMAGES-ONLY TRIAL IS NO LONGER APPLICABLE. .................................................................................. 14

CONCLUSION ........................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Am. Airlines, Inc* ., 181 F.3d 363, 367 (3d Cir. 1999) ................................................ 12

*Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) ................................ 12

*Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1443-44 (10th Cir. 1993) ............................ 12

*Gage v. City of Westfield*, 26 Mass. App. Ct. 681, 696, 532 N.E.2d 62 (1988) ........................... 16

*Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005) ........................ 12

*McIntyre v. United States*, 447 F. Supp. 2d 54, 117 (D. Mass. 2006) ........................................... 16

*Montalvo v. Spirit Airlines*, 508 F. 3d 464, 471 ( 9th Cir. 2007) .................................................. 12

*US Airways, Inc. v. O'Donnell*, --- F.3d ----, 2010 WL 4909976 (10th Cir. Dec. 3, 2010) .......... 12

**Statutes**

FED. R. EVID. 803(8)(C) .......................................................................................................... 5

**PRELIMINARY STATEMENT**

Defendants United Airlines, Inc.; United Continental Holdings, Inc., (f/k/a UAL Corporation; Huntleigh USA Corporation; ICTS International, N.V.; Globe Aviation Services Corporation;[1] and The Massachusetts Port Authority (hereinafter "Defendants") submit this memorandum of law in support of their motion requesting this Court to (1) direct Plaintiff to comply with the Court's pre-trial directives concerning a proposed Factual Narrative and a list of actual trial witnesses, and to simultaneously provide a clear, concise statement setting forth the basic details of her liability claims against Defendants; and (2) establish an expedited briefing schedule for renewed standard of care and collateral estoppel motions; or alternatively, (3) reconsider United Air Lines, Inc., Continental Holdings, Inc. (f/ka/ UAL Corporation) (hereinafter "United") and Huntleigh USA Corporation's (hereinafter "Huntleigh") prior motion to not contest liability.

Defendants file this motion now rather than waiting until the deadline of December 30, 2010, the date originally set by the Court for submitting any disputed Factual Narrative and Witness List to the Court, simply because Plaintiff's pre-trial submissions and new claims raised in opposition to Globe Aviation Services Corporation's (hereinafter "Globe") pending motion to dismiss this action raise significant issues that need to be brought to the Court's attention as soon as possible, or all hope of complying with the Court's trial schedule may well be lost. While United and Huntleigh also believe that the factors on which the Court previously based its denial of a damages-only trial are no longer applicable and that reconsideration of that issue is also warranted, Defendants are continuing to work on their version of what they believe would be an

---

[1] Globe Aviation Services Corporation filed a dispositive motion with the Court and anticipates being dismissed. Its Motion to Enforce Litigation Agreement And For Dismissal is fully briefed. Globe joins this motion to preserve its rights in respect to the court-ordered submissions and form of the trial in the event that it is not dismissed.

appropriate Factual Narrative and Witness List and will be providing those to Plaintiff on December 10, 2010 in accordance with the Court's schedule.   What is clear, however, is that Plaintiff must fully comply with the Court's directives before those documents can be finalized. As it stands, Plaintiff's approach will make it impossible for the parties to follow the Court's schedule and bring this litigation to a fair and efficient resolution.

I.

**THE COURT SHOULD DIRECT PLAINTIFF TO SUBMIT A FACTUAL NARRATIVE AND TRIAL WITNESS LIST THAT COMPLY WITH THE COURT'S DIRECTIVES AND SIMULTANEOUSLY REQUIRE PLAINTIFF TO SUBMIT CLEAR, CONCISE LIABILITY CLAIM INFORMATION.**

Plaintiff's first steps on the road to trial indicate that the route she and her attorneys have chosen is already far off the path that the Court clearly mapped out only a few weeks ago. Plaintiff's first pre-trial submissions disregard the Court's directives and wholly ignore a few simple disclosures that United specifically noted to be critical to Defendants' ability to complete discovery and adequately prepare for trial and/or some other substantive resolution.   Without compliant disclosures that actually make some effort to streamline Plaintiff's claims and identify the essential claims and witnesses that will be presented at trial, it is impossible for Defendants to be able to realistically streamline their own response or narrow their own choice of witnesses and defenses.   Indeed, as will be explained further herein, it is equally impossible to prepare for and complete the depositions of the extraordinary number of witnesses identified by Plaintiff's attorneys that will need to be scheduled to take place during the month of January; especially if Defendants wait until December 30, 2010, to bring these issues to the Court's attention.   It is respectfully submitted that by reviewing these issues now, the Court may still be able to achieve the focused and expedited trial that its schedule and prior directives envision.

