USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
IN RE SEPTEMBER 11 LITIGATION                :
-------------------------------------------------------------------  :   **ORDER AND OPINION
INDUSTRIAL RISK INSURERS,                     :   DISMISSING ACTION FOR
                                              :   LACK OF JURISDICTION**
                     Petitioner,              :
                                              :   21 MC 101 (AKH)
       -against-                              :
                                              :   10 Civ. 3036
7 WORLD TRADE COMPANY, L.P.,                  :
                                              :
                     Respondent.              :
------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioner Industrial Risk Insurers ("IRI") petitions for a stay of arbitration proceedings initiated by Respondent 7 World Trade Company, L.P. ("7WTCo."). 7WTCo. moves to dismiss the petition and cross-petitions to appoint its chosen arbitrator. On December 1, 2010, I directed the parties to brief the issue whether this Court possesses subject-matter jurisdiction to hear their dispute, preliminarily to considering the substantive issues of the petitions and the motion. I heard oral argument on February 16, 2011. For the reasons that follow, I dismiss this action for lack of subject-matter jurisdiction.

      **I.    Facts**

      This dispute arises from a contract between an insurer and its insured, resolving their dispute over the extent of coverage owed for losses incurred when 7 World Trade Center collapsed on September 11, 2001. The insurer, IRI, is an unincorporated association with a principal place of business in Connecticut. One of its members, Swiss Reinsurance America Corporation ("SRAC"), has its principal place of business in Armonk, New York. 7WTCo., the insured, is a Delaware corporation, also with a principal place of business in New York.

1

Prior to September 11, 2001, IRI had provided insurance to 7WTCo. for its building, 7 World Trade Center. On September 11, 2001, 7 World Trade Center collapsed, a collateral consequence of terrorist-related aircraft crashes into Towers 1 and 2 of the World Trade Center complex. 7WTCo. sought to collect an insurance recovery from IRI, but IRI took the position that the collapse of 7 World Trade Center was not covered by the policy. The parties resolved their coverage dispute by a settlement agreement executed January 7, 2005 ("January 7, 2005 Settlement Agreement"). The January 7, 2005 Settlement Agreement provides that in full satisfaction of 7WTCo.'s claim, IRI would pay (i) a lump sum and (ii) a portion of any future recoveries that IRI might obtain as a subrogree to 7WTCo. in the ongoing property-damage lawsuits.

The present dispute concerns IRI's obligation under the January 7, 2005 Settlement Agreement to provide 7WTCo. with a portion of its subrogation recoveries in the 21 MC 101 Master Calendar litigation. In February 2010, IRI and seventeen other Property Damage Plaintiff agreed to settle their claims in this Master Calendar against the Aviation Defendants whom the Property Damage Plaintiffs had sued ("Property Damage Settlement"). The settlement followed a period of Court-ordered mediation before retired United States District Judge John S. Martin. On July 1, 2010, I approved the settlement for $1.2 billion, in the aggregate, as fair and reasonable. In re Sept. 11 Litig., 723 F. Supp. 2d 534, 540 (S.D.N.Y. 2010). 7WTCo., together with the six other entities associated with Larry Silverstein, objected to the Property Damage Settlement, and have since appealed to the Second Circuit Court of Appeals from my order of approval.

In March 2010, after the parties submitted their request for approval of the Property Damage Settlement but before I approved it, 7WTCo. served an arbitration demand on IRI, demanding arbitration of four claims: (i) a breach of contract claim, in that IRI did not consult with

2

7WTCo. as to the reasonableness of recovery under the Property Damage Settlement; (ii) a claim for declaratory relief, contesting IRI's allocation of settlement recoveries as between 7WTCo. and other insured subrogors; (iii) a declaration that IRI could not settle with the Aviation Defendants without 7WTCo.'s consent;[1] and (iv) a declaration limiting the obligations of 7WTCo. to reimburse IRI, should 7WTCo. recover monies from the Aviation Defendants in continuing litigation.

