# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS
LONDON • MOSCOW • FRANKFURT • COLOGNE
ROME • MILAN • HONG KONG • BEIJING

Writer's Direct Dial: +1 212 225 2868
E-Mail: cmoore@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S ZELBO

DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL O. WHORISKEY
JORGE U JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D OAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN

BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KOROULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
ANDREW WEAVER
RESIDENT COUNSEL



April 22, 2011

BY HAND

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Court House
500 Pearl Street, Room 1050
New York, NY 10007-1312



Re: *In re September 11 Litigation*, 21 MC 101 (AKH);
<u>*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 04 Civ. 7272 (AKH)</u>

Dear Judge Hellerstein:

Pursuant to the Court's instructions on April 8, 2011, the undersigned counsel submit this joint letter pursuant to your Individual Rule 2(E) to address whether expert discovery should be stayed in this matter while the Court considers motions for summary judgment filed by Defendants 7 World Trade Company, L.P., Silverstein Properties, Inc. and Silverstein Development Corporation (together "7WTCo.") and Citigroup Inc. and Citigroup Global Markets Holdings Inc. (together "Citigroup"). The undersigned counsel have conferred on the subject matter of this submission in compliance with Fed. R. Civ. P. 37.

## Position of Defendants Citigroup Inc. and Citigroup Global Markets Holdings Inc. (together "Citigroup")

We represent Citigroup in the above-referenced action. As the Court is aware, Citigroup and 7WTCo. submitted separate motions for summary judgment seeking dismissal of all claims alleged by plaintiffs in the above-referenced actions. Oral argument was held on these motions on December 16, 2010. During the hearing, the Court directly addressed the question of

*[Handwritten annotation: Discovery of Experts should be stayed until June 3, 2011. A status conf. will be held on that date at 10:00 a.m. to review such discovery.
4/29/11  [signature]]*

The Honorable Alvin K. Hellerstein
p. 2

expert discovery, and instructed the parties to "stop" and that "no more experts" are necessary unless "the case survives," in which case the Court would schedule a status conference to discuss next steps. *See* Transcript of Oral Argument at 86, *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, No. 04 Civ. 7272 (AKH) (Dec. 16, 2010) ("COURT: **Stop. No more experts.** I'll call a status conference. ***If the case survives, I'll call a status conference*** and you'll tell me all about your experts ... and we'll figure out what we can do next.") (emphasis supplied); *see also id.* at 2-3 ("MS. PRINGLE: Yes, your Honor. All that is left is to receive the rebuttal expert reports from Con Edison and to engage in expert discovery. COURT: Why bother with rebuttals? These reports are not evidentiary themselves. It's just a waste of time to work on rebuttal. Go right to your discovery if you have to. MS. PRINGLE: Your Honor, ***we are hopeful today that we will obviate the need for any more discovery***. COURT: ***You don't need it. Right.***") (emphasis supplied).

In light of the *sub judice* summary judgment motions and the Court's statements during the December 16 oral argument, Citigroup does not believe that further expert discovery should proceed until the Court has ruled on the motions, which if granted, would result in Citigroup's dismissal from the above-referenced action. Citigroup believes that commencing expert depositions prior to the resolution of the pending summary judgment motions would be premature and would require the parties to incur substantial costs that would be unnecessary in the event the Court grants either or both of Defendants' pending summary judgment motions. Plaintiffs have served Notices of Deposition demanding that expert depositions of 7WTCo.'s two primary experts begin as early as May 4.

Accordingly, Citigroup respectfully requests that the Court order that expert discovery in the above-referenced matters is stayed pending the Court's ruling on Defendants' motions for summary judgment, consistent with the Court's direction during the December 16, 2010 oral argument on those motions.

*Respectfully submitted,*

*s/Christopher P. Moore*

*Christopher P. Moore*

### Position of Defendants 7 World Trade Company, Silverstein Properties, Inc. and Silverstein Development Corp. (collectively "7WTCo.")

