# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

1 : 21-mc-101
Trial Judge: Alvin Hellerstein

**MANDATE**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of April, two thousand eleven.

Before:     BARRINGTON D. PARKER,
            DEBRA ANN LIVINGSTON,
            GERARD E. LYNCH,
                          *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 02, 2011

World Trade Center Properties LLC;
1 World Trade Center LLC;
2 World Trade Center LLC;
3 World Trade Center LLC;
4 World Trade Center LLC;
7 World Trade Company, L.P.,

                          *Intervenors-Appellants*,

v.                                              **JUDGMENT**

                          Docket No. 10-2970-cv(L),
                          10-3128-cv(Con), 10-3131-cv(Con),
                          10-3133-cv(Con), 10-3135-cv(Con),
                          10-3136-cv(Con), 10-3137-cv(Con),
                          10-3139-cv(Con), 10-3140-cv(Con),
                          10-3141-cv(Con), 10-3143-cv(Con),
                          10-3144-cv(Con), 10-3145-cv(Con),
                          10-3148-cv(Con), 10-3153-cv(Con),
                          10-3157-cv(Con), 10-3159-cv(Con),
                          10-3178-cv(Con), 10-3180-cv(Con)

Certain Underwriters at Lloyd's of London Comprising Syndicates No.
33, 1003, 2003, 1208, 1243, 0376; Great Lakes Reinsurance (UK), PLC;
Underwriter at Lloyd's Syndicate No. 1225; Munich-American Risk Partners 7244 GMBH;
Greater New York Mutual Insurance Company; Insurance Company of Greater New York;
Munich Reinsurance Company UK General Branch; Muenchener Rueckversicherunes-
Gesellschaft; Woburn Insurance, LTD.; Great Lakes Reinsurance U.K. PLC; American
Alternative Insurance Corporation; The Princeton Excess & Surplus Lines Insurance Company;
Munich Reinsurance America, INC., Formerly Known As American Re-Insurance Company;
Colisee Re, Formerly Known As AXA Re and Successor to the Interests and Liabilities of SPS
Reassurance; Colisee Re Canadian Branch, Formerly Known As AXA Re Canadian Branch and
Formerly Known As AXA Corporate Solutions Reassurance Canadian Branch; Colisee Re
Madeira Branch, Formerly Known As AXA Re Madeira Branch; Portman Insurance Limited,
Formerly Known As AXA Global Risks (UK) LTD. and successor to the Interests and Liabilities

MANDATE ISSUED ON 05/02/2011

of AXA Reinsurance UK PLC.; AXA Corporate Solutions Assurance UK Branch; AXA Insurance Company, Formerly AXA CS Reinsurance Co.; Coliseum Reinsurance Company, Formerly AXA CS Reinsurance Co. US; AXA Versicherung AG; AXA Cessions; AXA Corporate Solutions Services UK LTD. and AXA Corporate Solutions Assurance, for itself and successor to the Interests and Liabilities of AXA Corporate Solutions Assurance Canadian Branch; AXA Art Insurance Corporation; Paris Re Asia Pacific Pte. LTD., Formerly Known As AXA Re Asia Pacific Pte. LTD.; Paris Re, successor to the Interests and Liabilities of Compagnie Generale De Reassurance De Monte Carlo; Industrial Risk Insurers and Its Members; Aegis Insurance Services, INC.; Liberty Insurance Underwriters, INC.; National Union Insurance Company of Pittsburgh; Nuclear Electric Insurance Limited; Certain Underwriters at Lloyd's Comprising Syndicates No. 1225 and 1511; Consolidated Edison Company of New York, INC.; QBE International Insurance LTD.; Certain Underwriters at Lloyd's London, as Members of Syndicates Numbered 1212, 1241, 79, 506, and 2791; Assurances Genrales De France Iart; Assurances Generales De France; Allianz Global Risks US Insurance Company F/K/A Allianz Insurance Company; Allianz Insurance Company of Canada; Allianz Suisse Versicherungs-Gesellschaft; Allianz Versicherungs-Aktiengesellschaft; Fireman's Fund Insurance Company; Mayore Estates, LLC; 80 Lafayette Associates, LLC; Barcley Dwyer Co., INC.; Karoon Capital Management, INC.; N.S. Windows LLC; Tower Computer Services, INC.; Wall Street Realty Capital, INC.; World Trade Farmers Market, INC.; Adem Arici; Omer Ipek; MVN Associates, INC.; Marsha Van Name; Daniel D'Aquila; Floyd Van Name,

