UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

| | |
|---|---|
| IN RE SEPTEMBER 11 LITIGATION | 21 MC 101 (AKH)<br>This document relates to:<br>Bavis v. United Airlines Inc. et al., 02 Civ. 7154;<br>World Trade Center Properties LLC, et al. v. United Airlines, Inc. et al., 08 Civ. 3719; and<br>World Trade Center Properties, LLC et al. v. American Airlines, Inc., et al., 08 Civ. 3722 |

------------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ICTS INTERNATIONAL, N.V. FOR SUMMARY JUDGMENT DISMISSING THE REMAINING CLAIMS AGAINST IT

Defendant ICTS International, N.V. ("ICTS") submits this memorandum in support of its motion for summary judgment dismissing the remaining actions against it.

### Facts

ICTS is a corporation organized and existing under the laws of The Netherlands. In 2000 and 2001, David W. Sass acted as general counsel for ICTS.[1]

In 2000 and 2001 ICTS had (and still has) a wholly owned subsidiary, ICTS USA, Inc. ("ICTS USA"). ICTS USA is a corporation organized and existing under the laws of the State of New York. In 2000 and 2001, Mr. Sass was a member of ICTS USA's board of directors, and in 2001 he served as its corporate secretary.

---

[1] The facts are set forth in the accompanying declaration of David W. Sass.

1

Effective as of January 1, 1999, ICTS USA purchased 80% of the stock of Huntleigh USA, Corporation ("Huntleigh"), and effective October 17, 2000 it purchased the remaining 20% of Huntleigh stock. Accordingly, as of October 17, 2000, Huntleigh has been, and still is, a wholly owned subsidiary of ICTS USA. Huntleigh is a corporation organized and existing under the laws of the State of Missouri. In 2001 Mr. Sass was a member of Huntleigh's board of directors, and he also served as its corporate secretary.

In 2000 and 2001, ICTS, ICTS USA and Huntleigh each had separate boards of directors. In 2000 and 2001 the boards of ICTS, ICTS USA and Huntleigh had some overlapping members, but none of the boards was identical with either of the other two.

In 2000 Mr. Sass was corporate secretary for ICTS USA, but he was not a corporate officer of either ICTS or Huntleigh during that year. In 2001 Mr. Sass was corporate secretary of each of ICTS USA and Huntleigh, but he was not a corporate officer of ICTS in that year. None of the other corporate officers of either ICTS or ICTS USA also served as a corporate officer of Huntleigh during either of 2000 or 2001.

From 1999 through 2001, and thereafter, the three companies operated as three separate entities. They each had different principal places of business. In 2000 and 2001 ICTS' principal place of business was located in Amsterdam, The Netherlands. In 2000 and 2001, ICTS USA's principal place of business was located in New York, New York. In 2000 and 2001, Huntleigh's principal place of business was located in St. Louis, Missouri. Each of the three companies kept separate books and records. Each of the three companies had separate bank accounts.

In 2000 and 2001 Huntleigh's president, Joseph Tuero, was in charge of Huntleigh's day to day business operations. Mr. Tuero was not a board member or corporate officer of either

ICTS or ICTS USA.

Huntleigh entered into contracts to provide security screening services in the United States in its name and not in the name of any other company. Huntleigh hired and paid its security screening personnel.

### The Remaining Actions Against ICTS

ICTS is a defendant in the remaining wrongful death lawsuit, <u>Bavis v. United Airlines, Inc.</u>, et al., 02 Civ. 7154 (AKH). The claims in the <u>Bavis</u> action have been incorporated in the Fourth Amended Flight 175 Master Liability Complaint.

ICTS is a defendant in two remaining property damage lawsuits, <u>World Trade Center Properties, LLC, et al. v. United Airlines, Inc., et al.</u>, 08 Civ. 3719 (AKH), and <u>World Trade Center Properties LLC, et al. v. American Airlines, Inc., et al.</u>, 08 Civ. 3722 (AKH).

The Complaints in each remaining action and ICTS' Answers are Exhibits to the supporting Declaration of Jon Paul Robbins.

The remaining Complaints all make the same conclusory allegation against ICTS. Each Complaint alleges that ICTS is the "parent corporation" of defendant Huntleigh, that ICTS exercised control over Huntleigh, its alleged "wholly owned subsidiary," and that ICTS is therefore liable for Huntleigh's alleged wrongful acts. None of the Complaints alleges that ICTS utilized its alleged control to commit a fraud or wrong against any of the plaintiffs with respect to the events of September 11, 2001.

ICTS did not, and does not own Huntleigh. ICTS owned and owns all the stock in ICTS USA, Inc., which owned and owns all the stock in Huntleigh. Plaintiffs agrees that ICTS USA owns Huntleigh. See the enclosure to Ms. Schiavo's March 11, 2011 letter to the

3

court, attached as Exhibit 8 to the Robbins Declaration submitted in support of the motion.

## Argument

### Plaintiffs Have Not, and Cannot, Meet Their Burden on the Issue of Piercing the Corporate Veil

ICTS did not exercise complete domination and control over Huntleigh with respect to Huntleigh's security screening operations. Even if such control existed, and it did not, ICTS did not use such control to commit a wrong or fraud that injured plaintiffs. Accordingly, ICTS may not be held responsible for Huntleigh's alleged wrongful acts.

