# Exhibit E

Case 1:02-cv-07154-AKH   Document 189-5   Filed 07/08/11   Page 1 of 5

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix III
Page 1

## PERSON/HAND-CARRIED (CARRY-ON) ITEM SCREENING GUIDELINES

Section 316 of the Federal Aviation Act provides in part that, to the maximum extent practicable, the FAA Administrator shall require uniform procedures for the inspection, detention, and search of persons and property in air transportation to assure their safety and to assure that they receive courteous and efficient treatment by air carrier representatives and law enforcement personnel engaged in carrying out any air transportation security program. The functions and procedures delineated herein are for the guidance of air carrier and law enforcement personnel assigned to conduct or support established preboard screening. They are consistent with current legal guidelines and are designed to effect uniform application, optimum safety, and the courteous and efficient treatment of all persons subject to preboard screening.

I.  **AIR CARRIER PREBOARD SCREENING FUNCTIONS.**

   A.  Air carriers are responsible for carrying out prescribed preboard screening procedures.

   B.  Air carriers are required to deny passage beyond the screening point to any person or property that has not been screened or inspected.

   C.  Air carriers are required to immediately notify the supporting law enforcement officer when a weapon, explosive, or incendiary is discovered or suspected during the screening process. Notification should be accomplished discreetly to prevent undue alarm.

II. **GUIDELINES FOR SCREENING PERSONS.**

   A.  **Step #1** -- Initial processing is conducted by an air carrier representative employee or agent of the air carrier using either a walk-through metal detector or a hand-held metal detector. If the person being screened does not alarm the detector, the person is cleared to proceed beyond the screening point. If the metal detector alarms, the person must be reprocessed to determine the cause of the alarm prior to being cleared to proceed beyond the screening point.

   B.  **Step #2** -- Reprocessing is conducted by an air carrier representative whenever a person causes a metal detector to alarm during initial processing. The person causing the alarm divests his/her person of metal and is then reprocessed through a walk-through

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011338

Case 1:02-cv-07154-AKH   Document 189-5   Filed 07/08/11   Page 3 of 5

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix III
Page 2

metal detector. (If the air carrier elects to do so, reprocessing may be done by hand-held metal detector in accordance with procedures described in Step #3.) Items taken from the person should be ▇▇▇▇ inspected. Persons who do not alarm the metal detector during reprocessing are cleared to proceed beyond the screening point. However, if the walk-through metal detector alarms during reprocessing, the person must undergo additional screening prior to being cleared to proceed beyond the screening point.

C. **Step #3** -- Additional screening is conducted by an air carrier representative whenever individuals cannot be cleared during Step #2. The person should again be requested to divest himself of metal. A hand-held metal detector is then used to determine and isolate the area of the alarm. Once the area has been isolated, the cause of the alarm should be determined, with the person's assistance, through a consent search either by observation, physical inspection of outer garments, or by inspection of the contents of a pocket. The system used should be the least offensive to the person while assuring positive identification of the unidentified metal. Physical inspections should be conducted by the most experienced personnel. A physical inspection of an isolated area that extends beyond inspection of the contents of a pocket may be considered sensitive and should be conducted by a person of the same sex as the person being inspected. In such instances, the screener may call upon the LEO to conduct this more extensive physical inspection. Good judgment must be used to ensure the LEO is alerted and performs the search whenever appropriate or necessary. Assurances that large belt buckles, prosthetic devices, etc., which cause a metal detector to alarm, are not being used to conceal a weapon, in most instances, can be accomplished by examination by the air carrier representative. All metal detector alarms must be resolved prior to a person being cleared to proceed beyond the screening point. In the event an alarm cannot be resolved or there is reason to believe a weapon may be concealed on the person being screened, the supporting LEO shall be advised.

