Defendants shall disclose expert reports identified in bullet number 1 today. Defendants shall disclose expert reports identified in bullet number 2 by July 29, 2011. Defendants should not depose any Plaintiff's expert who ought to have a chance to review any of the reports identified in bullet number 2 that are relevant to the given Plaintiff's expert's testimony, until plaintiff has received such reports. Counsel shall work together to coordinate the disclosure of these reports, the depositions, and the trial date. So Ordered.

Alvin K. Hellerstein
July 8, 2011

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

Michael R. Feagley
Direct Tel +1 312 701 7065
Direct Fax +1 312 706 8623
mfeagley@mayerbrown.com

July 8, 2011

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312




21 MC 101 (AKH)
02 civ. 7154 (AKH)

Dear Judge Hellerstein:

I write on behalf of the Bavis Defendants – United Air Lines, Inc. United Continental Holdings (f/k/a UAL Corporation), Huntleigh USA Corporation, and The Massachusetts Port Authority ("The Bavis Defendants") – asking that the Court issue an order needed to avoid undue prejudice to defendants. Specifically, we ask that the Court issue an order revising the schedule for submission of their expert reports such that:

1. Four defendants' expert reports (namely, those of James Welna, James Forest, Larry Mefford, and Scott Dennison) are submitted to plaintiff on Friday, July 8, as currently scheduled.

2. Additional defense expert reports – no more than four, and perhaps fewer – are to be written and submitted to plaintiff or to the Government as soon as possible after July 8 and in no event more than three weeks later, on July 29, 2011. Each report shall be submitted as soon as it is ready; one may be ready by the end of next week.

The Court may recall that at the hearing of June 23, I raised the problem presented by plaintiff's failure to deliver her Quinten Johnson report to the Government for Touhy review until the date they were supposed to deliver her expert reports to defendants. That timing guaranteed that defendants would not see that report for several weeks. As I explained at that hearing, we were concerned that the late delivery of that report would affect our own work on our expert reports. Tr. 19-20. The Court responded by stating, "Mr. Feagley, you are not going to be prejudiced." Tr. 20-21. We then said that, "We will come back to you for relief if we need it, Your Honor." Tr. 21. The Court responded by repeating the need to "make sure that no one is prejudiced." Tr. 21. We need the Court's help to avoid being prejudiced by the late delivery of plaintiff Quinten Johnson's report and other events.

As noted above, we have just received that Johnson report, six weeks after it was due. It was emailed to us after 7:30 pm on Friday, July 1, the first day of the July 4 holiday weekend. That report is lengthy (29 pp.) and covers a variety of topics. Its Table of Contents (Exhibit A hereto) reveals that that report addresses, among other things, Federal Aviation Regulations governing airline conduct, the ACSSP, the COG, whether airlines can exceed the Federal security requirements, application of the ACSSP and the COG to checkpoint screening, whether and how United and Huntleigh violated the ACSSP and the COG, and the state of knowledge in the aviation industry of threats to civil aviation. We need time for our experts to review that lengthy report carefully and formulate their responses to it. We do not ask for the six weeks we should have had to do that. We ask for only three weeks to allow time for up to four experts to evaluate Mr. Johnson's report and to complete their reports addressing the broad range of topics Mr. Johnson's report discusses. That is half the time they should have had to do that work.

As indicated, other events also support our request for a modest extension of time for our expert reports.

1. Witness No. 1. One of the four potential experts who will be reviewing Mr. Johnson's report was on doctor-ordered bed rest, and hospitalized with pneumonia, from June 13 to July 1 and so was unable to start work on his review of records and his report in time for it to be submitted by this Friday. The doctors say that it will be another 5 to 7 weeks before he is fully recovered. Now, of course, he also will have to review Mr. Johnson's report and respond to it. He obviously needs more time. Three more weeks should be enough, despite his continuing recovery. Mr. Migliori has hinted that he might be agreeable to this one.

2. Witness No. 2. She has been on an extended business trip/vacation in Asia since July 2, and will not return until late on July 11. She thus has not been able to give a final review of her already – written draft report, and since she has just seen Mr. Johnson's report, she will need more time to do that final edit and to add her response to the section of her report that she is looking at (if any) to her report. One week should be sufficient. We cannot imagine why Mr. Migliori will not agree to this one.

3. Witnesses 3 and 4. Defendants' two other potential experts, both former FAA officials, are just now starting to address topics discussed in Mr. Johnson's report. One (who will opine on general topics discussed by Johnson except for the topic addressed by Witness No. 2), already has Touhy clearance. Our request for Touhy clearance of the other (who will principally address Huntleigh checkpoint issues) has just been submitted to the Government. We hope for expedited handling.

