UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:  No. 21 MC 101 (AKH)
:
:  This document relates to :
IN RE SEPTEMBER 11 LITIGATION   :  *Bavis v. United Airlines Inc.et al.,*
:  02 CV 7154 (AKH)
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S REPLY BRIEF
ON THE APPLICABLE STANDARD OF CARE**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

I. The standard of reasonableness in this negligence action is not ousted by Defendants' appeals for uniformity ...................................................................4

II. *Goodspeed* and *ATA* do not hold that the state-law standard of reasonableness in negligent aviation-security actions is impliedly preempted ...........................................4

III. Defendants' attempt to distort the standard of reasonableness in negligent aviation-security actions under New York law fails.. ....................................................................6

IV. Defendants' newfangled definitions of the "inconsistent with" language of ATSSSA § 408(b)(2) are unavailing. ........................................................................................7

V. This District rejects Defendants' argument that the ADA expressly preempts the standard of reasonableness for Plaintiff's negligence claims........................................9

VI. The significance that FAA regulations prescribe minimum safety standards is not that those regulations themselves "empower" States to apply the traditional standard of reasonable care, but rather that FAA minimum safety standards are not inconsistent with and do not preempt the standard of reasonable care that applies by force of ATSSSA § 408(b)(2)........................................................................ 10

VII. Defendants should save for the jury their argument that compliance with the "complex security measures" of the FAA regulations shows that they met the standard of care under New York law.......................................................................... 11

VIII. Massport fails to show how its security duties under Part 107 of the FAA regulations are inconsistent with or preempt the traditional state-law standard of reasonableness for Plaintiff's negligence claims against Massport. ........................... 12

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. American Airlines, Inc.*,
    181 F.3d 363 (3d Cir. 1999) ................................................................................... 6, 10

*Air Transp. Ass'n of Am., Inc. ("ATA") v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008) ................................................................................ 2, 3, 5, 6

*Bennett v. Southwest Airlines Co.*,
    No. 06-3486, 2007 WL 1215055 (7th Cir Apr. 26, 2007) .................................................. 4

*Curtin v. The Port Authority of New York and New Jersey*,
    183 F. Supp. 2d 664 (S.D.N.Y. 2002) ......................................................................... 6

*Da Biere v. Craig*,
    268 A.D. 2d 875 (N.Y. App. Div. 2000) ....................................................................... 13

*Drake v. Lab. Corp. of Am. Holdings*,
    290 F. Supp. 2d 352 (E.D.N.Y. 2003) ......................................................................... 5

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) ................................................................................................... 3

*Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*,
    634 F.3d 206 (2d Cir. 2011) ............................................................................. 2, 3, 4, 5, 6

*In re Air Crash at John F. Kennedy Int'l Airport*,
    635 F.2d 67 (2d Cir. 1980) ....................................................................................... 3

*In the Matter of World Trade Center Bombing Litig.*,
    776 N.Y.S.2d 713 (2004) .......................................................................................... 7

*Sakellaridis v. Polar Air Cargo, Inc.*,
    104 F. Supp. 2d 160 (E.D.N.Y. 2000) ......................................................................... 6

*Smith v. America West Airlines, Inc.*,
    44 F.3d 344 (5th Cir. 1995) ...................................................................................... 9

*Stanford v. Kuwait Airways Corp.*,
    89 F.3d 117 (2d Cir. 1996) ..................................................................................... 6, 7

*Trinidad v. American Airlines, Inc.*,
    932 F. Supp. 521 (S.D.N.Y. 1996) ........................................................................ 6, 9, 10

**Federal Statutes & Regulations**

Air Transportation Safety and System Stabilization Act ("ATSSSA") § 408(b)(2),
    Pub. L. No. 107-42m 115 Stat. 230 (codified as amended at 49 U.S.C. § 40101 note)
    (2001) ................................................................................................................*passim*

49 U.S.C. § 41713(b)(1). .................................................................................................9

49 U.S.C. § 44701(a)(1)-(5) ............................................................................................6

49 U.S.C. § 44701(b)(1) ............................................................................................... 10

49 U.S.C. § 44705 ......................................................................................................... 10


**Other Authorities**

Black's Law Dictionary (9th Ed. 2009)(Bryan A. Garner, Editor in Chief) ...............................8

**INTRODUCTION**

The issue presented is straightforward: does the traditional state-law standard of reasonableness apply in this negligence case, allowing the jury to consider Defendants' compliance with or violation of FAA regulations as *evidence* of whether Defendants met that standard of care, or do the FAA regulations themselves *set* the standard of care?

