UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :  No. 21 MC 101 (AKH)
                                               :
IN RE SEPTEMBER 11 LITIGATION        :  This document relates to:
                                             :  *Bavis v. United Airlines Inc. et al.,*
                                           :  02 CV 7154; *World Trade Center*
                                         :  *Properties LLC, et al. v. United Airlines,*
                                         :  *Inc., et al.*, 08 CV 3719
                                           :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION OF PLAINTIFF BAVIS TO CHARGE *RES
IPSA LOQUITUR* AGAINST DEFENDANT UNITED AIR LINES, INC.**


FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
Richard A. Williamson
Cathi Baglin
Jason T. Cohen
Thomas A. Egan
One Liberty Plaza
New York, New York 10006
Telephone: (212) 412-9500
Fax: (212) 964-9200
rwilliamson@fzwz.com
cbaglin@fzwz.com
jcohen@fzwz.com
tegan@fzwz.com
*Attorneys for the WTCP Plaintiffs in* 08 CV 3719

*"United did not and could not control the Flight 175 terrorists or their alleged weapons."* Defendant United Air Lines, Inc.'s Opposition to Plaintiff's Motion to Charge Res Ipsa Loquitur against United Air Lines, Inc. ("United Brief") at 16.

*"United had no ability to control its passengers on board, and most significantly the terrorists, at all times. Due to the presence of the hijackers, United did not have exclusive control over the plane at the time the alleged acts of negligence occurred on board, nor at the time of the crash." Id.* at 23.

There is a duty to control the conduct of others "'where there is a relationship . . . between defendant and plaintiff that requires the defendant to protect plaintiff from the conduct of others. Examples of these relationships include . . . common carriers and their passengers.'" *See In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 493-94, 806 N.Y.S.2d 146, 150 (2005) (citation omitted).

"The duty of an air carrier [is] to provide service with the highest possible degree of safety in the public interest." *In re Sept. 11 Litig.*, 594 F. Supp. 2d 374, 380 (S.D.N.Y. 2009) (bracket in original; *quoting* 49 U.S.C. §§ 44701(d)(1)(A) and 44702(b)(1)(A)).

## PRELIMINARY STATEMENT

The WTCP Plaintiffs[1] submit this supplemental reply brief in further support of the

motion by Mary Bavis, the representative of decedent Mark Bavis, to have the jury in her case

against defendant United Air Lines, Inc. ("United") charged on the theory of *res ipsa loquitur*.

As the quotations above demonstrate, United's main argument in opposition to the

motion by plaintiff Mary Bavis for a *res ipsa loquitur* jury charge is that it lost control of its

aircraft and passengers. United cannot avoid a *res ipsa* charge because it failed in its duty to

---

[1] For purposes of this motion, the "WTCP Plaintiffs" are World Trade Center Properties LLC, 2 World Trade Center LLC, and 4 World Trade Center LLC.

maintain control.  We show in Point I, below, that it is sufficient that United had a duty to be and **should have been** in control of its aircraft and passengers.  United's two other arguments also lack merit.  The argument that, in the absence of any reported turbulence or other natural phenomenon, the crash of a United commercial passenger aircraft into a building at high speed could ordinarily occur without any negligence on United's part no doubt would come as a chilling surprise to passengers who fly United.  (Point II.)  United's remaining argument that Mrs. Bavis has to put in evidence that other possible causes of the crash were "remote" or has to prove exactly how the hijacking occurred just misstates the law.  (Point III.)

## ARGUMENT

I. **United Cannot Avoid The Application Of *Res Ipsa Loquitur* Because It Failed In Its Duty To Maintain Control Over Its Aircraft And Passengers**

United's argument that it lacked "exclusive control" of the aircraft because the hijackers seized control (United Brief at 12-14, 15-17 and 18-23) ignores entirely that New York employs a flexible approach to the "exclusive control" *res ipsa* requirement.  *See* Supplemental Memorandum of Law in Support of Motion of Plaintiff Bavis to Charge Res Ipsa Loquitur Against United Airlines, Inc., dated June 17, 2011 (the "WTCP Supplemental Brief"), at 4-5 (flexible approach takes into account that purpose of "exclusive control" requirement is only to ensure that the negligence can fairly be laid at the defendant's feet); *Potthast v. Metro-North R.R. Co.,* 400 F.3d 143, 149 n.7 (2d Cir. 2005) ("meaning given to exclusive control in the cases . . . is anything but consistent with what the requirement, on its face, would seem to demand" (citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 422, 426-27 (2d Cir. 2004) (Calabrese, J., concurring; collecting cases))).  United also ignores that it had the dual duties to maintain control of its aircraft, *see* 14 C.F.R. § 125.313, and "to provide service with the highest possible degree of safety in the public interest".  *In re Sept. 11 Litig.*, 594 F. Supp. 2d at 380; *see Harms v. Lab.*

