UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : | No. 21 MC 101 (AKH) |
|  | : |  |
|  | : | This document relates to : |
| IN RE SEPTEMBER 11 LITIGATION | : | *Bavis v. United Airlines Inc.et al.,* |
|  | : | 02 CV 7154 |
|  | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO CHARGE RES IPSA LOQUITUR AGAINST DEFENDANT UNITED AIR LINES


MOTLEY RICE LLC
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary F. Schiavo
Vincent I. Parrett
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
*Attorneys for Plaintiff Bavis*

Dated:  July 15, 2011
         Mount Pleasant, SC

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.  PLAINTIFF HAS MET HER BURDEN TO ESTABLISH THE ELEMENTS
    OF RES IPSA LOQUITUR ............................................................................. 1

A.  Plaintiff Does Not Have to Prove That Every Other Possible Cause of Mark
    Bavis' Death is Remote................................................................................. 2

B.  The Hijacking of Flight 175 With Deadly and Dangerous Weapons and the
    Crash into the World Trade Center Would Not Have Occurred in the Absence of
    United's Negligence ...................................................................................... 2

C.  Defendant Had Exclusive Control of the Instrumentalities That Caused Mark's
    Death............................................................................................................. 7

    1.  The Role of Third Parties Does Not Negate Defendant's Exclusive
        Control................................................................................................ 7

    2.  The FAA Did Not Control Security Checkpoint Screening ......................... 9

    3.  United Had Exclusive Control Over Its Aircraft; A Finding that United
        Had Control Over the Terrorists or Their Weapons is Nonsensical and
        Unnecessary ...................................................................................... 10

D.  The Hijacking and Crash of Flight 175 Were Foreseeable ..................................... 11

CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Chisholm v. Mobil Oil Corp.*, 45 A.D.2d 776 (N.Y. App. Div. 3d Dep't 1974) ................ 2
*FAA v. Landy*, 705 F.2d 624, 636 (2d Cir. 1983) ............................................................ 10
*In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 815 (2d Cir. 1994) ..................... 10
*Jones v. Commerce Bank* ................................................................................................... 6
*Kambat v. St. Francis Hospital*, 678 N.E.2d 456 (N.Y. Ct. App. 1997) ........................... 1
*Morris v. Lenox Hill Hospital* ........................................................................................... 4
*Potthast v. Metro-North Railroad Co.*, 400 F.3d 143, 149 (2d Cir. 2005) ...................... 11
*Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 272 (2d Cir. 1996) ............... 2
*Smith v. Piedmont Airlines, Inc.*, 728 F. Supp. 914, 917 (D.N.Y. 1989) ....................... 3, 4

## Statutes

49 U.S.C. 1421 (Federal Aviation Act of 1958) ................................................................. 5
49 U.S.C. 44701(d)(1)(A) ........................................................................................... passim

## Other Authorities

9-11 Commission Staff Report, August 26, 2004 ......................................................... 6, 11
Air Carrier Standard Security Program (ACSSP) ............................................................... 6
Checkpoint Operations Guide (COG) .................................................................................. 6
F. Harper, F. James & O. Gray, The Law of Torts §19.7, at 47 (2d 3d. 1986) ................ 10

## Regulations

14 C.F.R. 108.7 .............................................................................................................. 1, 3, 5
14 C.F.R. 108.9 .................................................................................................................. 3, 5
14 C.F.R. 121.313(f) .......................................................................................................... 3, 7
14 C.F.R. 121.547 .............................................................................................................. 3, 7
14 C.F.R. 121.587(a) .......................................................................................................... 3, 7

**INTRODUCTION**

Plaintiff Mary Bavis, individually and as personal representative of the estate of Mark Bavis, submits this Reply Memorandum of Law in support of her Motion to Charge Res Ipsa Loquitur against United Air Lines.

