UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :   No. 21 MC 101 (AKH)

                         :

IN RE SEPTEMBER 11 LITIGATION     :   This document relates to:

                         :   *Bavis v. United Airlines Inc. et al.*,

                         :   02 CV 7154; *World Trade Center*

                         :   *Properties LLC, et al. v. United Airlines,*

                         :   *Inc., et al.*, 08 CV 3719; *World Trade*

                         :   *Center Properties LLC, et al. v.*

                         :   *American Airlines, Inc., et al.*,

                         :   08 CV 3722

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## SUPPLEMENTAL REPLY BRIEF ON
## <u>THE APPLICABLE STANDARD OF CARE</u>

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
Richard A. Williamson
Cathi Baglin
Jason T. Cohen
James B. Eisenberg
One Liberty Plaza
New York, New York 10006
Telephone: (212) 412-9500
Fax: (212) 964-9200
rwilliamson@fzwz.com
cbaglin@fzwz.com
jcohen@fzwz.com
jeisenberg@fzwz.com

Attorneys for the WTCP Plaintiffs:
World Trade Center Properties LLC
1 World Trade Center LLC
2 World Trade Center LLC
3 World Trade Center LLC
4 World Trade Center LLC
7 World Trade Company, L.P.

**Table of Contents**

Page

Preliminary Statement.................................................................................. 1

POINT I

    The WTCP Plaintiffs' Claims Are Based Upon the Aviation
    Defendants' Breaches Of Their Federal Duties Of Care ........................................ 1

POINT II

    The Applicable Federal Standard Of Care Is The Same As The State
    Standard Of Care -- Reasonableness Under the Circumstances ............................ 9

CONCLUSION................................................................................................ 12

## Table of Authorities

**Cases**                                                                          **Page(s)**

*Abdullah v. American Airlines*, Inc.,
    181 F.3d 363 (3d Cir. 1999)............................................................. 10

*Air Line Pilots Ass'n Int'l v. FAA*,
    454 F.2d 1052 (D.C. Cir. 1971) ....................................................... 7

*Air Transport Ass'n of Am, Inc. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008)......................................................... 10-11

*Campbell v. Keystone Aerial Surveys, Inc.*
    138 F.3d 996 (5th Cir.1998) .......................................................... 10

*Drake v. Laboratory Corp. of America Holdings*,
    458 F.3d 48 (2d Cir. 2006)............................................................ 11

*In re Air Crash Disaster at John F. Kennedy Int'l Airport*,
    635 F.2d 67 (2d Cir.1980)............................................................. 10

*In re September 11 Litig.*,
    594 F.Supp.2d 374 (S.D.N.Y. 2009)................................................ 7

*Schupert v. Continental Airlines, Inc.*,
    No. 00 Civ 2743, 2004 WL 784859 (S.D.N.Y. Apr. 12, 2004)............... 11

*United States v. Eastern Air Lines, Inc.*,
    792 F.2d 1560 (11th Cir. 1986) .................................................... 2, 7

*United States v. Ozark Air Lines, Inc.*,
    419 F.Supp. 795 (E.D. Mo. 1976)................................................... 8

*Williams v. Trans World Airlines*,
    509 F.2d 942 (2d Cir.1975)................................................. 7, 8, 10, 11

*Williams v. U.S. Airways, Inc.*,
    Civil Action No. 10-0399, 2010 WL 4720844 (E.D. Pa. Nov. 18, 2010) .... 11

## Table of Authorities (continued)

**Statutes and Regulations**                                                    **Page(s)**

14 C.F.R. § 91.13(a)..................................................................................10, 11

49 U.S.C. § 44701.................................................................................. 5, 6, 7

49 U.S.C. § 40101....................................................................................... 6

**Miscellaneous**

*Amicus Brief* in *Eastern Associated Coal Corp. v. United Mine Workers,*
    2000 WL 719555 .................................................................................4-5

*Amicus Brief* in *Sutton v. United Air Lines, Inc.,*
    1999 WL 161057 .................................................................................5-6

FAA Air Transportation Operation's Inspector's Handbook
    DOT publication no. 8300.10 CHG 9 (Aug. 13, 1993) ................................. 6

FAA Air Transportation Operation's Inspector's Handbook
    DOT publication no. 8700.10 CHG 16 (Dec. 22, 1997)............................. 5-6

**Preliminary Statement**

Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4 World Trade Center LLC, and 7 World Trade Company, L.P. (collectively the "WTCP Plaintiffs") respectfully submit this supplemental reply brief in further support of their proposed jury instructions as to the Aviation Defendants' federal duties of care to passengers and persons and property on the ground, and the applicable standard of care determinative of whether the Aviation Defendants breached their federal duties of care.

