UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :    No. 21 MC 101 (AKH)
                                                    :
                                                    :    This document relates to :
IN RE SEPTEMBER 11 LITIGATION                       :    *Bavis v. United Airlines Inc.et al.,*
                                                    :    02 CV 7154
                                                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# PLAINTIFF'S MEMORANDUM OF LAW ON RECOVERABLE DAMAGES UNDER MASSACHUSETTS LAW

MOTLEY RICE LLC
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary F. Schiavo
Vincent I. Parrett
Elizabeth Smith
28 Bridgeside Boulevard
Post Office Box 650001
Mount Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
*Attorneys for Plaintiff Bavis*

Dated:  June 17, 2011
Mount Pleasant, SC

# TABLE OF AUTHORITIES

## Cases

*Gage v. City of Westfield,* 532 N.E.2d 62 (Mass. App. Ct. 1988) ....................... 8

*Bullard v. Central Vermont Railway*, 565 F.2d 193, 197 (1st Cir. 1977)......................... 8, 9

*Campbell v. Ramanos*, 191 N.E.2d 764, 768 (Mass. 1963).................................. 7

*DaSilva v. American Brands, Inc.*, 845 F.2d 356 (1st Cir. 1988)........................ 5

*Davenport v. J.C. Webb*, 183 N.E.2d 902, 903 (N.Y. Ct. App. 1962)................. 6

*In Re Sept. 11 Litig.*, 494 F.Supp. 2d at 240 ...................................................... 3

*Keene v. Brigham and Women's Hospital, Inc.*, 775 N.E.2d 725 (Mass. App. Ct. 2002) 13

*Kennedy v. Standard Sugar Refinery*, 125 Mass. 90 (Mass. 1878) ..................... 8

*Litif v. United States*, 682 F.Supp. 2d 60 (D.Mass. 2010) .................................... 5

*McCloskey v. Mueller*, 446 F.3d 262, 269 (1st Cir. 2006).................................. 10

*McIntyre v. United States* 447 F.Supp.2d 54 (D. Mass. 2006) ....................... 7, 9

*Mitchell v. United States*, 141 F.3d 8 (1st Cir. 1998) .......................................... 4

*Muniz v. Rovira*, 373 F.3d 1, 8 (1st Cir. 2004) ..................................................... 5

*O'Leary v. United States Lines Co.*, 111 F.Supp. 745, 747 (D. Mass. 1953) ...................... 9

*Schultz v. Grogean*, 548 N.E.2d 180 (Mass. 1990)............................................. 4

## Statutes

Mass. Gen. L. Ch. 229 ........................................................................................ 3

Mass. Gen. L. Ch. 231 § 6B................................................................................. 7

## Other Authorities

Revised 9-11 Commission Staff Aviation Monograph September 2005, p. 20................ 11

# PLAINTIFF'S MEMORANDUM OF LAW ON RECOVERABLE DAMAGES UNDER MASSACHUSETTS LAW

Plaintiff, Mary Bavis, respectfully submits this memorandum of law regarding the damages recoverable under Massachusetts law for the death of her son, Mark Bavis.

## Introduction

The Massachusetts wrongful death statute, the Massachusetts survival statute, and case law interpreting these statutes outline the damages that Mary Bavis can recover for the death of Mark Bavis. Pursuant to the wrongful death statute, Mary Bavis is entitled to recover for the loss of Mark's income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, for funeral and burial expenses, punitive damages[1], and prejudgment interest. Mass. Gen. L. Ch. 229, § 2 and § 11 (2011). The survival statute provides for the recovery of damages for the conscious mental and physical pain and suffering that Mark experienced prior to his death. Mass. Gen. L. Ch. 229 § 6 and Ch. 228 § 1 (2011).

**A. Damages Recoverable Under the Massachusetts Wrongful Death Statute**

Pursuant to the Massachusetts Wrongful Death Statute, the damages recoverable in a wrongful death action are:

> (1) The fair monetary value of the decedent to the persons entitled to receive the damages recovered…including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered.
> (2) The reasonable funeral and burial expenses of the decedent.

