UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
:
: No. 21 MC 101 (AKH)
:
IN RE SEPTEMBER 11 LITIGATION     : This document relates to :
: *Bavis v. United Airlines Inc. et al.*,
: 02 CV 7154
:
---------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF CD-ROM CONTAINING
POWERPOINT AND AUDIO/VISUAL PRESENTATION ENTITLED
"FAA TRANSNATIONAL THREAT TO CIVIL AVIATION"**

MOTLEY RICE LLC
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary F. Schiavo
Vincent I. Parrett
Robert T. Haefele
Elizabeth Smith
28 Bridgeside Boulevard
Post Office Box 650001
Mount Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
*Attorneys for Plaintiff Bavis*

Dated:  August 5, 2011
Mount Pleasant, SC

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL PRODUCTION OF CD-ROM

Plaintiff, Mary Bavis, respectfully submits this memorandum of law requesting an order compelling the defendant, United Airlines Inc. ("United") to produce for inspection and copying the original of a CD-ROM PowerPoint and audio entitled "FAA Transnational Threat to Civil Aviation" ("Transnational Threat CD"), which contains an audio and video presentation of terrorist threat assessment information that the FAA provided to United and hundreds of other members in the aviation industry between March and May 2001. Defendant United previously produced the Transnational Threat CD to the TSA in 2006 for review, but the TSA returned it to United indicating that the TSA was unable to access the data on the CD. Since that time, although United acknowledges that it maintains the CD, it has done nothing to produce the CD to the plaintiff in response to plaintiff's various discovery requests. Plaintiff seeks an order compelling United to produce the original Transnational Threat CD to the plaintiff.

### A. Introduction

1.  Throughout the course of the litigation, plaintiffs have served multiple discovery requests to which the Transnational Threat CD was responsive.[1] The deadline for responding to the relevant discovery requests is long overdue. Indeed, United has not specifically objected to producing the Transnational Threat CD, has not claimed the CD-ROM is not relevant, and in fact, at one time United initiated production of the CD, but failed to

---

[1] On December 3, 2002 plaintiffs served on the defendants Plaintiffs' Master Discovery (First Set), which included at least four requests to which production of the CD-ROM was responsive – viz., Requests 18, 23, 48, and 49. On March 20, 2006, plaintiffs served on the defendants Plaintiffs' Joint Master Discovery (Second Set) – Airline and Security Company Defendants, which included at least four more requests to which production of the CD-ROM was responsive – viz., Requests 2, 13, 67, and 94. Most significantly, Request 2 identified the CD-ROM by name in the request. (See Exhibits 1 and 2 to Declaration of Robert T. Haefele accompanying this motion (hereinafter "Haefele Declaration"), attaching the referenced discovery requests).

1

complete the production to the plaintiff. Specifically, in 2006, United produced the Transnational Threat CD to the TSA for review, but after the TSA returned the CD to United indicating that the TSA was unable to access the data on the CD, United took no steps to produce the responsive item to the Plaintiff.

2. Plaintiff's counsel conferred with United's counsel in a good-faith effort to resolve the dispute without court action, as required by Federal Rule of Civil Procedure 37(a)(1) and as shown in the accompanying declaration. On July 21, 2011, Donald A. Migliori, counsel for the Plaintiff wrote to Jeffrey J. Ellis and Michael Rowe Feagley, counsel for United, to follow up on the long-overdue production, and specifically requested the Transnational Threat CD containing an audio and visual presentation. (Haefele Declaration, Exhibit 3 (July 21, 2011 Letter from D. Migliori to J. Ellis and M. Feagley).) On July 29, 2011, United's counsel responded with a letter asserting that United had satisfied its obligation to produce the requested Transnational Threat CD containing the audio and visual presentation by producing a printed set of documents bates stamped UAL 027524-56, which is incomplete due to obscured printing, heavy redactions, and the complete absence of the audio and video portions of the presentation. (Haefele Declaration, Exhibit 4 (July 29, 2011 Letter from M. Feagley to D. Migliori); Exhibit 5 (UAL 027524-56).) In communications following that exchange of letters, it became clear that the court's involvement is necessary to resolve the issue. Haefele Declaration, at paragraph 2.

B. Argument

3. The Court should grant Plaintiff's motion to compel because the Transnational Threat CD was specifically requested, is within United's possession, custody, and control, and is relevant to issues presented in the litigation. Under the Federal Rules of Civil Procedure, a

party may serve discovery seeking production of items in the "possession, custody, or control" of the producing party, regarding "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 34(a)(1), 26(b)(1). "Relevant" information need not be admissible; rather, the requested material is subject to discovery if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The court may compel discovery if a party did not respond or permit inspection under Rule 34. Fed. R. Civ. P. 37(a)((3)(B).

