UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: No. 21 MC 101 (AKH)
:
: This document relates to :
IN RE SEPTEMBER 11 LITIGATION     : *Bavis v. United Air Lines, Inc. et al.*,
: 02 CV 7154
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
ON BURDEN OF PROOF AND PRESUMPTION**



MOTLEY RICE LLC
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary F. Schiavo
Vincent I. Parrett
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
*Attorneys for Plaintiff Bavis*

Dated:    August 5, 2011

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

I. Plaintiff will establish that deadly or dangerous weapons were used aboard United Flight 175 by terrorists ................................................................................ 2

II. Plaintiff will also establish that United and Huntleigh were required at the checkpoint to screen and prevent the terrorists from bringing deadly or dangerous weapons aboard United Flight 175 ....................................................... 3

III. Once Plaintiff proves that deadly or dangerous weapons were used aboard the aircraft by terrorists whom Defendants screened at the checkpoint, the jury is entitled to infer that those weapons came aboard the plane through that checkpoint ....................................................................................................... 3

IV. Once Plaintiff proves that deadly or dangerous weapons were used aboard the aircraft by terrorists whom Defendants screened at the checkpoint, the Court should put the burden on Defendants to prove that those weapons came through that checkpoint without any negligence by Defendants' screeners ..................... 7

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*ACLI Gov't Sec. v. Rhoades*,
    653 F. Supp. 1388 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988) ................9, 11

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................5, 11

*Campbell v. United States*,
    365 U.S. 85 (1961) ........................................................................................................8

*Downey v. Martin Aircraft Service, Inc.*,
    214 P.2d 581 (Cal. App. 1950) .....................................................................................9

*Gelbard v. Esses*,
    96 A.D.2d 573, 465 N.Y.S. 264 (N.Y. App. Div. 2d Dep't 1983) ................................9

*General Exch. Ins. Corp. v. Service Parking Grounds, Inc.*,
    235 N.W. 898 (Mich. 1931) ..........................................................................................9

*Goldberg v. Cablevision Sys. Corp.*,
    261 F.3d 318 (2d Cir. 2001) ....................................................................................7, 11

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ......................................................................................5, 11

*Int'l Brh. of Teamsters v. United States*,
    431 U.S. 324 (1977) ................................................................................................8, 11

*Keyes v. School Dist. No. 1*,
    413 U.S. 189 (1973) ................................................................................................8, 11

*Lavender v. Kurn*,
    327 U.S. 645 (1946) .......................................................................................................4

*Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
    967 F.2d 742 (2d Cir. 1992) ....................................................................................6, 11

*Nader v. Allegheny Airlines, Inc.*,
    512 F.2d 527 (1975) ........................................................................................9, 10, 11

*Schulz v. Pennsylvania R. Co.*,
    350 U.S. 523 (1956) ......................................................................................................4

*Third Century Recycling, Inc. v. Bank of Baroda*,
  704 F. Supp. 417 (S.D.N.Y. 1989) ..........................................................................9

*United States v. 194 Quaker Farms Rd.*,
  85 F.3d 985 (2d Cir. 1996) ................................................................................ 7, 11

*United States v. McCombs*,
  30 F.3d 310 (2d Cir. 1994) ....................................................................................9

*United States v. Corr*,
  543 F.2d 1042 (2d Cir. 1976) ................................................................................4

*Wilkins v. American Export Isbrandtsen Lines, Inc.*,
  446 F.2d 480 (2d Cir. 1971) ..................................................................................4

**Federal Statutes & Regulations**

Federal Aviation Administration Regulation 14 C.F.R. § 108.9,
  (revised as of Jan. 1, 2001) ............................................................................. 3, 7

Federal Aviation Administration Regulation 14 C.F.R. § 108.11,
  (revised as of Jan. 1, 2001) ............................................................................. 3, 7

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) (Bryan A. Garner, Editor in Chief) ..............................3

Kenneth S. Broun, 2 *McCormick on Evidence* §§ 337, 343 (6th ed. 2009) ..............................8

E. Cleary, *McCormick on Evidence*, at 968-969 (3d ed. 1984) ......................................5

Fleming James, Jr., *Burdens of Proof*, 47 Va. L. Rev. 51, 66 (1961) ...............................8

