UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
IN RE SEPTEMBER 11 LITIGATION         :   21 MC 101 (AKH)
                                      :
------------------------------------------------------------ x
WORLD TRADE CENTER PROPERTIES LLC,    :
et al.,                               :
                                      :
          Plaintiffs,                 :   08 CIV 3719 (AKH)
                                      :
     v.                               :
                                      :
UNITED AIRLINES, INC., et al.,        :
                                      :
          Defendants.                 :
------------------------------------------------------------ x
WORLD TRADE CENTER PROPERTIES LLC,    :
et al.,                               :
                                      :
          Plaintiffs,                 :   08 CIV 3722 (AKH)
                                      :
     v.                               :
                                      :
AMERICAN AIRLINES, INC., et al.,      :
                                      :
          Defendants.                 :
------------------------------------------------------------ x

**AVIATION DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Civil Rule 56.1(a) of the United States District Court for the Southern District of New York, the Aviation Defendants[1] respectfully assert, in support of their Renewed Motion for Collateral Setoff Against WTCP's Claims Pursuant to N.Y. CPLR § 4545(c) and for

---

[1] The Aviation Defendants joining in this Motion are American Airlines, Inc.; AMR Corporation; United Air Lines, Inc.; United Continental Holdings (f/k/a UAL Corporation); US Airways, Inc.; US Airways Group, Inc.; Colgan Air, Inc.; Delta Air Lines, Inc.; Continental Airlines, Inc.; Globe Aviation Services Corporation; Huntleigh USA Corporation; The Boeing Company; and Massachusetts Port Authority.

Summary Judgment Dismissing WTCP's Damages Claims, that the following material facts are not genuinely in dispute:

**Background**

1. On April 26, 2001, the Port Authority of New York and New Jersey, Inc. (the "Port Authority") accepted WTCP's[2] bid to purchase 99-year net leases to four of the World Trade Center towers: World Trade Center Towers One ("WTC 1"), Two ("WTC 2"), Four ("WTC 4") and Five ("WTC 5") (collectively, the "WTC Complex" or "Complex"). *See In re Sept. 11 Litig.*, 590 F. Supp. 2d 535, 536 (S.D.N.Y. 2008).

2. On July 16, 2001, WTCP and the Port Authority executed those net leases for the WTC Complex. Declaration of Desmond T. Barry, Jr. dated November 9, 2011 ("Barry Decl."),[3] Ex. PP, excerpts from Agreement of Lease – 1 World Trade Center dated July 16, 2001; Barry Decl. Ex. QQ, excerpts from Agreement of Lease – 2 World Trade Center dated July 16, 2001; Barry Decl. Ex. RR, excerpts from Agreement of Lease – 4 World Trade Center dated July 16, 2001; Barry Decl. Ex. SS, excerpts from Agreement of Lease – 5 World Trade Center dated July 16, 2001 (collectively, the "Net Leases").

3. WTCP made an initial lease payment to the Port Authority totaling $491 million. *See, e.g.*, Barry Decl. Ex. D, report of WTCP's expert Edward R. Reilly, Jr. dated August 12, 2011 ("Reilly Report") ¶6 n.2 and Exs. R-3 (WilProp form) and R-4 (Travelers form). This initial payment was comprised of: (i) $125 million from private investors and (ii) debt financing

---

[2] "WTCP" and "WTCP Plaintiffs" refer to World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, and 5 World Trade Center LLC. These entities are affiliated with Silverstein Properties, Inc.

[3] The record on this motion is voluminous and involves hundreds of exhibits, nearly all of which have been filed previously with the Court. For ease of reference, the Aviation Defendants have listed all of the exhibits cited to in this 56.1 Statement in Section A of the Barry Decl.

from GMAC. *See* Barry Decl. Ex. TT, Port Authority Board Meeting Minutes dated April 26, 2001, at SILV 24 000437-38.

   4. In connection with the acquisition of the Net Leases, WTCP purchased property casualty and business interruption/lost rental value insurance from a consortium of twenty-four insurance companies in the aggregate amount of $3.5468 billion per occurrence. Barry Decl. Ex. R, World Trade Center Props. LLC and Subsidiaries Consolidated Financial Statements (Income Tax Basis) Years Ended Dec. 31, 2007 and 2006, and Independent Auditors' Report, dated July 17, 2008 ("2006-2007 Financial Statements") at WTCP0362732.

