UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

IN RE SEPTEMBER 11 LITIGATION        :        21 MC 101 (AKH)

------------------------------------ x

WORLD TRADE CENTER PROPERTIES LLC,   :
et al.,                              :
                                     :
                    Plaintiffs,      :        08 CIV 3719 (AKH)
                                     :
        v.                           :
                                     :
UNITED AIRLINES, INC., et al.,       :
                                     :
                    Defendants.      :

------------------------------------ x

WORLD TRADE CENTER PROPERTIES LLC,   :
et al.,                              :
                                     :
                    Plaintiffs,      :        08 CIV 3722 (AKH)
                                     :
        v.                           :
                                     :
AMERICAN AIRLINES, INC., et al.,     :
                                     :
                    Defendants.      :

------------------------------------ x

# THE AVIATION DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR COLLATERAL SETOFF AGAINST WTCP'S CLAIMS PURSUANT TO N.Y. CPLR § 4545(c) AND FOR SUMMARY JUDGMENT DISMISSING WTCP'S DAMAGES CLAIMS

CONDON & FORSYTH LLP
Desmond T. Barry, Jr. (DB 8066)
7 Times Square
New York, New York 10036
Tel.: (212) 490-9100
Fax: (212) 370-4453
dbarry@condonlaw.com

*Aviation Defendants' Liaison Counsel*

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................1

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT.......................................................................................................................3

I.    The Federal Rules of Civil Procedure Apply Fully To This Action ....................................3

II.   WTCP's Principal Argument Against Correspondence Rests on a Fallacy.........................6

III.  WTCP Does Not and Cannot Distinguish *Fisher v. Qualico* .............................................9

IV.   WTCP's Efforts To Disregard *Fisher* Are Equally Unavailing .......................................11

V.    WTCP's Arguments That Miscellaneous Items Are Not Subject To Offset
      Do Not Change the Fact That Its Tort Damages Are Fully Offset by Its
      Insurance Recoveries ......................................................................................................14

      A.    The Upfront Payment To the Port Authority ............................................................14

      B.    Re-tenanting Costs ...................................................................................................15

      C.    Claims Preparation and Litigation Costs.................................................................15

      D.    Pre-judgment Interest...............................................................................................17

CONCLUSION..................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Atlanta Woman's Club, Inc. v. Washburne*,
   450 S.E. 2d 239 (Ga. Ct. App. 1995)..................................................16

*Atlantic Mut. Ins. Co. v. Napa Transp.*,
   399 F. Supp. 2d 523 (S.D.N.Y. 2005).................................................19

*Blanche, Verte & Blanche, Ltd. v. Mauro & Sons*,
   913 N.Y.S.2d 342 (2d Dep't 2010)......................................................5

*Bryant v. N.Y.C. Health & Hosps. Corp.*,
   93 N.Y.2d 592 (1999) ........................................................................9

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
   996 F. 2d 537 (2d Cir. 1993).............................................................4

*Chandler v. Bombardier Capital, Inc.*,
   44 F.3d 80 (2d Cir. 1994).................................................................19

*Dweck v. Bridge Transp., Inc.*,
   786 N.Y.S.2d 189 (2d Dep't 2004)......................................................5

*Fisher v. Qualico Contracting Corp.*,
   98 N.Y.2d. 534 (2002) ............................................................ *passim*

*Foote v. Albany Med.*,
   16 N.Y.3d 211 (2011) ........................................................................5

*Harari-Raful v. Trans World Airlines, Inc.*,
   341 N.Y.S.2d 655 (2d Dep't 1973)......................................................5

*Hartshorn v. Chaddock*,
   135 N.Y. 116 (1892) ....................................................................8, 13

*Healing Power, Inc. v. Ace Cont'l Exports, Ltd.*,
   07-cv-4175, 2008 WL 4693246 (E.D.N.Y. Oct. 17, 2008) ................11

*In the Matter of the Petition of 1 World Trade Center LLC*,
   TAT(H) 07-34(CR) (N.Y. City Tax App. Dec. 3, 2009)........................8

*In re Sept. 11 Litig.*,
   21 MC 101 (S.D.N.Y. Sept. 30, 2009)..........................................15, 16

*In re Sept. 11 Litig.*,
    21 MC 101, 2009 WL 1181057 (S.D.N.Y. Apr. 30, 2009) ........................................................7

*In re Sept. 11 Litig.*,
    590 F. Supp. 2d 535 (S.D.N.Y. 2008).....................................................................7, 10, 13

*In re Sept. 11 Litig.*,
    649 F. Supp. 2d 171 (S.D.N.Y. 2009).....................................................................4

*New York Marine & Gen. Ins. Co. v. Tradeline L.L.C.*,
    266 F.3d 112 (2d Cir. 2001).....................................................................19

*Osborne v. Chapman*,
    574 N.W.2d 64 (Minn. 1998).....................................................................16

*Sandoro v. Harlem-Genesee Mkt. & Nursery, Inc.*,
    482 N.Y.S.2d 165 (4th Dep't 1984).....................................................10, 11, 12

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000).....................................................................11

*Windsor Sch. Dist. v. Vermont*,
    956 A.2d 528 (Vt. 2008).....................................................................16

**STATUTES**

28 U.S.C. § 1961.....................................................................19

Air Transportation Safety and System Stabilization Act,
    Pub L. No. 107-42, § 408(b)(1), 115 Stat. 230 (2001) ............................................4

Fed. R. Civ. P. 42(b) .....................................................................2, 4

