UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CEDAR & WASHINGTON ASSOCIATES, LLC,<br><br>Plaintiff,<br><br>- against -<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,<br>Defendants. | 21 MC 101 (AKH)<br><br>08 CV 9146 (AKH) |

**THE PORT AUTHORITY'S SUBMISSION PURSUANT TO THE MANDATE OF
THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

>Judith S. Roth
>Leah W. Sears
>SCHIFF HARDIN LLP
>666 Fifth Avenue
>New York, New York 10103
>(212) 753-5000
>JRoth@schiffhardin.com
>-and-
>One Atlantic Center, Suite 2300
>Atlanta, Georgia 30309
>(404) 437-7016
>LSears@schiffhardin.com
>*Attorneys for Defendant The Port Authority
>  of New York and New Jersey*

- i -

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ........................................................................................................ 2

III. DISCUSSION ............................................................................................................. 2

    A. Regardless Of Whether September 11 Was An "Act Of War," It Did Not Create CERCLA Liability ................................................................ 2

    B. The Court Should Make Clear That Any Determination That The "Act Of War" Defense Applies Is For CERCLA Purposes Only .................... 6

IV. CONCLUSION ........................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 129 S. Ct. 1870 (2009) .......... 3

*Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321 (2d Cir. 2000) ................................. 3

*Holiday Inns v. Aetna Ins. Co.*, 571 F. Supp. 1460 (S.D.N.Y. 1983) ............................................ 6

*In re September 11 Litigation, Cedar & Washington Assocs., LLC v. The Port Auth. of N.Y. & N.J., et al.*, 08 Civ. 9146 (AKH) (S.D.N.Y. May 25, 2012) ....................................................... 2

*In re September 11 Litigation, Cedar & Washington Assocs., LLC v. The Port Auth. of N.Y. & N.J., et al.*, 10-4197-CV (2d Cir. May 23, 2012) ............................................................ 1, 2, 3, 4

*Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318 (1972) .......................................................................... 5

*Massachusetts Trustees of E. Gas & Fuel Associates v. U. S.*, 312 F.2d 214 (1st Cir. 1963) *aff'd*, 377 U.S. 235, 84 S. Ct. 1236 (1964) ........................................................................................... 6

*New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir. 1985) .................................................... 3

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989 (2d Cir. 1974) .................. 6

*United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (2d Cir. 1992) ......................................... 3

*United States v. Bestfoods*, 524 U.S. 51, 118 S. Ct. 1876 (1998) .................................................. 3

*United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263 (E.D. Cal. 1997) ........................ 4

*United States v. Shell Oil Co.*, 294 F.3d 1045 (9th Cir. 2002) ....................................................... 6

*Wisconsin Tel. Co. v. City of Oshkosh*, 21 N.W. 828 (Wis. 1884) ................................................. 5

**Statutes**

42 U.S.C. § 9607 ................................................................................................................... passim

49 U.S.C. § 40101 *et seq.* ............................................................................................................. 6

**Other Authorities**

2A N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:2 (7th ed. 2007) ....................................................................................................................................... 3

2A N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:25 (7th ed. 2007) ....................................................................................................................................... 6

2B N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 49:2 (7th ed. 2007) ................................................................................................................................ 5

H.R. Rpt. No. 96-1016, pt. 1 (1980) ............................................................................................... 3

U.S. CONST. art. I, § 8 .................................................................................................................... 5

## I. INTRODUCTION

The Port Authority of New York and New Jersey (the "Port Authority") does not take a position on whether September 11 was an "act of war" within the meaning of the affirmative defense set forth in the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607 (b)(2) ("CERCLA"). It is the Port Authority's position that the Court does not need to reach the "act of war" affirmative defense because the text and history of CERCLA make it clear that CERCLA was never intended to stretch to the consequences of an event of the sort our country suffered on September 11.[1]