**Plaintiff's "Statement of the Court" and "May Call Witness List" Do Not Comply With the Court's Directives.**

As the Court is well aware, it scheduled the Status Conference held on October 20, 2010, (hereinafter "October 20th Conference") to specifically advise the parties precisely what it wanted included in the Factual Narrative and Witness List. It directed the parties to create a neutral factual narrative "to inform the jury of the events of September 11, 2001." [2] The Court emphasized that the narrative should be acceptable to both sides, set forth facts, and identify the sources of each factual assertion. (Exhibit "A" to the Ellis Declaration, October 20, 2010 Tr. at 12).

Plaintiff's "Statement *of the Court*" is in no way a neutral statement that any defendant could ever agree to be read to a jury, nor is it limited to a factual recitation of the events of September 11, 2001.[3] Quite simply, it is not the narrative that the Court specifically ordered the parties to prepare. Instead, that submission is filled with discussions of law, and replete with assertions of fact that are not September 11 events at all. Those assertions include information as to why the family chose to pursue this lawsuit rather than make a claim against the Victim Compensation Fund, FAA tests of other checkpoints in the years preceding 9/11, as well as numerous argumentative, rhetorical statements regarding the Plaintiff's allegations. (*See* Exhibit "B" to the Ellis Declaration).

At the October 20th Conference, the Court repeatedly emphasized that the parties' proposed narratives should be very short. Your Honor stated that "I think the narratives can be explained in few words . . . I think we need a short history . . ." In response to questions from an

---

[2] Transcript of the October 20, 2010, Status Conference before this Court, (hereinafter "October 20, 2010 Tr.") at p. 11. A copy of said Transcript is annexed as Exhibit "A" to the Declaration of Jeffrey J. Ellis.

[3] A copy of Plaintiff's "Statement of the Court Concerning Mark Bavis and United Airlines Flight 175" is annexed as Exhibit "B" to the Declaration of Jeffrey J. Ellis.

attorney for Plaintiff about length, the Court said, " . . . two pages from each side" so that reading it aloud to the jury would take "five or ten minutes . . . the less the better." (Exhibit "A" to the Ellis Declaration, October 20, 2010 Tr. at 35). That attorney responded by assuring the Court, "I'm all for that, your Honor. I agree." (*Id.*).

Despite those assurances, Plaintiff's proposed narrative is not two pages long, but rather, twelve pages of single-spaced text. We estimate that it would take thirty minutes or more just to read Plaintiff's portion of the proposed narrative to the jury, not the five or ten minutes suggested by the Court for the entire statement to be read. The obvious reason why Plaintiff's proposal is so excessively long is that it is not limited to a factual recital of the events of September 11, but instead is filled with lengthy and argumentative discussions of the law and of other events.

Plaintiff's proposed narrative is clearly not suitable for the use intended by the Court. The obvious purpose of the Court's directions limiting the parties' proposed narratives in content and in length was (1) to increase the likelihood that the parties could ultimately agree on the narrative before the end of the year (or at least present some discrete and limited disagreements to the Court to resolve by then); and (2) to create a narrative that would be neutral and non-argumentative that could be read to the jury in just a few minutes in lieu of lengthier expert or other witness testimony of what happened on September 11, 2001.

Plaintiff's lengthy and argumentative proposed "Statement *of the Court*" makes it virtually impossible for Defendants to respond constructively to it and for the parties to reach an agreed narrative by the Court's deadline. Plaintiff's submission includes "facts" and interpretations of the law that Plaintiff knows full well are contested and based on evidence whose relevance and admission will be opposed (*e.g.*, newspaper stories, alleged FAA "fines"

that are actually just allegations of purported violations related to different airports and checkpoints, and wholly dissimilar aspects of the overall aviation security system).