In response, IRI brought a petition to stay the arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. IRI argued that no breach of the January 7, 2005 Settlement Agreement has occurred; that any such claims are premature because it has not yet been paid under the Property Damage Settlement; and that 7WTCo. has attempted to use arbitration as a method of collateral attack on the Property Damage Settlement. 7WTCo. moved to dismiss the petition and cross-petitioned to appoint its chosen arbitrator.[2]

Before addressing the merits of the petitions and the motion, I ordered the parties to brief the issue whether this Court possesses jurisdiction to hear this dispute. See College Standard Magazine v. Student Assoc. of State Univ. of NY at Albany, 510 F.3d 33, 36 (2d Cir. 2010) (court has obligation to satisfy itself that jurisdiction exists, and so may raise and consider the issue *sua sponte*). I turn to that consideration.

## II. Discussion

"Federal courts are courts of limited jurisdiction, and the validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982).

---

[1] At oral argument, counsel for 7WTCo. withdrew this claim, limiting the arbitration demand to claims (i), (ii), and (iv).

[2] The parties resolved their dispute as to the choice of arbitrator, if arbitration is ordered. Accordingly, the cross-petition is mooted.

3

Jurisdiction to adjudicate a claim in federal court arises under Article III of the Constitution and federal statutes. The latter provide three general forms of jurisdiction. First, 28 U.S.C. § 1332 provides diversity jurisdiction where the amount in controversy exceeds $75,000, exclusive of interest and costs and the parties' citizenships are completely diverse. Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009). Second, 28 U.S.C. § 1331 provides federal question jurisdiction if the claim "arises under the Constitution or laws of the United States." Carlson v. Principal Fin. Group, 320 F.3d 301, 306 (2d Cir. 2003). Third, 28 U.S.C. § 1367 provides supplemental jurisdiction over nonfederal claims that are part of the same case or controversy that falls within federal jurisdiction.

The FAA presents "something of an anomaly in federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581 (1008). The jurisdictional grant is provided by 9 U.S.C. § 4, which provides for jurisdiction over arbitration disputes where, "save for such agreement" to arbitrate, the federal court would have jurisdiction arising under Title 28 of the United States Code. The Supreme Court has instructed that when federal courts consider whether they possess jurisdiction over arbitration disputes, they should "assume the absence of the arbitration agreement and determine whether [they] would have jurisdiction under title 28 without it." Vaden v. Discover Bank, 129 S. Ct. 1262, 1273 (2009) (internal quotation omitted).

Accordingly, to determine whether jurisdiction exists, I must look through IRI's petition to stay arbitration, as well as 7WTCo.'s motion and cross-petition, and determine whether the underlying dispute over the January 7, 2005 Settlement Agreement falls within the Court's subject-matter jurisdiction.[3]

---

[3] Though Vaden considered the issue in the posture of a motion to compel arbitration, that distinction is legally insignificant. See UBS Sec. LLC v. Voegeli, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("Although Vaden concerned

4

### a. Diversity Jurisdiction

Although diversity jurisdiction can be the basis of federal jurisdiction, see Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009), the parties here are not diverse, as they concede. IRI's member, SRAC, has a principal place of business in New York, as does 7WTCo. IRI must assume the citizenship of its member, SRAC. Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). Complete diversity is lacking.

### b. Federal Question Jurisdiction

IRI argues that federal question jurisdiction is present under the Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. § 40101 et seq. IRI contends that 7WTCo.'s arbitration demand seeks to attack the Property Damage Settlement in the 21 MC 101 litigation that I approved as fair and reasonable, In re Sept. 11 Litig., 723 F. Supp. 2d at 540, and therefore constitutes a claim falling within ATSSSA. I disagree.