**Expert depositions should be deferred pending resolution of the summary judgment motions.**

7WTCo. agrees with Citigroup that expert discovery should not go forward until after resolution of the pending motions for summary judgment. Plaintiffs seek to rely on 18 separate experts to attempt to make their case. In total, 35 expert reports (by 27 experts) have been served in this matter, many of which are hundreds of pages long and accompanied by lengthy appendices and computer modeling files. The pending motions for summary judgment would, if granted, moot all expert discovery. Even if not granted in full, a decision on the motions may streamline the case. 7WTCo. therefore respectfully submits that the parties should not undertake the enormous expense of expert depositions until after resolution of the summary judgment motions.

**Plaintiffs' actions over the past few months have created a situation in which expert depositions would, in any event, be premature at this time.**

*First, in the past month plaintiffs have added hundreds of pages of new reports and 6 entirely new experts, which will take time for defendants' experts to evaluate.* Despite the Court's instructions to plaintiffs to "Stop. No more experts," and its admonition that rebuttal reports would be "just a waste of time," plaintiffs chose to serve hundreds of pages of "rebuttal" expert reports on March 16.

Plaintiffs' latest reports are not just "rebuttals." For example, plaintiffs' new experts have piled on new technical reviews that could have been introduced with the moving reports, such as a debris study, floor collapse study, and floor framing study. Many of plaintiffs' original experts have also scrapped fundamental aspects of their initial work and substituted entirely new modeling techniques and studies. For example, 7WTCo.'s experts pointed out that plaintiffs' experts had created a computer "model" of 7 World Trade Center that was so inherently weak that mere application of gravity to the model caused a total collapse – thus clearly making the model unrepresentative of a building that stood for nearly 20 years. Plaintiffs have now scrapped that model and substituted a new one. The initial reaction of our experts is that plaintiffs' new approaches are still flawed and contrived. But it will take time for them to evaluate all of this new work.

*Second, plaintiffs have just produced tens of thousands of photographs and videos related to their expert reports.* Early in this case, this Court, in response to a motion by plaintiffs, ordered the parties to exchange all photographs and videos concerning the 7 World Trade Center building, including those obtained from third parties. *See* Transcript of Jan. 29, 2007 Conf. at 11, attached hereto as Exhibit A (Con Edison counsel: "We should all be playing with the same facts." Court: "I think it's a good point.") and 12 ("I would like all sides to produce their photographs."). 7WTCo. has since produced to Con Edison every one of the

The Honorable Alvin K. Hellerstein
p. 4

thousands of photographs that it obtained from third parties, including materials it has received from the National Institutes for Science and Technology ("NIST").[1] Con Edison, however, waited until February of this year to produce tens of thousands of videos and images concerning the 7 WTC building, most of which it had obtained in 2009 and early 2010. Thus Con Edison's experts were working from a record that Con Edison did not produce to defendants and their experts until after the exchange of expert reports, and which 7WTCo.'s experts are still in the process of reviewing.

For both of these reasons, discovery at this time is premature. It should not go forward until after 7WTCo.'s experts have had some opportunity to review Con Edison's reports and new evidence, and to determine whether it is necessary to supplement their reports to address such new materials.

**Alternatively, if Con Edison is permitted to take depositions now, it should be limited to taking each expert's deposition only once.**

Con Edison seeks to take immediate depositions of 7WTCo.'s two lead experts, and suggests that other depositions can be deferred. This offers no real advantage in moving the case forward.[2]

But if Con Edison chooses, and is permitted, to take those depositions now, when 7WTCo.'s experts are necessarily limited in their ability to respond to the opinions contained in Con Edison's "rebuttal" reports, then Con Edison must also accept the consequences of that choice. It should not be permitted to take second depositions of those same experts later, when they have completed their evaluations. Accordingly, 7WTCo. asks that, in the alternative, if any depositions are permitted at this time, the Court require that Con Edison be limited to one deposition of each expert, to be taken and completed at one time.