*Plaintiffs-Appellees,*

American Airlines, INC.; AMR Corporation; United Air Lines, INC.; UAL Corporation; US Airways, INC.; US Airways Group, INC.; Colgan Air, INC.; Globe Aviation Services Corporation; Globe Airport Security Services, INC.; Huntleigh USA Corporation; ICTS International N.V.; The Boeing Company; Massachusetts Port Authority; Burns International Security Services Company, LLC, Formerly Known As Burns International Security Services Corporation; Burns International Services Company, LLC, Formerly Known As Burns International Services Company, LLC, Formerly Know As Burns International Services Corporation; Pinkerton's LLC, Formerly Know As Pinkerton's INC.; Securitas AB,

*Defendants-Appellees.*

_____

      The appeal in the above captioned case from the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

      IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED in accordance with the opinion of this Court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10-2970-cv(L)
In re: Sept. 11 Prop. Damage Litig.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2010


(Argued: March 10, 2011          Decided: April 8, 2011)

Docket Nos. 10-2970-cv(L), 10-3128-cv(CON), 10-3131-cv(CON),
10-3133-cv(CON), 10-3135-cv(CON), 10-3136-cv(CON), 10-3137-cv(CON),
10-3139-cv(CON), 10-3140-cv(CON), 10-3141-cv(CON), 10-3143-cv(CON),
10-3144-cv(CON), 10-3145-cv(CON), 10-3148-cv(CON), 10-3153-cv(CON),
10-3157-cv(CON), 10-3159-cv(CON), 10-3178-cv(CON), 10-3180-cv(CON)

---

IN RE: SEPTEMBER 11
PROPERTY DAMAGE LITIGATION

---

WORLD TRADE CENTER PROPERTIES LLC; 1 WORLD TRADE CENTER LLC; 2
WORLD TRADE CENTER LLC; 3 WORLD TRADE CENTER LLC; 4 WORLD TRADE
CENTER LLC; 7 WORLD TRADE COMPANY, L.P.,

*Intervenors-Appellants*,

-v.-

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON COMPRISING SYNDICATES NO.
33, 1003, 2003, 1208, 1243, 0376; GREAT LAKES REINSURANCE (UK), PLC;
UNDERWRITER AT LLOYD'S, SYNDICATE NO. 1225; MUNICH-AMERICAN RISK
PARTNERS 7244 GMBH; GREATER NEW YORK MUTUAL INSURANCE COMPANY;
INSURANCE COMPANY OF GREATER NEW YORK; MUNICH REINSURANCE COM-
PANY UK GENERAL BRANCH; MUENCHENER RUECKVERSICHERUNES-
GESELLSCHAFT; WOBURN INSURANCE, LTD.; GREAT LAKES REINSURANCE U.K.
PLC; AMERICAN ALTERNATIVE INSURANCE CORPORATION; THE PRINCETON
EXCESS & SURPLUS LINES INSURANCE COMPANY; MUNICH REINSURANCE
AMERICA, INC., FORMERLY KNOWN AS AMERICAN RE-INSURANCE COMPANY;
COLISEE RE, FORMERLY KNOWN AS AXA RE AND SUCCESSOR TO THE INTERESTS