A. Standard of Review

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party bears the burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). ICTS has met this burden.

B.  Plaintiffs Cannot Prove Domination and Control;  Nor Can Plaintiffs Prove that ICTS Used the Alleged Domination to Commit a Wrongful Act Against Plaintiffs

Ordinarily, a corporation is not liable for the acts of a related company. As the Second Circuit has explained,

> "[a] corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owners. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between the corporation and its owners...which is entitled to substantial weight." American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988), cert. den., 488 U.S. 852 (1988) (internal citations omitted).

The New York Court of Appeals has set forth the applicable law as follows:

"As a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders, and consequently will not impose liability upon shareholders for the acts of the corporation." Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 163, 432 N.Y.S. 2d 879, 885-886 (1980), *rearg. den.*, 52 N.Y.2d 829, 437 N.Y.S.2d 1030 (1980).

In order to avoid this "general rule" and pierce the corporate veil, a plaintiff must plead and prove *both* (i) that the defendant corporation exercised complete domination and control over the related company with respect to the matter in controversy, and (ii) that the defendant corporation used such control and domination to commit a wrong or fraud that injured plaintiffs. Morris v. N.Y.S. Dep't of Taxation and Finance, 82 N.Y.2d 135, 141-142, 603 N.Y.S.2d 807, 810-811 (1993) (domination alone is not enough; plaintiff must show that owners, through such domination, abused the privilege of doing business in corporate form to perpetrate an injustice against plaintiff). See, also, TNS Holdings v. MKI Securities Corp., 92 N.Y.2d 335, 339, 680 N.Y.S. 2d 891, 893 (1998); Rapid Transit Subway Constr. Co. v. City of New York, 259 N.Y. 472, 487-488 (1932).

The courts will pierce the corporate veil only if there is domination sufficient to render the corporate form a sham. In order for corporations to be considered alter egos, there must be direct intervention in the management of the subsidiary to such an extent that the subsidiary's "paraphernalia of incorporation, directors and officers are completely ignored." Billy v. Consolidated Machine Tool Corp. *supra*, 51 N.Y.2d at 163, 432 N.Y.S.2d at 886 (1980). See, also, BLD Productions, LLC v. Viacom, Inc., 2011 WL 1327340 *9-11 (S.D.N.Y. 2011) (no proof of required domination, or that the alleged domination was used to commit a wrong or fraud).

The Second Circuit made clear in <u>American. Protein Corp. v. AB Volvo</u>, *supra*, 844 F.2d at 60 that in order to pierce the corporate veil :

> "The parent must exercise complete domination 'in respect to the transaction attacked' so that the subsidiary had 'at the time' no separate will of its own and such domination must have been used to 'commit fraud or wrong' against plaintiff, which proximately caused plaintiff's injury...."

> "Factors indicating that a parent company controls its subsidiary include lack of normal corporate formality in the subsidiary's existence, under-capitalization, and personal use of the subsidiary's funds by the parent or owner."

The Second Circuit held that none of those factors had been proven in the case before it, and reversed a jury verdict that had pierced the corporate veil. The result here should be the same.

Plaintiffs are trying to hold ITCS, which does not even own Huntleigh, liable for Huntleigh's alleged wrongdoing. In order to do so, plaintiffs are required to prove that ICTS exercised domination and control over Huntleigh with respect to Huntleigh's security screening services and also that ICTS used such domination and control to commit a wrong or fraud that injured plaintiffs.

The Plaintiffs' conclusory statements in the Complaints as to alleged control are not sufficient. They are required to allege and prove particularized facts that warrant the piercing of the corporate veil. <u>Andejo Corp. v. South St. Seaport Ltd. P'ship</u>, 40 A.D.3d 407, 836 N.Y.S.2d 571, 572 (1st Dep't 2007). Plaintiffs have not even attempted to meet this burden.

The fact that the three companies shared some directors and one officer (the corporate secretary) is not proof of domination and control. <u>American Protein Corp. v. AB Volvo</u>, *supra*, 844 F.2d at 60 ("this commonplace circumstance of modern business does not furnish such proof of control as will permit a court to pierce the corporate veil").

6

Plaintiffs have not adduced any proof that ICTS exercised sufficient domination over Huntleigh to pierce the corporate veil. There is no evidence that ICTS disregarded the corporate formalities, that Huntleigh was undercapitalized, or that funds were intermingled.

Further, there is no any evidence, or even any allegation in the Complaints, that the alleged control, even assuming it existed, ever was utilized by ICTS to perpetrate a wrong or fraud on the plaintiffs.

## Conclusion

For all the foregoing reasons, it is respectfully submitted that the motion of ICTS International, N.V. for summary judgment be granted in all respects.

New York, New York
May 3, 2011

Respectfully submitted,

McLaughlin & Stern, LLP
By _____
Jon Paul Robbins
Attorneys for defendant ICTS
International, N.V.
260 Madison Avenue
New York, New York 10016
212-448-1100