D. **Step #4** -- Further consent searches by the LEO providing support for the preboard screening procedures are conducted when the cause of a metal detector alarm cannot be ascertained by air carrier personnel after

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011339

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix III
Page 3

carrying out the procedures described in Steps 1 through 3. Under such circumstances, the law enforcement officer acts to assist the air carrier by virtue of his or her expertise and is not considered to be conducting a law enforcement frisk/search, unless in his or her professional judgment, the circumstances require same. Such a voluntary search shall be limited to the area of the unresolved alarm and only be conducted to the extent necessary to assure the absence of a weapon. These searches should be conducted by persons of the same sex as the person being frisked. If the cause for alarm is determined to be other than a deadly or dangerous weapon and not an object inimical to flight safety, an air carrier representative is to be advised. The air carrier representative may then grant permission for the person to proceed to board. If an explosive, incendiary, or deadly or dangerous weapon or other contraband is discovered, the LEO will take custody of and determine proper disposition of the item, and initiate any appropriate law enforcement action. If at any time during a voluntary search, when his or her professional judgment demands it, the LEO may conduct a full law enforcement frisk/search incident to arrest.

E. Complete searches are to be conducted by a LEO whenever there is reason to believe a deadly or dangerous weapon may be concealed on the person, or at any time when, in the judgment of the LEO, circumstances or facts exist that require a more extensive search. The extent of these searches will be dictated by the necessity of the situation and the legal authority possessed by the LEO.

III. **HAND-CARRIED (CARRY-ON) ITEM SCREENING GUIDELINES.**

A. **Step #1** -- Carry-on Item Inspection is conducted by an air carrier representative using an x-ray device or by physical inspection of the item (see Step #2). Metal detectors are not to be used to screen carry-on items. When using the x-ray, if all objects contained in the item are clearly identifiable as being other than an explosive, incendiary, or deadly or dangerous weapon, the item is cleared to be taken beyond the screening point. If the x-ray displays an image of an explosive, incendiary, or deadly or dangerous weapon, the law enforcement officer shall be advised immediately. Notification should be accomplished as discreetly as possible. Air carrier representatives should maintain positive control of the item until the supporting LEO

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011340

Case 1:02-cv-07154-AKH   Document 189-5   Filed 07/08/11   Page 5 of 5

Confidential - Do Not Copy or Disclose                Subj. to Protect. Order 21MC101 (AKH)
                                                      Subj. to Protect. Order 21MC97(AKH)

Appendix III
Page 4

    is able to witness the opening of the item and verify that it contains an explosive, incendiary, or deadly or dangerous weapon. Air carrier personnel should refrain from removing or touching such objects and defer further action to the LEO. If the x-ray displays an image of an unidentifiable object ████████████ explosive, incendiary, or deadly or dangerous weapon to ████ or ████ such objects, the item must be subjected to physical inspection prior to being permitted beyond the screening point as in Step #2 below. Until an item is cleared, care shall be taken to assure that it remains in the control of the air carrier representative or LEO.

B. **Step #2** -- Physical inspection is conducted by an air carrier representative where there is no operable x-ray device at the screening point or whenever an item cannot be cleared by observation of the x-ray image. If no explosive, incendiary, or deadly or dangerous weapon is discovered, the carry-on item may be permitted beyond the screening point. If an explosive, incendiary, or deadly or dangerous weapon is discovered, the LEO shall be advised immediately. Notification should be made as discreetly as possible. If a questionable object which might be inimical to the safety of the flight is discovered, the air carrier beyond the screening point. In determining if an object would be inimical to flight safety, it may be appropriate to secure the professional opinion of the supporting LEO. If an object or its possession is unlawful, the LEO will take appropriate action. If it is determines that a questionable object is not inimical to flight safety, the object may be permitted beyond the screening point. Here again, care should be taken to assure that items undergoing inspection are retained in the control of the air carrier representative or LEO until cleared.

C. **Step #3** -- LEO's, upon learning of the discovery of an explosive, incendiary, or deadly or dangerous weapon, shall take steps to verify the discovery, take custody of the item, and initiate appropriate law enforcement action.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.