Our request for relief is necessitated by plaintiff's six week delay in providing the Johnson report to us and Mr. Migliori's refusal to grant any extension of the July 8

expert report date, "except as to one FAA expert if you have one." That position is entirely unreasonable. While another former FAA official could respond to at least some of what Mr. Johnson says, other experts could also respond on the several topics the Johnson report discusses. Defendants do not plan to call one all-purpose witness to testify on all subjects discussed in the Johnson report. Instead, as discussed above, Defendants instead plan to have as many as four of our potential experts respond to the four major sections of that report. Our request is reasonable, and necessary in order to avoid undue prejudice to defendants. Mr. Migliori cannot dictate to defendants what experts they will use to attack Mr. Johnson's submission, or how many we call to respond to different sections of the Johnson report.

Plaintiff can hardly complain about the number of defendant's proposed experts. Plaintiff has submitted reports from nine experts, many of whom offer duplication or overlapping testimony. If we submit reports from all four of these potential experts – and we may well not do so – that would mean that the three defendants will have eight experts to plaintiff's nine.

Extending by three weeks the deadline for defendants' submission of four (or fewer) of their expert reports will not unduly prejudice plaintiff, interfere with the SSI protocol schedule, or threaten the early November trial date. That extension might require modest revision of the deadlines for completing expert witness depositions (currently August 5) and for filing Daubert motions (currently August 12), but the parties ought to be able to get that accomplished with a minimum of fuss, and the revision of those dates should not prejudice either party.

**PLAINTIFF'S RESPONSE**

Mr. Feagley misstates in his letter what he proposed to Plaintiff and Plaintiff's Counsel's response. Simply put, Mr. Feagley requested a four week (not three week) extension for four witnesses to respond to one of Plaintiff's experts, Quinten Johnson, an FAA expert. Plaintiff responded by indicating that a four week extension (not just three week extension) as to one FAA witness is reasonable. With respect to the other three witnesses who may need to respond to Mr. Johnson's report, Plaintiff agrees that each of the other three potential expert witnesses may have four additional weeks (not just three) to respond to Mr. Johnson's testimony, but the remainder of their reports (that relate to issues not covered by Mr. Johnson's report) should be served today as required under the Court's scheduling order, as amended to provide defendants with an additional eight days. Mr. Feagley's distortions are disingenuous and counterproductive. Defendants have begun scheduling Plaintiff's expert depositions which were not to begin until after receiving all of Defendants' expert reports. Under Defendants' proposed extension, Plaintiff's experts will not have the benefit of the non-FAA opinions of these four additional defense experts. Globally, Plaintiff objects to Defendants having four experts to rebut the testimony of one Plaintiff FAA expert to

the extent these proposed experts are cumulative and bolstering. Until we see Defendants' reports, however, Plaintiff cannot tell whether the testimony is cumulative.

There is no purpose in responding to Mr. Feagley's mischaracterizations about Plaintiff's "failures" to produce Mr. Johnson's report sooner. The delay in producing Mr. Johnson's report was a function of an additional Touhy process, not Plaintiff's failures. We hope such posturing ceases in future applications to the Court. There is a lot of work that still has to be done before the November 7th trial date.

Donald Migliori
For Plaintiff

Michael Feagley
For Defendants

MOTLEY RICE LLC
321 South Main Street
Providence, Rhode Island 02903-7109
Phone: (401) 457-7709
Fax: (401) 457-7708

MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Phone: (312) 782-0600
Fax: (312) 701-7711

QUIRK & BAKALOR P.C.
845 Third Avenue
New York, New York 10022
Phone: (212) 319-1000
Fax: (212) 319-1065

EXHIBIT A

# Table of Contents

Background and Experience ..... 1

Opinions ..... 3

A. Governing Documents in Aviation Security ..... 3
   1. Federal Aviation Regulations ..... 4
   2. Air Carrier Standard Security Program ..... 6
   3. Checkpoint Operations Guide ..... 8
   4. Minimum Standards ..... 8

B. Application of the Air Carrier Standard Security Program and Checkpoint Operations Guide to Checkpoint Security Screening ..... 12
   1. Carry-on baggage ..... 13
   2. Passenger screening ..... 13
   3. Testing of equipment and security screeners ..... 14

C. Violations of the Federal Aviation Regulations, Air Carrier Standard Security Program and Checkpoint Operations Guide ..... 16
   1. United failed to follow proper procedures when administering the standard security questions ..... 16
   2. United and Huntleigh failed to keep deadly and dangerous (prohibited) items out of the sterile area ..... 17
   3. Huntleigh failed to hire qualified Pre-Board Screeners to operate the checkpoint ..... 19

D. State of Knowledge Within the Aviation Industry Regarding Threats to Civil Aviation ..... 20
   1. Security Directives and Information Circulars ..... 21
   2. Government publications ..... 25
   3. Federal Aviation Administration ..... 27

Exhibit A: Curriculum Vitae ..... 31

Exhibit B: Publications and Speeches ..... 36

Exhibit C: Documents ..... 38

Exhibit D: Compensation ..... 40