Applying the text of ATSSSA § 408(b)(2) governing applicable legal standards in this negligent aviation-security case, Plaintiff demonstrated in her opening brief that the traditional state-law standard of reasonable care under the circumstances in providing the highest possible degree of safety in the public interest (the "standard of reasonableness") applies. Pl. Br. at 5-8, 21 MC 101 (AKH) Dkt. 1458.

If it had chosen to do so, Congress could have stated that FAA regulations set the standard of care in this negligence action arising out of the 9/11 attacks—but the plain text of ATSSSA § 408(b)(2) says something quite different:

> The substantive law for decision in any such suit *shall be derived from the law*, including choice of law principles, *of the State in which the crash occurred* unless such law is inconsistent with or preempted by Federal law.[1]

Indeed, in their opposition papers, Defendants concede that ATSSSA § 408(b)(2) governs resolution of the standard of care and that New York's standard of reasonableness governs unless it is inconsistent with or preempted by Federal law. *See* Def. Opp. Br. at 37-38, 21 MC 101 (AKH) Dkt. 1495 ("ATSSSA requires the Court to apply New York law, including its choice of law principles, to determine whether any pertinent state law standards apply, and then to ascertain whether application of those state standards would either be inconsistent with, or preempted by, the federal regulatory scheme."). In its supporting brief, American Airlines is

---

[1] Air Transportation Safety and System Stabilization Act ("ATSSSA") § 408(b)(2), Pub. L. No. 107-42m 115 Stat. 230 (codified as amended at 49 U.S.C. § 40101 note) (2001) (emphasis added).

quite emphatic on this point: "ATSSSA Determines the Applicable Standard of Care [and] [t]he most important provision of ATSSSA concerning standard of care is Section 408(b)(2). . . ." American Br. at 3, 21 MC 101 (AKH) Dkt. 1492.[2]

As the parties thus agree that the analytical framework of ATSSSA § 408(b)(2) governs resolution of the issue of the standard of care, and that under New York law the traditional standard of reasonableness applies to negligence claims, the only remaining issue is whether holding Defendants to a reasonableness standard is inconsistent with or preempted by the FAA security regulations in effect on 9/11.

As Plaintiff established in her opening brief, the applicable FAA regulations on 9/11 were minimum safety standards that Defendants could exceed to comply with the standard of reasonableness. *See* Pl. Br. at 3-4, 8-16, & Ex. 2 thereto ("Plaintiff's Minimum Standards Evidence"); *see*, *e.g.*, Pl. Br. at 3-4 ("Q. Can an airline exceed minimum FAA requirements? A. Yes. The FAA sets minimum requirements for airlines to follow. Should airlines wish to exceed these requirements, the FAA cannot prohibit them from doing so.") (FAA website, Sept. 11, 2001). Hence, *even if* the jury finds that Defendants complied with the minimum security standards of the FAA Regulations, the jury still has to decide whether Defendants met the standard of reasonableness. In other words, there is no conflict between the FAA regulations and applying the traditional standard of reasonableness.

Moreover, Defendants' reading of the Second Circuit's recent decisions in *Goodspeed* and *ATA* as holding that the standard of care of reasonableness in negligent aviation-security actions is impliedly field preempted is inaccurate at best. Def. Opp. Br. at 14-19. As Plaintiff

---

[2] Despite this admission that Section 408(b)(2) governs the applicable standard of care, American disingenuously argues that ATSSSA Section 408(b)(1)'s exclusive *remedy* clause somehow affects the application of state *substantive* law. American Br. at 3. American cannot have it both ways. Since American admits that Section 408(b)(2) controls the substantive law decision, Section 408(b)(1) is irrelevant to that determination. To hold otherwise would read Section 408(b)(2)'s state law provision out of the ATSSSA.