*Corp. of Am.*, 155 F. Supp. 2d 891, 907 (N.D. Ill. 2001) (applying flexible "exclusive control"

standard "in which the key question is whether the probable cause of [plaintiff's] injury was one

which [defendant] was under a duty to [plaintiff] to anticipate or guard against").

    Those governing legal principles render inapposite the primary case on which United

relies -- a Tennessee case against a night club owner and its security company brought by a

plaintiff who was shot inside the club by another patron.  United Brief at 16-17, discussing

*Greene v. Titi*, No. M2008-02788-COA-R3-CV, 2010 WL 98884, at *9 (Tenn. Ct. App. Jan. 11,

2010).  First, Tennessee does not follow New York's flexible approach to "exclusive control."

*See, e.g.*, 57B Am. Jur. 2d § 1214 & nn. 7, 15-16; *see also* Matthew R. Johnson, Note, *Rolling*

*the "Barrel" A Little Further: Allowing Res Ipsa Loquitur To Assist In Proving Strict Liability In*

*Tort Manufacturing Defects*, 38 Wm. & Mary L. Rev. 1197, 1215 n. 110 (1997).  Second, neither

the night club owner nor the security company in *Greene* had duties equivalent to United's duties

-- certainly not the duty to provide services with the highest possible degree of safety.  In

addition, unlike United, the security company lacked authority to screen or deny certain persons

admittance to the club, including the owner, promoters and their guests.  *Greene*, at *2-3, 9.

    New York law has long recognized that a defendant may be liable in negligence for

failure to control the actions of others where the defendant had a duty to exercise control.  *See,*

*e.g., In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 493-94, 806 N.Y.S.2d 146, 150 (2005)

(a duty to control the conduct of others arises "'where there is a relationship . . . between

defendant and plaintiff that requires the defendant to protect plaintiff from the conduct of others.

Examples of these relationships include . . . common carriers and their passengers.'" (citation

omitted)).  In the *res ipsa* context, both the New York Court of Claims and the RESTATEMENT OF

TORTS (SECOND) recognize that "exclusive control" may be established by demonstrating that

defendant was under a duty to exercise such control, even if it failed to do so. *See Miceli v. State*, 179 Misc. 2d 424, 428, 685 N.Y.S.2d 388, 391 (Ct. Cl. 1998) ("area around claimant's cell was **or should have been** within the exclusive control of defendant's employees" (emphasis added));[2] RESTATEMENT (SECOND) OF TORTS § 328D cmt. g (*"Defendant's exclusive control. . . .* [A defendant] may be responsible where he is under a duty to control the conduct of a third person, as in the case of a host whose guests throw objects from his windows. . . . The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.").

*Miceli* makes it plain that, for *res ipsa* purposes, the "greater probability" that an "event" was attributable to defendant's negligence can be found even where persons who are supposed to be under defendant's control commit criminal acts.[3] United's contrary argument that the 9/11 hijackers were an "intervening force" precluding the application of *res ipsa loquitur* has no

---

[2] United actually discusses *Miceli*, arguing that it does not apply. *See* United Brief at 14 (arguing that United's negligence could not be inferred if terrorists got through its checkpoint with weapons because the public was allowed access to the concourse beyond the checkpoint, depriving United of "exclusive control" of that area). That argument only serves to divert attention from United's aircraft. Just as the prison in *Miceli* had exclusive control of the area around the plaintiff's cell, United had (or was required to have) control of its aircraft. In addition, even though United says *Miceli* does not apply, United attempts to rely on the *Miceli* Court's hypothetical suggestion that the prison might not have liability, despite exclusive control of the cell area, if a would-be arsonist took "a vigilant officer by surprise" and started a fire by hurling an incendiary material into a cell. United Brief at 22 (citing *Miceli*, 179 Misc. 2d at 428, 685 N.Y.S.2d at 391). That hypothetical was not before the Court, but, to the extent that the prison did not have a duty to maintain control over prisoners in the area under certain circumstances, the same is not true of United's duty to maintain control of its aircraft and passengers.