The doctrine of *res ipsa loquitur* allows the jury to infer negligence on the part of the defendant from the happening of an event and the defendant's relation to it. *Kambat v. St. Francis Hospital*, 678 N.E.2d 456 (N.Y. Ct. App. 1997). "Res ipsa loquitur simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence." Id. at 458. Plaintiff has shown in her initial brief that the crash of an airplane by hijackers with deadly and dangerous weapons does not occur absent the negligence of the airline that is required under federal law to "conduct their operations with the highest possible degree of safety" and to "provide for the safety of persons…traveling in air transportation…against acts of criminal violence and air piracy." 49 U.S.C. 44701(d)(1)(A); 14 C.F.R. 108.7(a). In its brief, United offers a myriad of excuses in an effort to explain how its aircraft could have been crashed into the World Trade Center by hijackers with dangerous and deadly weapons without it being negligent, even though it has an absolute duty to provide for the safety of its passengers under federal law. Among other things, Defendant blames the FAA, says it is not negligent because it did not know the September 11th attacks were going to happen, and claims that it did not have control of its checkpoint or its aircraft on September 11, 2001. Defendant's excuses are not supported by the facts, however, and Plaintiff's ability to invoke *res ipsa loquitur* stands.

**I.   PLAINTIFF HAS MET HER BURDEN TO ESTABLISH THE ELEMENTS OF RES IPSA LOQUITUR**

1

**A. Plaintiff Does Not Have to Prove That Every Other Possible Cause of Mark Bavis' Death is Remote**

Defendant United incorrectly states that Plaintiff has to demonstrate that other causes of the crash of United flight 175 are remote in order to properly invoke *res ipsa loquitur.  See* Defendant United Air Lines, Inc.'s Opposition to Plaintiff's Motion to Charge Res Ipsa Loquitur Against United Air Lines (Def. Br.) at 7.  This is not Plaintiff's burden. Plaintiff has the burden of meeting the actual elements of *res ipsa loquitur* – namely that "(1) the event was one that would not ordinarily occur in the absence of someone's negligence" and "(2) it was caused by an agency or instrumentality within the exclusive control of the defendant."[1]  *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 272 (2d Cir. 1996).   A jury is permitted to infer Defendant's negligence if Plaintiff meets these elements.  *See Chisholm v. Mobil Oil Corp.*, 45 A.D.2d 776 (N.Y. App. Div. 3d Dep't 1974) ("Exclusive control is a concept which is not 'absolutely rigid', but rather implies such possession and control by the defendant that 'the probability that the negligent act was caused by someone other than the defendant is so remote that it is fair to permit an inference that the defendant is the negligent party.'")

**B. The Hijacking of Flight 175 With Deadly and Dangerous Weapons and the Crash into the World Trade Center Would Not Have Occurred in the Absence of United's Negligence**

Plaintiff demonstrated in her brief that the crash of flight 175 by hijackers with deadly and dangerous weapons would not have occurred in the absence of United's negligence. "Airlines owe their passengers the highest duty of care." *Smith v. Piedmont Airlines, Inc.*, 728 F. Supp. 914, 917 (D.N.Y. 1989); 49 U.S.C. §44701(d)(1)(A) (Airlines

---

[1] Defendant has conceded that Mark Bavis did not contribute to the event.  Therefore, this element is not discussed herein.

2

must "conduct their operations with the highest possible degree of safety in the public interest."). United has a duty under federal law to "provide for the safety of persons and property traveling in air transportation...against acts of criminal violence and air piracy." 14 C.F.R. 108.7(a)(1). As outlined in Plaintiff's initial brief, this duty included United's responsibility to "prevent or deter...deadly or dangerous weapon[s]" from being carried on board flight 175, to ensure the flight deck door remained "closed and locked during flight" to "prevent passengers from opening it," and to ensure the pilot controlled admission to the flight deck and the operation of the plane. 14 C.F.R. 108.9(a); 14 C.F.R. 121.587(a); 14 C.F.R. 121.313(f); 14 C.F.R. 121.547. United had the exclusive responsibility to carry out these duties. The fact that hijackers passed through the security checkpoint under United's responsibility and used deadly dangerous weapons to kill individuals aboard flight 175, take control of the flight deck, and fly the plane into the World Trade Center means that United failed in each of these duties and was negligent. *See Smith*, 728 F.Supp. 914 at 917 (holding that in light of the high standard of care owed by airlines to passengers, it was reasonable for the jury to find that an overhead bin would not normally open during a flight and empty its contents on a passenger's head in the absence of negligence on the part of the airline.)