**POINT I**

**The WTCP Plaintiffs' Claims Are Based Upon The Aviation Defendants' Breaches Of Their Federal Duties Of Care**

The Aviation Defendants erroneously deny that on September 11 they were subject to two separate federal aviation safety and security duties of care: (1) the duty to comply with the minimum standards for safety and national security set forth, *inter alia*, in Federal Aviation Administration ("FAA") Regulations ("FARs"), the Air Carrier Standard Security Program (the "ACSSP"), the Airport Security Program (the "ASP") and federal security directives, and (2) the independent duty imposed upon all participants in commercial aviation under federal transportation law, 49 U.S.C. §§ 44701(d)(1)(A), 44702(b)(1)(A), "to provide service with the highest possible degree of safety in the public interest."[1]

---

[1]    Note that United Air Lines correctly states that "no one can reasonably doubt that aviation security is, and has long been, a critical component of aviation safety. In a very real sense, the two concepts are -- and necessarily must be -- closely tethered. After all, '[t]he FAA's primary mission is to ensure the safety, security, and efficiency of the National Airspace System.'". United Brief at 8 n.10 (quoting Executive Order No. 13180).

American Airlines, however, has concocted an unsupportable distinction between the FAA's regulation of "aviation safety" and its regulation of "aviation security," with FARs governing the former being "minimum standards" while FARs governing the latter allegedly being optimal standards. American Brief at 15.

The Aviation Defendants contend that these two federal duties are in effect a single duty because their view is that to fulfill minimum federal safety and security standards is necessarily to achieve the highest possible degree of safety in the public interest. Specifically, the Aviation Defendants argue that "[i]t makes scant sense to impose tort liability on the Aviation Defendants for failing voluntarily to exceed what [they say] the law governing their conduct specifically requires them to do." Memorandum Of Law Of American Airlines, Inc. And AMR Corporation Concerning Applicable Standard Of Care," dated July 8, 2011 ("American Brief") at 15. Consequently, the Aviation Defendants claim that "in the aviation security arena, an air carrier or security company fulfills any federal duty it may owe when it complies with applicable FARs, Security Directives or ACSSP provisions." *Id*. at 17; *see also* Defendants' Memorandum On Standard Of Care, dated July 8, 2011 ("United Brief") at 42 (trier of fact must "measure Defendants' conduct against the mandatory obligations imposed upon them by federal statute, the FARs, the ACSSP and federal security directives, for those uniform federal mandates set the standard of care that Defendants were obligated to satisfy").

The basic premise of the Aviation Defendants' argument is false: the federal aviation security rules consisting, *inter alia*, in FARs, the ACSSP, the ASP and federal security directives do *not* set forth specific, uniform security mandates that limit the Aviation Defendants' duties to passengers and persons and property on the ground. The Court in *United States v. Eastern Air Lines, Inc.*, 792 F.2d 1560 (11th Cir. 1986), long ago explained that "the purpose of the [FA] Act - to safeguard flights and *specifically to maintain security programs . . . - presupposes application of general language to changing forms of the known threats to safety. It would be potentially disabling to impose upon the FAA a requirement to draft regulations that describe in detail the many possible variations that threats to safety may take in a changing world. . . .* In the

2

context of air safety regulation, the need is to promulgate a general requirement, the meaning of which may evolve in response to changing circumstances and the exigencies of threats to safety." *Id.* at 1563 (emphasis added). As a result, security rules in FARs, the ACSSP, the ASP, and federal security directives are deliberately flexible, "strengthened by recognition of a statutory duty by air carriers to perform services as safely as possible." *Id.* at 1562-63.