---

[1] Given this Court's ruling that punitive damages are unavailable as a matter of law in these actions, this element of damages is not discussed herein. *See In Re Sept. 11 Litig.*, 494 F.Supp. 2d at 240.

1

> (3) Punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant.

Mass. Gen. L. Ch. 229, § 2 (2011).

In cases where a decedent dies without a surviving spouse or children, the decedent's parents recover damages as "next of kin."  Mass. Gen. L. Ch. 229 § 1 (2011); *Schultz v. Grogean*, 548 N.E.2d 180 (Mass. 1990).  The wrongful death statute permits parents of a deceased adult unmarried child to recover for the elements of damages provided in the statute, including those damages akin to loss of consortium, regardless of whether the parents were financially dependent on the deceased.  *Schultz,* 548 N.E.2d at 182; *See also Mitchell v. United States*, 141 F.3d 8 (1st Cir. 1998) (stating that the wrongful death statute does not mention a dependency requirement and that Massachusetts courts have approved awards of damages to relatives who were not financially dependent on the deceased).  Thus, although Mary Bavis was not financially dependent on Mark for her day to day living expenses[2], she can recover damages for the income that she would have reasonably expected to receive from him, and for the loss of Mark's services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice.

**1.  Loss of Services, Protection, Care, Assistance, Society, Companionship, Comfort, Guidance, Counsel, and Advice**

The Massachusetts wrongful death statute specifically permits beneficiaries to recover the economic value of these elements of damages, which the Massachusetts

---

[2] As is discussed below, however, Mark did take his mother shopping and purchased groceries for her, in addition to purchasing other items she needed in and for her house. He also drove her to appointments and visits.

2

Supreme Court has stated are akin to loss of consortium damages. *See Schultz,* 548 N.E.2d at 182. There is no "scientific formula or measuring device" to determine the amount of these damages. *See Muniz v. Rovira*, 373 F.3d 1, 8 (1st Cir. 2004). The fact finder must ultimately translate the evidence presented at trial on these elements of damages "into a compensatory sum." *See DaSilva v. American Brands, Inc.*, 845 F.2d 356 (1st Cir. 1988); *Litif v. United States*, 682 F.Supp. 2d 60 (D.Mass. 2010).

In *Litif v. United States*, the U.S. District Court for the District of Massachusetts assessed consortium damages in a case involving the murder of several people by a FBI informant. 682 F.Supp. 2d at 64. One of the plaintiffs was the mother of one of the decedents, Debra Davis. In evaluating the damages for the plaintiff's loss of consortium arising from her daughter's death twenty-seven years earlier, the court stated:

> Debra Davis was an adult, did not live at home, and did not provide financial support or services to her mother. Grief and emotional loss is not loss of consortium. Nevertheless, the evidence at trial sufficiently establishes that Olga Davis suffered precisely the losses the [wrongful death] Statute was enacted to compensate. There was testimony that Debra and Olga spoke frequently (daily by phone), visited frequently, vacationed together, and that Debra asked after Olga's health, reminded her about her medications, and occasionally took her shopping. From time to time, the two women did each other's hair in a companionable fashion…The evidence shows that the Davis family was a close, caring family.

*Id.* at 83. The Court noted that the Massachusetts state court had awarded the plaintiff $5 Million for her loss of consortium damages in the civil trial against the informant. *Id.* at 84. While acknowledging that this amount was "closer to the jury verdicts of the people of the Commonwealth" the District court awarded the plaintiff $1 Million for her

3

consortium claim, finding that amount more "in line with the findings made in this federal district court for similar losses." *Id.* at 84-85.