4. The Transnational Threat CD addresses an issue anticipated to be sharply disputed at trial – namely, the degree of terrorist threat information United possessed on September 11, 2001. Although the incomplete paper printout United offers (Exhibit 5 to Haefele Declaration, UAL 027524-56) in "substitute" of the actual audio/visual presentation on the Transnational Threat CD is an unsatisfactory substitute for a variety of reasons discussed below, the value of the audio/visual presentation on the Transnational Threat CD can be gleaned from that incomplete, obscured substitute, as well as from another slightly more complete, but similarly poor substitute printed version of the presentation about which multiple witnesses have testified. (Haefele Declaration, Exhibit 6 (Exhibit 168 to November 1, 2006 Deposition of Michael Touhey ("Touhey Exhibit 168"), bates stamped 1000542 to 1000559).)

5. From those two "substitutes" and the testimony surrounding them, we know that the FAA provided the presentation contained on the Transnational Threat CD both in the form of the CD and at in-person briefings in early 2001. The Federal Aviation Administration Office of Civil Aviation Security Intelligence sent United's Manager of Corporate Security, Richard Davis, a copy of the Transnational Threat CD and United representatives attended a security briefing of the material on the Transnational Threat CD at the FAA Headquarters, in Washington, DC in or about March 2001. (Haefele Declaration, Exhibit 7 (Excerpts from

3

April 27, 2009 transcript of deposition of Richard C. Davis, at page 282, lines 2 to 18; page 291, line 10 to page 292, line 17); Exhibit 8 (Exhibit 279 used at April 27-28, 2009 deposition of Richard Davis, at TSA0780); Exhibit 9 (Exhibit 1073 to March 5, 2009 Deposition of William Schmidt, page 9 of 16).)

  6. The information United received through the Transnational Threat presentation, both in-person and on the CD, included substantial warnings about Usama bin Laden and the threat posed by his terrorist network. In fact, of the 29 slides, the narration that accompanies the slides references Usama bin Laden on 13 of the slides. For example, at slide 7, United was advised that "[T]he organization that presents the greatest clear and present danger to U.S. interests is the International Islamic Front for the Jihad Against the Crusaders and Jews formed by Usama bin Laden. (Haefele Declaration, Exhibit 6 (Touhey Exhibit 168, at 1000544).) At slide 25, United was told that "[T]he bin Laden network represents the most ominous terrorist threat we've ever faced...." (Haefele Declaration, Exhibit 6 (Touhey Exhibit 168, at 1000551).) Similarly, at slide 4B, United was advised that among the groups presenting the most significant threats to the United States are "the groups which are part of the International Islamic Front for Jihad against Crusaders and Jews formed by Usama bin Laden." (Haefele Declaration, Exhibit 6 (Touhey Exhibit 168, at 1000543).) Warnings about Usama bin Laden and his terrorist ties are scattered throughout the remainder of the presentation, making it essentially impossible not to recognize bin Laden as a serious threat to U.S. interests, including to U.S. aviation – particularly in light of the context in which the presentation was being offered – from the FAA's Office of Civil Aviation Security Intelligence to members of the U.S. civil aviation industry.

  7. In the Transnational Threat presentation, United was also advised of the possibility of domestic hijackings that could also include suicide attacks, using airlines as

4

flying bombs. For example, the text of slide 24 identifies the "Hijacking Threat" as including both "Overseas vs. Domestic" and "Hostages vs. Flying Bomb," In the narrative accompanying slide 24, United is advised that "a terrorist hijacking of a U.S. airliner is more likely to occur overseas than in the United States." But, as for a domestic hijacking, which the presentation notes would result in a greater number of American hostages, the presentation also warns "We don't rule [a domestic hijacking] out...." Warning of the possibility of a suicide attack to an airline, the slide continues, "[i]f ... the intent of the hijackers is not to exchange hostages for prisoners, but to commit suicide in a spectacular explosion, a domestic hijacking would probably be preferable." (Haefele Declaration, Exhibit 6 (Touhey Exhibit 168, at 1000551).)