C. McCormick, *Law of Evidence* §§ 337, 343 (2d ed. 1972) .........................................7

John W. Strong et al., *McCormick on Evidence* § 337 (4th ed. 1992) ...............................7

John H. Wigmore, *Evidence* § 2486, at 275 (3d ed. 1940) ..........................................8

Modern Federal Jury Instructions-Civil P 75.01, Instruction 75-1
  ("Inference Defined") (Matthew Bender, 2010) ..............................................................4

**INTRODUCTION**

Plaintiff Mary Bavis respectfully submits this supplemental brief on the following two issues that arise from the fact that weapons were aboard United Flight 175. Specifically, once Plaintiff proves that weapons were aboard that aircraft:

1. Can the jury infer that those weapons came aboard the aircraft through the screening checkpoint?

2. In light of Defendants' control over the screening checkpoint, may the Court shift the burden to Defendants to prove that the weapons came through Defendants' checkpoint without any negligence by Defendants' screeners?

As the Court explained, the first issue has to do with "the natural inference of finding weapons on the plane [i.e.,] that they came there the way everybody else comes onto the plane, that is, through screening. And the second has to do with an ability to adjust the burden of proof to reflect the relevant ability of the parties to have control of the procedures of screening and to adjust in whatever way adjustment may be appropriate." Tr. at 88 lines 11-16 (Jul. 27, 2011 H'rg).[1]

The answer to both issues is yes. Once Plaintiff proves that deadly or dangerous weapons were used aboard the aircraft by terrorists whom Defendants screened at the checkpoint, it is natural and logical for the jury to infer that those weapons came aboard the aircraft through that same checkpoint, especially because there is no evidence that those weapons came aboard in any other way. Moreover, United States Supreme Court and Second Circuit decisions, grounded in considerations of fairness where one party has superior access to evidence on a particular issue, support shifting the burden to Defendants to prove that those weapons came aboard through Defendants' checkpoint without any negligence by Defendants' screeners.

---

[1] All pertinent pages of the July 27, 2011 hearing transcript are attached as Exhibit 1 hereto.

1

I.   **Plaintiff will establish that deadly or dangerous weapons were used aboard United Flight 175 by terrorists.**

At trial, the evidence will show that United Flight 175 was crashed into the South Tower of the World Trade Center by hijackers using menacing knives and Mace aboard that aircraft. Specifically, passenger Peter Burton Hanson called his father Lee Hanson during the hijacking and said: "I think they've taken over the cockpit . . . an attendant has been stabbed . . . and someone else up front may have been killed. . . .   [I]t's Flight 175, Boston to LA. . . .   A stewardess was stabbed. . . .   [T]hey seem to have knives and Mace. . . .  I think they intend to go to Chicago or someplace and fly into a building."[2]  Marc Policastro, who was employed as a Technician, Cabin & Flight Test Support for United, corroborates Hanson's account of weapons aboard the aircraft. Policastro received a call from a flight attendant aboard United Flight 175 who told Policastro that "a flight attendant had been stabbed, and both pilots had been killed."[3] *See also,* The 9/11 Commission Report, p. 7-8 ("The Hijacking of United 175") ("The hijackers attacked sometime between 8:42 and 8:46. They used ***knives*** (as reported by two passengers and a flight attendant), ***Mace*** (reported by one passenger), and the threat of a bomb (reported by the same passenger). ***They stabbed members of the flight crew*** (reported by a flight attendant and one passenger)."[4]

Thus, in the first instance Plaintiff will satisfy her burden of coming forward by showing that deadly or dangerous weapons were aboard the aircraft.

---

[2] FBI Form 302 of Lee Hanson (FBI0208), attached as Exhibit 2 hereto.
[3] FBI Form 302 of Marc P. Policastro (FBI0186), attached as Exhibit 3 hereto.
[4] The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States, pages 7-8, (emphasis added), MR_AVSEC00093420-93421, attached as Exhibit 4 hereto.