   5. WTCP paid a total premium of $5,898,714 for insurance coverage for its net leasehold interests in the WTC Complex. Barry Decl. Ex. J, WTCP's Responses to Aviation Defendants' Third Set of Interrogatories to WTCP dated April 7, 2011 ("WTCP Int. Resp."), at 56.

   6. On September 11, 2001, the WTC Complex was destroyed due to the terrorist hijacking of American Airlines Flight 11 and United Air Lines Flight 175, and the deliberate crashing of those aircraft into the WTC Complex.

**WTCP's Documentation of Its Losses**

   7. From September 11, 2001 through 2007, WTCP submitted sixteen "Sworn Statement – Preliminary Proof of Partial Losses" ("PPOPLs") to its insurers – three for actual cash value/replacement cost of the leased properties and thirteen for business interruption losses. *See* Barry Decl. Exs. U to JJ, PPOPL Nos. 1-16; *see also* Barry Decl. Ex. D, Reilly Report ¶15. In those sixteen PPOPLs, WTCP did not seek reimbursement for any losses other than replacement costs and business interruption. *See* Barry Decl. Exs. U to JJ, PPOPL Nos. 1-16; *see also* Barry Decl. Ex. D, Reilly Report ¶¶9, 11, 13, 15.

8. In the Partial Claims Summary and Supporting Documentation prepared by Cambridge Horizon Consultants, Inc., WTCP identified as losses "additional building items" (such as demolition and debris removal, pollution cleanup and removal, and transmission antennae dishes); "business personal property"; "other covered property"; and, "additional covered costs and expenses." Barry Decl. Ex. MM, Partial Claim Summary & Supporting Documentation prepared by Cambridge Horizon Consultants, Inc., dated January 18, 2002 (WTCP 0017683-92). In each instance, WTCP itemized the damages as "T.B.D." ("to be determined"). *See id.*; *see also* Barry Decl. Ex. J, WTCP's Int. Resp., at 9-20.

9. Some of the categories of loss listed as "T.B.D." were never even incurred. *See, e.g.*, Barry Decl. Ex. M, Deposition of Michael Levy conducted on June 2, 2009 ("Levy. Dep.") at 84 ("Q: Did World Trade Center Properties ever have any damages resulting from demolition and debris removal? A: We did not pay any damages. Q: So the number next to that should be zero, is that fair? A: At the time this was prepared we did not know whether we would or would not."); *see also id.* at 83-84 ("Some of these items could not be determined at the time because they hadn't happened yet. Certain costs we didn't know how long the litigation would take. For example, costs incurred in proving the final loss payable was an ongoing item. Mitigation cost was an ongoing item because you didn't do it yet. So a lot of these things couldn't be determined at that time.").

10. WTCP never provided its insurers with actual amounts for any of the claims that were listed as "T.B.D," nor has WTCP calculated or submitted proof of those amounts to date. *See, e.g.*, Barry Decl. Ex. D, Reilly Report ¶¶9, 11, 13, 15; Barry Decl. Ex. J, WTCP's Int. Resp., at 13; Barry Decl. Exs. U to JJ, PPOPL Nos. 1-16.

11. WTCP has estimated that its insurance claims preparation fees exceeded $10 million. Barry Decl. Ex. L, Declaration of Michael Levy dated August 18, 2009 ("Levy Decl.") ¶33.

**WTCP's Dispute With Its Insurers**

12. As of September 11, 2001, WTCP's insurers had not yet issued formal insurance policies. Barry Decl. Ex. R, 2006-2007 Financial Statements at WTCP0362732.

13. On or about October 22, 2001, WTCP's insurers brought suit for a declaration that the events of September 11, 2001 constituted a single occurrence under the insurance policies (the "Coverage Litigation"). *See* Barry Decl. Ex. OO, Complaint for Declaratory Relief, *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 (S.D.N.Y. filed Oct. 22, 2001). Certain insurers paid or settled for their policy limits and did not participate in the Coverage Litigation. *See* Barry Decl. Ex. NN, World Trade Center Properties LLC and Subsidiaries Consolidated Financial Statements as of Dec. 31, 2001 Together With Auditors' Report, April 30, 2002 (SILV 138 0000541-544, 551-552) ("2001 Financial Statement") at SILV 138 0000552.

14. In its World Trade Center Properties LLC and Subsidiaries Consolidated Financial Statements (Income Tax Basis) Years Ended December 31, 2007 and 2006 and Independent Auditors' Report dated July 17, 2008 ("2006-2007 Financial Statements"), WTCP disclosed a settlement of the Coverage Litigation: "The claims and litigation with respect to the property and business interruption/lost rental value insurance for the Properties have been resolved." Barry Decl. Ex. R, 2006-2007 Financial Statements at WTCP0362732.