Fed. R. Civ. P. 54(b) .....................................................................19

Fed. R. Civ. P. 56.....................................................................2, 4

N.Y. Civil Practice Law and Rule § 603 .....................................................................5

N.Y. Civil Practice Law and Rule § 4545(c) .....................................................................*passim*

## INTRODUCTION

The Aviation Defendants[1] respectfully submit this Reply Memorandum of Law together with the accompanying Supplemental Declaration of Desmond T. Barry, Jr. dated December 15, 2011 and the exhibit thereto (the "Supp. Barry Decl."), in further support of their renewed motion for collateral setoff of insurance recoveries received by WTCP[2] against WTCP's damages claims pursuant to New York Civil Practice Law and Rule § 4545(c) ("CPLR 4545(c)") and for summary judgment dismissing WTCP's claims for damages allegedly incurred in connection with the reduction in value of its net leasehold interests in World Trade Center buildings One ("WTC 1"), Two ("WTC 2"), Four ("WTC 4") and Five ("WTC 5") (collectively the "WTC Complex" or "Complex").

## PRELIMINARY STATEMENT

Nothing in WTCP's opposition to the Aviation Defendants' renewed motion for summary judgment offers any basis for avoiding summary judgment. More than ten years after the events of September 11, 2001, the conclusion is inescapable that WTCP's $4.091 billion in insurance recoveries correspond to and fully extinguish its maximum potential tort recovery of

---

[1] The Aviation Defendants joining in this Motion are United Air Lines, Inc.; United Continental Holdings (f/k/a UAL Corporation); Continental Airlines, Inc.; US Airways, Inc.; US Airways Group, Inc.; Colgan Air, Inc.; Delta Air Lines, Inc.; Globe Aviation Services Corporation; Huntleigh USA Corporation; The Boeing Company; and Massachusetts Port Authority. On November 29, 2011, American Airlines, Inc. and its parent company, AMR Corporation (together "American"), filed for Chapter 11 protection in the bankruptcy court in the Southern District of New York and, accordingly, WTCP's actions against those defendants are stayed by operation of the automatic stay imposed by Section 362 of the Bankruptcy Code. American intends to move promptly for the lifting of the automatic stay in 08 CV 3722 pursuant to a stipulation and, in any event, is situated identically to the other Aviation Defendants concerning the issues addressed in this Motion.

[2] "WTCP" and "WTCP Plaintiffs" refer to World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, and 5 World Trade Center LLC. These entities are affiliated with Silverstein Properties, Inc.

$2.805 billion for the destruction of the Complex.   In their opening papers, the Aviation Defendants showed (a) that WTCP's insurance recoveries for replacement cost and business interruption correspond as a matter of law to its tort claim for diminution in the fair market value of its net leasehold interests in the Complex, and (b) that WTCP's insurance recoveries of $4.091 billion (even after adjustment for pre-judgment interest, insurance premiums and claims preparation fees) completely offset its maximum potentially recoverable tort damages of $2.805 billion.

In response, WTCP has failed to raise any issues of material fact, and its legal arguments are readily refuted.  Accordingly, the time is now ripe for the Court to grant summary judgment dismissing all of WTCP's claims with respect to the Complex.

WTCP raises five arguments in opposition to the Aviation Defendants' motion.   As shown more fully below, all are without merit:

- WTCP argues that the Court cannot reach the correspondence issue until after trial.  However, that argument ignores not only the Court's August 30, 2011 letter ruling to the contrary, but also the well-settled principle that Federal Rules of Civil Procedure 42(b) and 56, rather than state law procedure, govern the question of what issues are for trial at what time in a lawsuit in federal court based on a federal cause of action.

- WTCP contends that the Court ruled that WTCP cannot recover replacement costs in tort for lack of proximate cause and, therefore, that its replacement cost insurance recoveries cannot offset its tort claim.  But the Court made no such ruling:  the Court merely applied the well-established "lesser of two" rule that a tort claimant cannot recover replacement costs *in excess of or in addition to* fair market value.  The Court rejected for want of proximate cause only WTCP's argument for a special exception to this generally applicable rule based on WTCP's alleged contractual obligation to rebuild.  WTCP, like any other plaintiff with a claim for property damage, is only entitled to recover replacement costs up to the fair market value of the destroyed buildings.  However, WTCP's insurance recoveries (which even WTCP's own expert internally allocates 85% to replacement costs and 15% to business interruption) fully offset that claim.

2

- WTCP makes ineffectual attempts to distinguish the New York Court of Appeals' ruling in *Fisher v. Qualico* that insurance recoveries calculated on a replacement cost basis offset tort damages for diminution in fair market value of the damaged or destroyed property. But there is no legally significant distinction between WTCP and the plaintiffs in *Fisher*.

- Unable to distinguish *Fisher v. Qualico*, WTCP seeks to disregard it entirely. Citing experts that the Court previously has found unpersuasive, WTCP rehashes its arguments for a damages recovery in excess of what New York law allows, consisting of its full replacement costs plus lost profits. These arguments have no bearing on the correspondence issue that is the subject of this motion – and are no more persuasive now than they were when WTCP raised them before (and re-raised them on motions for reconsideration).

- WTCP argues that miscellaneous items were not insured and are therefore not subject to offset, specifically: (i) its $491 million up-front payment to the Port Authority of New York and New Jersey; (ii) its re-tenanting costs; (iii) litigation and/or claims preparation fees; and (iv) pre-judgment interest. But none of these items changes the reality that WTCP's claim for legally recoverable damages, even adjusted for pre-judgment interest, is far below the amount of its corresponding insurance recoveries.