If this Court ultimately determines that September 11 was an "act of war," it is important that it do so for the "limited purpose" identified in the Second Circuit's mandate, that is: "to decide in the first instance whether the act-of-war exception in CERCLA, considered in the context of CERCLA's statutory scheme and the intent of Congress, applies in this case." *In re September 11 Litigation, Cedar & Washington Assocs., LLC v. The Port Auth. of N.Y. & N.J., et al.*, 10-4197-CV, at 5 (2d Cir. May 23, 2012) ("Mandate"). As the Court is no doubt aware, it is the insurance policies issued to the defendants in this case that have provided much of the funding to compensate the many victims of September 11. General liability insurance policies in effect in 2001 generally contain some form of coverage exclusion for liability caused by an "act of war." The terms, scope, and interpretation of those insurance provisions are not synonymous with CERCLA's "act of war" defense. Clarity in that respect is key in order to avoid inadvertently overbroad language that could be taken out of context in an insurance proceeding and lead to further litigation, and the possible denial of relief for those suffering injuries or damage as a result of September 11.

---

[1] While the Port Authority does not take a position at this time as to whether CERCLA's "act of war" defense applies, it reserves the right to take a position in the future.

## II. BACKGROUND

This lawsuit was brought by Cedar & Washington Associates, LLC ("C&W") against the Port Authority and other victims of the September 11 attacks, including lessees of the former World Trade Center ("WTC") complex and the airlines whose planes were hijacked. C&W seeks at least $55 million from the defendants under CERCLA, a statute enacted in 1980 to address industrial pollution. On November 2, 2010, this Court granted the defendants' motions to dismiss on the grounds that the plaintiff's claims did not arise from a "release" or "disposal" within the meaning of CERCLA and that the statute of limitations in CERCLA barred plaintiff's claims. C&W appealed, and the United States Court of Appeals for the Second Circuit heard oral argument on April 25, 2012. On May 23, 2012, the Second Circuit remanded to this Court for the purpose of deciding "whether the attack on the World Trade Center on September 11 was an 'act of war' within the meaning of CERCLA's affirmative defense." (Mandate at 4; *see also id.* at 5.) On May 25, 2012, this Court issued a briefing schedule. *In re September 11 Litigation, Cedar & Washington Assocs., LLC v. The Port Auth. of N.Y. & N.J., et al.*, 08 Civ. 9146 (AKH) (S.D.N.Y. May 25, 2012).

## III. DISCUSSION

### A. Regardless Of Whether September 11 Was An "Act Of War," It Did Not Create CERCLA Liability.

Whether or not September 11 technically came within CERCLA's "act of war" defense, <u>it was a distinctly war-like act which Congress would not have intended to include within CERCLA's ambit if Congress could have conceived of such an attack in 1980.</u>

As discussed in detail in the defendants' joint defense motion to dismiss, Congress enacted CERCLA in December 1980 "in response to the serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55, 118 S. Ct. 1876,

1881 (1998) (citation omitted); *see also New York v. Shore Realty Corp.*, 759 F.2d 1032, 1037-40 (2d Cir. 1985); *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 257-58 (2d Cir. 1992); (Mandate at 4 (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602, 129 S. Ct. 1870, 1874 (2009))).  Before CERCLA's enactment, thousands of uncontrolled hazardous waste sites, such as the Love Canal site in New York, threatened public health and the environment, and the laws in existence at the time were insufficient to remedy the problems. H.R. Rpt. No. 96-1016, pt. 1 at 17-18, 18-20 (1980), as reprinted in 1980 U.S.C.C.A.N. 6119, 6120.  By enacting CERCLA, Congress created enforcement mechanisms to ensure that "those actually responsible for any damage, environmental harm, or injury from chemical poisons may be tagged with the cost of their actions." *Bestfoods*, 524 U.S. at 55-56 (quotation marks and alteration omitted); *see also Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602, 129 S. Ct. 1870, 1874 (2009) ("[CERCLA] was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." (quotation marks omitted)).  Although broad in scope, CERCLA does not "automatically assign liability to every party with any connection to a contaminated facility." *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 327 (2d Cir. 2000).