What Plaintiff's Narrative does not contain is even one shred of the information that we previously advised the Court and Plaintiff was needed to allow us to fairly and adequately complete discovery and plan for trial, *i.e.*, specific information about how the United/Huntleigh checkpoint failed to implement the security measures that the law required to be in place that day.[4]  Instead, Plaintiff's attorneys pick and choose from snippets of statements included in reports prepared by the 9/11 Commission Staff even though they previously argued that no such information should be admissible.[5]  In so doing, they virtually ignore the actual 9/11 Commission Report itself and the specific portion of same that states that the terrorists were instructed to use "undetectable" weapons when going through the checkpoint.[6]

Plaintiff's attorneys certainly knew when they sent their "Statement *of the Court*" to Defendants that the Defendants could not possibly agree to their argumentative and one-sided proposal. They similarly understood that their extraordinarily long, but non-informative "MAY" Call Witness List – comprising some two hundred and twelve individuals – would be of no practical help to the Defendants and be an obstacle to both their complying with the Court's pre-trial directives and the overall objective of conducting a fair trial.[7]

---

[4] *See* United's November 2, 2010 correspondence to the Court and Plaintiff, annexed as Exhibit "C" to the Declaration of Jeffrey J. Ellis.
[5] *See* Joint Plaintiffs' Opposition to the admissibility of the 9/11 Commission Report, (Document 489, filed June 17. 2008), at p.1 "As an initial matter, both the Staff Monograph and the Staff Statements are interim reports of the 9/11 Commission staff not the 9/11 Commission itself. As such, they are prima facie inadmissible under FED. R. EVID. 803(8)(C), annexed as Exhibit "D" to the Declaration of Jeffrey J. Ellis.
[6] Final Report of National Commission on Terrorist Attacks, p. 84, Chapter 3, fn. 58, terrorists "were instructed to use items that would be undetectable by airport checkpoints," annexed as Exhibit "E" to the Declaration of Jeffrey J. Ellis.
[7] A copy of Plaintiff's May Call Fact Witness List is annexed as Exhibit "F" to the Declaration of Jeffrey J. Ellis.

Plaintiff's "MAY" Call Fact Witness List does not even come close to complying with the Court's specific directions on what to submit and certainly does not enable Defendants to either prepare for depositions of the numerous additional named witnesses or to determine by December 10, 2010 what other witnesses may be needed to respond to Plaintiff's still unspecified claims. At the October 20, 2010 Conference, the Court ordered the parties to "submit to each other lists of individuals not yet deposed whom the parties intend to call as witnesses." (Exhibit "A" to the Ellis Declaration, October 20, 2010 Tr. at 15). The parties were expressly directed ". . . to be disciplined . . . listing 200 individuals is not going to be helpful . . . Put down just the people you really intend to call." (*Id.* at 15-16). The Court also warned that "if there are lots of witnesses to be deposed, it's going to be practically impossible to hold [the June 2011 trial] date." (*Id.* at 16).

Plaintiff's submission names two hundred and twelve witnesses, one hundred and sixty one of whom have been deposed and fifty one more who have not yet been deposed. It also notes the need for other government witnesses that will be subsequently identified. There is no indication which of those witnesses Plaintiff "really intends" to call at trial (live or by deposition). Plaintiff's submission also disregards the Court's directive that "the list also shall identify the business addresses and identifications of all prospective witnesses . . ." (Exhibit "A" to the Ellis Declaration, October 20, 2010 Tr. at 15). Moreover and most importantly, Plaintiff's attorneys have completely disregarded the Court's very specific directive that "the list shall [provide] . . . descriptions of all expected testimony." (*Id.*). Not a single word of description is provided for any of the two hundred and twelve witnesses identified. This obviously is not the kind of witness list that the Court ordered be submitted.

The clear purpose of the Court's directions limiting Plaintiff's witness list to witnesses Plaintiff "really intends" to call, requiring Plaintiff to provide the undeposed witnesses' business addresses and identifications, and mandating disclosure of expected testimony was to enable Defendants to:  (1) decide what witnesses they will need to call; (2) make an informed decision whether to depose each undeposed witness; and (3) subpoena the witnesses and knowledgeably prepare for each such deposition.  None of this can be accomplished if Plaintiff's current proposals are allowed to stand.  Indeed, when it is considered that each of the remaining Defendants will have additional witnesses to identify, that there are a number of outstanding government discovery requests,[8] and that the government has repeatedly stated that it cannot "double track" depositions, it becomes readily apparent that it would be a virtual impossibility to prepare for and complete all depositions by the end of January.