Congress passed the ATSSSA after September 11 to create an exclusive federal cause of action for damages "arising out of the hijacking and subsequent crashes" of the aircraft used in the attacks. ATSSSA § 408(b)(1). The statute creates "original and exclusive jurisdiction" for any claim "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001" in federal court in this judicial district. Id. § 408(b)(3). However, not every insurance claim or dispute traceable to September 11 can be based on ATSSSA; the claim or defense must closely concern the events of that day.

In Canada Life Assurance Co. v. Converium Rücksversicherung (Deutschland) AG, 335 F.3d 52 (2d Cir. 2003), the dispute was between a reinsurer and its retrocessionaire. Canada Life, the reinsurer, had paid on reinsurance policies to primary insurers to indemnify the primary

---

a federal court's jurisdiction to *compel* arbitration pursuant to § 4 of the FAA, its reasoning applies to situations where, as here, a party seeks to *stay* or *enjoin* an arbitration.") (emphasis in original).

5

insurers on insurance payments to victims of the September 11 attacks. Canada Life sought payment from Converium Rücksversicherung, the retrocessionaire, for indemnification on its payments to the primary insurers. When Converium Rücksversicherung refused to pay, Canada Life sued in federal court, claiming jurisdiction under ATSSSA. The Court of Appeals affirmed the dismissal of the suit for lack of subject matter jurisdiction, holding that Canada Life did not "allege that any claim or defense arising in the action will require adjudication of any issue of law or fact that concerns the events of September 11." Id.; see also Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's, London, 75 Fed. App'x 799 (2d Cir. 2003) (dispute between insurer and reinsurer of latter's obligations to indemnify payments on primary policies paid to beneficiaries of individuals killed on September 11 was not within ATSSSA jurisdiction).

By contrast, in In re WTC Disaster Site, 414 F.3d 352 (2d Cir. 2003), rescue workers of September 11—those who worked on the pile of smoldering debris searching for victims and survivors and removing the debris—argued that their claims of respiratory injuries were not governed by ATSSSA but were ordinary construction-site claims not affected by ATSSSA's liability ceilings, and therefore were governed by New York Labor Law. Rejecting the argument, the Court of Appeals held that ATSSSA governed, for the claims required the district court to explore numerous incidents intimately connected to the events of September 11, and not simply "but for" causation. Id. at 378. The Court ruled,

> Here, the [district] court will be required to explore such common factors as the immediate need to conduct and continue searches for survivors without the regard to the availability of respirators; the continuing need to sift for human remains; the unprecedented quantity of the debris; the ever-present need for engineering evaluation of the structural safety of remaining walls and foundations; and the character of the crash site as a crime scene, creating security concerns and affecting the manner in which the demolition and debris-removal operations were conducted and the manner in which the debris was treated both at that site and at

6

> marine transfer points and the landfill. The court will confront
> such individual factors as to the degree to which each plaintiff was
> exposed to toxic substances.

Id. at 378-79. For these reasons, the Court of Appeals determined that the respiratory injury and cancer cases were to remain in this Court, under the exclusive jurisdiction provided by ATSSSA.

Canada Life and In re WTC Disaster Site make clear that jurisdiction under the statute reaches claims and defenses that turn directly on the events of September 11. The underlying dispute here does not meet that test. By arbitration, 7WTCo. seeks to vindicate contractual rights provided under the January 7, 2005 Settlement Agreement, which 7WTCo. alleges IRI has violated. The cause of action arises from terms of the parties' contract, and any relief provided would be expressed in damages, affecting only their private contractual relationship. Their dispute would not implicate the events of September 11, claims and defenses involving September 11, or the lawsuits involving September 11. The issues of the arbitration are therefore clearly outside ATSSSA's purview, and this Court cannot assume jurisdiction over IRI's petition to stay arbitration.[4] Vaden, 129 S. Ct. at 1273.