Con Edison's response on this point makes clear that it seeks to engage in unfair gamesmanship. It claims that it should be permitted to take depositions of 7WTCo.'s lead experts now, but should not be precluded from taking second depositions of those same experts later, on the basis that the witness has "learned new facts after his deposition," or "added or

---

[1] 7WTCo. did in February of this year produce to plaintiffs one set of 195 photographs that the Port Authority had received from NIST and previously produced to 7WTCo., which we produced because we could not find proof that the Port Authority had also produced the same photographs to plaintiffs.

[2] Con Edison claims that a limited number of depositions should go forward now because it will give the parties "sufficient information to engage in a serious mediation to resolve the case." With thousands of pages of expert reports having been exchanged between the parties, there is hardly an information impediment necessitating depositions. 7WTCo. believes that all claims against it should be dismissed, and it has moved for that relief. We will not further respond to Con Edison's request that we agree *now* to promptly enter mediation *after* resolution of the pending summary judgment motions. (Con Edison response at p. 8.) Con Edison did not raise such an issue prior to its response in this letter, and discussions of future mediations are premature, inappropriate in this forum, and irrelevant to the subject of this letter.

The Honorable Alvin K. Hellerstein
p. 5

changed opinions since his first deposition." (Con Edison response at p. 7.) There is no question that these experts *will* learn new facts and add to their opinions as they evaluate the hundreds of pages of new "rebuttal" reports, as well as the new models relied upon therein and the tens of thousands of images just recently produced. If Con Edison's rebuttal reports survive, our experts may need to supplement their own reports in response. Plaintiffs should be required to give 7WTCo.'s experts a reasonable time to complete their evaluations before taking their depositions. Or if they insist on taking (and are permitted to take) depositions now, plaintiffs should not be permitted a second bite at the expert later.

*Respectfully submitted,*

*s/Katherine L. Pringle*

Katherine L. Pringle

The Honorable Alvin K. Hellerstein
p. 6

## Position of Plaintiffs Consolidated Edison and its Subrogated Insurers (collectively "Con Edison")

Oral argument was held on the summary judgment motions on December 16, 2010. Not only was no stay of expert discovery requested by defendants or ordered by the Court pending decision of these motions but, contrary to the contention of defendants, the Court ordered that discovery proceed. *See* Transcript of Oral Argument at 86, *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, No. 04 Civ. 7272 (AKH) (Dec. 16, 2010). The only reason that such discovery did not start immediately was because Con Edison had an obligation to serve rebuttal expert reports pursuant to F.R.C.P. 26(a)(2)(D) [3] and pursuant to its existing agreement with defendants to serve such reports by March 15, 2011.[4]

In anticipation of the service of these reports on March 15, 2011, the agenda for a previously scheduled telephonic meet and confer was amended, at the request of 7WTCo., to include a discussion on the scheduling of expert depositions. Both 7WTCo. and Con Edison agreed that depositions should commence shortly after service of the rebuttal reports. When further attempts to informally schedule these depositions were unsuccessful, Con Edison served 7WTCo. with notices for the depositions of two of 7WTCo.'s experts, which are to occur on May 4 and 5 and May 11 and 12. Only if the Court has decided to grant summary judgment should these depositions not go forward as scheduled.

With respect to 7WTCo.'s contentions that portions of Con Edison's rebuttal reports are improper, that is not an issue for consideration on this application. Although we disagree with their contentions, there is no need to burden the Court with the degree of detail required to refute each contention. Such discussion should be saved for a status conference to be held by the Court, assuming the summary judgment motions are denied.

Despite the number of expert reports served by the parties, we only seek, at this time, to take the depositions in May of the two primary experts for 7WTCo. We have offered to make two of plaintiffs' experts available for depositions. As we have previously advised both defendants, we believe that by limiting initial depositions to two experts by each party as an initial stage, the parties will have sufficient information to engage in a serious mediation to resolve the case. If depositions are stayed until after the Court has rendered its decision on the pending summary judgment motions and until after a status conference, we are certain that the

---

[3] To the extent that this Court were to find that, contrary to our belief, any portion of these reports are not purely rebuttal, but are supplemental, they are still permitted under F.R.C.P. 26(e)(2).

[4] 7WTCo.'s charge that Con Edison disregarded the Court's comments regarding the rebuttal reports when it served rebuttal reports on March 15, 2011, is intentionally misleading in that it ignores the above obligation and agreement. Moreover, 7WTCo. had argued for service of those reports during oral argument [*See* id. at 86 ("MS. PRINGLE: If I could make one suggestion. We had agreed to allow expert rebuttal reports. The reason I want them is because this is a very serious case in which we are going to be filing Daubert motions. We'd like to see what they say in response to our experts.")] and continued to seek those reports from Con Edison after the oral argument.

The Honorable Alvin K. Hellerstein
p. 7

defendants will then ask for at least 30 - 45 days to prepare for depositions. That preparation could be done now and the depositions could go forward as scheduled on May 4 and 5 and May 11 and 12. Otherwise they will not commence until late June or July, at the earliest, and will then be delayed by summer vacation schedules of experts and counsel.

Further, the service of rebuttal reports should not serve as a basis for delaying the depositions of the defense experts. 7WTCo.'s contention that some of Con Edison's rebuttal materials are unexpectedly "new" (it is difficult to conceive of rebuttal material that would not be new), if true, might entitle it to additional time to prepare to depose Con Edison's experts. However, that should have no bearing on Con Edison's entitlement to begin depositions of 7WTCo's experts promptly. Indeed, Con Edison could have deposed 7WTCo's experts on the very same subjects without giving 7WTCo. any prior notice of the defects in their expert reports by way of rebuttal reports.

A second justification of 7WTCo. for delaying the start of expert depositions is the exchange in February and March of this year of a large volume of media received by Con Edison and Citigroup on a rolling basis from NIST pursuant to FOIA requests. Con Edison did produce a large volume of media it received from NIST to defendants in April, 2010. However, because prior discussions among the parties (including prior Liaison Counsel for defendants) suggested that both Con Edison and defendants were actively seeking production of documents from NIST through FOIA requests, and the parties had not reached any agreement as to whether such documents need be produced by the other party, Con Edison ceased production pending an agreement. Surprisingly, 7WTCo. recently advised us that they made no request for documents from NIST although they have been equally available to all parties. This issue only resurfaced when counsel for Con Edison suggested holding the meet and confer of February 10, 2011 to discuss this unresolved issue. During this meet and confer, we were advised that Citigroup was also in possession of substantial documentation obtained from NIST which was not produced to Con Edison. In any event, the existence of documents in which 7WTCo. apparently had no interest can hardly be relied upon as a reason to delay the commencement of expert depositions. Nor should NIST's rolling and sporadic productions serve as a basis to delay expert depositions lest depositions never commence.

Finally, Con Edison does not disagree that ordinarily an expert, like any other witness, should only be deposed once. However, this concept has never been applied to preclude a second deposition when a witness has learned new facts after his deposition, or where an expert has added or changed opinions since his first deposition. If 7WTCo.'s experts change their opinions, or reach different conclusions, whether as a result of work done after reviewing rebuttal reports, or as a result of work done because of issues raised by deposition questions, Con Edison would be equally entitled to depose them on such changes if they intend to testify about them at trial.

In footnote 2, counsel for 7WTCo. states, for the first time, that further depositions are not necessary in order for the parties to engage in serious mediation. We agree and are willing to adjourn the presently scheduled depositions for a reasonable period of time to

The Honorable Alvin K. Hellerstein
p. 8

permit the parties to engage in a good faith mediation with Judge Martin, or any other mediator appointed by the Court, to occur promptly after resolution of the pending motions for summary judgment. If counsel is not prepared to promptly enter into a good faith mediation, should the summary judgment motion(s) be denied, then the depositions should go forward as scheduled.

        Respectfully submitted,

        *s/Franklin M. Sachs*

        Franklin M. Sachs