1    AND LIABILITIES OF SPS REASSURANCE; COLISEE RE CANADIAN BRANCH,
2    FORMERLY KNOWN AS AXA RE CANADIAN BRANCH AND FORMERLY KNOWN AS
3    AXA CORPORATE SOLUTIONS REASSURANCE CANADIAN BRANCH; COLISEE RE
4    MADEIRA BRANCH, FORMERLY KNOWN AS AXA RE MADEIRA BRANCH; PORTMAN
5    INSURANCE LIMITED, FORMERLY KNOWN AS AXA GLOBAL RISKS (UK) LTD. AND
6    SUCCESSOR TO THE INTERESTS AND LIABILITIES OF AXA REINSURANCE UK PLC;
7    AXA CORPORATE SOLUTIONS ASSURANCE UK BRANCH; AXA INSURANCE
8    COMPANY, FORMERLY AXA CS INSURANCE CO.; COLISEUM REINSURANCE
9    COMPANY, FORMERLY AXA CS REINSURANCE CO. US; AXA VERSICHERUNG AG;
10    AXA CESSIONS; AXA CORPORATE SOLUTIONS SERVICES UK LTD. AND AXA
11    CORPORATE SOLUTIONS ASSURANCE, FOR ITSELF AND SUCCESSOR TO THE
12    INTERESTS AND LIABILITIES OF AXA CORPORATE SOLUTIONS ASSURANCE
13    CANADIAN BRANCH; AXA ART INSURANCE CORPORATION; PARIS RE ASIA
14    PACIFIC PTE. LTD., FORMERLY KNOWN AS AXA RE ASIA PACIFIC PTE. LTD.; PARIS
15    RE, SUCCESSOR TO THE INTERESTS AND LIABILITIES OF COMPAGNIE GENERALE
16    DE REASSURANCE DE MONTE CARLO; INDUSTRIAL RISK INSURERS AND ITS
17    MEMBERS; AEGIS INSURANCE SERVICES, INC.; LIBERTY INSURANCE UNDERWRIT-
18    ERS, INC.; NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH; NUCLEAR
19    ELECTRIC INSURANCE LIMITED; CERTAIN UNDERWRITERS AT LLOYD'S COMPRIS-
20    ING SYNDICATES NO. 1225 AND 1511; CONSOLIDATED EDISON COMPANY OF NEW
21    YORK, INC.; QBE INTERNATIONAL INSURANCE LTD.; CERTAIN UNDERWRITERS AT
22    LLOYD'S LONDON, AS MEMBERS OF SYNDICATES NUMBERED 1212, 1241, 79, 506,
23    AND 2791; ASSURANCES GENERALES DE FRANCE IART; ASSURANCES GENERALES
24    DE FRANCE; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY F/K/A ALLIANZ
25    INSURANCE COMPANY; ALLIANZ INSURANCE COMPANY OF CANADA; ALLIANZ
26    SUISSE VERSICHERUNGS-GESELLSCHAFT; ALLIANZ VERSICHERUNGS-
27    AKTIENGESELLSCHAFT; FIREMAN'S FUND INSURANCE COMPANY; MAYORE
28    ESTATES, LLC; 80 LAFAYETTE ASSOCIATES, LLC; BARCLEY DWYER CO., INC.;
29    KAROON CAPITAL MANAGEMENT, INC.; N.S. WINDOWS LLC; TOWER COMPUTER
30    SERVICES, INC.; WALL STREET REALTY CAPITAL, INC.; WORLD TRADE FARMERS
31    MARKET, INC.; ADEM ARICI; OMER IPEK; MVN ASSOCIATES, INC.; MARSHA VAN
32    NAME; DANIEL D'AQUILA; FLOYD VAN NAME,
33
34    *Plaintiffs-Appellees*,
35
36    AMERICAN AIRLINES, INC.; AMR CORPORATION; UNITED AIR LINES, INC.; UAL
37    CORPORATION; US AIRWAYS, INC.; US AIRWAYS GROUP, INC.; COLGAN AIR, INC.;
38    GLOBE AVIATION SERVICES CORPORATION; GLOBE AIRPORT SECURITY SERVICES,
39    INC.; HUNTLEIGH USA CORPORATION; ICTS INTERNATIONAL N.V.; THE BOEING
40    COMPANY; MASSACHUSETTS PORT AUTHORITY; BURNS INTERNATIONAL SECU-

1    RITY SERVICES COMPANY, LLC, FORMERLY KNOWN AS BURNS INTERNATIONAL
2    SECURITY SERVICES CORPORATION; BURNS INTERNATIONAL SERVICES COM-
3    PANY, LLC, FORMERLY KNOWN AS BURNS INTERNATIONAL SERVICES CORPORA-
4    TION; PINKERTON'S LLC, FORMERLY KNOWN AS PINKERTON'S INC.;
5    SECURITAS AB,

7    *Defendants-Appellees.*

9    _____

11   Before:      B.D. PARKER, LIVINGSTON, and LYNCH, *Circuit Judges*.

12   Intervenors-Appellants World Trade Center Properties LLC, 1 World

13   Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4

14   World Trade Center LLC, and 7 World Trade Company, L.P. (collectively "WTCP

15   Plaintiffs") appeal from a final Order of the United States District Court for the

16   Southern District of New York (Alvin K. Hellerstein, *District Judge*) granting

17   Plaintiffs-Appellees' (collectively "Settling Plaintiffs") and Defendants-Appellees'

18   (collectively "Aviation Defendants") joint motion for orders approving their

19   Settlement Agreement and Mutual Release of Claims.  We hold that the Air

20   Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), Pub.

21   L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101,

22   note), does not preempt New York State's "first-come, first-served" settlement

23   rule, and that the proposed settlement payments reduce each contributing

24   Aviation Defendants' remaining liability pursuant to the liability limits defined

25   in ATSSSA.  We also conclude that the district court did not abuse its discretion

3

1    in finding that the Settling Plaintiffs and Aviation Defendants entered into their

2    settlement agreement in good faith.  Accordingly, we affirm the district court's

3    approval of the settlement.

4          AFFIRMED.

6                                    CATHI HESSION (Richard Williamson, *on the*
7                                    *brief*), Flemming Zulack Williamson Zauderer
8                                    LLP, New York, New York, *for Intervenors-*
9                                    *Appellants*.

11                                   GREGORY P. JOSEPH (Douglas J. Pepe, *on the*
12                                   *brief*), Gregory P. Joseph Law Offices LLC, New
13                                   York, New York, *for Plaintiffs-Appellees*.

15                                   ROGER E. PODESTA, Debevoise and Plimpton LLP;
16                                   Desmond T. Barry, Jr., Condon & Forsyth LLP,
17                                   New York, New York, *for Defendants-Appellees*.

20    DEBRA ANN LIVINGSTON, *Circuit Judge*:

21          Intervenors-Appellants World Trade Center Properties LLC, 1 World

22    Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4

23    World Trade Center LLC, and 7 World Trade Company, L.P. (collectively "WTCP

24    Plaintiffs") appeal from a final Order of the United States District Court for the

25    Southern District of New York (Alvin K. Hellerstein, *District Judge*) granting

26    Plaintiffs-Appellees' (collectively "Settling Plaintiffs") and Defendants-Appellees'

27    (collectively "Aviation Defendants") joint motion for orders approving their

28    Settlement Agreement and Mutual Release of Claims, dated February 23, 2010.

                                        4

The district court also ordered all amounts paid pursuant to the settlement agreement to be credited to the contributing Aviation Defendants' respective liability ceilings under § 408(a)(1) of the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101, note).  It further found that Defendant-Appellee Huntleigh USA Corp.'s ("Huntleigh") insurers will exhaust the limits of Huntleigh's liability insurance coverage by making payments pursuant to the settlement agreement.

The WTCP Plaintiffs argue that the district court's application of New York state settlement rules was contrary to, and thus preempted by, ATSSSA. They also contend that the court failed to make a proper evaluation of the fairness of the settlement agreement, and that the court erred in crediting the proposed settlement payments to the contributing Aviation Defendants' respective liability limits under ATSSSA.  We hold that ATSSSA does not preempt New York State's "first-come, first-served" settlement rule, and that the proposed settlement payments pursuant to the settlement agreement properly reduce the contributing Aviation Defendants' remaining liability under ATSSSA's liability limits.  We further conclude that the district court did not abuse its discretion in finding that the Settling Plaintiffs and Aviation Defendants entered into their settlement in good faith.

5

## BACKGROUND

1        This case concerns the multitude of property damage claims that arose

from the terrorist attacks of September 11, 2001, when American Airlines Flight

11 and United Air Lines Flight 175 struck Towers One and Two of the World

Trade Center.  Defendant-Appellee Globe Airport Security Services, Inc.

("Globe") provided security services for Defendant-Appellee American Airlines,

Inc. ("American") and screened the passengers aboard Flight 11.  Huntleigh

provided similar services for Defendant-Appellee United Air Lines, Inc.

("United"), and screened the passengers aboard Flight 175.

        Among the several groups of plaintiffs that filed suit against the Aviation

Defendants, the Settling Plaintiffs alleged subrogated and uninsured property

damage and business interruption claims.  The WTCP Plaintiffs similarly

asserted claims, alleging, *inter alia*, that, but for the negligence of the Aviation

Defendants, the terrorists would not have boarded Flights 11 and 175, and the

WTCP Plaintiffs' property would not have been destroyed.  After a lengthy

period of discovery, the Settling Plaintiffs and Aviation Defendants entered into

a mediation process in which retired U.S. District Judge John S. Martin, Jr.,

served as mediator.  The WTCP Plaintiffs, however, did not participate after

Judge Martin concluded that their position was so far apart from that of the

Aviation Defendants that mediation efforts would be unproductive.

1    Towards the end of the mediation proceedings between the Settling

2    Plaintiffs and the Aviation Defendants, which lasted two full weeks, Judge

3    Martin concluded that the two sides remained far apart.  He proposed a

4    "mediator's number" of $1.2 billion to settle all claims.  The proposed amount,

5    which Judge Martin believed to represent a reasonable settlement of all of the

6    Settling Plaintiffs' claims, reflected a 72 percent discount from the Settling

7    Plaintiffs' total claimed damages of $4.4 billion, and was higher than the last

8    settlement offer by the Aviation Defendants.  Both sides accepted Judge Martin's

9    number and, on February 23, 2010, entered into their Settlement Agreement

10   and Mutual Release of Claims.

11   The settlement resolves 18 of the 21 property damage actions comprising

12   the master calendar for September 11 property damage claims, 21 MC 101.[1]

13   Under the terms of the agreement, four of the Aviation Defendants are to pay

14   the entire settlement amount of $1.2 billion.  American and Globe will pay 60

15   percent of the settlement, for damages attributed to Flight 11, while United and

16   Huntleigh will pay the remaining 40 percent, for damages attributed to Flight

17   175.  Because Huntleigh had a small amount of insurance relative to the other

---

[1] Due to the great number of September 11 related lawsuits, the district court consolidated these cases under four master case numbers, which separated the cases by subject matter. *In re Sept. 11 Litig.*, 567 F. Supp. 2d 611, 614 n.3 (S.D.N.Y. 2008). 21 MC 101 encompassed wrongful death, personal injury and property damage lawsuits resulting from the terrorist attacks. *Id.*

contributing Aviation Defendants, the agreement further provides that
Huntleigh will contribute, and thereby exhaust, its available insurance coverage.
In exchange, each Settling Plaintiff is to execute and deliver releases discharging
and releasing all Aviation Defendants, as well as the contributing Aviation
Defendants' insurers, from all claims relating to or arising out of the September
11 attacks.  The agreement is expressly conditioned, in relevant part, upon the
district court's: 1) approving both the settlement and the allocation of payments
between the contributing Aviation Defendants as consistent with ATSSSA; 2)
concluding that all amounts paid pursuant to the settlement agreement are to
be credited against the contributing Aviation Defendants' respective ATSSSA
liability limits; and 3) finding that Huntleigh exhausted its liability limits under
ATSSSA.

In an Opinion and Order dated July 1, 2010, the district court approved
the settlement agreement and ordered all amounts paid pursuant to the
settlement agreement to be credited against the liability ceilings of the
contributing Aviation Defendants.  The court also concluded that payment by
Huntleigh's insurers exhausted the limits of Huntleigh's liability insurance
coverage.  On July 23, 2010, the district court issued an order clarifying that its
Opinion and Order was final and appealable in each of the settled actions and
in the collective 21 MC 101 action.  It also granted intervenor status in each of

the settled actions to the WTCP Plaintiffs. The court directed entry of final judgment pursuant to Fed. R. Civ. P. 54(b). Judgment was entered in the collective 21 MC 101 action on July 23, 2010, and in each of the settled actions on July 29, 2010. The WTCP Plaintiffs timely appealed from the collective action on July 30, 2010, and from each settled action on August 9, 2010.

## DISCUSSION

On appeal, the WTCP Plaintiffs contend that the district court erred in three respects. First, the WTCP Plaintiffs argue that the district court's approval of the settlement pursuant to New York state law was contrary to ATSSSA. Second, they argue that the district court failed to make a proper evaluation of the settlement agreement and its fairness. Third, they contend that the district court erred in crediting the settlement payments to the Aviation Defendants' ATSSSA liability limits because such payments were not based on these defendants' "liability."

"Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role." *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992); *see also* Fed. R. Civ. P. 41(a)(1)(A) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared.").

9

In some circumstances, however, "parties are unwilling to drop litigation unless a court invokes its equitable powers to enforce their agreement." *In re Masters*, 957 F.2d at 1025; *see also* Manual for Complex Litigation (Fourth) § 13.14 (2004). We generally review a district court's approval of a settlement agreement for abuse of discretion. *See Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999). We review a district court's factual conclusions under the "clearly erroneous" standard, and its legal conclusions *de novo*. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

## I.  Whether the District Court Properly Applied State Law to Approve the Settlement Agreement

As the district court noted, under New York State law, an insurer has discretion to settle whenever and with whomever it chooses, provided it does not act in bad faith. *See Allstate Ins. Co. v. Russell*, 788 N.Y.S.2d 401, 402 (N.Y. App. Div. 2d Dep't 2004). This "'first in time, first in right' principle" applies regardless of "whether the priority is by way of judgment or by way of settlement." *David v. Bauman*, 196 N.Y.S.2d 746, 748 (N.Y. Sup. Ct. 1960). The WTCP Plaintiffs argue that the district court's application of this "first-come, first-served" settlement rule was contrary to, and therefore preempted by, ATSSSA for two primary reasons. First, they contend that ATSSSA's liability

limits created a "limited fund," from which they are entitled to a just and fair

distribution.  Second, they argue that pursuant to ATSSSA's provisions and its

overall statutory scheme, they are entitled to adequate compensation notwith-

standing the statute's liability limitations.  Relying on our prior decision in

*Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*,

335 F.3d 52 (2d Cir. 2003), they assert that they are one of "those injured or

killed in the terrorist attacks," to whom ATSSSA "ensur[ed] . . . adequate

compensation."  *Id.* at 55.  The WTCP Plaintiffs' contentions lack merit.

Section 408(b)(2) of ATSSSA provides that the substantive law for decision

in actions arising out of the September 11 terrorist attacks "shall be derived

from the law . . . of the State in which the crash occurred unless such law is

inconsistent with or preempted by Federal law."  ATSSSA § 408(b)(2).  In

construing various provisions of ATSSSA, we have recognized that federal law

preempts state law pursuant to the Supremacy Clause, U.S. Const. art. VI, cl.

2, where, *inter alia*: 1) Congress preempts state law in express terms (and within

its constitutional limits); 2) state law "actually conflicts" with federal law; or 3)

state law "stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress."  *In re WTC Disaster Site*, 414 F.3d 352,

371-72 (2d Cir. 2005) (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*,

471 U.S. 707, 713 (1985)).  If, as here, a statute contains an express preemption

11

clause, "'the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Id.* at 372 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

A.  *Whether ATSSSA's Liability Limits Create a "Limited Fund"*

The WTCP Plaintiffs' claim that ATSSSA created a "limited fund," preempting New York's "first-come, first-served" settlement rule, is without merit.  In a section entitled "Limitation on liability," ATSSSA specifies that liability "for all claims, whether for compensatory or punitive damages or for contribution or indemnity," against the Aviation Defendants "shall not be in an amount greater than the limits of liability insurance coverage maintained by" the Aviation Defendants.  ATSSSA § 408(a)(1).  We have repeatedly made clear that this provision – far from creating a fund for the payment of claims – instead "caps tort liability stemming from the attacks at 'the limits of the liability insurance coverage maintained by the [Aviation Defendants].'" *Schneider v. Feinberg*, 345 F.3d 135, 139 (2d Cir. 2003) (per curiam) (quoting ATSSSA § 408(a)); *see also In re WTC Disaster Site*, 414 F.3d at 373 (noting that a "principal component[ ]" of ATSSSA was "the *limitation* of the airlines' liability for damages sustained as a result of those crashes" (emphasis added)); *Canada Life*, 335 F.3d at 55 (noting that § 408(a) "limits the liability for the events of

12

1    September 11" of the Aviation Defendants).  A primary purpose of ATSSSA, as

2    we have noted, was to "preserve the continued viability of the United States air

3    transportation system from potentially ruinous tort liability in the wake of the

4    attacks." *Schneider*, 345 F.3d at 139 (internal quotation marks omitted); *see also*

5    *In re WTC Disaster Site*, 414 F.3d at 377 (observing that a "principal goal[ ]" was

6    "to limit the liability of entities that were likely to be sued for injuries suffered

7    in connection with the crashes"); *Canada Life*, 335 F.3d at 55 (finding that a

8    "general purpose" of ATSSSA was "to protect the airline industry and other

9    potentially liable entities from financially fatal liabilities").

10           Nothing in ATSSSA's text suggests that Congress intended to create a

11   "limited fund" from which plaintiffs bringing a federal cause of action under

12   ATSSSA against the Aviation Defendants are entitled to an equitable share.  To

13   the contrary, various provisions of the statute concern the administration of, and

14   eligibility regarding, a Victim Compensation Fund for individuals willing to

15   *waive* such a cause of action pursuant to § 408(b).  *See* ATSSSA §§ 404-06.  And

16   Congress provided explicitly for the treatment of certain other claims involving

17   other defendants, specifying, for instance, the funds from which debris removal

18   claims were to be paid, and the manner in which settlements or judgments were

19   to be treated.  *See* ATSSSA § 408(a)(5) ("Payments to plaintiffs who obtain a

20   settlement or judgment with respect to a claim or action to which paragraph (4)

13

[(debris removal actions)] applies, shall be paid solely from the following funds in the following order.").  Had Congress intended to create a "limited fund" for those plaintiffs pursuing an ATSSSA cause of action against the Aviation Defendants, and to constrain the manner in which settlements could be made, it would have done so in far more explicit terms.

B.  *Whether ATSSSA's Purpose and Statutory Scheme Preempt New York's "First-Come, First-Served" Settlement Rule*

The WTCP Plaintiffs next contend that this Court in *Canada Life* concluded that Congress intended to ensure that ATSSSA's liability limit preserved the ability of any claimant to recover a damages award, requiring, here, the preemption of New York's "first-come, first served" settlement rule. We disagree.  *Canada Life* discussed Congress's decision to require a single forum for all actions, and found that the goal of requiring a single forum was to "ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11."  335 F.3d at 58.  We acknowledged that Congress sought to avoid the undesirable effects of litigation in multiple state and federal fora, and noted that such effects "*might* include adjudications having a preclusive effect on non-parties or substantially impairing or impeding non-parties' abilities to protect their rights."  *Id.* at 59 (emphasis added).  This discussion in *Canada Life*, however, referred solely to the purposes of ATSSSA's

14

exclusive venue provision. We never suggested there that ATSSSA pursued the

goal of avoiding preclusive effects by any means other than requiring an

exclusive forum. *Canada Life* therefore does not support the WTCP Plaintiffs'

argument.

We conclude that New York's "first-come, first-served" rule, as applied by

the district court, is neither inconsistent with ATSSSA, nor does it stand as an

obstacle to the accomplishment of Congress's objectives in enacting ATSSSA.

Moreover, because neither ATSSSA nor other federal law controls the approval

of settlements in actions commenced under § 408(b)(1), state law settlement

rules apply to this case. *See id.* § 408(b)(2). The district court therefore properly

applied state law settlement rules to the settlement agreement.


## II.  Whether the District Court Failed to Make a Proper Evaluation of the Settlement

The WTCP Plaintiffs next argue that the district court failed to make a

proper evaluation of the settlement and its relative fairness. Under New York

law, an insurer "has no duty to pay out claims ratably and/or consolidate them,"

so long as it does not act in bad faith. *Allstate Ins. Co.*, 788 N.Y.S.2d at 402

(citing *Duprey v. Sec. Mut. Cas. Co.*, 256 N.Y.S.2d 987, 989 (N.Y. App. Div. 3d

Dep't 1965)). An insurer may therefore "settle with less than all of the claimants

15

under a particular policy even if such settlement exhausts the policy proceeds." *STV Grp., Inc. v. Am. Cont'l Props., Inc.*, 650 N.Y.S.2d 204, 205 (N.Y. App. Div. 1st Dep't 1996). Such settlements are not "voluntary" or "additional insurance," but rather "reduc[e] the liability remaining under the policy." *Duprey*, 256 N.Y.S.2d at 989. This has long been the rule across several jurisdictions.[2] *See* 70 A.L.R.2d 416 § 2a (2008); 46A C.J.S. Insurance § 2318 (2010).

The WTCP Plaintiffs have presented no evidence of the bad faith necessary to draw into question the settlement in this case.[3] The settling parties' mediator, Judge Martin, attested that the settling parties "hotly contested each other's claims both as to legal liability and damages," and that they made detailed presentations on their differing positions. Decl. of John S. Martin, Jr. ¶ 7. He has affirmed that there was no indication during the mediation process that any of the parties softened its position on a proper settlement for interests other than its own. *Id.* ¶ 8. Judge Martin has also

---

[2] *E.g.*, *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764-65 (5th Cir. 1999); *Hartford Cas. Ins. Co. v. Dodd*, 416 F. Supp. 1216, 1219 (D. Md. 1976); *Allstate Ins. Co. v. Evans*, 409 S.E.2d 273, 274 (Ga. App. 1991); *Alford v. Textile Ins. Co.*, 103 S.E.2d 8, 13 (N.C. 1958); *Bennett v. Conrady*, 180 Kan. 485, 491 (1957).

[3] Although they argued below that the settlement was the result of secrecy and collusion, the WTCP Plaintiffs have not raised this argument on appeal. It is therefore waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

1    stated that the settlement agreement was reached "only after extensive arms-

2    length and good-faith negotiations among the parties and was not intended to

3    prejudice the rights of any other party." *Id.* ¶ 10.  In addition, the $1.2 billion

4    settlement amount was proposed by Judge Martin, represented a 72 percent

5    discount from the Settling Plaintiffs' total claimed damages of $4.4 billion, and

6    was higher than the last settlement offer by the Aviation Defendants.

7          The WTCP Plaintiffs argue that the settlement is improper because it is

8    a lump sum applicable to all of the Settling Plaintiffs' claims, and is not based

9    on a claim-by-claim assessment of potential liability.  Judge Martin explained,

10    however, that while the parties did spend a "substantial" amount of time

11    discussing damages on a claim-by-claim basis, none of these issues could be

12    resolved by the time mediation began.  *Id.* ¶ 12.  The settling parties decided

13    that the assessment of damages on an underlying claim-by-claim and defendant-

14    by-defendant basis "could not have been done in any reasonable amount of time

15    and without substantial cost." *Id.*  Instead, both parties independently

16    concluded that damages should be allocated approximately 60 percent to Flight

17    11, and 40 percent to Flight 175.  The 60/40 allocation resulted from each

18    settling party deeming Flight 11 responsible for the destruction of Tower Seven

19    – an assessment of responsibility that the WTCP Plaintiffs themselves assert in

20    their complaint.

1    The WTCP Plaintiffs also contend that the settlement is improper because

2 it releases all Aviation Defendants from liability when only four of them are

3 responsible for paying the settlement amount. However, the settling parties

4 articulated their reasons for limiting the settlement contributors to four of the

5 Aviation Defendants. The Aviation Defendants believed that adding other

6 defendants and insurers would increase plaintiffs' settlement demands and

7 further complicate negotiations without reducing payment by the contributing

8 Aviation Defendants' insurers. Further, they believed that the claims against

9 the other Aviation Defendants were weaker than those against the two airlines

10 and their checkpoint security companies. The Aviation Defendants were also

11 concerned about setting an undesirable precedent for future disasters if non-

12 carrier airlines (which might in the future include American and United)

13 contributed to the settlement. In addition, the Aviation Defendants contributing

14 to the settlement did not want to face potential indemnification claims by other

15 Aviation Defendants not released. Finally, the contributing Aviation Defen-

16 dants' insurers sought to avoid the costs of continued discovery of their four

17 insureds if the other Aviation Defendants were not released.

18    In sum, we agree with the district court that the settling parties entered

19 into their settlement agreement in good faith. We therefore conclude that the

20 district court did not abuse its discretion in approving the settlement agreement.

### III. Whether the Proposed Settlement Payments Count Towards the Aviation Defendants' Liability Limits

The WTCP Plaintiffs finally argue that the district court erred in crediting the settlement payments against the contributing Aviation Defendants' respective liability limits. They contend that ATSSSA's limitation only applies to payments for "liability," and that the settlement payments here should not count because they were not determined on the basis of the Aviation Defendants' liability. We are not persuaded.

When interpreting a statute, we must give terms their ordinary, common meaning and read them in their appropriate context. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3226 (2010) ("[I]n all statutory construction, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (internal quotation marks and alteration omitted)); *see also Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 142 (2d Cir. 2010) ("In the usual case, if the words of a statute are unambiguous, judicial inquiry should end, and the law is interpreted according to the plain meaning of its words." (internal quotation marks omitted)). The "meaning of a word [or phrase] cannot be determined in isolation, but must be drawn from the context in which it is used." *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 146 (2d Cir. 1999) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)).

19

1    ATSSSA states in relevant part, "*liability* for all claims . . . shall not be in

2    an *amount* greater than the limits of liability insurance coverage maintained by

3    [an Aviation Defendant]."  ATSSSA § 408(a)(1) (emphasis added).  "Liability,"

4    meanwhile, is defined as either: 1) "[t]he quality or state of being legally

5    obligated or accountable"; or 2) "[a] financial or pecuniary obligation."  Black's

6    Law Dictionary 997 (9th ed. 2009).  Here, reading the term in context, it is clear

7    that "liability" refers to a "financial or pecuniary obligation" that can arise

8    through the settlement of claims.  This reading of "liability" in § 408(a)(1)

9    accords with the common understanding of "liability insurance," which

10   commonly provides for an insured's claim to arise "once the insured's [legal

11   obligation] to a third party has been *asserted*."  Black's Law Dictionary 873 (9th

12   ed. 2009) (emphasis added); *see also* 15 Holmes' Appleman on Insurance § 111.1

13   (2d ed. 2000) ("[L]iability insurance protects the insured against *damages* which

14   he *may be liable* to pay to third parties arising out of the insured's conduct."

15   (emphasis added)). Settlements, in turn, "reduc[e] the *liability* remaining under

16   the policy."  *Duprey*, 256 N.Y.S.2d at 989 (emphasis added).

17   This reading also coheres with other provisions of ATSSSA Title IV –

18   namely § 408(a)(4), which uses similar language to limit the "liability" of certain

19   defendants for debris removal claims.  While paragraph (4) specifies the limits

20   of "liability" for such entities, paragraph (5) specifies a priority of payments for

20

plaintiffs who obtain "a *settlement* or judgment" with respect to "a claim or action to which paragraph (4) applies." ATSSSA § 408(a)(5) (emphasis added). If "liability," as used in § 408(a)(4), referred only to payments for legally adjudicated obligations, paragraph (5) would be rendered meaningless, and the word "settlement" reduced to surplusage, since there could be no "settlement . . . to which paragraph (4) applies" under the WTCP Plaintiffs' reading. It thus makes better sense to read "liability" to include the settlement payments made here. The district court therefore did not abuse its discretion or commit an error of law in crediting the settlement payments against the contributing Aviation Defendants' limits of liability.

## CONCLUSION

We have considered the parties' remaining arguments and find them to be moot or without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.