explained in her opening brief, *Goodspeed* was a case about getting a permit to cut down trees at an airport, which said nothing about preempting state-law tort claims let alone about preempting the state-law standard of reasonable care in a negligent aviation-security case.  Pl. Br. at 30-31.  And in *ATA*, the Second Circuit explicitly "acknowledged that the FAA does not preempt all state law tort actions."  *Air Transp. Ass'n of Am., Inc. ("ATA") v. Cuomo*, 520 F.3d 218, 225 (2d Cir. 2008) (citing *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 635 F.2d 67, 75 (2d Cir. 1980)).  Reading those cases together, the Second Circuit has not held that FAA regulations impliedly preempt the traditional state-law standard of reasonableness in negligence actions.  Yet even assuming for the sake of argument that *Goodspeed* and *ATA* could be construed to hold that FAA regulations impliedly preempt the traditional state law standard of reasonableness in negligence actions—something neither case said—*Goodspeed* itself contains an important limiting principle in its preemption analysis that Defendants here ignore, namely:

> we must determine not only Congressional intent to preempt, but also the scope of that preemption.  'The key question is thus at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted[.]'

*Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011)(quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992)).  Given that applicable FAA regulations on 9/11 were only minimum safety standards, Defendants do not and cannot show that application of the traditional state-law reasonableness standard promoting safety and security in negligence actions "sufficiently interferes" with FAA minimum safety standards, especially in light of Defendants' over-arching duty to provide the highest possible degree of safety to passengers aboard Flight 175.  And that is because the standard of reasonableness complements, *not* interferes with, the FAA regulations' minimum safety standards.

- 3 -

As there is no preemption and no inconsistency between the reasonableness standard of care and the FAA regulations, the traditional state-law standard of reasonableness must apply in this case by force of ATSSSA § 408(b)(2).

Plaintiff will now briefly address some new arguments and errors made in Defendants' opposition papers.

## I. The standard of reasonableness in this negligence action is not ousted by Defendants' appeals for uniformity.

Although Defendants repeat over and over in bold, italicized print that the FAA regulations provide for "*uniform*" security procedures "to assure that (passengers) receive courteous and efficient treatment" under an "animating principle" of "*uniformity*," Def. Opp. Br. at 2, 5, 6, 7 (emphasis in original), that argument fails because such uniform baseline, minimum safety standards are consistent with the jury holding defendants to a standard of reasonableness in this negligence action. As well put by the Seventh Circuit: "Appeals to 'uniform national rules' do not explain" how to apply such rules to the circumstances of a particular case. Such application "is governed by context-sensitive doctrines such as the law of negligence" applying a reasonableness standard. *Bennett v. Southwest Airlines Co.,* No. 06-3486, 2007 WL 1215055, at *5 (7th Cir. Apr. 26, 2007). So even if Defendants complied with "uniform" minimum standards, the jury should still evaluate whether such regulatory compliance met the standard of reasonable care under the circumstances (including the growing risk of hijackings and other terrorist acts on and before 9/11).

## II. *Goodspeed* and *ATA* do not hold that the state-law standard of reasonableness in negligent aviation-security actions is impliedly preempted.

Defendants overreach by arguing that *Goodspeed* and the doctrine of implied field preemption "compel the conclusion" that Plaintiff cannot invoke the standard of reasonableness

- 4 -

to measure Defendants' conduct in this negligence action. Def. Opp. Br. at 9-20. American Airlines in its brief goes so far as to say that the "*ATA* and *Goodspeed* decisions have settled the question of whether the Federal Aviation Act and its implementing regulations occupy the field of aviation security and displace state tort law standards of care. . . ." American Br. at 5.

*ATA* and *Goodspeed* "settled" no such thing. *ATA* explicitly "acknowledged that the FAA does not preempt all state law tort actions." *ATA*, 520 F.3d at 225. And *Goodspeed* said nothing at all about displacing state tort law standards of care, which is not surprising as *Goodspeed* was not a tort case at all. *See* Pl. Br. at 30-31 (distinguishing *Goodspeed*). Moreover, *Goodspeed* actually rejected the preemption argument put forth there about whether FAA regulations preempt a state-law permit requirement to cut down trees, by reasoning that even if there were clear congressional intent to occupy the field of aviation safety in the abstract, the specific challenged state law fell outside the scope of the preempted field because that state law did not "sufficiently interfere[] with federal regulation. . . ." *Goodspeed*, 634 F.3d at 211. In analyzing whether there was such sufficient interference, *Goodspeed* instructed courts to consider that "[p]art of the pre-empted field is defined by reference to the purpose of the state law in question [and] [a]nother part of the field is defined by the state law's actual effect." *Id.* As the state laws in question did not sufficiently interfere with the federal regulations in either their purpose or effect, there was no implied preemption of those state laws. *Id.*

The same holds true here. The standard of "exercis[ing] reasonable care" has the purpose and effect "to avoid harming people by negligence. . . ." *Drake v. Lab. Corp. of Am. Holdings*, 290 F. Supp. 2d 352, 367 (E.D.N.Y. 2003), *aff'd*, 458 F.3d 48 (2d Cir. 2006) (holding that FAA regulations did not preclude a common-law negligence claim). The *Bavis* Defendants here cannot and do not explain how applying the standard of reasonableness with the purpose and

effect to ensure safety "sufficiently interferes" with FAA regulations that were promulgated to "promote safe flight of civil aircraft in air commerce by prescribing . . . regulations and minimum standards" to ensure safety.  49 U.S.C. § 44701(a)(5) (FAAct).  Here, as with the laws at issue in *Goodspeed*, the standard of reasonableness does not "enter the scope of the preempted field" because its purpose and effect do not interfere with, but rather complement the FAA regulations' goals of safety and security.  Indeed, how could a standard that requires the Defendants to act reasonably under the circumstances to provide the highest possible degree of safety and security *interfere* with the FAA regulations' goals of safety and security?  Because there is no such interference, the traditional state-law standard of reasonableness provides the "substantive law for decision" that ATSSSA § 408(b)(2) mandates in this case.[3]

**III.   Defendants' attempt to distort the standard of reasonableness in negligent aviation-security actions under New York law fails.**

In her opening brief on the applicable standard of care, Plaintiff demonstrated that the traditional state-law standard of reasonableness has long been applied by federal and state courts in New York in negligent aviation-security cases.  Pl. Mem. at 5-8; *see, e.g., Stanford v. Kuwait Airways Corp.,* 89 F.3d 117, 124 (2d Cir. 1996) (in wrongful death case where plaintiffs claimed that defendant's negligent aviation security caused a hijacking, the Second Circuit held that if an

---

[3] Despite Defendants' misleading spin on *ATA* and *Goodspeed,* the Second Circuit has *not* held that the 1958 FAAct or the 1978 ADA or FAA regulations impliedly preempt the standard of reasonableness in negligence cases.  As such, Plaintiff urges this Court to adhere to the persuasive reasoning of Judge Scheindlin in *Trinidad,* which, after carefully reviewing many cases addressing both implied and express preemption, *rejected* the aviation defendants' preemption arguments and held that "state common law governs Plaintiffs' [tort] claims."  *Trinidad v. American Airlines, Inc.*, 932 F. Supp. 521, 526-528 (S.D.N.Y. 1996).  Although Defendants here in passing characterize *Curtin* as this District "revers[ing] course" from *Trinidad*, Def. Opp. Br. at 13, the precise issue and holding in *Curtin* was that the FAAct presented a federal question justifying removal to federal court.  *Curtin v. The Port Authority of New York and New Jersey*, 183 F. Supp. 2d 664, 666, 672 (S.D.N.Y. 2002).  Moreover, *Curtin* explicitly acknowledged that its holding was made in the absence of controlling guidance from the Second Circuit: "The Second Circuit has not squarely addressed whether the FAA preempts state negligence claims related to safety. . . ."  *Id.* at 669.  And, as Plaintiff demonstrated in her opening brief, the preemption analysis in *Curtin* conflicts not only with that of *Trinidad* but also with that of other courts in this Circuit.  *See* Pl. Br. at 26-29 (citing, *e.g.*, *Sakellaridis v. Polar Air Cargo, Inc.,* 104 F. Supp. 2d 160, 163 (E.D.N.Y. 2000) ("[T]he defendant's reliance on *Abdullah* is irrelevant.  The court of appeals for the Second Circuit has held that the FAA does not preempt state common law claims.").

airline "in the exercise of ordinary care, should have recognized that under the circumstances, knowing what it knew, there was an unreasonable risk of hijacking to passengers aboard its flight and other connecting flights, then the jury [can] find that [the air carrier] should have implemented secondary screening measures. . . .").

Unable to refute that line of established precedent in the context of negligent aviation-security cases, Defendants take the rather cheap shot of ripping a line out of context from Plaintiff's separate brief in opposition to Massport's motion for summary judgment, which was discussing the duties of landlords, and then pretend that Plaintiff now "characterizes New York's reasonable care standard as imposing only a duty to take 'minimal security precautions'. . . ." American Br. at 17-18; Def. Opp. Br. at 36-37 (same). Defendants' attempt to create confusion as to the applicable standard of care fails for several reasons: (1) even in the landlord-tenant context, New York law is clear that the landlord has the duty to exercise reasonable care under the circumstances to maintain the premises in a safe condition, *In the Matter of World Trade Center Bombing Litig.*, 776 N.Y.S.2d 713, 734 (2004); (2) case after case applying New York law in the negligent aviation-security context applies the standard of reasonableness, Pl. Mem. at 5-8, *see, e.g., Stanford v. Kuwait Airways Corp., supra*; and (3) Defendants fail to show how even their distortion of the standard of care under New York law is inconsistent with or preempted by FAA regulations; hence, this argument fails to displace the traditional state-law standard of reasonableness that applies in this action under ATSSSA § 408(b)(2).

**IV.   Defendants' newfangled definitions of the "inconsistent with" language of ATSSSA § 408(b)(2) are unavailing.**

In her opening brief, Plaintiff demonstrated that there is no inconsistency between the traditional state-law standard of reasonableness and the federal aviation statutes and regulations

in effect on September 11, 2001, which established nothing more than baseline or minimum safety standards.  Pl. Br. at 16-21.

American Airlines in its accompanying brief boldly creates its own new definition of "inconsistent with" in an effort to gin up "inconsistency" between the reasonableness standard and FAA minimum safety standards.  After noting that the Oxford English Dictionary defines inconsistent as "not agreeing in substance, spirit, or form[,]" American says that the "inconsistent with" language of Section 408(b)(2) actually means to "preclude applying a generalized reasonable care standard [that] would *vary* the Aviation Defendants' obligations under the applicable provisions of an FAR, the ACSSP or a Security Directive."  American Br. at 12 (emphasis added).  Along the same lines, the *Bavis* Defendants say that any state law that requires defendants "to do something 'more'" is "inconsistent with federal law."  Def. Op. Br. at 26-30.  So "inconsistent" means "vary" to American, and means "something more" to United et al.

With all due respect to the lexicographic skills of defense counsel, Plaintiff suggests that the Court adhere to the straightforward definition of "inconsistent" put forth in the most recent edition of Black's Law Dictionary:  "Lacking agreement among parts; ***not compatible*** with another fact or claim."  (9th ed. 2009) (Bryan A. Garner, Editor in Chief) (emphasis added).  Applying that well-accepted definition, there is no "inconsistency" here because applying a standard of reasonableness is quite "compatible" with also requiring the Defendants to comply with minimum, baseline security standards.  After all, even mere compliance with the FAR's minimum security standards required the Defendants to make reasonable choices—which can only be evaluated through application of a reasonableness standard.  Hence, there is no inconsistency and the traditional standard of reasonableness applies.

**V.     This District rejects Defendants' argument that the ADA expressly preempts the standard of reasonableness for Plaintiff's negligence claims.**

Seeking to create new law, which would in fact have dangerous and far-reaching implications for airline passenger safety, Defendants ask this Court to make a huge leap by ruling that the ADA's prohibition of enforcement of state laws "related to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1), *expressly* preempts the standard of reasonable care under the circumstances in negligent aviation-security cases.  Def. Opp. Br. at 21-26.

Strain though Defendants do to stretch the term "service" to cover checkpoint security operations, *id.* at 24, and the term "price" to include "enhanced expenses" that might result from increased security or liability in tort, the fact remains that no court has ruled that tort claims involving negligent checkpoint security and failures to prevent dangerous and deadly weapons from being on board aircraft are expressly preempted by the ADA.  To the contrary, this District has *rejected* arguments for ADA preemption of tort claims for negligent aviation-security resulting in personal injury or death.  Addressing claims of personal injury arising from an aviation accident that occurred during turbulent weather, Judge Scheindlin made clear that:

> Plaintiffs' claims do not involve ticketing, boarding, in-flight service and the like, . . . nor do the claims involve implementation of airline policies, such as those relating to bumping, denial of boarding, segregation of smoking passengers, or discrimination. . . .   Rather, the claims are analogous to those of the many cases cited above.  Accordingly, I find that Plaintiffs' claims are not expressly preempted by the ADA.

*Trinidad,* 932 F. Supp. at 526 (internal citations and quotations omitted); *see also, e.g., Smith v. America West Airlines, Inc.,* 44 F.3d 344, 347 (5th Cir. 1995) (en banc) (involving claim of negligence in permitting hijacker to board aircraft:  "[T]he real question, is the scope of 'services' that were deregulated:  those services include boarding practices in their economic or contractual dimension but not insofar as the safety of the flight is involved.").

Unable to refute Judge Scheindlin's holding rejecting express ADA preemption of personal-injury negligence claims, Defendants attempt to distinguish *Trinidad* by saying that "the holding in *Trinidad* was undone by *Abdullah* [because] the parties in that case stipulated . . . they would be bound by the Third's Circuit's holding in *Abdullah*." Def. Br. at 13. That argument fails because not only was *Abdullah* founded on several errors (discussed in detail in Plaintiff's opening brief at page 24, n. 12), but also because there is no principle of federal jurisprudence holding that this District's carefully-reasoned rejection of ADA preemption can be "undone" by "stipulation" of parties.

**VI.    The significance that FAA regulations prescribe minimum safety standards is not that those regulations themselves "empower" States to apply the traditional standard of reasonable care, but rather that FAA minimum safety standards are not inconsistent with and do not preempt the standard of reasonable care that applies by force of ATSSSA § 408(b)(2).**

The Defendants miss the point of why it matters in this action, where the standard of care is governed by ATSSSA § 408(b)(2), that the FAA regulations provide merely minimum safety standards. In her opening brief, Plaintiff demonstrated that the FAA regulations in effect on 9/11 prescribed minimum safety standards, *see* Pl. Br. at 3-4, 8-16, & Ex. 2 thereto ("Plaintiff's Minimum Standards Evidence"), including but certainly not limited to the plain text of the FAA regulations stating that the "Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing *minimum safety standards* for an air carrier to whom a certificate is issued under section 49 U.S.C. § 44705," 49 U.S.C. § 44701(b)(1) (emphasis added). In response, Defendants launch into an extended argument that the FAA's promulgation of minimum standards *per se* does not "empower" the States "to promulgate their own individual, 'higher' standards." Def. Br. at 30-35. But Plaintiff never suggested that the FAA's promulgation of minimum safety standards is the source of the

authority for application of the traditional state-law standard of care of reasonableness in this negligence action arising out of the 9/11 attacks. Rather, the source of authority is ATSSSA § 408(b)(2). Even American Airlines admits *that*. *See* American Br. at 3 ("ATSSSA Determines the Applicable Standard of Care [and] [t]he most important provision of the ATSSSA concerning standard of care is Section 408(b)(2).")

ATSSSA § 408(b)(2) (and not the FAA regulations *per se*) "empowers" this Court to apply the standard of reasonableness under the law of New York (where the crash occurred) in this negligent aviation-security case unless that standard or care is inconsistent with or preempted by the FAA regulations. As explained in Plaintiff's opening brief, the fact that the FAA regulations are minimum safety standards shows that they are not inconsistent with and do not preempt that traditional standard of reasonableness in this negligence action. Pl. Br. at 16-31. Hence, by force and operation of ATSSSA § 408(b)(2), the New York standard of reasonableness applies here.

## VII. Defendants should save for the jury their argument that compliance with the "complex security measures" of the FAA regulations shows that they met the standard of care under New York law.

Throughout her opening brief, Plaintiff made clear that in evaluating the evidence on whether Defendants satisfied the traditional state-law standard of reasonableness, "the jury may consider whether Defendants complied with the minimum security standards of the Federal Aviation Administration Regulations. . . . Likewise, if the jury finds that Defendants violated the FARs, the jury could consider those violations as evidence of Defendants' failure to meet the standard of care." Pl. Br. at 1; *see also*, *id.* at 8-16 (discussing specific FAA regulations the jury should consider), *id.* at 37-38 (jury instructions). In other words, the Defendants will have the full and fair opportunity at trial to argue that their compliance with FAA regulations (though

Plaintiff will contest that there was such compliance) is evidence that they met the standard of reasonable care under New York law.

Apparently abandoning their argument that New York's standard of care does not apply, Defendants shift ground towards the end of their brief and argue that if the evidence shows that Defendants complied with the FAA's "complex security measures" then that must mean that New York's "less rigorous" standard of care of reasonableness is met. Def. Opp. Br. at 35, 38. Defendants boast that they are confident "there is no evidence to establish that they breached New York's common law security requirements. . . ." *Id.* at 37. Well, Defendants certainly are free to make that fact-intensive argument about the evidence to the jury at trial, but it does not change the analysis or result that under ATSSSA § 408(b)(2), New York's standard of care of reasonableness governs in this negligence action.

## VIII. Massport fails to show how its security duties under Part 107 of the FAA regulations are inconsistent with or preempt the traditional state-law standard of reasonableness for Plaintiff's negligence claims against Massport.

In the final section of Defendants' brief, Massport argues that because the FAA regulations under Part 107 governing airport operators "did not include passenger screening," that therefore application of the traditional state-law standard of reasonable care does not apply to Plaintiff's negligence claims against Massport. Def. Opp. Br. at 38-41. But here Massport is confusing the discrete issue of the standard of care, which is governed by ATSSSA § 408(b)(2) as explained above, with the scope of the FAA minimum security standards under Part 107 applying to airport operators. For even if Massport were correct that FAR Part 107 did not impose a duty on Massport to supplement passenger screening at security checkpoints (which Plaintiff respectfully contests in this litigation), the standard of care for Plaintiff's remaining negligence claims against Massport (for breaching its security duties the Court finds *were*

imposed on Massport under FAR Part 107) is still governed by the traditional state-law standard of reasonableness by force of ATSSSA § 408(b)(2).

For instance, in her opening brief on the applicable standard of care, Plaintiff demonstrated that 14 C.F.R. §107.3(a)(1) required Massport as the owner and operator of Logan Airport to provide a security program for the protection of persons and property traveling in air transportation against acts of criminal violence and aircraft piracy such as hijackings. Pl. Brief at 15. Plaintiff also demonstrated that under New York law the violation of a regulation may be considered as evidence of negligence. *Da Biere v. Craig*, 268 A.D. 2d 875, 877 (N.Y. App. Div. 2000). Hence, Plaintiff argued that if the jury finds that Massport violated FAR § 107.3(a) by failing to provide a security program protecting against acts of aircraft piracy such as the hijacking of United Flight 175, then the jury can consider that violation as evidence of whether Massport met the standard of reasonable care under the circumstances. Pl. Br. at 15.

Now in Defendants' opposition brief, Massport does ***not*** contest that:

- FAR §107.3(a)(1) required Massport to provide a security program protecting against acts of aircraft piracy such as hijackings; or that
- New York law allows the jury to consider violation of a regulation as evidence of negligence; or that
- The standard of care under New York law for negligence claims is reasonableness.

Moreover, Massport makes no argument that its security-program duties under FAR §107.3(a)(1) are inconsistent with or preempt the state-law standard of reasonableness. By force of ATSSSA § 408(b)(2), the traditional standard of reasonableness thus applies to Plaintiff's negligence claims against Massport—regardless of whether "passenger screening" is ultimately

ruled by the Court to be within Massport's security duties under FAR Part 107. Hence, Massport's argument about whether passenger screening falls within FAR Part 107 does not justify displacing the standard of care of reasonableness in this negligence action.

## CONCLUSION

Accordingly, for the reasons set forth above and in Plaintiff's opening brief, the Court should instruct the jury that the standard of care by which Defendants' conduct must be measured is whether Defendants acted reasonably under the circumstances to provide passengers aboard Flight 175 with the highest possible degree of safety.

As evidence of whether Defendants met that standard of care, the jury may consider whether Defendants complied with or violated minimum security standards of FAA regulations.

The Court should further instruct the jury that *even if* the jury finds that Defendants complied with minimum security standards of FAA regulations, the jury still must decide whether Defendants met the standard of care of acting reasonably under the circumstances to provide passengers aboard Flight 175 with the highest possible degree of safety.

Dated:   July 15, 2011         Respectfully submitted,

**MOTLEY RICE LLC**

**By:**    /s/ Mary Schiavo          _
             Ronald L. Motley
             Joseph F. Rice
             Donald A. Migliori
             Mary Schiavo
             Vincent I. Parrett
             Motley Rice LLC
             28 Bridgeside Boulevard
             Post Office Box 1792
             Mount Pleasant, SC 29465
             Telephone:  (843) 216-9000
             Facsimile:   (843) 216-9450
             *Attorneys for Plaintiff Bavis*