[3] United's related argument that *res ipsa* only applies to "accidents," not deliberate criminal acts (United Brief at 14), is an unavailing semantic argument. Indeed, the RESTATEMENT uses the terms "event" and "accident" interchangeably as the facts warrant. *See* RESTATEMENT (SECOND) OF TORTS § 328D & related commentary.

4

support in modern law.  It rests, instead, on one Colorado case involving a plane crash caused

when a bomb planted in a passenger's luggage by a disgruntled relative (John Gilbert Graham)

detonated during flight.[4]  *See* United Brief at 5-6, 20-21 (citing *Herman v. United Airlines, Inc.*,

157 F. Supp. 65, 66 (D. Colo. 1957) (declining to apply *res ipsa loquitur* against United because

the crash was caused by "the malicious, willful, illegal and wrongful act of one John Gilbert

Graham, who was in no way connected with the defendant")).  However, that crash occurred in

**1955** -- well before the days of X-ray and other screening of carry-on luggage and before the

1958 Federal Aviation Act that created the FAA and empowered it to oversee and address safety

in the airline industry.  *See* Federal Aviation Act, P.L. 85-726, 72 Stat. 731, approved August 23,

1958.[5]  Thus, the case was decided before the federal laws establishing United's duties on

September 11, 2001 existed.  Indeed, the civil verdicts finding Pan Am guilty of "willful

misconduct" in connection with the 1988 Lockerbie bombing (*see, e.g., In re Air Disaster at*

---

[4] Because the Colorado case cited by United does not discuss the factual context in which it was rendered, some background is necessary.  As set forth in the decision affirming John Gilbert Graham's conviction for murder and his death sentence, Graham was not a passenger on the flight; instead, he bought insurance on his mother's life and put a wrapped "Christmas present" containing a dynamite bomb in her carry-on luggage.  When that bomb exploded in-flight on November 1, 1955, all aboard United Flight 629 were killed, including Mr. Graham's mother. *See Graham v. People of the State of Colorado*, 134 Colo. 290, 295-305, 302 P.2d 737, 739-45 (1956).

[5] *See generally* Federal Aviation Administration, *History: Birth of Federal Aviation Agency*, http://www.faa.gov/about/history/brief_history (retrieved on July 12, 2011).  In 1955, the United States had not yet experienced aircraft hijackings on domestic flights. *See id., History: Evolving Duties* (first series of aircraft hijackings in the U.S. occurred in 1961).  By contrast, United's argument that hijackings were still "unforeseen and unforeseeable" in 2001 (United Brief at 14-15) has already been rejected in this litigation.  The Court has ruled that not only were hijackings foreseeable, but "the airlines reasonably could foresee that crashes causing death and destruction on the ground [were] a hazard that would arise should hijackers take control of a plane." *In re Sept. 11 Litig.*, 280 F. Supp. 2d 279, 296 (S.D.N.Y. 2003) (Hellerstein, J.).

*Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804 (2d Cir. 1994)) demonstrate that *Herman* is an anachronism and has no applicability here.

For these reasons, the element of exclusive control is satisfied here because United had the duty to maintain control over its aircraft and passengers during Flight 175.  Because United failed to do so, allowing terrorist passengers to hijack the aircraft and deliberately crash it into the South Tower, the evidence "afford[s] a rational basis for concluding that the cause of the accident was probably 'such that the defendant [United] would be responsible for any negligence connected with it.'" *Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 227, 501 N.Y.S.2d 784, 789 (1986) (citation omitted).

**II.     The Hijackers' Methods Do Not Change the Fact That An Aircraft Does Not Ordinarily Crash Into A Building At High Speed Absent Negligence On The Part Of The Airline Charged With the Duty To Maintain Control Of the Aircraft**

United's argument that the crash of its commercial passenger aircraft into the South Tower of the World Trade Center at high speed is the kind of thing that could ordinarily occur without any negligence on United's part (United Brief at 3-5) is absurd and defies common sense.[6]  (Indeed, how would the public feel about flying United if they knew that this is United's attitude.)  The fact, as United argues, that "an event like those terrorist attacks had never happened before" (*id.* at 4) or that hijackers "had never before killed the pilots and taken over the

---

[6] United's claim that the WTCP Plaintiffs, in their Supplemental Brief, ignored the fact that turbulence could cause an aircraft crash with no negligence on the part of the airline (United Brief at 5) is wrong and irrelevant in this case.  WTCP Plaintiffs specifically addressed cases of turbulence or other natural occurrences (WTCP Supplemental Brief at 3-4), but turbulence is not an issue here.  United has conceded that the hijackers flew the aircraft into the South Tower of the World Trade Center.  *See* United Brief at 1.  Moreover, the flight path and speed of the aircraft as it crashed into the Tower is wholly inconsistent with an event of turbulence.  *See* Exhibit 9 (excerpt from 9/11 Commission Report) to the Declaration of Vincent Ian Parrett, executed on June 17, 2011, at 8.  The WTCP Plaintiffs agree with United (*see* United Brief at 6) that no expert testimony is needed for a jury to decide whether an aircraft ordinarily would crash into a building at high speed in the absence of negligence on the airline's part.

controls" or "used small-bladed knives to kill crew members" or "pepper spray to scare the passengers and then herd them to the rear of the aircraft" (*id.* at 4-5) or intentionally flown the aircraft into a building (*id.* at 5) is beside the point. United had a duty to maintain control to protect its passengers from hijackings and to provide that service "with the highest possible degree of safety in the public interest." United is not excused from its duty because a hijacker tries new weapons or tactics. If United had fulfilled its duties, the crash of Flight 175 into the South Tower would not have occurred.

### III. Mrs. Bavis Is Not Required To Prove That Other Possible Causes Of The Crash Are Remote Or Precisely How United Was Negligent In Connection With The Hijacking

It is undisputed that United failed to maintain control of its aircraft and that hijacker-passengers flew the aircraft into the South Tower of the World Trade Center. There are no "other possible causes" of the crash. Accordingly, United's argument that Mrs. Bavis must prove that "other possible causes" are "sufficiently 'remote' or 'technical'" to support a *res ipsa* instruction (United Brief at 7-8) is irrelevant. Moreover, it is simply not the law in New York. United cites to the case of *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, Civil Action No. CV-04-360 (DGT), 2007 WL 2262889 (E.D.N.Y. Aug. 3, 2007), United Brief at 7, but *St. Paul* is not a *res ipsa* case. *St. Paul* addresses the question of whether plaintiff had produced sufficient circumstantial evidence demonstrating the negligence of a particular defendant in a multiple defendant action to survive a summary judgment motion made by that defendant. *See id.* at *6. To support a *res ipsa* charge in these circumstances, plaintiff only must show that the likelihood of other causes for which the defendant is not responsible "'be so reduced that the *greater probability* lies at defendant's door.'" *Dermatossian*, 67 N.Y.2d at 227, 501 N.Y.S.2d at 789 (emphasis added), *quoting* 2 Harper & James, *Torts* § 19.7 at 1086.

7

Similarly, United's parade of hypotheticals as to exactly how it lost control of its aircraft (United Brief at 8-10) turns the doctrine of *res ipsa loquitur* on its head. Mrs. Bavis is not required to prove exactly how the hijacking occurred. That is the point of *res ipsa*. It is irrelevant to a *res ipsa* determination whether the hijackers "dashed" into the cockpit as a pilot came out (less than an hour into the flight) to use the lavatory (*see id.* at 10) or whether any of the other hypotheticals United posits for exactly how the hijackers achieved control occurred. United had the duty to maintain control of its aircraft and to prevent a hijacking.

## **CONCLUSION**

For the above reasons and those set forth in Mrs. Bavis's papers and in the WTCP Supplemental Brief, Mrs. Bavis's motion to submit the case on a theory of *res ipsa loquitur* against defendant United should be granted.

Dated: New York, New York
      July 15, 2011

Respectfully submitted,

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

By: _____
           Jason T. Cohen
One Liberty Plaza
New York, New York 10006
(212) 412-9500

Attorneys for Plaintiffs:
World Trade Center Properties LLC
2 World Trade Center LLC
4 World Trade Center LLC

687757

8