United's claim that it was not negligent for the security failures on September 11, 2001 because the events had "never happened before" is baseless. United's duty is not to only guard against incidents and accidents that have happened before; its duty is to fulfill its obligations under the Federal Aviation Regulations, to act reasonably under the circumstances and to act proactively to guard against incidents and accidents that may happen in the future. As is discussed later in this brief, the crash of flight 175 by

3

hijackers wielding dangerous, deadly weapons was foreseeable.  United, and the other airlines, had ample notice that an event like the September 11, 2001 attacks was possible.

Furthermore, Defendant's claim that this is not the type of case to which *res ipsa loquitur* can apply because it is not an accident case is not supported by New York jurisprudence.  In *Micelli v. State* and *Morris v. Lenox Hill Hospital*, both cited in Plaintiff's initial brief, the courts held that an inference of negligence under *res ipsa loquitur* was appropriate against the defendants even though the cases involved an intervening criminal act of a third party.  685 N.Y.S.2d 388 (N.Y. Ct. Claims 1998); 232 A.D.2d 184 (N.Y. App. Ct. 1996). In *Micelli* the court found that a fire set by an arsonist in the plaintiff's jail cell was due to the defendant's negligence because "the area around the claimant's cell was…within the exclusive control of defendant's employees, and the diligent exercise of supervision over the inmates in the area should have prevented the initial incendiary act from occurring."  685 N.Y.S.2d at 391.  In *Morris,* the court found that the plaintiffs would not have been exposed to poison in their intravenous bags in the absence of defendant's "negligence in safeguarding a dangerous substance…under the hospital's exclusive control."  232 A.D.2d at 186.   Both cases involve an intervening intentional and criminal act of a third party and the court found in both cases that the *res ipsa loquitur* doctrine was properly invoked.  *Id*.; 685 N.Y.S.2d at 391.

The *Herman v. United Air Lines* case cited by Defendants for the proposition that *res ipsa loquitur* is not applicable to a case where a plane crash was caused by an illegal and wrongful act as an intervening force is not dispositive.  The plane crash at issue in *Herman* occurred in 1955, well before the current federal laws were in place imposing an

4

absolute duty on air carriers for the safety of their passengers.[2]  Thus at the time *Herman* was decided, air carriers were not required by federal law to "provide for the safety of persons and property traveling in air transportation …against acts of criminal violence and piracy" or to "conduct screening…to prevent or deter the carriage aboard airplanes of any…deadly or dangerous weapon."   14 C.F.R. 108.7;  14 C.F.R. 108.9.   These requirements were non-existent when *Herman* was decided.  Thus, the holding is not applicable here.

      *Jones v. Commerce Bank* also does not support Defendant's claim that *res ipsa loquitur* cannot be applied when a criminal act has occurred.  2007 U.S. Dist. LEXIS 15343 (S.D.N.Y. Mar. 6, 2007) (Baer, J).  In *Jones*, the Plaintiff asserted that the bank had a duty to protect her personal information and that it was negligent in performing that duty because her personal information was used by a third party to fraudulently obtain a check from her insurance company.  *Id.* The issue in the case was not whether *res ipsa loquitur* could be applied against the bank even though a third party acted to steal plaintiff's identity; the issue was whether the bank was connected with the theft of plaintiff's identity at all.  *Id.* at 12-13.  The court found that the theft of the information, consisting of plaintiff's name and address and the zip code of her business address, could have occurred without negligence on the part of Commerce Bank and that the bank was not in exclusive control of the information.  *Id.*  Thus, the Court held that res ipsa did not apply.  *Id.*  The fact that a third party may have stolen the information was inapposite to the court's holding.  *Id.*

      As stated earlier, Plaintiff is not required to prove that other possible causes of the September 11, 2001 crash of United flight 175 were remote.  Defendant speculates to a

---

[2] *See* 49 U.S.C. 1421 (Federal Aviation Act of 1958).

number of ways the hijackers could have acquired the weapons used to hijack flight 175, but these scenarios are either totally unsupported by the evidence in the case, or, if true, would not absolve defendants of their liability for the hijacking and crash of flight 175. Def. Br. at 8.  First, even if the weapons used by the hijackers were knives with blades under 4 inches as United posits, menacing knives, whether the blades were longer or shorter than 4 inches, were prohibited items on September 11, 2001 and United was responsible for preventing the carriage of these items through the checkpoint and onto their aircraft.  *See* Air Carrier Standard Security Program (ACSSP), Appendix I at Ex. 6 to Plaintiff's Memorandum of Law in Support of Motion to Charge Res Ipsa Loquitur Against Defendant United Air Lines (Pl. Br.); Checkpoint Operations Guide (COG) at Ex. 7 to Pl. Br.  Second, United hypothesizes that the weapons were undetectable by the metal detectors or not visible by x-ray.  However, weapons would only be undetectable at the checkpoints because United failed to employ checkpoint procedures that were sufficient to identify them.

Third, United states that the hijackers could have obtained weapons from a store in the Terminal.  There is absolutely no evidence that the hijackers weapons were acquired in the Terminal.  In fact, there is no evidence that any small-bladed legal jackknives were purchased at any stores in the Terminal on the morning of September 11, 2001.  In contrast, there is evidence that the flight 175 hijackers purchased menacing, dangerous knives in the weeks before September 11, 2001.  *See* 9-11 Commission Staff Report, August 26, 2004, p. 17.  Finally, United guesses that the hijackers could have made or obtained weapons from items already on board United's plane.  If the hijackers acquired or improvised weapons from items that United provided on its flight, such as

6

knives in the first class cabin, United is responsible and liable for supplying those items.

The Defendant's claim that it was not negligent because the FAA approved the security equipment and calibrated the metal detectors and the hijackers could have carried weapons that did not cause the magnetometer to alarm or appear on x-ray is unpersuasive. Even if United could not change the calibration settings on the magnetometers, United could have employed additional screening measures to locate dangerous items that, it claims, could not be detected by the metal detectors or x-rays. United had a duty to conduct screening to prevent or deter the carriage of weapons aboard their airplanes. United should have utilized screening methods that enabled it to do so.

Similarly, with regard to Defendant's argument that the hijackers could have gained access to the cockpit without United's negligence, United had a duty to ensure the flight deck door remained "closed and locked during flight" to "prevent passengers from opening it" and to ensure that the "pilot in command" controlled admission to the flight deck and operation of the aircraft. 14 C.F.R. 121.587 at Ex.3 to Pl. Br; 14 C.F.R. 121.313 at Ex. 4 to Pl. Br.; 14 C.F.R. 121.547 at Ex. 5 to Pl. Br. If any of the scenarios imagined by United on page 10 of its brief occurred on flight 175, United would still be liable to Plaintiff for failing to carry out its duties under these regulations.

## C. Defendant Had Exclusive Control of the Instrumentalities That Caused Mark's Death

### 1. The Role of Third Parties Does Not Negate Defendant's Exclusive Control

The fact that this case involves third party criminal conduct does not prevent the finding that United had exclusive control of the instrumentalities that caused Mark Bavis'

death.  United was responsible for preventing third parties from penetrating its security systems at the checkpoint and on the airplane.  The *Micelli* and *Morris* cases are directly on point again here.  In both cases the courts found that *res ipsa loquitur* was applicable because the defendants were responsible for maintaining the security of a particular area, and the fact that a third party had breached that security meant that the defendants were negligent in carrying out their duties.  *Micelli*, 685 N.Y.S.2d at 391 ("The area around claimant's cell was, or should have been within the exclusive control of defendant's employees, and the diligent exercise of supervision over the inmates in the area should have prevented the initial incendiary act from occurring, or at least resulted in a prompt response before the fire raged out of control."); *Morris*, 232 A.D.2d at 186 ("the circumstances of this incident afford sufficient basis for an inference of negligence under…res ipsa loquitur: it involves injury which would not have occurred in the absence of negligence in safeguarding a dangerous substance, admittedly under the hospital's exclusive control").

The same scenario is at play here.  United was responsible for the security at the checkpoint and on its airplane, pursuant to the federal regulations discussed above.  As such, the checkpoint and airplane were under its exclusive control.  The fact that hijackers with dangerous and deadly weapons crashed flight 175 into the World Trade Center means that United failed in these duties.

Moreover, the public's ability to access the sterile area is inconsequential.  Unlike cases where the public's access to the instrumentality that caused plaintiff's injury may have caused the injury instead of defendant's negligence, the public's access to the sterile area does not weaken or affect United's security measures or its ability to carry out its

security measures effectively. There is no evidence indicating that the public's access to the sterile area in any way enabled the hijackers to penetrate the security screening checkpoint and board United flight 175 with deadly and dangerous weapons, take control of the aircraft, and crash it, killing Mark Bavis and all of those aboard.

### 2.   The FAA Did Not Control Security Checkpoint Screening

Defendant claims that it lacked exclusive control over the security screening procedures because the FAA established the security screening measures.  This is untrue. The FAA established minimum standards that the air carriers were required to meet, but that United could have exceeded in order to ensure that it met its security responsibilities under the Federal Aviation Act.

> FAA regulations only establish minimum requirements for air carriers.  A jury could conceivably find certain circumstances under which an air carrier had committed willful misconduct even though it followed FAA regulations to the letter.

*In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 815 (2d Cir. 1994).

Air carriers were permitted to exceed these standards and employ additional screening measures as needed to carry out their obligations under the Federal Aviation Act. "[t]he Federal Aviation Act requires carriers 'to perform . . . services with the highest degree of safety.'. . .   The regulations outline minimum standards of safety." *FAA v. Landy*, 705 F.2d 624, 636 (2d Cir. 1983).  *see also* Plaintiff's Briefs on the Applicable Standard of Care.  The FAA did monitor air carrier's operations to ensure that the air carriers were meeting the minimum standards it established.  However, it did not conduct security screening, nor did it prevent the air carriers from employing more strict security screening measures to ensure that its overarching duty, to "conduct…operations with the highest possible degree of safety" was met.  49 U.S.C. 44701(d)(1)(A).

9

As the entity with the responsibility of conducting checkpoint security, United had exclusive control of the security screening procedures on September 11, 2001. Notwithstanding the fact that Huntleigh conducted the screening, United is ultimately responsible for the screening operations.   14 C.F.R. 108.9(a).   As such, it still has "control" of the security checkpoints and procedures for purposes of *res ipsa loquitur*. *See   Potthast v. Metro-North Railroad Co.*, 400 F.3d 143, 149 (2d Cir. 2005) (citing F. Harper, F. James & O. Gray, The Law of Torts §19.7, at 47 (2d 3d. 1986) ("[T]he exclusive control requirement in the res ipsa loquitur context is satisfied even when defendants cede control to outside agents, provided that defendants have a nondelegable duty").   Furthermore, the fact that the FAA audited the checkpoints to determine whether United was, at least, complying with FAA regulations does not diminish United's ultimate control over the checkpoint procedures and operations.

### 3.   United Had Exclusive Control Over Its Aircraft; A Finding that United Had Control Over the Terrorists or Their Weapons is Nonsensical and Unnecessary

United would have this court hold that since terrorists were piloting the aircraft that they took over using deadly and dangerous weapons, it cannot be held liable via *res ipsa loquitur* because it did not have control of the terrorists or their weapons.   The fact is that the terrorists and their weapons were only on the flight because United failed in its duties to prevent the hijackers from boarding the plane with weapons.   United cannot deny its responsibility for the aircraft by stating that the aircraft and the weapons were controlled by terrorists when it had the responsibility to prevent the terrorists from boarding the plane to begin with.   Under federal law, United is responsible for the safety of its passengers.   49 U.S.C. 44701(d)(1)(A).   The fact that it allowed third parties to gain

10

access to its aircraft with deadly and dangerous weapons does not relieve it of its responsibility for the plane.  "The requirement of exclusive control should not be employed in a manner which nullifies the doctrine of *res ipsa loquitur* for the "extent of defendant's control should, of course, constitute one of the factors which enters into the determination of negligence, but all that should be required in this respect is that defendant have the right to control and the opportunity to do so."  *Pollock v. Rapid Industrial Plastics Co.*, 113 A.D.2d 520, 527 (N.Y. App. Div. 2d Dep't 1985) (internal citations omitted).  Not only did United have the right and opportunity to control its aircraft, the hijackers, and their ability to use weapons, it had the duty to do so.  Its failure in this respect entitles Plaintiff to a *res ipsa* charge.

### D.  The Hijacking and Crash of Flight 175 Were Foreseeable

Defendant claims that it cannot be negligent because the events of September 11, 2001 were not reasonably foreseeable since it did not know that al Qaeda intended to conduct a terrorist attack in the United States by flying a commercial aircraft into the World Trade Center.  Def's Br. at 15.  However, before September 11, 2001, the FAA considered and warned air carriers that terrorists would attempt to hijack a plane and use it as a weapon.[3]  In addition, in the spring and summer of 2001, the FAA issued to airports and air carriers an increasing number of warnings of a possible attack on civil aviation.  *See* 9-11 Commission Staff Report, August 26, 2004, p. 57-59.

Moreover, Defendant did not have be able to foresee the exact sequence of events that occurred on September 11, 2001 in order to be found negligent for the security failures that enabled the attacks.  United knew that individuals try to pass through

---

[3] AVSEC DEP Exhibit 168, FAA presentation, 2001 CD-ROM Terrorism Presentation to Aviation Security Personnel at Airports and Air Carriers, Slide 24

checkpoints with weapons, that airplanes could be and had been hijacked, and that individuals flying the plane could intentionally crash it.[4]  This is enough knowledge to require United to "conduct their operations with the highest possible degree of safety" in order to prevent such occurrences.  49 U.S.C. 44701(d)(1)(A).  In addition, Plaintiff's expert, Neil Livingstone, will testify at trial that the events of September 11, 2001 were foreseeable by United given the well-known information indicating terrorists' capacity and willingness to attack civil aviation and U.S. landmarks.

## CONCLUSION

In the absence of negligence, airlines are not hijacked by individuals with deadly and dangerous weapons and crashed into buildings.  United had the duty to prevent this from occurring through its security at the screening checkpoints and through the security procedures on its aircraft.  United had exclusive control of both instrumentalities under federal law.  The fact that the hijacking and crash occurred means that United failed in its duties.  Therefore, Plaintiff is entitled to the charge of *res ipsa loquitur* submitted with its initial brief.

Dated:   July 15, 2011                                   Respectfully submitted,

                                                                  **MOTLEY RICE LLC**

                                                          **By:**      /s/ Mary Schivao
                                                                       Ronald L. Motley
                                                                       Joseph F. Rice
                                                                       Donald A. Migliori
                                                                       Mary Schiavo
                                                                       Vincent I. Parrett
                                                                       Motley Rice LLC

---

[4] It is worth noting here that the crash of Egypt Air flight 990 had occurred just two years prior to September 11, 2001.  It was suspected that the First Officer of flight 990 deliberately crashed the plane into the Atlantic Ocean.

28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC 29465
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
*Attorneys for Plaintiff Bavis*