On the morning of September 11, as terrorists were passing through the United Air Lines security checkpoint at Logan Airport with deadly weapons and were preparing to board, hijack and intentionally crash Flight 175 into the South Tower at the World Trade Center, the FAA's website prominently displayed the following security instructions on its "Frequently Asked Questions" page that show that the FAA neither required nor anticipated that security would be uniform for every flight at every airport:

> Q. Why can I carry the same item through one passenger screening checkpoint and not through others?
>
> A. *Some airlines and airports have stricter interpretations of deadly and dangerous items. What one airline will allow other airlines will not.*
>
> Q. What items are prohibited beyond the passenger screening checkpoint?
>
> A. The FAA prohibits airlines from allowing dangerous or deadly items through the passenger screening checkpoint. *Because of the subjective description of dangerous or deadly items, it is the airline's responsibility to determine what they will allow.* Most airlines will prohibit items such as scissors, trade tools, and items resembling firearms.

FAA Civil Aviation Security Passenger Information Frequently Asked Questions (emphasis added), a copy of which is annexed as Exhibit 1 to the accompanying Declaration of Jason T. Cohen, executed on July 15, 2011 ("Cohen Declaration").

The Checkpoint Operations Guide ("COG"), which was developed by the aviation industry to provide guidelines for use at security checkpoints, also recognized that air carriers may direct the use of intensified security procedures based on intelligence developed by the air carrier's security department, in addition to procedures that may be directed by the FAA. United Air Lines COG, § 6-1, a copy of which is annexed as Exhibit 2 to the Cohen Declaration.

To cite just a few of the many examples, both the ACSSP, *see* United Air Lines ACSSP, Appendices 1 & 2, copies of which are annexed as Exhibit 3 to the Cohen Declaration, and the COG, *see* United Air Lines COG, Preface (a copy of which is annexed as Exhibit 4 to the Cohen Declaration), required United Air Lines and its security company to exercise good judgment and reasonable care to meet their safety and security responsibilities. The Massport ASP for Logan Airport similarly contemplated that the Aviation Defendants would increase security measures based on their own assessments of the threats posed. *See* Massport ASP, § V-I, a copy of which is annexed as Exhibit 5 to the Cohen Declaration.

Consequently, the minimum standards for security set forth in FARs, the ACSSP, the ASP, the COG, and federal security directives could not and did not set forth the entire universe of specifics as to what the Aviation Defendants were required to do to provide service with the highest possible degree of safety in the public interest.

Furthermore, the Aviation Defendants, when in the past it was in their interest to do so, have advocated the WTCP Plaintiffs' position. For example, an *amicus* brief filed in the United States Supreme Court on June 1, 2000 by the Air Transport Association of America ("ATA"), the trade organization that represents all major United States air carriers, including United Air Lines and American Airlines, has admitted to other courts that the "explicit and unambiguous statutory command that obligates all air carriers to operate with the 'highest possible degree of

4

safety in the public interest'" requires that the Aviation Defendants do *more* than merely comply
with the minimum standards set forth in federal regulations:

> [T]he FAA relies on the fact that commercial airlines will impose
> even more stringent standards than does the agency for the most
> safety sensitive jobs.  The Federal Aviation Act distinguishes
> expressly between the air carriers' obligation to maintain the
> *highest* standard, and the FAA's lesser obligation to set "*minimum*"
> standards . . . .  *Federal courts have recognized that the Federal
> Aviation Act expects air carriers to set standards higher than the
> minimums promulgated by the FAA . . . .*
>
> *The FAA's minimum standards, then, offer no safe harbor for
> airlines in a given situation; their responsibilities for risk
> management are appreciably greater.*

Brief of Air Transport Ass'n of Am., *et al.* as *Amici Curiae* Supporting Petitioner in *Eastern
Assoc'd Coal Corp. v. United Mine Workers,* 2000 WL 719555, at *2, 17-18 (emphasis added).

Similarly, in the Brief *Amicus Curiae* of the Air Transport Ass'n of Am, Inc. In Support
Of Respondent [United Air Lines], in *Sutton v. United Air Lines, Inc.*, 1999 WL 161057, the
ATA, correctly relying upon the controlling authority of FAA 8700 Handbook (operative on and
before September 11), established that the statutory duty of air carriers such as United Air Lines
to achieve the highest possible degree of safety in the public interest imposes a greater obligation
upon air carriers than the obligation to merely comply with FARs and other FAA-approved
security and safety directives.  The highest possible degree of safety with respect to both
"national security and safety in air commerce" must be calibrated "irrespective of the FAA's
minimum standards":

> The Federal Aviation Act distinguishes expressly between the air
> carriers' obligation to maintain the *highest* standard, and the
> FAA's lesser obligation to set "*minimum*" standards.  49 U.S.C. §§
> 44701(b), (d) (1998).  As explained in the FAA Air Transportation
> Operations Inspector's Handbook, the higher standard to which a
> carrier is held obligates the carrier to take safety precautions
> irrespective of the FAA's minimum standards:

> The FAA . . . has the duty, as authorized by 49 U.S.C., subtitle VII, § 40101, ["Aviation Programs"] to establish *minimum* standards, rules, and national policy which provide adequately for national security and safety in air commerce. . . .
>
> 49 U.S.C. § 44701 specifies that, when prescribing standards and regulations and in issuing certificates, the FAA shall give full consideration "to the duty resting upon air operators to perform their services with the *highest* possible degree of safety in the public interest . . ." In other words, 49 U.S.C. charges the FAA with the responsibility of promulgating and enforcing *adequate* standards and regulations. At the same time, 49 U.S.C. recognizes that holders of air operator certificates have a direct responsibility of providing air transportation with the *highest* possible degree of safety. If the meaning of 49 U.S.C. § 44701(b), should be clearly understood. *If it means that this duty (or responsibility) rests directly with the air operator, irrespective of any action taken or not taken by an individual FAA inspector or the FAA.*
>
> FAA Air Transportation Operation's Inspector's Handbook, DOT publication no. 8700.10 CHG 16, at 2-8 (Dec. 22, 1997) ("FAA Handbook") (emphasis added).

*Id.* at *22-23. (A copy of FAA Handbook 8700.1 CHG 16, is annexed as Exhibit 6 to the Cohen Declaration.)

FAA Handbook 8300.10 CHG 9, dated August 13, 1993, a copy of which is annexed to the Cohen Declaration as Exhibit 7 (also operative on and before September 11), shows that all private sector participants in commercial aviation, not only air carriers, have a duty to achieve the highest possible degree of safety in the public interest: the "term 'private sector', when applied to aviation, includes all individuals and organizations participating in air commerce. Individuals and organizations such as pilots, mechanics, air carriers, air operators, air agencies, and manufacturers participating directly in air commerce." *Id.* In contrast, "[t]he FAA, which represents part of the 'public sector' has the duty as authorized by the FA Act . . . to *establish minimum standards, rules and national policy that provide for national security and safety in air*

*commerce.* This responsibility for aviation safety, however, does not rest entirely with the

FAA." *Id.* (emphasis added).

"Persons or organizations of the 'private sector' also have an obligation to provide for

public safety. All airmen, air carriers, aircraft owners and operators, air agencies, and certain

airport operators who qualify and accept an FAA certificate assume these 'private sector'

responsibilities." *Id.* Private sector participants "have a direct responsibility for providing air

transportation with the highest possible degree of safety. *The meaning of Section 601(b) of the*

*FA Act should be clearly understood. It means this responsibility rests directly [upon private*

*sector participants], irrespective of any action taken or not taken by an individual FAA Inspector*

*or the FAA.*" *Id.* (emphasis added); *see also In re September 11 Litig.*, 594 F.Supp.2d 374, 380

(S.D.N.Y. 2009) (Hellerstein, J.) "'The duty of an air carrier [is] to provide service with the

highest possible degree of safety in the public interest.' 49 U.S.C. §§ 44701(d)(1)(A),

44702(b)(1)(A). The air carrier's duty extends beyond those aboard the aircraft to 'individuals

and property on the ground.' *Williams v. Trans World Airlines*, 509 F.2d 942, 946 (2d Cir. 1975)

('This duty has both a statutory and common law basis.')".

Because the FAA's interpretation of the statutory scheme which it is charged with

regulating is afforded great weight, *see United States v. Eastern Air Lines, Inc.*, 792 F.2d 1560

(11th Cir. 1986); *Air Line Pilots Ass'n Int'l v. FAA*, 454 F.2d 1052 (D.C. Cir. 1971) (FAA's

construction of its own regulations is entitled to due deference by a court), the Aviation

Defendants are wrong when they conflate their independent federal duty of providing service

with the highest possible degree of safety in the public interest with the FAA's promulgation of

or failure to promulgate rules relating to aviation safety and security. The Aviation Defendants

had a duty to do more on September 11 than to execute federal regulations in rote fashion. They

had, for example, "at least a duty to conduct searches of the carry-on baggage of boarding passengers with the highest possible degree of care, and to prevent the carrying aboard of unauthorized weapons where such prevention can reasonably be achieved." *United States v. Ozark Air Lines, Inc.*, 419 F.Supp. 795, 798 (E.D. Mo. 1976).

Finally, the argument that in the aviation security arena, an air carrier or security company "cannot be found liable in tort for failure to 'provide service with the highest possible degree of safety' as to the conduct covered by the federal security safety standard," American Brief at 17, has been rejected by the Second Circuit.

The Court in *Williams v. Trans World Airlines*, 509 F.2d 942 (2d Cir. 1975) stated that the test of an air carrier's liability for refusing to allow a passenger who was considered an apparent hijacking risk to board a commercial aircraft was whether the decision was "rational and reasonable and not capricious or arbitrary in the light of [the] facts and circumstances," *id.* at 948. The duty of care that the "rational and reasonable" test measured was the duty of an air carrier to provide service with the highest possible degree of safety in the public interest:

> One of the greatest hazards besetting the Commercial transportation of passengers by air in the past fifteen years has been the hijacking of passenger planes. Many lives have been lost and much suffering has been caused by this piratical practice, not to mention the disruption of plans and the frustrations, inconveniences and losses visited upon hundreds of people.
>
> * * * *
>
> In order to meet this serious problem Congress enacted appropriate legislation. As an air carrier . . . TWA was and is required to perform its services with the highest possible degree of safety in the public interest.

*Williams*, 509 F.2d at 946.

## POINT II

### The Applicable Federal Standard Of Care Is The Same As The
### State Standard Of Care -- Reasonableness Under The Circumstances

Having established what the Aviation Defendants' federal duties[2] to passengers and to

persons and property on the ground were on September 11, the remaining issue in dispute

concerns the applicable standard of care that the jury must use to determine whether a breach of

the Aviation Defendants' federal duties occurred.  The WTCP Plaintiffs' proposed jury

instructions were based upon this Court's insights during oral argument on the 2007 motions to

determine the applicable standard of care, namely, that federal and state standards of care are

based upon the same basic tort principle that everyone should act reasonably under the

circumstances to avoid causing harm to the person and property of others:

> The Court:  What I thought to say was that where there are issues
> of reasonableness probably they are federally sourced, but that
> since there is so little definition in federal law of standards and
> [sic] care, undoubtedly, the federal law would incorporate much of
> what the common law has developed.

---

[2]      American Airlines argues that "nothing in New York tort law suggests that it would impose aviation security procedures more stringent than those adopted pre-9/11 by the FAA." American Brief at 17.  American Airlines also argues that nothing in Plaintiffs' "argument warrants a departure from the federal standard of care." *Id*. at 19.

United Air Lines, similarly, argues that "[if] federal law does not 'require' a party to do something 'more,' then Plaintiff cannot use state law in a way that would 'require' the defendants to do so."  United Brief at 28.

The implication of these remarks is that the WTCP Plaintiffs' proposed jury instructions improperly seek to enlarge the Aviation Defendants' safety and security obligations beyond those imposed by federal law.  As shown, *supra*, the implication is incorrect.  The WTCP Plaintiffs' ATSSSA claim is based upon the Aviation Defendants' breaches of their federal tort duties under the FA Act (highest possible degree of safety in the public interest) and the FARs and other FAA-approved rules (minimum standards of safety and security).  Moreover, because the applicable federal and state standards of care are the same -- reasonableness under the circumstances -- use of this standard in the proposed jury instructions cannot enlarge the Aviation Defendants' liability beyond that imposed under federal law.

Transcript, June 14, 2007 (21 MC 97), at 50.  (A copy of the foregoing excerpt from the June 14,

2007 Transcript is annexed as Exhibit 8 to the Cohen Declaration.)

It is well-established that "violations of [FAA] regulations [constitute] some evidence of

negligence," because "FARs have the 'force and effect of law,'" *Campbell v. Keystone Aerial*

*Surveys, Inc.*, 138 F.3d 996, 1002 (5th Cir.1998); *see also In re Air Crash Disaster at John F.*

*Kennedy Int'l Airport*, 635 F.2d 67, 75-76 (2d Cir.1980).  The FAA Handbooks referenced,

*supra*, establish that the failure to provide safety and security service with the highest possible

degree of safety in the public interest also constitutes evidence of negligence, even when the

safety and security acts or omissions at issue are not governed by specific FARS.

The Third Circuit in the seminal case of *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d

Cir. 1999) explained, based upon FAA Regulation 91.13(a), 14 C.F.R. § 91.13(a), that "in

determining the standards of care in an aviation negligence action, *a court must refer not only to*

*specific regulations but also to the overall concept that aircraft may not be operated in a*

*careless or reckless manner.  The applicable standard of care is not limited to a particular*

*regulation of a specific area; it expands to encompass the issue of whether the overall operation*

*or conduct in question was careless or reckless.  Abdullah*, 181 F.3d at 371 (emphasis added).

The Second Circuit recently concurred -- FAR 91.13 establishes an overarching standard

of care applicable to aviation tort claims:

> Congress and the Federal Aviation Administration have used
> th[eir] authority to enact rules addressing virtually all areas of air
> safety.  These regulations range from a general standard of care for
> operating requirements, see 14 C.F.R. § 91.13(a) ("No person may
> operate an aircraft in a careless or reckless manner so as to
> endanger the life or property of another.").

*Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008); *see also Williams*,

509 F.2d 946-47 (Second Circuit applied reasonableness under the circumstances as the standard

of care in "air piracy" case to determine whether aviation defendant had breached its duty of highest possible degree of safety); *Schupert v. Continental Airlines, Inc.*, No. 00 Civ. 2743, 2004 WL 784859, at *6 (S.D.N.Y. Apr. 12, 2004) (14 C.F.R. § 91.13(a) sets a federal "general standard of care" applicable to aviation safety).

An overarching standard of care is necessary because federal law should not be interpreted so as to deprive plaintiffs of legal recourse against defendants "who would otherwise apparently enjoy immunity from liability despite their alleged failure to comply with federal law." *Drake v. Lab. Corp. of Am Holdings*, 458 F.3d 48, 65 (2d Cir. 2006) (aviation defendant not shielded from tort liability simply because it complied with specific federal drug-testing regulations).

Thus, despite the dozens of pages in the Aviation Defendants' briefs devoted to establishing that federal law supposedly preempts state standards of care, *"there is no difference between carelessness and negligence.  Thus, facts supporting a claim of simple negligence under* [state common] *law may, as a matter of law, support a claim* [for careless operation of an aircraft] *under § 91.13." Williams v. U.S. Airways, Inc.*, Civil Action No. 10-0399, 2010 WL 4720844, at * 4 (E.D. Pa. Nov. 18, 2010) (emphasis added).

Based upon the foregoing, this Court should instruct the jury with the WTCP Plaintiffs' proposed instructions contained in their opening brief, and reject the Aviation Defendants' proposed jury instructions that are based upon a manifestly incorrect statement of applicable law.

## CONCLUSION

The WTCP Plaintiff's proposed jury instructions as to the Aviation Defendants' federal duties of care and the federal standard of care that are determinative of whether the Aviation Defendants should be found liable for damages for the breach of their duties of care should be used in the above-captioned actions.

Dated: New York, New York
      July 15, 2011

          Respectfully submitted,

          FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

          By:_____/s/_____
                Richard A. Williamson, Esq.

          One Liberty Plaza
          New York, New York 10006
          (212) 412-9500

          Attorneys for the WTCP Plaintiffs:
          World Trade Center Properties LLC
          1 World Trade Center LLC
          2 World Trade Center LLC
          3 World Trade Center LLC
          4 World Trade Center LLC
          7 World Trade Company, L.P.