There can be no question that Mary Bavis has experienced a significant loss of Mark's services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice. The evidence will show that Mark Bavis was a doting son, dedicated to his mother. Mark spent more time with his mother, and she with him, than any of his siblings. They enjoyed a very close and loving relationship. He regularly helped her around her house and performed yard work and maintenance for her. He also arranged for contractors to do work on her house when needed. Mary Bavis does not drive on the highway, and Mark was one of her modes of transportation. Of all of the children, Mark took on the most responsibility for taking his mother on outings out of the house. In addition to taking her shopping, to visit friends and family and to other places, and helping her with chores and home projects, Mark would regularly talk with his mother about her problems and give her advice on a variety of matters, including medical issues. Although Mark's job required him to travel quite a bit, he saw his mother at least once a week and spoke to her on the telephone every day.

2. **Pre-Judgment Interest[3]**

The Massachusetts wrongful death statutes provide for pre-judgment interest in wrongful death actions. Mass. Gen. L. Ch. 229 § 11 (2011). The statute states:

---

[3] Under New York law, "prejudgment interest in a wrongful death action is 'part of the damages…the addition of which is governed by recourse to the usual conflicts of law rules, which we have consistently applied by not adding interest to the judgment unless *lex loci delictus* authorizes such an addition.'" *Davenport v. J.C. Webb*, 183 N.E.2d 902, 903 (N.Y. Ct. App. 1962) (applying *lex loci delictus*, which was New York's choice of law rule governing substantive issues at the time). Since this court has determined that the conflicts of law analysis in these cases leads to the application of the law of the decedent's domicile to damages issues in the case, Massachusetts law is applicable to the determination of prejudgment interest.

4

> In any civil action in which a verdict is given or a finding made for pecuniary damages for the death, with or without conscious suffering, of any person…there shall be added by the clerk of the court to the amount of the damages interest thereon at the same rate of interest per annum as provided in section six B of chapter two hundred and thirty-one, from the date of the commencement of the action.

*Id.* Section six B of chapter two hundred and thirty-one of the Massachusetts code provides an interest rate of 12% per year that begins to run when the action is commenced:

> In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of the court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action.

Mass. Gen. L. Ch. 231 § 6B (2011). The complaint in this case was filed on September 9, 2002; thus, prejudgment interest will be calculated from that date forward.

**B. Survival Damages**

   **1. Conscious Pain and Suffering**

Under Massachusetts law, damages are recoverable for the conscious physical and mental pain and suffering of the deceased prior to death. Mass. Gen. L. Ch. 229 § 6 and Ch. 228 § 1 (2011); *McIntyre v. United States* 447 F.Supp.2d 54 (D. Mass. 2006). At the very least, these damages are recoverable for the period of time between injury and death. *See Campbell v. Ramanos*, 191 N.E.2d 764, 768 (Mass. 1963) (holding "a very brief period of life between injury and death will enable the cause of action to accrue…and will give time for conscious suffering for which damages may be assessed") However, there is support in Massachusetts case law for assessing pain and suffering damages prior

5

to impact. *See Kennedy v. Standard Sugar Refinery*, 125 Mass. 90 (Mass. 1878); *Bullard v. Central Vermont Railway*, 565 F.2d 193, 197 (1st Cir. 1977); *McIntyre v. United States* 447 F.Supp.2d 54 (D. Mass. 2006).

Defendants will undoubtedly cite the case of *Gage v. City of Westfield* for the proposition that pre-impact fright is not recoverable under Massachusetts law. 532 N.E.2d 62 (Mass. App. Ct. 1988). The *Gage* case holds, "the relevant period for purposes of measuring compensation for conscious pain and suffering has consistently been defined in our appellate decisions as commencing with the impact of the fatal injury. Assuming that limitation to be intentional, we hesitate to extend the right to recover pain and suffering to pre-impact fright." *Id.* at 71. However, *Gage* is a Court of Appeals case. In reaching its decision, the *Gage* court noted but disregarded earlier case law from the highest court in Massachusetts, the Supreme Judicial Court, which supports the recovery of pre-impact damages. *Id.*; *Kennedy v. Standard Sugar Refinery*, 125 Mass. 90 (Mass. 1878).

In *Kennedy v. Standard Sugar Refinery*, the plaintiff brought a wrongful death and survival action arising out of the decedent's twenty foot fall from a platform. *Id.* At trial, the jury instruction included the following: "the jury may include compensation for mental or other suffering endured by the intestate from the time he fell until he struck the ground." *Id.* at 90. On appeal, the Supreme Judicial Court of Massachusetts overturned the instruction, but only because the Plaintiff did not present any evidence of the decedent's mental state during the fall. *Id.* at 92. The court acknowledged that damages for the decedent's mental suffering during the fall were otherwise recoverable, stating: "It may be true, as an abstract proposition of law, that if a man is precipitated from a

height by the negligence of another, and is injured, he may recover, as one element of his damages, for any mental suffering he may prove he endured during the fall." *Id.*

Furthermore, the First Circuit, interpreting Massachusetts law, has held that damages are recoverable in a personal injury case involving a train collision for "fright just before the accident." *Bullard v. Central Vermont Railway*, 565 F.2d 193, 197 (1st Cir. 1977). In addition, the United States District Court for the District of Massachusetts has stated: "In this Commonwealth…survival damages, including suffering from the fear of loss of life, are in addition to damages recovered by relatives under the Massachusetts wrongful death statute." *O'Leary v. United States Lines Co.*, 111 F.Supp. 745, 747 (D. Mass. 1953) (dictum).

In *McIntyre v. United States,* the Massachusetts District Court again evaluated the availability of damages for pre-death pain, suffering, and fright. 447 F.Supp. 2d 54 (D. Mass. 2006). It noted that the *Gage* decision was not in line with earlier Massachusetts jurisprudence on the availability of pre-impact damages. *Id.* at 117, n. 102. The Court stated, that it was "not convinced that *Gage* accurately predicts the direction the [Supreme Judicial Court] would follow." *Id*. In questioning the holding in *Gage*, the *McIntyre* court noted that the Supreme Judicial Court of Massachusetts gives a "'warm reception'" to Restatement principles, which state:

> Where the tortious conduct in fact results in bodily harm, and makes the actor liable for it, a cause of action is independently established, and there is sufficient assurance that the resulting emotional disturbance is genuine and serious. There may be recovery for such emotional disturbance, even though the emotional disturbance does not result in any further bodily harm.
>
> [This] rule…is not limited to emotional disturbance resulting from the bodily harm itself, but includes also such

7

> disturbance resulting from the conduct of the actor. Thus one who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, but also for his fright at seeing the car about to hit him.

*Id.* at 117, n. 102 (*citing McCloskey v. Mueller*, 446 F.3d 262, 269 (1st Cir. 2006) and Restatement (Second) of Torts § 456 cmts. c and e).

In *McIntyre,* the Court applied Massachusetts law and awarded damages for the conscious pain and suffering of a government informant who was held captive and murdered by another FBI informant. *Id.* at 58-59. The issue before the court was whether damages were available for some period of time before the final, fatal injury was inflicted on the decedent. *Id.* at 117. Prior to his death, the decedent was handcuffed, chained to a chair, and strangled. *Id.* at 103. He was eventually killed when the assailants shot him to death. *Id.* The defendant, relying on *Gage,* argued that the plaintiff was not entitled to an award for conscious suffering because such damages were only available after the final event that actually caused the decedent's death – the gunshot. *Id.* at 117. Since the decedent was not conscious after the gunshot, the defendant argued, the plaintiff could not recover damages for pain and suffering, including fear of his impending death. *Id.*

The *McIntyre* court found that the "fatal injury" included the period of time from the decedent's strangulation until his death by gunshot. *Id.* at 118. The court held that these actions were a "unitary event undertaken with the single intention of causing McIntyre's death" and found that there was ample evidence of the decedent's pain suffering during this time:

> If…McIntyre suffered mental anguish even before any attempt was made to hill [sic] him, the anguish he

> experienced as the attempt began and progressed must have intensified dramatically. He was terrified; he knew his tormentors intended, and would likely succeed in accomplishing, his murder. He knew that there would be no time for goodbyes to his loved ones or for putting his affairs in order; for he would not leave that basement alive. . . . I infer that, for McIntyre, the one to two minutes of physical and mental pain were an eternity.

*Id.* at 118-119.  The court awarded $3 Million in pain and suffering damages.  *Id.* at 119.

Under Massachusetts law, specifically the *Kennedy* case, and following other federal courts' interpretations of Massachusetts law in *Bullard* and *O'Leary*, Mrs. Bavis can recover for the pre-impact fear and anguish Mark Bavis experienced prior to the crash of flight 175 into the World Trade Center.  However, even if the court finds that recovery is only available for the period of time between injury and death, the evidence will show that Mark Bavis was injured and experienced significant conscious mental and physical pain and suffering prior to his death.  The 9-11 Commission Report and Staff Monograph detail the horrors that the passengers of flight 175 experienced as the hijacking occurred and until the plane crashed into the World Trade Center.  The hijackers used knives, mace, and the threat of a bomb to take control of the aircraft.  *See* Revised 9-11 Commission Staff Aviation Monograph September 2005, p. 20.  They stabbed flight attendants, killed the pilots, and forced the passengers to the back of the plane.  *Id.* at 20-21.

Phone calls reveal that the hijackers were flying the plane strangely and that the passengers were afraid that the hijackers were going to crash the plane.  *Id.* at 20-23.  At 8:52 a.m. Peter Burton Hanson reported the hijacking to his father and told him that the plane was making "strange moves."  *Id.* at 21.  At 8:59 a.m., the evidence will show that passenger Brian Sweeney left his wife a message on her answering machine saying that

9

the plane had been hijacked and he was not sure if they were going to survive. *Id.* at 22. At 9:00 a.m. Brian Sweeney called his mother, telling her that the passengers were thinking about storming the cockpit. *Id.* at 22. At 9:00 a.m. Peter Burton Hanson again called his father and told him:

> It's getting bad, Dad – a stewardess was stabbed-They seem to have knives and mace - they said they have a bomb – It's getting very bad on the plane – Passengers are throwing up and getting sick – The plane is making jerky movements – I don't think the pilot is flying the plane – I think we are going down – I think they intend to go to Chicago or someplace and fly into a building.

*Id.* at 22-23.

Plaintiff's expert, Dr. Richard Levy, will testify that during the flight, the aircraft made unusual and unexpected movements and the passengers experienced physical injuries, pain, and suffering as the hijackers haphazardly flew the plane toward the World Trade Center. During the last four minutes of Flight 175, the plane was flown in a violent descent, which would have resulted in the passengers slamming into aircraft structures and each other. He will testify that the passengers experienced physical injuries and pain related to the abrupt movements of the aircraft, and experienced fear and terror realizing that their deaths were imminent. Dr. Levy's expert report is attached as an exhibit. As in the *McIntyre* case, the actions of the hijackers which injured and ultimately killed Mark Bavis were unitary events that were undertaken with the intention of killing the passengers on flight 175. Thus, Mary Bavis can recover for the mental and physical pain and suffering Mark experienced during the duration of the hijacking until the plane crashed into the World Trade Center.

**2. Loss of Enjoyment of Life**

The damages recoverable for Mark's pain and suffering include the loss of enjoyment of life that Mark experienced prior to his death. Although under Massachusetts law, it does not appear that damages are recoverable for the loss of the decedent's life itself as a separate element of damages, it is clear that damages are recoverable for the loss of enjoyment of life that a decedent consciously experiences prior to death as part of the pain and suffering element of damages. *See Keene v. Brigham and Women's Hospital, Inc.*, 775 N.E.2d 725 (Mass. App. Ct. 2002) *overruled on other grounds by Keene v. Brigham and Women's Hospital, Inc.,* 786 N.E.2d 824 (Mass. 2003).