8. Undoubtedly these facts are relevant to the events that began to unfold at Logan Airport on September 11, 2001. Multiple employees of the aviation defendants working at Logan Airport on September 11, 2001, both United and Huntleigh employees, have expressed that they believed that this type of information – which United had in its possession but had not provided to the employees – would have been useful to them in performing their responsibilities. For example, when asked about the information referenced in the slides at 4B, 7, and 24, United Customer Service Manager at Boston Logan Airport, Steven Bolognese testified that he had not heard of the information and that it was information that he wished he had prior to 9/11. (Haefele Declaration, Exhibit 10 (excerpts of August 28, 2007 transcript of deposition of Steven Bolognese, page 190, line 3 to page 192, line 12).) When asked whether the information from slide 24 was information that would have helped him to do a better job on 9/11, Huntleigh security screener William T. Thomas simply responded, "yes." (Haefele Declaration, Exhibit 11 (excerpts from January 16, 2007 transcript of deposition of William T. Thomas, page 94, line 4 to page 95, line 17).) Huntleigh manager on 9/11, William Bourque

5

testified that the information in the presentation was of the type that he would have expected United to pass along, but that it was not passed along to him. When asked if he thought the information would have increased his ability and the ability of Huntleigh screeners to do a better job, Mr. Bourque responded that the information might have "made things more vigilant, yes." (Haefele Declaration, Exhibit 12 (excerpts from April 19, 2007 transcript of deposition of William Bourque, page 166, line 21 to page 169, line 18; page 169, line 19 to page 172, line 22).)

9.   Given the importance of the full information included on the Transnational Threat CD, and the necessity for Plaintiff to thoroughly convey the value of the information conveyed to United on the CD, the "substitute" of the paper pages bates stamped UAL 027524-56 is inadequate. (Haefele Declaration, Exhibit 5.) First and most obvious, the "substitute" that United offers omits the verbal narrative presented with each of the slides and video clips that were embedded in several of the slides. In addition, 19 of the 29 slides (UAL 027528 to -534; 027536, -537, -539 to -547, and -554) as depicted in the pages United produced are each missing visual aids from the pages, apparently due either to redaction or to incomplete printing. Eight of the 29 slides had all of the visual aids missing from the "substitute" – namely, the slides depicted at bates numbers 27530, -533, -536, -539, -540, -540, -545, and -554. Comparing that document to what was marked as Exhibit 168 at the Touhey deposition (Haefele Declaration Exhibit 6), on the pages bates stamped 1000554-559, although still significantly obscured by the reduced size and blurry printing, one can make out that each of these pages is not redacted or missing photos and there are multiple visual aids present on each page.

10.   Among the more egregious examples is UAL 027531, a full page purportedly about Usama bin Laden. Two of the three visual aids on the page are redacted, and the third

6

visual aid is only partially present on the page. On Touhey Exhibit 168, at the page bates stamped 1000555, although significantly obscured by the reduced size and blurry printing, one can make out that the page is not redacted and there are multiple photos present on the page, apparently depicting bin Laden.

11. Another notable example is UAL027528, which is nearly completely blank. But at Touhey Exhibit 168, on the page bates stamped 1000554, although significantly obscured by the reduced size and blurry printing, one can make out that the page is not redacted and contains a map depicting the source or the perceived transnational threat – apparently placing a circle in the region of the Middle East.

12. But even Touhey Exhibit 168 (Haefele Declaration, Exhibit 6) is a poor substitute for the original audio/visual presentation included on the Transnational Threat CD. First, like the substitute United offered, the Touhey Exhibit 168 paper version of the presentation is of poor copy quality and omits the audio/video clips that the narrative indicates are embedded in the Transnational Threat CD at slides 17B (Air France hijacking video) and 27 (Tenet video summary of current threat to U.S. interests).

13. Perhaps the biggest problem with either of the paper "substitutes" is that neither presents the original audio/visual depth and clarity of the message that was conveyed to United that the original presentation provided. Accordingly, insisting that the plaintiff must rely on the vague and imperfect shadow of the real presentation, particularly when the original is admittedly in United's possession, is unduly prejudicial to plaintiff's efforts to demonstrate to the jury what United knew on 9/11 and failed to convey to the front line security personnel.

14. The issue of whether the data on the Transnational Threat CD is ultimately accessible should be a separate issue from whether United should be obliged to produce the CD. Naturally, to the extent that United is able to produce a CD that has the data accessible, it

should be obligated to do so. But regardless, United should be obligated to produce the best version of the CD is its possession, so that plaintiff may determine whether the data can be accessed by plaintiff's own experts. The decision whether or not to produce the Transnational Threat CD should not be left to United.

### C. Conclusion

15.   For the reasons expressed herein and in the accompanying declaration and attached exhibits, Plaintiff requests that the Court enter an Order compelling United to produce the most accessible original or copy of the CD-ROM PowerPoint and audio entitled "FAA Transnational Threat to Civil Aviation."

Dated: August 5, 2011

Respectfully submitted,

MOTLEY RICE LLC

By: __/s/_____
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary Schiavo
Vincent I. Parrett
Robert T. Haefele
Elizabeth Smith
Motley Rice LLC
28 Bridgeside Boulevard
Post Office Box 650001
Mount Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
*Attorneys for Plaintiff Bavis*