II.   **Plaintiff will also establish that United and Huntleigh were required at the checkpoint to screen and prevent the terrorists from bringing deadly or dangerous weapons aboard United Flight 175.**

Moreover, as the Court ruled at the July 27, 2011 hearing, under FAA Regulations the Defendants[5] were "expressly required to maintain a program for the screening of passengers and property, Section 108.9(a)[,]" at the checkpoint. Tr. at 113 lines 15-16 (Jul. 27, 2011 H'rg)(citing 14 C.F.R. § 108.9(a)).[6] On September 11, 2001, FAA Regulations were crystal clear on this point: United and its agent Huntleigh "must implement a screening system that prevents passengers from bringing deadly or dangerous weapons aboard the plane, Section 108.11(a)." Tr. at 113 lines 19-21 (Jul. 27, 2001 H'rg) (citing 14 C.F.R. § 108.11(a)).[7]

Hence, at trial Plaintiff will establish that Defendants were required at the checkpoint to screen and prevent deadly and dangerous weapons from being brought aboard United Flight 175, *id.*, and that deadly and dangerous weapons were brought aboard United Flight 175 on September 11, 2001, *see* Section I *supra.*

III.  **Once Plaintiff proves that deadly or dangerous weapons were used aboard the aircraft by terrorists whom Defendants screened at the checkpoint, the jury is entitled to infer that those weapons came aboard the plane through that checkpoint.**

The Court should instruct the jury that if Plaintiff proves the fact that weapons were used aboard the aircraft then a *presumption* arises that those weapons came through the checkpoint along with the terrorists. *See* Black's Law Dictionary (9th ed. 2009) (Bryan A. Garner, Editor in Chief) (defining "presumption" as a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts"). Likewise, the Court should explain to the jury that an inference "is a reasoned, logical conclusion that a disputed fact

---

[5] Throughout this brief, the term "Defendants" means United Air Lines, Inc. and Huntleigh USA Corp.
[6] 14 C.F.R. §108.9 (in effect on Sept. 11, 2001) is attached as Exhibit 5 hereto.
[7] 14 C.F.R. §108.11 (in effect on Sept. 11, 2001) is attached as Exhibit 6 hereto.

3

exists on the basis of another fact which has been shown to exist." Plaintiff's Proposed Jury Instruction # 6 (submitted on Apr. 29, 2011) (quoting 4-71 Modern Federal Jury Instructions-Civil P 75.01, Instruction 75-1 ("Inference Defined") (Matthew Bender, 2010) (citing, *inter alia*, *Schulz v. Pennsylvania R. Co.,* 350 U.S. 523, 526 (1956); *Lavender v. Kurn,* 327 U.S. 645, 653 (1946); *United States v. Corr*, 543 F.2d 1042, 1049 (2d Cir. 1976); *Wilkins v. American Export Isbrandtsen Lines, Inc.,* 446 F.2d 480, 484 (2d Cir. 1971)).

The *Wilkins* case is instructive. Reflecting the flexibility inherent in the concept of a presumption, the Second Circuit explained that "the cases do not clearly define the ingredients out of which a presumption is created. It is generally understood that in law for a specified fact to be presumptive evidence of another it must be one which in common experience leads *naturally and logically* to another." *Wilkins*, 446 F.2d at 484 (emphasis added).

Here, as the Court suggested at the July 27, 2011 hearing, "the natural inference of finding weapons on the plane is that they came there the way everybody else comes onto the plane, that is, through screening." Tr. at 88 lines 10-12. Indeed, as the Court further noted and United's counsel all but conceded, there is no evidence that those weapons came aboard the plane in any way other than the through the checkpoint:

> THE COURT: And there were deadly weapons brought aboard the plane?
> MR. ELLIS: Yes.
> THE COURT: And they came through the security system?
> MR. ELLIS: Well, don't know that, your Honor, but assuming that they did --
> THE COURT: It couldn't come on any other way?
> MR. ELLIS: Excuse me?
> THE COURT: They couldn't come on any other way?
> MR. ELLIS: We don't know whether they came through the checkpoint or not, but --
> THE COURT: There is no other way to come on than through the checkpoint if you're a passenger?
> MR. ELLIS: They could have been brought in from another flight, your Honor. These terrorists were coming all

4

|              | over the country. They could have been screened at another airport and flown into Logan. |
|---|---|
| THE COURT:   | **There is no evidence any terrorist came aboard the United airplane in any other manner than the way any other passenger did, and that's through the checkpoint.** |
| MR. ELLIS:   | Your Honor, all I am saying to you is this -- |
| THE COURT:   | **That is a fair inference to make and for Mr. Migliori to argue,** *that the only way those weapons on the plane came through were through the checkpoint.* |

Tr. at 45 lines 21-25 & at 46 lines 1-20 (Jul. 27, 2011 H'rg)(emphasis added).

And that *is* a fair presumption, especially given the difficulties of proof in this case where Defendants had exclusive control at that checkpoint—and Plaintiff had no control whatsoever—to screen and prevent the terrorists from bringing deadly or dangerous weapons aboard United Flight 175. Defendants are thus better positioned than Plaintiff to present evidence on what happened at Defendants' own checkpoint. Far from being an impermissible "special rule" as United's counsel protested vehemently at the July 27, 2011 hearing, Tr. at 84 line 15, the Supreme Court instructs that such burden-shifting "[p]resumptions typically serve to assist courts in managing circumstances in which direct proof, for one reason or another, is rendered difficult. . . . Arising out of considerations of fairness, public policy, and probability, as well as judicial economy, presumptions are also useful devices for allocating burdens of proof between parties." *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988) (*citing* E. Cleary, *McCormick on Evidence* 968-969 (3d ed. 1984)). In *Basic*, the Supreme Court endorsed a presumption the district court had implemented in a securities fraud case, finding it valid because it was "supported by common sense and probability." *Id.* at 246. One other consideration the *Basic* court articulated was that "[r]equiring a plaintiff to show a speculative state of facts . . . would place an unnecessarily unrealistic burden on" him. *Id.* at 245.

Likewise, the Second Circuit has highlighted difficulty of proof as a ground for establishing a burden-shifting presumption in a plaintiff's favor.  In *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 77 (2d Cir. 2004), the Second Circuit endorsed the Southern District of New York's reasoning that the reliance presumption articulated in *Basic* "arose as a practical response to the difficulties of proving direct reliance in the context of modern securities markets, where impersonal trading rather than a face-to-face transaction is the norm."  (Internal quotations omitted.)  And in *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 748 (2d Cir. 1992), the Second Circuit explained that another type of burden-shifting presumption was valid in securities-fraud cases "due to the extreme difficulty in demonstrating transaction causation," and noted that it would be contrary to public policy to "saddle a plaintiff with proving" a "generally indeterminable fact."  (Internal quotations omitted.)

The same holds true here.  It would be quite unfair to thrust on Plaintiff, whose son was killed during the crash of United Flight 175 and who had no control over what happened at Defendants' checkpoint, the burden to show that the weapons came aboard the plane through Defendants' checkpoint.  It is far fairer to instruct the jury that if Plaintiff proves at trial that deadly or dangerous weapons were used aboard United Flight 175 by terrorists whom Defendants were required to and did screen at the checkpoint at Logan, then the jury can naturally and logically infer that those weapons came aboard through that checkpoint.

**IV.     Once Plaintiff proves that deadly or dangerous weapons were used aboard the aircraft by terrorists whom Defendants screened at the checkpoint, the Court should put the burden on Defendants to prove that those weapons came through that checkpoint without any negligence by Defendants' screeners.**

At the July 27, 2011 hearing, the Court ruled that Defendants United and Huntleigh had exclusive responsibility for operating the security checkpoint that the terrorists aboard United Flight 175 passed through on September 11, 2001:

> We will now focus directly only on the negligence and in operating the screening which is the responsibility of United Airlines and Huntleigh. . . .  MassPort as the airport operator is not involved in this. . . .  It will not be permissible by either side any argument that the weapons could have come aboard the plane through any means other than through security at the checkpoints. . . .

Tr. at 115 lines 4-12 (Jul. 27, 2011 H'rg).  Under the FAA Regulations, United and Huntleigh had exclusive control over operation of the checkpoint.  *Id.* at 113 lines 15-16 & 19-21 (Court explaining that under FAR §§ 108.9(a) & 108.11(a), United and its agent Huntleigh had the duty to conduct checkpoint screening to "prevent[] passengers from bringing deadly or dangerous weapons aboard the plane.")  In complete contrast, Plaintiff had no control whatsoever over the checkpoint where Defendants screened the terrorists who used deadly and dangerous weapons aboard United Flight 175.  Hence, relative to Plaintiff, Defendants have *superior access to evidence* on the precise issue of what Defendants' own screeners did—and failed to do—when the terrorists passed through the checkpoint.

In such cases, "[b]urden-shifting where one party has *superior access to evidence* on a particular issue is a common feature of our law."  *United States v. 194 Quaker Farms Rd.*, 85 F.3d 985, 990 (2d Cir. 1996) (emphasis added) (citing John W. Strong et al., *McCormick on Evidence* § 337, at 570, 4th ed. 1992); *see also*, *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 330 (2d Cir. 2001) ("placing the burden of proof on the person with superior access to evidence is a common feature of our law") (internal citations and quotations omitted).

7

Likewise, the United States Supreme Court instructs that "[p]resumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to proof." *Int'l Brh. of Teamsters v. United States*, 431 U.S. 324, 359 n. 45 (1977) (citing C. McCormick, Law of Evidence §§ 337, 343 (2d ed. 1972); *see also*, *Keyes v. School Dist. No. 1*, 413 U.S. 189, 209 (1973) (Supreme Court instructing that "[t]here are no hard-and-fast standards governing the allocation of the burden of proof in every situation. The issue, rather, 'is merely a question of policy and fairness based on experience in the different situations.'") (quoting John H. Wigmore, *Evidence* § 2486, at 275 (3d ed. 1940)); *Campbell v. United States*, 365 U.S. 85, 96 (1961) ("the ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary"); *accord*, Fleming James, Jr., *Burdens of Proof*, 47 Va. L. Rev. 51, 66 (1961) (explaining that in civil cases "[a]ccess to evidence is often the basis for creating a [burden-shifting] presumption" on the grounds of convenience, fairness, and public policy).

Moreover, the most recent edition of *McCormick on Evidence* explains that courts nationwide "often" and "repeated[ly]" rule "that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." Kenneth S. Broun, 2 *McCormick on Evidence* § 337 (6th ed. 2009)("Allocating the burdens of proof"); *see also*, *id.* § 343 ("just as the burdens of proof are sometimes allocated for reasons of fairness, some presumptions are created to correct an imbalance resulting from one party's superior access to the proof"). For instance, once a plaintiff-bailor proves that she delivered property to a bailee in good condition but received it back in a damaged condition, the burden shifts to the defendant-bailee to "give evidence of facts from which the jury could reasonably find ***that the loss was not caused by the [defendant-]bailee's negligence***." *Id.* § 343 n. 17 (emphasis added) (citing

*Downey v. Martin Aircraft Service, Inc.*, 214 P.2d 581 (Cal. App. 1950) & *General Exch. Ins. Corp. v. Service Parking Grounds, Inc.*, 235 N.W. 898 (Mich. 1931)).

Another common example in this District involves fraudulent conveyance claims, where the burden of proof to establish that a conveyance was made without fair consideration is initially on the plaintiff-creditor.  Yet once the plaintiff-creditor shows that "the evidentiary facts as to the nature and value of the consideration are within the transferee's control, the burden [of proving] the fairness of the consideration shifts to the transferee."  *ACLI Gov't Sec. v. Rhoades,* 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988) (citing *Gelbard v. Esses*, 96 A.D.2d 573, 465 N.Y.S. 264, 268 (N.Y. App. Div. 2d Dep't 1983)); *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994)(same).

Likewise, in the context of an aviation tort case, the United States Court of Appeals for the District of Columbia Circuit explained:

> Although a plaintiff generally carries the burden of persuasion on each element of his cause of action, special circumstances may lead a court to shift the burden of persuasion to the defendant . . . where the material necessary to prove or disprove an element lies particularly within the knowledge of the defendant.

*Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 538 (1975), *rev'd on other grounds*, 426, U.S. 1976), *cited with approval in*, *Third Century Recycling, Inc. v. Bank of Baroda*, 704 F. Supp. 417, 420 (S.D.N.Y. 1989).  In *Allegheny Airlines*, the plaintiff alleged that defendant-airline inappropriately denied him his reserved seat on one of its flights that had been deliberately overbooked.  *Allegheny Airlines*, 512 F.2d at 532-33.  Resolving this dispute turned on application of the airline's passenger priority rules.  The court held that once the plaintiff proved that the airline failed to honor his priority, the burden of "proving the priority rules and compliance therewith" shifts to the airline.  *Id.* at 538.  The court reasoned that: (1) the decision as to which passengers will be denied boarding is solely within the airline's control; (2) any

9

documents relating to the incident, its causes, and its resolution are within the airline's control; and (3) the airline is in the best position to develop and discover any needed documentation. *Id.* Based on the reality of that control imbalance between the parties, which gave the defendant-airline superior knowledge and access to evidence on the issue in dispute, the court held that "it makes sense from every perspective to place the burden on the carrier of showing how the priority rules legitimized its action*." Id.*

The same reasoning for burden-shifting applies in *Bavis*. As explained in Section II above, the Defendants had exclusive control over operating the checkpoint where Defendants' screeners allowed the terrorists to pass through and board United Flight 175—and thus they are *best positioned* to possess, produce, and present evidence on what their own screeners did and failed to do at that checkpoint to prevent and deter the dangerous or deadly weapons used by those terrorists from getting aboard that aircraft. So in light of the fact that Defendants have superior control, access, sophistication, and knowledge regarding Defendants' operation of the checkpoint on September 11, 2001, once Plaintiff meets her initial burden by showing that those deadly or dangerous weapons were used by the terrorists aboard United Flight 175 then it "makes sense from every perspective" for the Court to place the burden on Defendants to prove that those weapons got through Defendants' checkpoint without any negligence by Defendants' screeners. *Allegheny Airlines*, 512 F.2d at 538.

Accordingly, as this Court suggested at the July 27 hearing, both fundamental fairness and Defendants' superior access to evidence on what went wrong at their checkpoint on September 11, 2001, justify putting the burden of proof on Defendants to show how those weapons could have come through security through no fault of theirs:

10

> Normally burdens and presumptions have a certain degree of flexibility; *it can be shifted to reflect who has more knowledge and who has more sophistication about a particular event or series of events, and on that basis I would think that the burden should naturally fall on the airlines and the security company, not the plaintiff.* . . .
>
> Given the nature of what happened and the utter destruction that occurred, it would be harsh to require plaintiffs to shoulder a burden they couldn't satisfy, and it might be much more reasonable to put the burden on the defendants with the ability to argue to the jury that you can't blame me. . . .

Tr. at 82 lines 9-14, 25 & at 83 lines 1-5  (Jul. 27, 2011 H'rg) (emphasis added).  That reasoning is well supported by the Second Circuit and Supreme Court precedent discussed above holding that shifting the burden to the party who has superior access to evidence on a particular issue is a "common feature of our law" based on considerations of fundamental fairness and public policy. *See 194 Quaker Farms Rd.*, 85 F.3d at 990;  *Goldberg,* 261 F.3d at 330; *Int'l Brh. of Teamsters v. United States*, 431 U.S. at 359 n. 45; *Keyes v. School Dist. No. 1*, 413 U.S. at 209;  *Basic Inc.*, 485 U.S. at 245; *Hevesi*, 366 F.3d at 77; *Litton Industries, Inc.*, 967 F.2d at 748; *ACLI Gov't Sec*, 653 F. Supp. at 1391, *aff'd*, 842 F.2d 1287; *see also*, *Allegheny Airlines*, 512 F.2d at 538, *supra.*

## CONCLUSION

For the above reasons, the Court should instruct the jury that if Plaintiff meets her burden by proving that deadly or dangerous weapons were used aboard the aircraft, then:

1. The jury can infer that those weapons came aboard the aircraft through the checkpoint; *and*

2. The burden shifts to Defendants to prove that those weapons came through the checkpoint without any negligence by Defendants' screeners.

Dated:   August 5, 2011	Respectfully submitted,

                                        **MOTLEY RICE LLC**

**By:**  /s/ Vincent I. Parrett
Ronald L. Motley
Joseph F. Rice
Donald A. Migliori
Mary Schiavo
Vincent I. Parrett
Motley Rice LLC
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC 29465
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
*Attorneys for Plaintiff Bavis*

12