**WTCP's Litigation Against the Aviation Defendants**

15. On or about April 23, 2007, WTCP provided the Aviation Defendants with an

Updated Damages Disclosure Form identifying the damages it seeks to recover from the Aviation Defendants in this litigation. Barry Decl. Ex. T, WTCP Cross-Claim Plaintiffs' Updated Damage Disclosure: 1, 2, 4 and 5 World Trade Center dated April 23, 2007.

16. WTCP's claim for total damages for WTC 1, 2, 4 and 5 is approximately $12.3 billion plus pre-judgment interest. Barry Decl. Ex. T, WTCP Cross-Claim Plaintiffs' Updated Damage Disclosure Form: 1, 2, 4 and 5 World Trade Center dated April 23, 2007. WTCP's claim is made up of two damages categories: costs to replace destroyed property in the amount of approximately $8.4 billion, and lost revenue and consequential damages, including but not limited to, leasing and other mitigation costs in the amount of approximately $3.9 billion. *Id.*

17. Any recovery by WTCP against the Aviation Defendants is limited to the fair market value of WTCP's net leasehold interests in the Complex at the time of its destruction. *In re Sept. 11 Litig.*, 590 F. Supp. 2d 535, 544-48 (S.D.N.Y. 2008).

18. The market value of WTCP's net leasehold interests in the WTC Complex fully includes its anticipated rental streams from the Complex's tenants. *Id.* at 544.

19. The established fair market value of WTCP's leasehold in the WTC Complex is $2.805 billion and WTCP's tort recoveries against the Aviation Defendants shall not exceed that amount. *In re Sept. 11 Litig.*, 2009 WL 1181057, at *4 (S.D.N.Y. Apr. 30, 2009).

20. WTCP cannot recover damages for replacement costs based on its contractual obligation to rebuild the Complex after its destruction. *Id.* at * 3.

21. The total value of WTCP's insurance recoveries for the damage to WTCP's net leasehold interest in the WTC Complex on September 11, 2001 is $4,091,364,034, which includes $563 million of WTCP's recovery paid to GMAC, as creditor of WTCP-related interests (and excludes any recovery value paid to the retail interests related to Westfield WTC, LLC,

Westfield Corporation, Inc., and Westfield America, Inc.) Barry Decl. Ex. K, *In re Sept. 11 Litig.*, 21 MC 101 (AKH), slip op. at 1 (S.D.N.Y. Sept. 30, 2009); *see also* Barry Decl. Ex. D, Reilly Report ¶¶4, 13; Barry Decl. Ex. C, Shavell Report ¶14.

22.  The Aviation Defendants have established a presumption that the insurance proceeds WTCP received relating to the destruction of the Complex are properly allocable to business interruption and replacement costs, subject to WTCP pleading and proving specific facts supporting an allocation to additional components. Barry Decl. Ex. K, *In re Sept. 11 Litig.*, 21 MC 101 (AKH), slip op. at 1 (S.D.N.Y. Sept. 30, 2009).

23.  WTCP is not entitled to recover its re-tenanting costs or attorneys' fees incurred in litigating with its insurers over the extent of its coverage for damage to the WTC Complex. *Id.* at 1-2.

24.  WTCP's insurance premiums and its claim preparation fees associated with its insurance claims are proper offsets to arrive at WTCP's net insurance recoveries. *Id.* at 2.

25.  At the rate earned by short-term Treasury instruments (compounded annually), with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion loss accrues to $3.04 billion. *See* Barry Decl. Ex. S, Declaration of Rajiv Gokhale dated June 20, 2008, ¶8.

26.  At an annual interest rate of 6%, with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion loss accrues to $3.2 billion. *Id.*

27.  At an annual interest rate of 9%, with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion loss accrues to $3.4 billion. *Id.*

28. Whether the Court selects the federal or state interest rates; and after allowing for the addition of claims preparation costs and insurance premiums, WTCP's insurance payments far exceed its maximum potential tort recovery from the Aviation Defendants.

Dated: New York, New York
November 9, 2011

Respectfully submitted,

CONDON & FORSYTH LLP

By: _____
    Desmond T. Barry, Jr. (DB 8066)
7 Times Square
New York, New York 10036
Telephone: (212) 490-9100
Fax: (212) 370-4453
dbarry@condonlaw.com

*Aviation Defendants' Liaison Counsel*