For the reasons set forth here and in the Aviation Defendants' opening brief, summary judgment should be granted dismissing all of WTCP's claims with respect to the Complex.

## ARGUMENT

### I.    The Federal Rules of Civil Procedure Apply Fully To This Action

WTCP argues that under CPLR 4545(c), the Court is required to await a jury verdict before issuing an order as to collateral offsets, even though the Court has already ruled to the contrary. *See* Declaration of Desmond T. Barry, Jr. dated November 9, 2011 ("Barry Decl.") Ex. A, Letter from Hon. Alvin K. Hellerstein to Desmond T. Barry, Jr. and Richard A. Williamson dated August 30, 2011, at 1 ("I am not required to await a jury verdict"). It is WTCP's position that even if there is no question about whether its corresponding insurance recoveries far exceed

any potential tort recovery, a futile and wasteful trial nonetheless must be held.[3]  Oddly, WTCP

makes no attempt at all to respond to the Aviation Defendants' arguments, as set forth in their

letter brief to the Court of August 12, 2011, that Federal Rules of Civil Procedure 42(b) and 56

override any contrary state procedural rules.  WTCP accuses the Aviation Defendants of having

adopted a strategy "for attaining a no-pay, no-trial resolution of these lawsuits."  *See* WTCP

Plaintiffs' Memorandum of Law in Opposition to the Aviation Defendants' Renewed Motion

dated December 5, 2011 ("WTCP Opp'n Br."), at 6.  True enough, but that "strategy" is nothing

more than a motion for summary judgment, plainly available under Rule 56 in federal court as a

favored method of avoiding unnecessary trials.  *Capital Imaging Assocs., P.C. v. Mohawk Valley*

*Med. Assocs., Inc.*, 996 F. 2d 537, 541 (2d Cir. 1993) (summary judgment is a "vital procedural

tool to avoid wasteful trials").

As the Aviation Defendants pointed out in their August 12, 2011 letter brief:

- WTCP's actions are brought pursuant to the Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, § 408(b)(1), 115 Stat. 230, 240-41 (2001).  ATSSSA creates a federal cause of action that incorporates and federalizes certain aspects of state substantive law.  Notably, ATSSSA does not incorporate or borrow from state *procedural* law.  Instead, the Federal Rules of Civil Procedure provide the appropriate procedural framework, as demonstrated by the Court's rulings throughout this litigation.

- The Aviation Defendants seek application of collateral offsets pursuant to New York law.  CPLR 4545(c) creates a substantive right of offset and thus is incorporated under ATSSSA, as the Court also recognized in its prior rulings.  *In re Sept. 11 Litig.*, 649 F. Supp. 2d 171, 176 (S.D.N.Y. 2009).  Whether a collateral offset is available and, if so, in what amount are substantive questions for which ATSSSA borrows the state law rule for decision as set forth in CPLR 4545(c).

---

[3]  WTCP takes this position even though its counsel previously conceded that an evidentiary hearing is not necessary for the Court to determine correspondence.  Barry Decl. Ex. B, Letter from Richard A. Williamson to Hon. Alvin K. Hellerstein dated August 12, 2011, at 3.

- To the extent that CPLR 4545(c) also addresses when the setoff can be assessed in the trial process, the procedural aspects of CPLR 4545(c) yield to the Federal Rules of Civil Procedure.[4] Timing and ordering of decisions are classic procedural matters.

WTCP is insisting on a full jury trial *on damages* before collateral offsets are assessed.[5] However, this Court already determined as a matter of law that the maximum amount recoverable by WTCP is $2.805 billion. Thus, WTCP's hypothetical jury would be faced with only one issue: how much *less* than $2.805 billion should WTCP actually recover. WTCP does not deny that it received $4.091 billion in insurance recoveries – nor can it dispute that $4.091 billion substantially exceeds $2.805 billion. If, as the Aviation Defendants have established, those insurance recoveries correspond as a matter of law to WTCP's maximum potential damages claim, a damages trial would be a wasteful exercise in formalism. This situation is just what summary judgment is designed to avoid.

---

[4] CPLR 4545(c), as applicable here, provides that: "If a court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding...."

[5] Nothing in the language of CPLR 4545(c), as applicable here or as amended, purports to give WTCP any right to a jury trial *on liability* before collateral offsets can be assessed. To the contrary, N.Y. Civil Practice Law and Rule § 603 expressly authorizes state trial courts to try issues of damages before they try issues of liability. *See, e.g., Harari-Raful v. Trans World Airlines, Inc.*, 341 N.Y.S.2d 655, 659 (2d Dep't 1973). Even if WTCP were correct that state procedures applied (and it plainly is not), the Court of Appeals recently indicated that it is a question "open for consideration" under the 2001 version of the statute whether state courts may award collateral offsets prior to a jury trial when the amount of damages can be fixed as a matter of law. *Foote v. Albany Med.*, 16 N.Y.3d 211, 216 (2011). This statement is consistent with practice in the Appellate Division, which has considered the application of collateral offsets prior to a jury award on damages, but denied such motions because questions of fact (absent here) remained concerning the amount of recoverable damages. *See, e.g., Blanche, Verte & Blanche, Ltd. v. Mauro & Sons*, 913 N.Y.S.2d 342, 343 (2d Dep't 2010); *Dweck v. Bridge Transp., Inc.*, 786 N.Y.S.2d 189, 191 (2d Dep't 2004).

## II.     WTCP's Principal Argument Against Correspondence Rests on a Fallacy

WTCP raises a single overarching legal argument in attempting to avoid correspondence: it urges that because the Court ruled that WTCP could not recover replacement costs in this litigation, its replacement cost insurance recoveries do not correspond to and offset its recoverable tort losses under New York law. WTCP Opp'n Br. at 1, 2, 8, 11, 13, 14, 17, 22, 23, 26-27.[6] But the fundamental premise of this argument is incorrect:  the Court did not rule that WTCP could not recover replacement costs *at all*.  Instead, the Court applied New York's well-established "lesser of two" rule to hold that WTCP cannot recover replacement costs *in addition to or in excess of* the diminution in fair market value because an award of fair market value fully compensates an alleged tort victim for its loss. *Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534, 540 (2002) ("[R]eplacement cost and diminution in market value are simply two sides of the same coin.  Each is a proper way to measure lost property value, the lower of the two figures affording full compensation to the owner.").

The plain text of the Court's earlier rulings belies WTCP's misreading.  In its April 29, 2009 order, for example, the Court held:

---

[6] WTCP alludes in its Preliminary Statement to two other arguments against correspondence that it never actually develops:  (i) that its insurance proceeds cannot correspond to its tort damages because the payments were never allocated to any item of loss; and (ii) that the payments by its insurers were also in settlement of extra-contractual claims that reduce by an unknown amount the portion of the payments that correspond to WTCP's tort damages.  Both of these arguments were advanced by WTCP in the 2009 briefing and rejected by the Court.  The Court ruled that the insurance proceeds received by WTCP were allocable only to business interruption and replacement costs, unless WTCP pleaded and proved specific facts demonstrating otherwise. WTCP utterly failed to do so and merely recycled the arguments the Court previously rejected, while its expert essentially conceded that WTCP cannot identify any specific item other than business interruption or replacement costs for which insurance has been paid.  *See* Barry Decl. Ex. D, report of WTCP's expert Edward R. Reilly, Jr., dated August 12, 2011 (the "Reilly Report") ¶¶4, 6, 11, and 18.  For a further discussion of why WTCP's arguments on these points fail, *see* Aviation Defendants' Memorandum of Law in Support of Renewed Motion for Collateral Setoff dated November 9, 2011 ("Aviation Defendants' Br.") at Section IV.

> [T]he WTCP Plaintiffs' recovery against the Aviation Defendants, under New York law, would be limited to the lesser of the diminution in value of the WTCP leaseholds, or the buildings' replacement value.

*In re Sept. 11 Litig.*, 21 MC 101, 2009 WL 1181057, at *1 (S.D.N.Y. Apr. 30, 2009); *see also id.* at *3 ("I held in the Opinion that the measure of tort damages for destroyed property is the lesser of the diminished value of the property (*i.e.*, the leaseholds) or its replacement value."). In its December 11, 2008 opinion, the Court similarly stated:

> New York Courts follow the "lesser of two" rule: a plaintiff whose property has been injured may recover the lesser of the diminution of the property's market value or its replacement cost . . . . If WTCP is entitled to recover, recovery of the properties' market value would fully compensate it. WTCP is not entitled to recover the larger value of replacement cost.

*In re Sept. 11 Litig.*, 590 F. Supp. 2d 535, 541, 543 (S.D.N.Y. 2008).

Indeed, if WTCP's replacement costs had been less than the fair market value of the destroyed buildings, replacement costs would have been the measure of WTCP's damages. But WTCP's alleged replacement costs indisputably exceed the fair market value of the destroyed buildings, so its replacement cost damages are limited to the diminution of fair market value caused by the buildings' destruction.

WTCP argues that, unlike the Court of Appeals in *Fisher,* this Court ruled that WTCP could not recover replacement costs for lack of proximate cause; therefore, WTCP reasons, replacement costs by definition form no part of its tort damages and cannot be offset by its replacement cost-based insurance payments. WTCP misconceives the Court's prior ruling. WTCP was barred from recovery of replacement costs in addition to or in excess of fair market value by operation of the *Fisher* "lesser of two" rule. WTCP argued that it was entitled to an exemption from this rule because of an alleged contractual obligation to rebuild the Complex that WTCP contended entitled it to the full value of its replacement costs, no matter how much

greater they may be than the fair market value of the buildings.[7]   The Court roundly rejected WTCP's argument for a special exception to the otherwise universally applicable *Fisher* rule, holding that to allow WTCP to augment its tort damages by virtue of private contractual arrangements with third parties would extend damages beyond those proximately caused by the defendants' alleged tortious conduct.   The Court's rejection of WTCP's argument for a special exception from the *Fisher* rule did not distinguish WTCP from the *Fisher* plaintiffs, but confirmed that WTCP was not situated differently from those plaintiffs.

In *Fisher*, the New York Court of Appeals addressed the precise issue presented here and held that the cost of restoration, *i.e.*, replacement costs, and the diminution of market value were "two sides of the same coin."  98 N.Y.2d at 540.   Replacement costs and diminution of market value are both intended to compensate a plaintiff for lost property value.   Thus, the *Fisher* court held that the collateral source payment received by plaintiffs in the form of replacement cost insurance proceeds corresponded to their property loss and was properly offset against the damages award for diminution in market value.   *Id.* at 539-40.   The court made this determination by examining case law related to real property losses and negligence, and determining that if a plaintiff only is entitled to recover one of two measures of damages under tort law, *see Hartshorn v. Chaddock*, 135 N.Y. 116, 122 (1892), then insurance payments for one measure should offset an award for the other under CPLR 4545(c).   98 N.Y.2d at 539-40.

---

[7]   In other *fora*, WTCP vehemently denied the contractual obligation to rebuild on which it purports to rely in this action.  For example, before the New York City Tax Tribunal, WTCP insisted that it was *not* obligated to rebuild unless it was "feasible, prudent and commercially reasonable" to do so – precisely the opposite of the position it has taken before this Court, where it has insisted it was bound to rebuild even at ruinous cost.  Supp. Barry Decl. Ex. WW, *In the Matter of the Petition of 1 World Trade Center LLC, et al.*, TAT(H) 07-34(CR), at 17 (N.Y. City Tax App. Dec. 3, 2009).  Moreover, it is clear that WTCP is not rebuilding WTC 1 at all; the Port Authority of New York and New Jersey is.  *Id.* at 10-11.

What WTCP fails to acknowledge is that diminution in fair market value and replacement costs may have different dollar values but both address the same loss. The fact that the Court, properly applying New York law, limited WTCP's recovery to the lower of the two dollar figures does not alter the correspondence equation. If an accident caused both death and property damage, the life insurance recoveries would not correspond to the property damage because life insurance compensates for a different loss. But here, both WTCP's insurance proceeds and the tort damages it claims indisputably compensate for the very same loss: the destruction of the buildings in which WTCP held a leasehold interest on September 11, 2001. *See Bryant v. N.Y.C. Health & Hosps. Corp.*, 93 N.Y.2d 592, 608 (1999) (determining that "[b]ecause child survivor benefits are intended to compensate for a parent's lost earnings, there is a 'close correspondence'" between the two).

## III.     WTCP Does Not and Cannot Distinguish *Fisher v. Qualico*

WTCP's position is indistinguishable from that of the homeowners in *Fisher*. Just like the Fishers, WTCP may expend more money to rebuild than the fair market value of the property it seeks to replace. *Fisher*, 98 N.Y.2d at 537 (noting that the value of the destroyed home was $480,000, while the replacement costs were $1,330,000). Just like the Fishers, WTCP has received insurance recoveries based on the costs to replace the destroyed property. *Id.* at 539-40 (holding that insurance company paid the Fishers $862,770 for replacement costs). Just like the Fishers, WTCP is fully compensated by an award of fair market value. *Id.* (noting the fair market value applies under the lesser of two rule). And just like the Fishers, WTCP's insurance recoveries, although calculated on a replacement cost basis, fully correspond to and entirely offset its recoverable tort damages, even though those damages are limited to fair market value. *Id.* at 540. ("As recognized in our case law, however, replacement cost and diminution in market value are simply two sides of the same coin. Each is a proper way to measure lost property

value, the lower of the two figures affording full compensation to the owner. In this case, the collateral source payment – the Fishers' replacement cost insurance proceeds – thus corresponds to their property loss, and was properly offset against the damages award.").

WTCP's efforts to distinguish its situation from that of the plaintiffs in *Fisher* are unavailing. WTCP's first argument – that unlike the Fishers' claim, its claim for replacement costs was precluded for lack of proximate cause – fails for the reasons discussed above. WTCP's second argument is that its situation is different from the Fishers because it held a 99-year net lease interest in the Complex, while the Fishers were fee simple property owners. But this is a classic distinction without a difference. WTCP does not and cannot explain why a slightly inferior property interest would translate into a greater measure of damages or a lack of correspondence to insurance proceeds. WTCP argues that "leases cannot be rebuilt" – but of course neither can fee simple ownership interests. What can be rebuilt are the structures in which either property interest is held and if the rebuilding costs exceed fair market value, the lesser of two rule limits the plaintiffs' recovery to fair market value.

WTCP's final argument is that it had insurance for both business interruption and replacement costs, while the Fishers had only replacement cost coverage. Once again, however, this distinction in no way changes the correspondence analysis. Business interruption insurance compensates a plaintiff for the profits lost during the period of repair or rebuilding. But those same lost profits are embedded in the fair market value of the profit-generating property. This Court already has held that fair market value reflects anticipated future profits. *See In re Sept. 11 Litig.*, 590 F. Supp. 2d at 544 ("WTCP cannot recover twice, once in the form of the property's market value, which fully includes the rental streams reasonably expected from the property, and again for the separate value of the rental streams." (citing *Sandoro v. Harlem-Genesee Mkt. &*

*Nursery, Inc.*, 482 N.Y.S.2d 165, 167 (4th Dep't 1984))). *Sandoro* establishes that expected future profits are included within fair market value and thus are embedded in the same loss. *Sandoro*, 482 N.Y.S.2d at 167 ("Since damages measured by market value take rental value into account, where a building is totally destroyed there is no separate allowance for damages for loss of rent."). Numerous federal court cases espouse the same principle. *See, e.g., Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000); *Healing Power, Inc. v. Ace Cont'l Exports, Ltd.*, 07-cv-4175, 2008 WL 4693246, at *8 (E.D.N.Y. Oct. 17, 2008). Business interruption insurance (reflecting lost profits) therefore fully corresponds to the damages measured by the diminution in fair market value (which likewise reflect the lost profits). WTCP has failed to raise any issue precluding the application of its full $4.091 billion in insurance proceeds against its maximum diminution in market value of $2.805 billion.

## IV.   WTCP's Efforts To Disregard *Fisher* Are Equally Unavailing

Unable to distinguish *Fisher*, WTCP attempts to disregard it entirely. Relying on the reports of its experts, WTCP argues that "only if WTCP were to have received its full losses – lost rents up until the buildings are replaced and generating income as they would have if not for the events of September 11 and their costs of replacing the buildings – would it be appropriate to offset the full amount of the insurance received for business interruption and/or replacement costs." WTCP Opp'n Br. at 25. This is not really an argument against correspondence, but a rehashing of WTCP's previously rejected argument that it is not limited to the "lesser of two" damages but is instead entitled to "both of two," that is, to a tort recovery of both its replacement costs (even if they exceed the diminution in fair market value of the destroyed buildings) and its lost profits.[8] Nothing in New York law supports WTCP's claims. *Fisher*, 98 N.Y. 2d at 540

---

[8] WTCP makes this argument under a thin veneer of correspondence analysis in the report of its expert Steven Shavell, who argues (contrary to *Fisher*) that WTCP must receive a "both of two"

("As recognized in our case law, however, replacement cost and diminution in market value are simply two sides of the same coin . . . the lower of the two figures affording full compensation."); *Sandoro*, 482 N.Y.S.2d at 167 ("[D]amages measured by market value take rental value into account, where a building is totally destroyed there is no separate allowance for damages for loss of rent.").

None of WTCP's arguments for a special exception to New York's damages law are persuasive, and damages equal to the pre-September 11 fair market value of its net lease interest in the WTC Complex will make it whole. What WTCP seeks are not *damages*, but a *subsidy* of its new investment in a brand-new complex. Consider the case of an investor who chooses to invest in a racehorse rather than commercial real estate. Assume that this investor buys a horse on Day 1 for $1 million; that $1 million value takes into account the purses the horse is expected to win and the stud fees it is expected to command, discounted for both uncertainty and the fact that they will be earned over time. If on Day 2 the horse is killed by a tortfeasor, New York law says that an award of $1 million will make the investor whole. That statement of the law remains true (indeed, New York law emphasizes it is particularly true), even if the closest replacement horse available in the market on Day 2 costs $2 million. What WTCP wants is $2 million to buy a new and better horse *plus* all the purses and stud fees that the first horse might have earned. Horseracing may yield a windfall of such dimensions to a lucky few bettors, but New York damages law does not. [9]

---

recovery of its replacement costs plus lost profits in order to be made whole and therefore should not be subject to offset in the amount of its insurance recoveries. *See* Barry Decl. Ex. C, Report of Steven Shavell dated August 12, 2011 ("Shavell Report") ¶30. But this same "both of two" argument is nothing new; it was previously advanced by another of WTCP's experts, Kerry O. Vandell, in the 2009 briefing and rejected by the Court.

[9]   The same analysis applies to the farm at issue in *Hartshorn v. Chaddock*: presumably the family acquired the farm planning to generate profitable crop yields for generations to come.

The economic rationale for the New York rule is simple: once a plaintiff has been repaid for the lost market value of the property that was damaged or destroyed, rebuilding the property at a higher cost is not an indication of increased damages but of a new investment – which will yield a new, presumably improved building. Imagine a scenario in which two identical aging bungalows are destroyed by fire, allegedly caused by a tort. The first property owner chooses to replace the bungalow with another bungalow of equally unprepossessing appearance and low value. The second property owner chooses to replace the bungalow with a well-built, shiny new structure that costs far more to build than the destroyed bungalow was worth (and incidentally may have an insurance policy that entitles him to fund the construction). But the value of what the second property owner lost – the aging bungalow – has not been increased by virtue of the scale of his rebuilding efforts and neither have the damages he can collect from the alleged tortfeasor. Both property owners are fully compensated by an award of damages corresponding to the market value of the bungalows.

As WTCP's proffered expert, Edward R. Reilly, Jr., essentially concedes: WTCP cannot point to any portion of its insurance recoveries that was paid for anything other than replacement costs and business interruption. *See* Barry Decl. Ex. D, Reilly Report ¶4. Indeed, based on the proofs of loss submitted through the adjustment process, Mr. Reilly himself applies a post-hoc allocation of 100% of the insurance proceeds to business interruption and replacement costs. *Id.* ¶18. WTCP is wrong when it asserts that under the Court's rulings "WTCP's potential leasehold damages award is for lost rental income only." WTCP Opp'n Br. at 13. Instead, the Court ruled that WTCP could recover for its property damage up to the lesser of fair market value or replacement costs and that any such recovery necessarily includes lost rental income. *In re Sept.*

---

135 N.Y. 116. Nonetheless, an award of the diminution in fair market value of the farm without additional allowances for future profits fully compensated the property owner for its loss.

*11 Litig.*, 590 F.Supp.2d at 544.  Those damages fully correspond to and are entirely offset by WTCP's insurance recoveries for replacement cost and business interruption.

## V.     WTCP's Arguments That Miscellaneous Items Are Not Subject To Offset Do Not Change the Fact That Its Tort Damages Are Fully Offset by Its Insurance Recoveries

WTCP further argues that certain items are not subject to offset because they were not covered by WTCP's insurance.  But none of WTCP's miscellaneous arguments undermines the conclusion that its maximum recoverable damages of $2.805 billion were fully offset by its receipt of insurance payments of $4.091 billion.

### A.     The Upfront Payment To the Port Authority

WTCP first argues that its up-front payment of $491 million to the Port Authority (the so-called "Initial Rent Payment") was not covered by insurance.  But that $491 million is no different than the downpayment presumably made by the Fishers in connection with the purchase of their home.  What WTCP paid is not the measure of its damages; instead, its damages are the diminution in the fair market value of the Complex that resulted from the September 11 attacks.  Just like the Fishers, WTCP is made whole by an award of fair market value, without regard to what portion of its investment was paid up front or how the purchase was financed.

WTCP apparently is confused by the fact that the Court found that the amount WTCP paid for the net leasehold interests it acquired pursuant to a worldwide auction that resulted in a deal in April 2001 (and closed in July 2001) was primary evidence of the fair market value of its leasehold interest in the Complex.  The Court merely applied the well-established principle that a recent, arm's length sale is the best indicator of fair market value; it did not hold that WTCP was entitled to recover each installment payment that it made to acquire its leasehold interests in addition to fair market value.

### B.    Re-tenanting Costs

WTCP further argues that it has incurred (and continues to incur) re-tenanting costs that are not offset by its insurance recoveries.  As the Court already properly held, these re-tenanting costs are factored into the profits WTCP expected to earn on the new buildings – profits that it contends are less than it would have earned had the Complex not been destroyed.  However, as discussed above, WTCP cannot claim an additional award of lost profits on top of its claim for diminution in market value of the Complex.  Consequently, WTCP cannot claim its re-tenanting costs as an additional item of damages.  *In re Sept. 11 Litig.*, 21 MC 101, slip. op. at 1-2 (S.D.N.Y. Sept. 30, 2009).

Moreover, these alleged re-tenanting costs are simply a secondary replacement cost.  Like other replacement costs in excess of fair market value, they do not represent additional damages attributable to the destruction of the Complex, but WTCP's investment in the new buildings.  It is indisputable that WTCP would not incur these costs if it had not chosen to erect a new building, for which it seeks to secure tenants.  Just as it cannot recover its primary replacement costs in excess of or in addition to fair market value, WTCP cannot recover secondary replacement costs in excess of or in addition to fair market value.

### C.    Claims Preparation and Litigation Costs

WTCP argues that it incurred claims preparation and litigation costs that are not subject to offset by insurance.  As the Court already ruled, however, WTCP cannot recover for fees it paid in connection with litigation with its insurers.  *In re Sept. 11 Litig.*, 21 MC 101, slip. op. at 2 (S.D.N.Y. Sept. 30, 2009).  Although the Court gave as an example that WTCP could not recover fees associated with its litigation over the question of whether the September 11 attacks constituted one occurrence or two, the Court in no way implied that WTCP was entitled to recover fees associated with litigation against its insurers over other issues.  WTCP is not entitled

15

to recover fees and costs relating to litigation against its insurers, full stop. *See Atlanta Woman's Club, Inc. v. Washburne*, 450 S.E. 2d 239, 241-42 (Ga. Ct. App. 1995) (defendant agent's alleged negligence in failing to replace an existing insurance policy with a comparable one was not the proximate cause of the insurer's decision to deny coverage under the policy); *Osborne v. Chapman*, 574 N.W.2d 64, 69 (Minn. 1998) (tenant's negligence in causing a fire was not the proximate cause of the landlord's dispute with its insurer; rather the proximate cause of the suit was the insurer's failure to settle the claim); *Windsor Sch. Dist. v. Vermont*, 956 A.2d 528, 541 (Vt. 2008) (in an action to recover expenses related to environmental cleanup, "attorney's fees expended in a declaratory relief action against its insurers are collateral to this end [of covering costs related to the cleanup] and are not recoverable").

The Court did hold correctly that WTCP's claims preparation costs and certain insurance premium expenses should be taken into account. But these costs are not damages chargeable to the Aviation Defendants without regard to insurance correspondence. Instead, as the Court properly noted, they are reductions to the net value of WTCP's insurance recoveries. *In re Sept. 11 Litig.*, 21 MC 101, slip. op. at 2 (S.D.N.Y. Sept. 30, 2009) ("attorneys' fees that WTCP incurred in preparing and submitting insurance claims, as well as premiums to the extent allowed by CPLR 4545, are proper offsets to arrive at net insurance recoveries."). Moreover, these amounts are simply too small to make a dent in the wide gulf between WTCP's maximum recoverable tort damages (plus interest) and WTCP's insurance recoveries. As noted in the 2009 Declaration of WTCP's Senior Vice President Michael Levy, which was reaffirmed in the Declaration that Mr. Levy submitted in opposition to the present motion and in WTCP's Counter Statement of Undisputed Facts, WTCP estimates its claims preparation costs at $10 million and the premiums at issue at approximately $5.8 million. This $15.8 million reduction in WTCP's

$4.091 billion insurance recoveries reduces the applicable collateral offset to $4.075 billion, an amount still far in excess of WTCP's maximum recoverable damages of $2.805 billion. Further, as WTCP does not deny, WTCP's insurance recoveries so far outstrip its maximum recoverable tort damages that even several hundred million dollars in claims preparation costs would not affect the conclusion that WTCP has no damages unreimbursed by insurance with respect to the Complex.[10]

## D.    Pre-judgment Interest

WTCP argues that its insurance coverage was not specifically dedicated to pre-judgment interest and that therefore, even if it has no principal in the form of damages not fully offset by its insurance recoveries, it should be paid for its interest at New York's statutory rate of nine percent, without regard to its receipt of insurance payments. WTCP's argument fundamentally mistakes the nature of pre-judgment interest. Pre-judgment interest is not a freestanding item of damages. Rather, it is an adjustment to the amount of a plaintiff's damages designed to reflect the passage of time. While property insurance policies rarely cover interest specifically, neither do they expressly cover tort damages. For correspondence purposes, pre-judgment interest partakes of the same character as the underlying tort damages on which it is based. If the

---

[10]   Mr. Levy's current Declaration states that WTCP has incurred $210 million in claims preparation costs and litigation costs "unrelated to the one occurrence-two occurrence issues." WTCP Opp'n Br. at 31. Declaration of Michael L. Levy dated December 5, 2011 (the "2011 Levy Declaration"), ¶8. This obfuscatory language does not alter the undisputed fact that WTCP's claims preparation fees have been itemized at no more than $10 million. *See* Barry Decl. Ex. L, Declaration of Michael L. Levy dated August 18, 2009, ¶33. Moreover, even if $50 million, $100 million or even the entire $210 million were applicable to reduce WTCP's $4.091 billion insurance recovery (and it should not be), WTCP would still have received net insurance payments far in excess of its maximum tort recovery, inclusive of interest ($3.881 billion in insurance recoveries versus $3.4 billion in damages at nine percent interest). *See* Barry Decl. Ex. S, Declaration of Rajiv Ghokale dated June 20, 2008 ("Ghokale Decl."), ¶10 (noting that even at highest possible interest calculation, WTCP's damages plus interest are no more than $3.4 billion).

damages correspond to the insurance payment, so does the pre-judgment interest; if the underlying tort damages do not correspond, neither does the pre-judgment interest.

In a situation like WTCP's, interest can be calculated in only two ways. The first would look at WTCP's damages of $2.805 billion, apply the offset of $4.091 billion in insurance, and conclude that there remains no principal on which interest could be assessed. Even nine percent interest on a zero balance is zero. The second way to perform the calculation is the one adopted by the Aviation Defendants and is more generous to the plaintiff – but does not change the outcome for WTCP. The Aviation Defendants took WTCP's maximum potential loss of $2.805 billion, assessed interest running to the date of each insurance payment, added that interest to the $2.805 billion, and only then applied the collateral offset. Although WTCP hints in its opposition brief that interest might continue to run even after an insurance payment is received, WTCP Opp'n Br. at 29, it is indisputable that once underlying damages are paid off, interest ceases to run, as WTCP elsewhere concedes. *Id.* Moreover, once an insurance payment is made, the insurer making the payment acquires a subrogation claim for the amount paid and interest begins to run on that subrogation claim. WTCP nowhere disputes the correctness of the Aviation Defendants' mathematical calculations contained in the Ghokale Declaration. WTCP Opp'n Br. at 28-30. Those calculations demonstrate that at any rate of interest, including the inapplicable nine percent rate WTCP advocates, WTCP's damages plus interest never come close to, let alone exceed, WTCP's $4.075 billion in net insurance recoveries. The highest amount damages plus interest ever reach (even at the incorrect nine percent state law rate) is $3.4 billion.[11] Barry Decl.

---

[11]   As the Aviation Defendants previously established, WTCP is not entitled to pre-judgment interest at the nine percent rate. WTCP brought this lawsuit pursuant to ATSSSA, where the substantive law of decision is derived from state law unless the state law is inconsistent with federal law.   New York's mandatory nine percent interest rate is inconsistent with the discretionary federal approach to interest calculation. In the Second Circuit, courts routinely use

Ex. S, Ghokale Decl. ¶10.  Plainly pre-judgment interest cannot save WTCP's claim as to the Complex and does not preclude summary judgment.

## CONCLUSION

The Aviation Defendants' renewed Motion for collateral setoff against WTCP's claims pursuant to CPLR 4545(c) and for summary judgment dismissing all of WTCP's claims as to the WTC Complex[12] should be granted in all respects.

Dated: New York, New York
December 15, 2011

Respectfully submitted,

CONDON & FORSYTH LLP

By_____
     Desmond T. Barry, Jr. (DB 8066)
Times Square Tower
7 Times Square
New York, New York 10036
Tel.: (212) 490-9100
Fax: (212) 370-4483

*Aviation Defendants' Liaison Counsel*

---

the post-judgment interest rate contained in 28 U.S.C. § 1961 to calculate pre-judgment interest as well.  This post-judgment interest rate is based on the risk-free rate on Treasury bonds and is far lower than nine percent.  *See Atlantic Mut. Ins. Co. v. Napa Transp.*, 399 F. Supp. 2d 523, 525 (S.D.N.Y. 2005) (since the action was before the court on a federal question, federal law governed the "issues of appropriateness, timing, and rate of pre-judgment interest."); *see also id.* at 527 (awarding pre-judgment interest at the post-judgment rate); *New York Marine & Gen. Ins. Co. v. Tradeline L.L.C.*, 266 F.3d 112, 130-31 (2d Cir. 2001) (affirming the district court's decision to use the risk-free federal rate to determine pre-judgment interest); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir. 1994) (same).

[12]   Such a ruling would result in the complete and final dismissal of WTCP's Complaint as to WTC 2 and 4.  WTCP's separate Complaint as to WTC 1, 5 and 7 would require a Rule 54(b) Order to be appealable, because this Motion does not address WTCP's claims as to WTC 7, although many of the principles at issue apply with equal force to the WTC 7 claims.