      CERCLA's purpose is further illuminated by the affirmative defenses that Congress saw fit to include in the statute, which are informative as to CERCLA's intended scope.  *See* 2A N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:2 (7th ed. 2007) (to discern legislative intent, reading the act as a whole "is the most realistic [method] in view of the fact that a legislature passes judgment upon the act as an entity").  CERCLA contains affirmative defenses that expressly preclude liability for a release or threatened release of a

"hazardous substance" that is "caused solely" by "an act of God," "an act of war," or "an act or omission of a third party . . . ." 42 U.S.C. § 9607(b)(1)-(3). These defenses share in common the premise that liability should be borne by responsible parties. In addition, CERCLA permits a defendant to plead "any combination of the foregoing [affirmative defenses]," suggesting that Congress sought to permit some flexibility in the construction of the defenses, rather than forcing a defendant to choose and conform strictly to a single defense. 42 U.S.C. § 9607(b)(4). Taken together, these defenses show that Congress deliberately chose to exclude from liability "releases" that resulted from attacks perpetrated by third parties against the United States. 42 U.S.C. § 9607(b)(2). Regardless of whether September 11 comes within the precise contours of CERCLA's "act of war" defense, it is clear that Congress did not intend to impose environmental liability upon the victims of actions by third parties such as those of September 11.[2]

Even if this Court were to determine that September 11 was, for example, an act of "terrorism" but not an act of "war," the fact that CERCLA does not expressly refer to a "terrorism" defense would not mean CERCLA applies. When Congress passed CERCLA, it could not have foreseen an event such as September 11. (Mandate at 4 ("Cedar & Washington's CERCLA claims invite the application of CERCLA to a unique and unforeseen factual circumstance.").) When Congress enacted CERCLA in 1980, many of the most infamous and deadly acts of terrorism had not occurred, such as the USS Cole bombing (October 12, 2000), the Oklahoma City bombing (April 19, 1995), the World Trade Center bombing (February 26, 1993), and the bombing of Pan Am Flight 103 over Lockerbie, Scotland (December 21, 1988).

---

[2] Although CERCLA is a strict liability statute, its affirmative defenses show that its framers did believe causation was important. CERCLA's defenses trigger a causation analysis under their "sole cause" requirement. *See, e.g.*, *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263 (E.D. Cal. 1997) (under "sole cause requirement," third party defense may be available "if the [defendant's] actions or inaction were so [sic] indirect and insubstantial in the chain of events leading to the release . . . ").

Attacks on the scale of September 11 had never been perpetrated against the United States other than by a nation-state.[3]

Congress's inability in 1980 to conceive of September 11 cannot be construed as an intent to include it within CERCLA's purview.  In interpreting statutory text, courts have recognized that a statute's failure specifically to refer to a circumstance that was unknown when the statute was enacted does not mean that the statute does not apply to that circumstance.  *See* 2B N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 49:2 (7th ed. 2007).  To cite one famous example, Article I, Section 8 of the United States Constitution, which was enacted before the advent of airplanes and explicitly authorizes only "armies" and "a navy," has been held also to permit the Air Force.  *Laird v. Tatum*, 408 U.S. 1, 17, 92 S. Ct. 2318, 2327 (1972).  Likewise, another court held that the Constitution's references to "post-offices and post-roads" was "not confined to the instrumentalities . . . known when the constitution was adopted," but also included newer technologies not known to the framers.  *Wisconsin Tel. Co. v. City of Oshkosh*, 21 N.W. 828, 830-31 (Wis. 1884).  So too do CERCLA's "act of war" and act of third party defenses evidence Congress's intent to exclude from CERCLA's scope violent attacks against our country such as September 11, which were unknown to the United States in 1980.  And just as surely as our Air Force does not run afoul of the Constitution, the victims of September 11 are not liable under CERCLA by virtue of having been targeted by al-Qaeda.[4]

---

[3] Nor could Congress have foreseen the opportunistic use of CERCLA to finance renovations of a luxury hotel as C&W has sought to do in this case.

[4] For similar reasons, the canon *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") has no application even if the Court should find that September 11 was not within CERCLA's "act of war" defense.  The maxim *expressio unius* "is based on logic and common sense," and "will be disregarded and an expanded meaning given . . . where

### B. The Court Should Make Clear That Any Determination That The "Act Of War" Defense Applies Is For CERCLA Purposes Only.

The Port Authority respectfully requests that the Court make clear that its resolution of whether CERCLA's "act of war" defense applies is for CERCLA purposes only. Consistent with ATSSSA,[5] the general liability insurance policies issued to the defendants in this case have provided a source of funding for many injured on September 11, and many policies exclude coverage for harm that arises from an "act of war." The meaning of the phrase "act of war" is contextual, and as used in an insurance policy it does not have the same meaning as when used in a statute. *See, e.g.*, *Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 993 (2d Cir. 1974) (defining terms in exclusions "for insurance purposes"); *Holiday Inns v. Aetna Ins. Co.*, 571 F. Supp. 1460, 1503 (S.D.N.Y. 1983) (in commercial litigation arising out of insurance policies, words are to be given "their insurance meaning"). Thus, in *United States v. Shell Oil Co.*, 294 F.3d 1045 (9th Cir. 2002), the Ninth Circuit did not consider the *Pan Am* or *Holiday Inns* cases in its analysis of the applicability of the CERCLA "act of war" defense. CERCLA's strict liability standard and spotlight on past conduct are just two factors that distinguish the critical factors applicable in a statutory analysis for CERCLA purposes from an

---

its application would thwart the legislative intent made apparent by the entire act . . . ." 2A N.J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:25 (7th ed. 2007). Here, even if the Court finds that CERCLA's "act of war" defense does not apply to September 11, there is good reason why CERCLA does not explicitly refer to war-like attacks by non-state actors: the United States had not experienced anything like September 11 when CERCLA became law. Thus, *expressio unius* has no application. *Id.*; *see also Massachusetts Trustees of E. Gas & Fuel Associates v. U. S.*, 312 F.2d 214, 220 (1st Cir. 1963) *aff'd*, 377 U.S. 235, 84 S. Ct. 1236 (1964) ("It is universally held that this maxim is a guide to construction, not a positive command. . . . Whether the specification of one matter means the exclusion of another is a matter of legislative intent for which one must look to the statute as a whole.").

[5] The Airline Transportation Safety and System Stabilization Act of 2001, Pub. L. No. 107-42, 115 Stat. 230 (Sept. 22, 2001), amended by the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001) (codified as amended at 49 U.S.C. § 40101 *et seq.*).

analysis of a contractual exclusion for insurance purposes. Yet a broad, unqualified declaration that September 11 was an "act of war" could potentially be taken out of context in a later coverage proceeding. Thus, for the clarity of all involved and to avoid uncertainty, it is important that any ruling regarding CERCLA's "act of war" defense clearly state that the decision is limited to "act of war" within the meaning of CERCLA.

## IV.   CONCLUSION

Whether or not September 11 was an "act of war" within the meaning of CERCLA, it was a terrorist attack of a sort unknown in 1980. Under any CERCLA analysis, the Port Authority should have no CERCLA liability as a matter of law because it did not cause a CERCLA release by virtue of its ownership or operation of the WTC site and CERCLA's purpose was not to make a victim of an attack by third parties, such as the Port Authority, a potentially responsible party within the meaning of CERCLA. CERCLA's history, purpose, and text show that Congress never intended to impose liability on those who were injured on September 11. The statute's affirmative defenses further buttress the conclusion that the September 11 attacks do not give rise to CERCLA liability. The Court's ruling on the "act of war" defense should make clear that it is for CERCLA purposes only in order to avoid unintended consequences with respect to potentially significant issues of insurance coverage.

[Remainder of page intentionally left blank.]

- 8 -

Dated:  New York, New York
         June 20, 2012

      /s/Leah W. Sears

Judith S. Roth
Leah W. Sears

SCHIFF HARDIN LLP
666 Fifth Avenue
New York, New York 10103
(212) 753-5000
JRoth@schiffhardin.com
-and-
One Atlantic Center, Suite 2300
Atlanta, Georgia  30309
(404) 437-7016
LSears@schiffhardin.com

*Attorneys for Defendant The Port Authority*
   *of New York and New Jersey*

NY\51182977.8