While Defendants will continue to do their best to prepare the submissions that the Court directed, it is respectfully submitted that the best way for the Court to achieve a fair and expedited trial is to compel Plaintiff to submit a Factual Narrative and Trial Witness List that actually complies with the Court's prior directives and to simultaneously require Plaintiff to specifically inform Defendants exactly how they claim that the United/Huntleigh checkpoint failed to comply with what the applicable law required and how that alleged failure was a proximate cause of the fatal crash of United Flight 175.

---

[8] United has pending *Touhy* requests for current and/or former government employees and if Plaintiff's claims are not narrowed and probable motions to bar some of Plaintiff's planned depositions and trial testimony of several deposed witnesses are not granted, Defendants may also need to depose additional government witnesses to address the obviously overbroad nature of the claims asserted to date.

**Need for Clear and Concise Liability Claim Information.**

If Plaintiff's attorneys continue to ignore the Court's directives and refuse to provide Defendants with concise and specific claim information, it will not only make compliance with the Court's existing schedule a practical impossibility but it will essentially deny Defendants the right to fairly and adequately defend themselves at trial. How can Defendants identify witnesses or ask the government to approve the release of specific documents or additional testimony if we don't know the specifics of Plaintiff's claim? How can Defendants possibly comply with any deadline to identify the evidence and witnesses that we need to defend ourselves against claims that are not identified?

While Plaintiff's attorneys' mantra has long been that Defendants know what they are claiming, the speciousness of that statement is clearly established by simply contrasting what is stated in their Factual Narrative and Witness List with what was subsequently stated in their opposition to Globe's motion to dismiss. No one who reads the Plaintiff's Factual Narrative would ever know or guess that Plaintiff is claiming that Globe should be held responsible for the terrorist takeover of United's Flight 175 on September 11, 2001, because some screeners allegedly failed to take some unspecified action with respect to someone who looked like Mohammed Atta carrying a video camera near a checkpoint in the American terminal in May 2001. This highly speculative claim as to the cause of the Flight 175 takeover was not alleged in the *Bavis* Complaint nor has it ever been revealed through the course of discovery or at any other time during the last nine years of litigation.[9] If this is representative of the type of claims that Plaintiff will actually make at trial, how can Plaintiff's proposed Factual Narrative ever be

---

[9] As Globe explained in its Reply Memorandum of Law in Support of its Motion to Dismiss, 21 MC 101 (AKH) Doc. No. 1349, filed on December 3, 2010 at pgs. 8-11, if that kind of new claim is permitted to stand it will require Defendants to revisit broad areas of discovery related to, among other things, pre-September 11 intelligence. A copy of the relevant pages of said Memorandum are annexed as Exhibit "G" to the Declaration of Jeffrey J. Ellis.

portrayed as a fair and neutral introduction to what Plaintiff is now claiming? All the verbiage and witnesses listed in the Factual Narrative and Witness List hide the real claim, not enlighten it. Plaintiff's approach of hiding their specific claims until the last minute and conducting a trial-by-ambush makes the task of trial preparation impossible and prejudices Defendants under a severe time deadline to respond to claims that they can only speculate about.

At a minimum, Plaintiff should be directed to immediately disclose the basic claim information that Defendants have repeatedly requested, *i.e.* (1) what weapons are claimed to have been allegedly brought through the checkpoints; (2) which terrorists or other persons allegedly brought them through; (3) whether they were carried on their person and through the magnetometer or in carry-on bags; (4) the basis for claiming that they should have been detected; and, (5) most importantly, the evidence that they will rely on to establish these claims.[10] This information is absolutely necessary to allow Defendants to identify relevant witnesses and documents and to enable them to request that the government produce relevant information which is in its possession.

If the Court directs Plaintiff and her attorneys to comply with its directives and simultaneously provide the liability claim information identified herein, the parties, the government, and the Court will be much better able to narrow the disputed issues, make necessary SSI and national security decisions, and keep this Court's vision of a focused and expedited trial a viable reality.

---

[10] For a brief history of Defendants' ongoing struggle to obtain basic liability claim information from Plaintiff, *see* United's November 2, 2010 correspondence, annexed as Exhibit "B" to Declaration of Jeffrey J. Ellis.

## II.

## AN EXPEDITED MOTION SCHEDULE TO RESOLVE THE STANDARD OF CARE AND COLLATERAL ESTOPPEL ISSUES WILL STREAMLINE THE LIABILITY ISSUES, ALLOW THE PARTIES TO EXPEDITOUSLY PREPARE THEIR CLAIMS AND DEFENSES AND ENABLE THE COURT TO BRING THIS LITIGATION TO A FAIR AND EFFICIENT RESOLUTION.

In addition to requiring Plaintiff to file pre-trial submissions that comply with its prior directives and to simultaneously provide clear and concise claim information, the Court should also establish an expedited briefing schedule for resolving the applicable standard of care issue and collateral estoppel issues. Several years ago, the Court invited briefing of the standard of care issue but then held that a determination at that time would be premature.[11] The Court more recently indicated that a ruling as to whether the outcome of the *Bavis* action would bind any of the other claimants was also needed if those parties did not agree that collateral estoppel was not applicable. It is respectfully submitted that both of these issues do need to be resolved by the Court, and that rulings at this time would best serve the interests of justice and make the Court's timetable far more realistic to achieve.

### Standard of Care

A ruling on the standard of care issue at this time would not be premature. In fact, it is probably the single most important factor influencing whether the trial that the Court envisions can proceed in a timely and just manner. It is important to consider that rather than provide the details needed to decipher what Plaintiff is actually claiming that Defendants did wrong,

---

[11] The issue was raised in the initial duty briefs submitted by the Aviation Defendants and the subject of separate motions upon which this Court deferred ruling. "Defendants' moved for a determination of applicable law concerning the Standard of Care against which their conduct is to be measured in these consolidated cases…The motion is DENIED, without prejudice. The Court will determine the applicable standard of care in the context of a motion seeking actual and specific relief, or in the context of a jury instruction, but not in the abstract." *See* copy of the Summary Order of this Court dated June 22, 2007, annexed as Exhibit "H" to the Declaration of Jeffrey J. Ellis.

Plaintiff's attorneys instead choose to repeatedly state that Defendants were required to do "more" security than what they refer to as federal "minimums." Plaintiff, however, fails to identify what any of these additional security measures actually should have been. Whether this reflects the absence of the actual proof necessary to establish a breach of the federal security system remains to be seen. Irrespective, however, of what motivates this claim, what must be resolved is whether the alleged "failure to do more" can be a basis for establishing liability in this litigation. That question and all the discovery and testimony that will arise out of same turn upon the law that is ultimately held to govern the standards for determining liability.

Defendants have long submitted that federal security rules and regulations preempt any state law requirements and preclude Plaintiff's attorneys from arguing that an alleged failure to implement additional security measures can be used as a basis for establishing liability. If the Court were to agree with this position, further discovery and testimony by experts and fact witnesses about alleged additional security measures would be wholly unnecessary and the pretrial and trial process would be vastly simplified. If, however, the Court was to hold that some other law should be used to govern the applicable standard of conduct, then the parties need to know what that law is in order to identify the witnesses, documents, experts and legal memoranda necessary to adequately prepare for trial and comply with the Court's expedited pretrial schedule relative to same.

Simply stating that Defendants could have done "more" security does not establish or imply that Defendants can be held liable if they failed to do so. That determination can only be made by reference to the law governing the overall liability standard. Depending on what that law states, a particular claim may either be dismissed as a matter of law or allowed to go to the

jury for final determination.  Only those claims that fall into the latter category will require the parties to submit evidence and relevant testimony by fact and/or expert witnesses.

Since the standard of care issue was already extensively briefed, the parties can prepare additional filings on an expedited basis so that the Court would be in a position to rule as quickly as possible.  Indeed, that issue is particularly ripe for resolution at this time because this past Friday, the Tenth Circuit reversed the primary case to which Joint Plaintiffs in 21 MC 101, previously cited when they initially opposed Defendants' argument that aviation safety generally, and aviation security in particular, are required to be regulated uniformly on the federal, not state, level.[12]   That decision along with another interim ruling of the Second Circuit[13] recognizing federal preemption in this area clearly establish that Plaintiff's prior reliance on decades old Tenth and Second Circuit case law will no longer be appropriate.  For the reasons stated herein, Defendants request that the Court establish an expedited schedule to resolve this issue.

## Collateral Estoppel

In addition to an early ruling on the standard of care issue, this Court should also direct an expedited briefing and determination of the collateral estoppel issue as well.  As was discussed briefly at the October 20, 2010 Status Conference, United strongly believes that the principles of fairness and judicial economy dictate that collateral estoppel should not be applied

---

[12] *See  US Airways, Inc.  v. O'Donnell*, --- F.3d ----, 2010 WL 4909976 (10th Cir. Dec. 3, 2010) which rejects the reasoning relied on in *Cleveland v. Piper Aircraft Corp*., 985 F.2d 1438, 1443-44 (10th Cir. 1993); *cf.* Joint Plaintiffs' Memorandum in Opposition to Defendants' Standard of Care Motion, dated May 25, 2007, pgs. 20-24 relying primarily on *Cleveland* for their anti-preemption position.  A copy of relevant pages of said Memorandum are annexed as Exhibit "I" to the Declaration of Jeffrey J. Ellis.

[13] *See, Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008), cited favorably in *US Airways, supra*, *6, *7; *cf.* US Airways' citation to decisions of the other Circuits reaching a similar conclusion regarding federal preemption of the field of aviation safety: *Abdullah v. Am. Airlines, Inc* ., 181 F.3d 363, 367 (3d Cir. 1999); *Greene v. B.F. Goodrich Avionics Sys., Inc*., 409 F.3d 784, 795 (6th Cir. 2005) and *Montalvo v. Spirit Airlines*, 508 F. 3d 464, 471 (9th Cir. 2007).

to the determinations arising out of a *Bavis* trial. Although this Court predicted that counsel for Plaintiffs remaining in the 21 MC 101 Master Calendar "don't want any collateral estoppel effect" (Exhibit "A" to Ellis Declaration, October 20, 2010 Tr. at 18), that prediction has unfortunately not come to fruition. Pursuant to the Court's suggestion, United has reached out to counsel for World Trade Center Properties, LLC (hereinafter "WTCP") to see whether the parties could agree to stipulate that no such collateral effect would be given or asserted based on the determinations arising out of a *Bavis* trial. To date, however, counsel for WTCP has not agreed to such a stipulation.

Deciding now whether collateral estoppel will apply to the determinations arising out of a *Bavis* trial will allow United and the other *Bavis* Defendants to focus their efforts on timely completion of all pre-trial preparations and trial defenses and not cause them to also factor in whether any of the foregoing issues may influence a subsequent collateral estoppel determination. Those benefits, coupled with the overriding principles of fairness that the Court has long embraced, certainly warrant both an expedited hearing on this issue and a ruling that would not allow a sophisticated commercial party to try to capitalize on the outcome of a case brought by the mother of a deceased son wherein both the jury and United and Huntleigh are sympathetic to her loss and would like nothing better than to see her recover the damages that she seeks.

Although United and Huntleigh firmly believe that a damages-only trial is the appropriate relief to be granted at this point, as discussed next below, if the Court holds otherwise, it is respectfully requested that Plaintiff be directed to submit the disclosures set forth herein and that simultaneously, this Court establish an expedited briefing schedule for both the standard of care

and collateral estoppel issues that are of utmost import to resolve at the outset of the parties

journey towards a trial or other dispositive resolution.

## III.

**PLAINTIFF'S PRE-TRIAL PROPOSALS DEMONSTRATE THAT
THE AMOUNT OF TIME THAT WOULD BE EXPENDED TO
CONDUCT A FAIR TRIAL WILL SO FAR OUTWEIGH THE
AMOUNT OF TIME TO DECIDE A FEW EVIDENTIARY
RULINGS RELATED TO A QUESTIONABLE DAMAGE CLAIM
THAT THE BASIS FOR THIS COURT'S PRIOR DENIAL OF A
DAMAGES-ONLY TRIAL IS NO LONGER APPLICABLE.**

It is important to note that this entire trial process and all the recent motions before the

Court are being filed not because they are a necessary prerequisite to recover the damages for

which the complaint seeks recovery, but rather because Plaintiff has refused to accept an offer

which guaranteed that her right to those damages would not be contested.  Although the Court

previously held that her decision was entitled to deference and that all the resources of the Court,

the government, and the parties required to respond to that choice should be expended, United

and Huntleigh respectfully submit that the reasons cited by the Court for previously reaching that

conclusion are no longer applicable and that decision should now be subject to reconsideration.

When United and Huntleigh requested in January of 2010 that the Court issue an order

directing a damages-only trial in the *Bavis* action, contingent upon their agreement not to contest

liability, the Court denied that request based on several then-existing conditions.  At the time of

that ruling, settlement negotiations were proceeding in the subrogation and uninsured loss

litigation and settlement negotiations with WTCP and Cantor Fitzgerald (hereinafter "Cantor")

had been requested.  The Court took note of those negotiations and stated, "[a]t this point,

conducting a damages-only trial for *Bavis* would be a diversion rather than a useful stratagem."[14] *See* "Order Denying Motion For Damages-Only Trial", dated February 2, 2010, at p.2.   The Court also stated, "discovery has been completed, or is close to being completed . . . The parties are just about ready for trial."  *Id.*  Accordingly, the Court stated that too much time would have to be spent deciding which evidence was admissible as to damages and which should be precluded as relevant only to liability.  As a result, the Court held that holding a damages-only trial "will intrude on time that could be spent on more constructive issues."  *Id.*  It is respectfully submitted that the conditions and conclusions on which the Court based its decision are no longer valid.

First, there are no more ongoing or planned settlement negotiations of which United is aware.  The settlement in *Peters v. UAL Corporation, et al.,* 03 Civ. 6940 (AKH), has been concluded and approved by the Court.  The subrogation and uninsured loss cases have also settled and those settlements have also been approved by the Court.  Although the Aviation Defendants spent months preparing mediation submissions and entered into good faith settlement negotiations with WTCP, those negotiations were entirely unproductive.  Insofar as Cantor is concerned, it is not involved in this Flight 175 action and United, Huntleigh and ICTS are not parties to the action instituted by Cantor.  The only settlement negotiations that might continue are those pertaining to the *Bavis* claim and in that regard, United made a very good faith settlement offer to Plaintiff's attorneys weeks ago but has not received any response to same. Accordingly, there are no longer any ongoing settlement discussions that a damages-only trial would distract us from engaging in.

---

[14] A copy of said Order is annexed as Exhibit "J" to the Declaration of Jeffrey J. Ellis.

Secondly, as Plaintiff's pre-trial submissions and this motion amply demonstrate, "the parties are [**clearly not**] just about ready for trial."   Indeed, the amount of time needed to complete those preparations and then conduct a trial where hundreds of witnesses may be called just by Plaintiff is far, far greater than the limited amount of time that would be needed to resolve the limited evidentiary questions associated with a damages-only trial.   Indeed, when the exact same evidentiary issues came up in *Driscoll v. Argenbright Security*, No. 02. Civ. 7912 (AKH), the Court quickly resolved them.   *See*, Order of this Court dated September 12, 2007.[15]   There is no reason to believe that the issues here would be more complicated, especially because Massachusetts law does not even appear to recognize a claim for pre-impact damages of the type alleged in the *Bavis* action.   As we have previously advised the Court, our review of Massachusetts law, indicates that pre-impact fright is not recoverable in a survival action.   *Gage v. City of Westfield*, 26 Mass. App. Ct. 681, 696, 532 N.E.2d 62 (1988), specifically addresses the issue of whether Massachusetts law permits recovery for conscious pain and suffering in an action asserting a wrongful death claim.   That case holds that "the relevant period for purposes of measuring compensation for conscious pain and suffering has consistently been defined in our appellate decisions as commencing with the impact of the fatal injury."[16]

This law precludes any recovery for pre-impact damages in this case.   If that claim is not available under applicable law, there is no need for this Court to spend any time on deciding evidentiary issues in advance of a damages-only trial.   Even if, however, that damage claim was

---

[15] That Order plainly demonstrates that this Court has already recognized, correctly, that the evidence that is relevant to the Plaintiffs' claim of conscious suffering is severely restricted in time and scope, and that it has no bearing whatsoever to "any issue of liability" in this litigation.   A copy of said Order is annexed as Exhibit "K" to the Declaration of Jeffrey J. Ellis.

[16] Although no Massachusetts state court decision holds otherwise, one federal court decision questioned the purported reasoning but not the result of that decision.   In *McIntyre v. United States*, 447 F. Supp. 54, 117 (D. Mass. 2006), the district court disagreed with an interpretation of the *Gage* decision that would preclude recovery for conscious pain and suffering caused by an earlier physical injury.   Nonetheless, that court upheld the ultimate result in *Gage* by also disallowing any recovery for pre-death emotional and physical distress.   *Id*. at 118, fn. 3.

permitted, Plaintiff's attorneys cannot seriously contend that the amount of time spent resolving these limited evidentiary issues related to damages could even come close to the amount of time necessary to conduct all the pre-trial proceedings and then engaging in a full blown liability trial.

There is nothing in the law or in Plaintiff's initial submissions that would justify such an incredible expenditure of time, effort and both judicial and governmental resources just so that Plaintiff can try to achieve a result that the principal defendant is not even looking to contest.  On account of same, and in light of all the information now available, United and Huntleigh respectfully request that the Court reconsider its prior decision and direct the parties to either continue with good-faith settlement negotiations or prepare for damages-only trial if a settlement cannot be reached.

## CONCLUSION

For all the reasons discussed herein, Defendants request that the Court:

(a) Direct Plaintiff to comply with its prior pre-trial directives and simultaneously provide a concise statement of her liability claims;

(b) Establish an expedited schedule for resolving the standard of care and collateral estoppel issues; or alternatively,

(c) Reconsider its prior decision denying the request for a damages-only trial and now direct that such a trial proceed on the condition that United agrees to not contest liability as to this claim only and will agree to satisfy any judgment rendered in the event that the case does not settle beforehand; and/or

(d) Grant whatever other relief is appropriate and necessary to the fair and just resolution of the claims now before the Court.

Dated:   December 8, 2010
New York, New York

Respectfully submitted,

QUIRK AND BAKALOR, P.C.

By: _____
Jeffrey J. Ellis, Esq. (7796)
845 Third Avenue
New York, New York 10022
Telephone: (212) 319-1000
Facsimile: (212) 319-1065

-and-

18

MAYER BROWN LLP
Michael Rowe Feagley, Esq.
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7065
Facsimile: (312) 706-8623

*Attorneys for Defendants*
*UNITED AIR LINES, INC. and*
*UNITED CONTINENTAL*
*HOLDINGS, INC., (f/k/a*
*UAL CORP.)*

-and-

SUSMAN GODFREY, L.L.P.
H. Lee Godfrey, Esq.
Charles R. Eskridge III, Esq.
Jonathan J. Ross, Esq.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile:  (713) 654-6666

*Attorneys for Defendant*
*HUNTLEIGH USA CORPORATION*

-and-

MCLAUGHLIN & STERN, LLP
Jon Paul Robbins, Esq.
260 Madison Avenue
New York, New York 10016
Telephone: (212) 448-1100
Facsimile: (212) 448-0066

*Attorneys for Defendant*
*ICTS INTERNATIONAL, N.V.*

19

-and-

LOCKE LORD BISSELL & LIDDELL LLP
Gary Westerberg, Esq.
Ann C. Taylor, Esq.
111 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336
gwesterberg@lockelord.com
ataylor@lockelord.com

JONES HIRSCH CONNORS & BULL, P.C.
James P. Connors, Esq.
1 Battery Park Plaza
New York, NY 10004
Telephone: (212) 527-1000
Facsimile: (212) 527-1680
jconnors@jhcb.com

*Attorneys for Defendant*
*GLOBE AVIATION SERVICES*
*CORPORATION*

-and-

O'MELVENY & MYERS LLP
Mark Wood, Esq.
Allen Burton, Esq.
Ralph P. DeSanto, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
mwood@omm.com
aburton@omm.com
rdesanto@omm.com

*Attorneys for Defendant*
*THE MASSACHUSETTS PORT*
*AUTHORITY*