IRI noted at oral argument that one of 7WTCo.'s arbitration demands was a statement that IRI could not settle its subrogation claims without 7WTCo.'s consent, and a declaration to that effect going forward. IRI expressed concern that the arbitration was intended to hinder and delay the effectuation of the Property Damage Settlement. 7WTCo. represented that this demand in the arbitration was withdrawn.[5] The three remaining claims do not affect the

---

[4] In Industrial Risk Insurers v. Port Authority of New York and New Jersey, 387 F.2d 299 (S.D.N.Y. 2008), aff'd in part and rev'd in part, 493 F.3d 283 (2d Cir. 2007), IRI sued Citigroup as a subrogee, alleging that Citigroup had been negligent in designing and installing a defective diesel-fueled backup generator in 7 World Trade Center, contributing to the building's collapse. Id. at 302. The case fell within ATSSSA because the face of IRI's complaint made clear it was suing based on facts directly arising out the events of September 11. In contrast, IRI and 7WTCo. are engaged in a dispute over the terms of their January 7, 2005 Settlement Agreement, not the events of September 11.

[5] At oral argument, counsel for 7WTCo. engaged in the following colloquy with the Court:
  The Court: Let me ask Mr. Egan: what is the claim?

7

arbitrator, for only the parties' rights under the January 7, 2005 Settlement Agreement are implicated.

### c. Supplemental Jurisdiction

IRI argues that there is a close connection between the facts to be considered in the arbitration and the litigation in 21 MC 101, and that the arbitration therefore arises under the "same case or controversy." 28 U.S.C. § 1367(a). That statute provides:

> Except as provided in subsections (b) and (c), or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

However, IRI's claims do not arise within a case also seeking to adjudicate federal claims. Generally, "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." Peacock v. Thomas, 516 U.S. 349, 355 (1996).

IRI argues that this case is so intertwined with the property damage claims arising under ATSSSA as to fall within a narrow exception to the Peacock rule. In support, IRI cites a prior decision, WTC Captive Insurance Company, Inc. v. Liberty Mutual Fire Insurance Co., 537 F. Supp. 2d 619 (S.D.N.Y. 2008). In the Liberty Mutual case, however, the question presented was whether the WTC Captive Insurance Company, a captive insurer created by Congress to

---

> Counsel: What we are asking the arbitrators to do is say the manner in which the [Property Damage] [S]ettlement was handled violated our rights underneath the—
> The Court: So you are not challenging IRI's right to settle?
> Counsel: No, we are not. They can settle. We just state that in this particular case they did it improperly and in violation of our rights under the [January 7, 2005] Settlement Agreement.

Transcript of Oral Argument at 17, Industrial Risk Insurers v. 7 World Trade Company L.P., 10 Civ. 3036 (21 MC 101) (S.D.N.Y. Feb. 17, 2011). The parties may renew this motion in the event that the representation of 7WTCo. is not honored.

8

insure the City of New York after the various September 11 litigation began, was critical to the progression and resolution of the 10,000 respiratory-injury and cancer cases brought by the rescue and clean-up workers who sifted, searched, and removed the debris left in the wake of the terrorist attacks. I held that it was, and ruled that its pursuit of a declaratory judgment against other insurers of the City, stating their obligations to indemnify the City for defense of those cases and for potential liability, was part of my supplemental jurisdiction. As part of my decision, I also held that there was a very strong need for a single approach to these all-important insurance issues pertaining to the defense of the City. Id. at 627-29; see also Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375, 379-80 (1994) (supplemental jurisdiction is appropriate "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."). This case does not present the intertwined issues of fact and law that drove the rulings in Liberty Mutual. Supplemental jurisdiction is unwarranted. Peacock, 516 U.S. at 355.

### III.  Conclusion

7WTCo. has sought to arbitrate claims arising from its January 7, 2005 Settlement Agreement with IRI. That is a breach of contract dispute between two nondiverse parties, which falls outside the scope of this Court's subject-matter jurisdiction. Accordingly, all proceedings in this matter are dismissed. The Clerk shall terminate the pending motions (Doc. No. 1 and 16) and close the case.

SO ORDERED.

Dated:   February __, 2011
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge