UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

IN RE SEPTEMBER 11 LITIGATION

: 21 MC 101 (AKH)

------------------------------------------------------------------------- X

CEDAR & WASHINGTON ASSOCIATES, LLC,

Plaintiff,

: 08 CIV 9146 (AKH)

- against -

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, SILVERSTEIN PROPERTIES, INC., WORLD
TRADE CENTER PROPERTIES LLC, SILVERSTEIN WTC
MGMT. CO. LLC, 1 WORLD TRADE CENTER LLC, 2
WORLD TRADE CENTER LLC, 3 WORLD TRADE
CENTER LLC, 4 WORLD TRADE CENTER LLC, 7
WORLD TRADE COMPANY, L.P., HMH WTC, INC.,
HOST HOTELS AND RESORTS, INC., WESTFIELD WTC
LLC, WESTFIELD CORPORATION, INC.,
CONSOLIDATED EDISON COMPANY OF NEW YORK,
AMR CORPORATION, AMERICAN AIRLINES, INC.,
UAL CORPORATION, and UNITED AIRLINES, INC.,

Defendants.

------------------------------------------------------------------------- X

## WTCP DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE APPLICATION OF THE "ACT OF WAR" STATUTORY DEFENSE TO THE RESOLUTION OF DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

Richard A. Williamson
FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP
One Liberty Plaza
New York, NY 10006
Tel:  (212) 412-9500
*Attorneys for Silverstein Properties, Inc.,
World Trade Center Properties LLC, Silverstein
WTC Mgmt. Co. LLC, 1 World Trade Center
LLC, 2 World Trade Center LLC, 3 World Trade
Center LLC, and 4 World Trade Center LLC*

## Table of Contents

**Page(s)**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ......................................................................................................... 1

Argument .............................................................................................................................. 4

     I.      Whether an "Act of War" Was the *Sole Cause* of Plaintiff's
           Alleged CERCLA Cleanup Costs Cannot Be Determined on
           a Motion for Judgment on the Pleadings When, as Here, the
           Alleged Contamination of Plaintiff's Property is Claimed to Be
           Attributable to Multiple Concurrent Causes ............................................. 4

     II.     The Terrorist Attacks of September 11th Were Not "Acts of War" ....................... 8

     III.    If Terrorists Were Deemed Capable of Committing Acts of War,
           There Would be Unacceptable and Unintended Consequences .......................... 13

Conclusion ......................................................................................................................... 16

## Table of Authorities

**Page(s)**

**Cases**

*Derdiarian v. Felix Contr. Corp.*,
    51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980) .................................................. 4

*Freeland v. Williams*,
    131 U.S. 405, 19 S.Ct. 763 (1889) ........................................................................... 14

*Hamdan v. Rumsfeld*,
    548 U.S. 557, 126 S.Ct. 2749 (2006) ...................................................................... 16

*Holiday Inns Inc. v. Aetna Ins. Co.*,
    571 F. Supp. 1460 (S.D.N.Y. 1983) ..................................................................... 12-13

*In re September 11 Litig.*,
    280 F. Supp. 2d 279 (S.D.N.Y. 2003) ....................................................................5-6

*In re September 11 Litig.*,
    594 F. Supp. 2d 374 (S.D.N.Y. 2009) ...................................................................... 6

*In re September 11 Litig.*,
    21-MC-101 (AKH) (Mar. 3, 2009) ........................................................................6

*In re September 11 Prop. Damage Litig.*,
    650 F.3d 145 (2d Cir. 2011) .................................................................................. 6

*Kriz v. Schum*,
    75 N.Y.2d 25, 550 N.Y.S.2d 584, 549 N.E.2d 1155 (1989) .................................................. 4

*Nash v Port Auth. of N.Y. & N.J.*,
    51 A.D.3d 337, 856 N.Y.S.2d 583 (1st Dep't 2008),
    *rev'd on other grounds, In re World Trade Center Bombing Litig.*,
    17 N.Y.3d 428, 933 N.Y.S.2d 164, 957 N.E.2d 733 (2011) .................................................. 5

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
    505 F.2d 989 (2d Cir. 1974) ........................................................................10-11, 12

*Sokolow v. Palestine Liberation Org.*,
    583 F. Supp. 2d 451 (S.D.N.Y. 2008) .................................................................. 13-14

*Stansell v. BGP, Inc.*,
    No. 8:09 civ. 2501, 2011 WL 1296881 (M.D.Fla. Mar. 31, 2011) ....................................... 8-9

*U.S. v. Al Bahlul*,
    820 F. Supp. 2d 1141 (Ct. Mil. Comm'n Rev. 2011) ........................................................ 2

*U.S. Bank Nat'l Ass'n v Black Diamond CLO 2005-1 Adviser, L.L.C.*,
    No. 11 civ. 5675(JSR), 2011 WL 6880723 (S.D.N.Y. Dec. 30, 2011) ................................... 5

**Table of Authorities (cont'd)**

**Page(s)**

*U. S. v. Khadr*,
717 F. Supp. 2d. 1215 (Ct. Mil. Comm'n Rev. 2007) ........................................................ 14

*U.S. v. Lindh*,
1212 F. Supp. 2d 541 (E.D. Va. 2002) .................................................................................. 14

*U. S. v. Pineda*,
No. CR. 04-232 (TFH), 2006 WL 785287 (D.D.C. Mar. 28, 2006) ................................... 14

*U.S. v. Shell Oil Co.*,
841 F. Supp. 962 (C.D. Cal. 1993),
*aff'd in relevant part and rev'd in part on other grounds*,
294 F.3d 1045 (9th Cir. 2002) ............................................................................................. 10

*U.S. v. Sterling Centrecorp Inc.*,
No. 2:08 civ. 02556, 2011 WL 6749801 (E.D.Cal. Dec. 22, 2011) ...................................... 8

*Williams v. Trans World Airlines*,
509 F.2d 942 (2d Cir. 1975)................................................................................................... 6


**Statutes**

18 U.S.C. § 2331 ........................................................................................................... passim

18 U.S.C. § 2332b ........................................................................................................ 11, 12

18 U.S.C. § 2333 .................................................................................................................. 8

18 U.S.C. § 2336 ............................................................................................................. 8, 14

42 U.S.C. §§ 9601 .......................................................................................................... 1, 17

42 U.S.C. §§ 9607 ................................................................................................................ 4

49 U.S.C. § 40101 ................................................................................................................ 1

49 U.S.C. § 44702 ................................................................................................................ 6

H.R. REP. 102-1040 (1992) ................................................................................................ 13

Pub. L. No. 107-56, 115 Stat. 272 (2001)........................................................................... 11

Pub. L. No. 107-297, 116 Stat. 2322 (2002)....................................................................... 15

N.Y. Ins. Law § 3203 ......................................................................................................... 10

N.Y. Ins. Law § 4510 ......................................................................................................... 10

**Table of Authorities (cont'd)**

Page(s)

**Treaties**

Convention for the Amelioration of the Condition of the Wounded Armies in the Field,
signed at Geneva, Aug. 22, 1864,
129 Consol. T.S. 361 ................................................................................................ 10

Geneva Convention for the Amelioration of the Condition of the Wounded and Sick
in Armed Forces in the Field, August 12, 1949,
6 U.S.T. 3114 .......................................................................................................... 10

Geneva Convention for the Amelioration of the Condition of Wounded, Sick, and
Shipwrecked Members of the Armed Forces at Sea, August 12, 1949,
6 U.S.T. 3217 .......................................................................................................... 10

Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949,
6 U.S.T. 3316 ............................................................................................. 10, 14, 15

Geneva Convention Relative to the Protection of Civilian Persons in Time of War,
August 12, 1949,
6 U.S.T. 3516 .......................................................................................................... 10

Hague Convention No. IV Respecting the Laws and Customs of War on Land,
Oct. 18, 1907,
36 Stat. 2277, 205 Consol. T.S. 277 ....................................................................... 10

Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating
to the Protection of Victims of International Armed Conflicts, June 8, 1977,
1125 U.N.T.S. 3 ...................................................................................................... 14


**Other Authorities**

Nat'l Comm'n on Terrorist Attacks upon the U.S., *The 9/11 Commission Report* (2004) ...... 16

Abraham D. Sofaer, *The U.S. Decisions Not to Ratify Protocol I to the Geneva Conventions
on the Protection of War Victims*,
82 A.J.I.L. 784 (1988) ............................................................................................... 11

William H. Taft, IV, *The Law of Armed Conflict After 9/11: Some Salient Features*,
28 Yale J. Intl. L. 319 (2003) ................................................................................ 2, 16

United States Army Field Manual 27-10, The Law of Land Warfare (1956) ........................... 10

New York Pattern Jury Instruction 2:70 ................................................................................ 4-5

## Preliminary Statement

Defendants Silverstein Properties, Inc., World Trade Center Properties LLC, Silverstein WTC Mgmt. Co. LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, and 4 World Trade Center LLC (collectively "WTCP") submit this Memorandum of Law in response to this Court's May 25, 2012 inquiry as to "whether the act-of-war exception . . . applies in this case."

In its ATSSSA[1] lawsuit, plaintiff Cedar & Washington Associates, LLC ("C&W") asserts a claim based on CERCLA[2] for the alleged contamination of a downtown Manhattan commercial office building, 130 Cedar Street. C&W seeks damages for its alleged costs to decontaminate 130 Cedar Street from the following categories of defendants: (1) the two air carriers that negligently failed to prevent terrorists on September 11th from hijacking and crashing two aircraft into World Trade Center buildings; (2) the owner of the World Trade Center site, the Port Authority of New York and New Jersey; and (3) certain lessees of the destroyed World Trade Center buildings.

This Court dismissed plaintiff's lawsuit by granting motions for judgment on the pleadings on several grounds, each one of which independently mandated dismissal. That decision is now *sub judice* before the Second Circuit Court of Appeals. Defendants have now been asked to address an issue not raised in their motions, namely, whether plaintiff's purported ATSSSA/CERCLA claim could also be dismissed on the pleadings pursuant to CERCLA's statutory "act of war" defense. The answer is *no*.

---

[1]   Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 note.

[2]   Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 *et seq.*

Even assuming *arguendo* that the September 11th terrorists could commit acts of war, the pleadings both in the C&W lawsuit (and in other lawsuits arising out of the terrorist-related aircraft crashes into the World Trade Center pending before this Court) raise disputed issues of fact that cannot be resolved on a motion for judgment on the pleadings as to whether the terrorists' acts were the *sole* cause of the alleged contamination of 130 Cedar Street, which is an essential element of the CERCLA "act of war" defense. *See* Point I, *infra*.

Moreover, the September 11th terrorists committed acts of terrorism, not acts of war. The laws of war limit the acts by which war is legally conducted. In contrast, "al Qaeda, [is] an international terrorist organization with no colorable claim of legitimacy under the law of armed conflict." *U.S. v. Al Bahlul*, 820 F. Supp. 2d 1141, 1218 (Ct. Mil. Comm'n Rev. 2011). Furthermore, as a matter of law, an act of terrorism is by definition not an act of war. "'Terrorism is, above all, the negation of law. More specifically, it is the negation of the fundamental humanitarian principles of the law of armed conflict. Whereas humanitarian law proscribes directing attacks against civilians as such, terrorism promotes it; and whereas a fundamental purpose of *jus in bello* is the facilitation of order after a conflict, the aim of terrorism is the opposite—chaos clad in violence.'" *Id.* at 1188 (quoting William H. Taft, IV, *Current Pressures on International Humanitarian Law: The Law of Armed Conflict After 9/11: Some Salient Features*, 28 Yale J. Intl. L. 319, 321, 323 (2003)). *See* Point II, *infra*.

Finally, a determination by this Court that sporadic acts of abhorrent destruction by terrorists are "acts of war" even though the perpetrators are not acting on behalf of states or governments recognized as such by the international community or pursuant to internationally recognized laws of war would have drastic unintended and undesirable public policy consequences, such as, for example: (1) terrorists, like soldiers, could claim immunity from civil

and criminal liability for their violent acts; (2) terrorists could claim the benefits and protections afforded soldiers under the Geneva Conventions; and (3) persons who purchased insurance protection against acts of terrorism could find that they have no insurance protection after all because what Congress understood to be acts of terrorism have been redefined by court order into acts of war, which are typically excluded from property insurance policies. *See* Point III, *infra*.

## POINT I

### WHETHER AN "ACT OF WAR" WAS THE *SOLE CAUSE* OF PLAINTIFF'S ALLEGED CERCLA CLEANUP COSTS CANNOT BE DETERMINED ON A MOTION FOR JUDGMENT ON THE PLEADINGS WHEN, AS HERE, THE ALLEGED CONTAMINATION OF PLAINTIFF'S PROPERTY IS CLAIMED TO BE ATTRIBUTABLE TO MULTIPLE CONCURRENT CAUSES

CERCLA provides a statutory affirmative defense to liability when the release of hazardous substances was *caused solely* by an act of war, 42 U.S.C. § 9607(b)(2), but does not define the term "act of war." Assuming *arguendo* that the acts of the September 11th terrorists constituted acts of war rather than of terrorism, this Court cannot dismiss plaintiff's CERCLA claim on the pleadings because issues of fact remain in dispute as to whether the terrorists were the sole cause of the alleged contamination of 130 Cedar Street.

Generally, the issue of causation, and especially the issue of sole causation, can only be determined by the jury on a full record, not by the Court on the pleadings: "It is well settled that because the determination of legal causation turns upon questions of foreseeability and 'what is foreseeable and what is normal may be the subject of varying inferences, . . . these issues generally are for the fact finder to resolve.'" *Kriz v. Schum*, 75 N.Y.2d 25, 34, 550 N.Y.S.2d 584, 588, 549 N.E.2d 1155, 1159 (1989) (quoting *Derdiarian v. Felix Contr. Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 170, 414 N.E.2d 666, 670 (1980)).

New York Pattern Jury Instruction 2:70 "Proximate Cause—In General" specifically instructs the finder of fact that there can be more than one legal cause of an injury: "An act or omission is regarded as a cause of an injury . . . if it was a substantial factor in bringing about the injury . . ., that is, if it had such an effect in producing the injury . . . that reasonable people would regard it as a cause of the injury . . . . *There may be more than one cause of an injury* . . .

4

but to be substantial, it cannot be slight or trivial.  You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it." *Id.* (emphasis added).

Thus, just because the September 11th terrorists' acts may have resulted in contamination of 130 Cedar Street does not establish, as a matter of law, that such acts were the *sole* cause of the contamination and resulting cleanup of 130 Cedar Street.  This point is illustrated by the First Department's ruling that the injuries arising from the 1993 terrorist attack on the World Trade Center had multiple causes.  That Court, affirming a jury damages verdict against the Port Authority of New York and New Jersey, held that the Port Authority, having negligently failed to prevent the terrorist attack, was a cause (concurrent with the terrorists) of the resulting injuries: "The jury, after hearing all the evidence presented at the lengthy trial of this matter, as noted, found that defendant [Port Authority] had been negligent in failing to maintain its parking garage in reasonably safe condition and that this negligence was a substantial cause of the bombing." *Nash v Port Auth. of N.Y. & N.J.*, 51 A.D.3d 337, 353, 856 N.Y.S.2d 583, 594 (1st Dep't 2008), *rev'd on other grounds, In re World Trade Center Bombing Litig.*, 17 N.Y.3d 428, 933 N.Y.S.2d 164, 957 N.E.2d 733 (2011) (immunity of the Port Authority of New York and New Jersey).  Applying that same logic here, if the airlines' negligence (or any other concurrent cause) contributed to plaintiffs' alleged damages, then the terrorists' acts were not the *sole* cause and the statutory "act of war" defense does not apply.

This Court can take judicial notice[3] that defendants American Airlines and United Air Lines herein are alleged in other lawsuits arising out of the September 11th aircraft crashes[4] to

---

[3]    *See U.S. Bank Nat'l Ass'n v Black Diamond CLO 2005-1 Adviser, L.L.C.*, No. 11 Civ. 5675 (JSR), 2011 WL 6880723, at *1 n.4 (S.D.N.Y. Dec. 30, 2011) ("In deciding a motion for judgment on the pleadings, a court may consider . . . matters subject to judicial notice").

[4]    *See, e.g.*, WTCP's Complaint for damages arising from the hijacking of United Flight 175, S.D.N.Y. Civil Action No. 08 Civ. 3719 (AKH), Docket No. 1.

have caused the damages suffered by their passengers and by persons and property on the ground.  In those actions, it is alleged that American Airlines and United Air Lines, among others, negligently breached their duty to prevent terrorists from boarding their aircraft with weapons, taking control of the planes and crashing them into the World Trade Center.  *See In re September 11 Litig.*, 280 F. Supp. 2d 279, 290-96 (S.D.N.Y. 2003).[5]

Moreover, this Court can take judicial notice that defendants American Airlines and United Air Lines (and their security companies) have paid more than $1.2 billion dollars to settle wrongful death and property damage lawsuits arising out of the September 11th aircraft crashes at the World Trade Center, *see In re September 11 Prop. Damage Litig.*, 650 F.3d 145, 150 (2d Cir. 2011); Order Accepting Mediator Report and Providing that it be Filed, dated March 3, 2009 (1:21-mc-00101-AKH) (docket number 752)), and that court filings with respect to one of these settled lawsuits paint a compelling picture of how the airlines and their security companies negligently breached Federal Aviation Administration regulations, failed to provide commercial aviation service with the highest possible degree of safety in the public interest and were otherwise negligent.  *See* The Bavis Family's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Declaration of Vincent I. Parrett in Support of the Bavis Family's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, both dated September 16, 2011 (1:02-cv-07154-AKH) (docket numbers 236 and 240).

Consequently, a jury, not this Court on a motion for judgment on the pleadings, must determine in the instant lawsuit whether American and United are concurrent causes of the

---

[5]    This Court has held that air carriers such as American and United have a federal statutory duty "to provide service with the highest possible degree of safety in the public interest."  49 U.S.C. § 44702(b)(1)(A); *see also In re September 11th Litig.*, 594 F. Supp. 2d 374, 380 (S.D.N.Y. 2009) (quoting *Williams v. Trans World Airlines*, 509 F.2d 942, 946 (2d Cir. 1975)). *See also* 49 U.S.C. § 44702(b)(1)(A).

September 11th hijackings and of the alleged contamination and subsequent cleanup of 130

Cedar Street.[6]  Moreover, because the C&W Complaint also alleges that contamination of 130

Cedar Street occurred during the weeks and months that followed September 11th, *see* C&W

Complaint, ¶¶ 3-5, 43-49, a jury must determine the factual question whether such post-

September 11th contamination also was a legal cause of the contamination and subsequent

cleanup of 130 Cedar Street.

Finally, C&W's remediation agent, RJ Lee Group, Inc., admitted to the U.S.

Environmental Protection Agency in a letter date October 31, 2006 that 130 Cedar Street

contained "hazardous substances" before September 11th that needed to be remediated at the

same time as the remediation of the post-September 11th contamination.  *See* Exhibit 21 to the

Declaration of Suma Sanakkayala in Support of Defendants' Motion to Dismiss the Complaint

(docket nos. 66, 69, 70 and 74), *Cedar & Washington Assocs., LLC v. The Port Authority of New*

*York and New Jersey et al.*, S.D.N.Y. Civil Action No. 08 Civ. 9146 (docket numbers 66, 69, 70,

74).  Therefore, a jury, not this Court on a motion for judgment on the pleadings, must determine

whether the cost of the cleanup of 130 Cedar Street, for which C&W seeks damages, was also

caused by pre-September 11th contamination.

Putting aside that the terrorists' acts on September 11th do not fit the definition of "acts

of war" (discussed in Point II *infra*), application of the statutory "act of war" defense on a motion

for judgment on the pleadings would be premature given that resolution of this defense requires a

jury determination of the issue of "sole" causation.

---

[6]     The Answers of American and United each concede that they have a federal duty to
prevent air piracy by complying with national security regulations promulgated by the Federal
Aviation Administration.  American First Amended Answer and Counterclaim, S.D.N.Y. Civil
Action No. 08 Civ. 3722 (docket number 157) ¶¶ 112,114; United First Amended Answer and
Counterclaim, S.D.N.Y. Civil Action No. 08 Civ. 3719 (docket number 164) ¶ 45.

**POINT II**

## THE TERRORIST ATTACKS OF SEPTEMBER 11TH WERE
## NOT "ACTS OF WAR"

Assuming for the sake of argument that the terrorists were found by a jury to be the sole

cause of plaintiff's alleged CERCLA damages, the "act of war" defense would still not be

applicable to C&W's CERCLA claim because the terrorists did not perpetrate an "act of war."

Because "act of war" is not defined by CERCLA, Congress' intent as to what constitutes an "act

of war" must be derived from other sources.  In drawing from other sources, however, it is

important to keep in mind that the CERCLA "act of war" defense must be narrowly construed.

*U.S. v. Sterling Centrecorp Inc.*, No. 2:08 civ. 02556, 2011 WL 6749801, at *9 (E.D. Cal.

Dec. 22, 2011).

A particularly relevant statutory source is the definition of an act of war in the

Antiterrorism Act (the "ATA"), 18 U.S.C. §§ 2331 *et seq.*  The ATA authorizes claims for

injuries or losses suffered by U.S. nationals "by reason of an act of international terrorism," 18

U.S.C. § 2333(a), but expressly prohibits claims for injuries or losses caused by acts of war, 18

U.S.C. § 2336(a).  Under the statute, "the term 'act of war' means any act occurring in the course

of—(A) declared war; (B) armed conflict, whether or not war has been declared, between two or

more nations; or (C) armed conflict between military forces of any origin."  18 U.S.C. § 2331(4).

In *Stansell v. BGP, Inc.*, No. 8:09 civ. 2501, 2011 WL 1296881, at *11 (M.D.Fla.

Mar. 31, 2011), a case involving a well-known terrorist organization operating in Columbia (the

Revolutionary Forces of Colombia or "FARC"), the court determined that none of the definitions

of "act of war" in the ATA barred the plaintiffs' claims.  With respect to the only arguably

applicable definition—the provision concerning an armed conflict between military forces—the

court held that terrorists, as a matter of law, cannot constitute a military force, and therefore

cannot perpetrate an act of war.  The *Stansell* court explained:

> At least two courts have found as a matter of law that designated
> terrorist organizations cannot be a military force under the ATA.
> *See Weiss v. Arab Bank, PLC*, 2007 WL 4565060 (E.D.N.Y.2007);
> *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006).  These
> courts found appreciable differences between military forces and
> terrorist forces. *Weiss*, 2007 WL 4565060 at *4–6. The *Morris*
> court stated:
>
>> There are undoubtedly differences between military
>> forces and terrorists.  A conventional dictionary definition
>> of "military" is "armed forces" or the persons serving in
>> them.  "Armed forces," in turn, are "the combined
>> military, naval, and air forces of a nation."  In contrast,
>> "terrorism" is conventionally defined as "the systematic
>> use of terror especially as a means of coercion."  "Terror"
>> itself is defined as "violent or destructive acts (as
>> bombing) committed by groups in order to intimidate a
>> population or government into granting their demands."
>
> *Morris*, 415 F. Supp. 2d at 1334 (internal citations omitted).
>
> The *Weiss* court also noted the legislative history of the
> ATA suggests that terrorist organizations should not be considered
> military forces.  The House and Senate Reports express the
> intention of the act of war exclusion is to "bar actions for injuries
> that result from military action by recognized governments as
> opposed to terrorists, even though governments also sometimes
> target civilian populations." *Weiss*, 2007 WL 4565060 at *5
> (citing H.R.Rep. No. 102–1040 at 7 (1992); S. Rep. 102–342 at 46
> (1992)).
>
> This Court agrees with the conclusions of the *Morris* and
> *Weiss* courts.  To find that a terrorist organization can be a military
> force under the ATA would defeat the purpose of the Act, "which
> was enacted to deter terrorist activity and hold liable those who
> engage in it." *Weiss*, 2007 WL 4565060 at *6.

In short, acts of war may only be committed by sovereign states or by their military

forces, not by self-appointed groups deciding to employ catastrophic force against civilians in

pursuit of the fantasy that horrific crimes will further their particular cause.  One of the first

CERCLA cases attempting to discern the meaning of the "act of war" defense noted that case

law "evidences a habit of merely using the term as a conclusory label," *U.S. v. Shell Oil Co.*, 841 F. Supp. 962, 971 (C.D. Cal. 1993), *aff'd in relevant part and rev'd in part on other grounds*, 294 F.3d 1045 (9th Cir. 2002), when, in reality, the term "appears to be borrowed from international law.  In the realm of international law, the term is defined clearly as a 'use of force or other action by one state against another.'"  *Id.* at 972 (internal citation omitted).[7]

The primary international codification of the laws of war are contained in the four Geneva Conventions of 1949,[8] which revised and expanded the first Geneva Convention of 1864,[9] and the Hague Convention of 1907.[10]  The United States Army Field Manual 27-10, The Law of Land Warfare, codifies the Army's interpretation of the law of war, referencing relevant international conventions and the rules of customary laws of war, as well as relevant statutes. *See id.*, chapter 1, § 1 (1956).

The September 11th hijackers did not commit "acts of war" under international law because there is no evidence that they were acting on behalf of a state and because they did not employ conventional military-type weapons.  *See, e.g., Pan Am. World Airways, Inc. v. Aetna*

---

[7]     New York law defines an act of war as "any act peculiar to military, naval, or air operations in time of war."  N.Y. Ins. Law § 3203(c)(3)(E) (McKinney 2000).  War is defined as including "any war declared or undeclared, and armed aggression resisted by the military, naval or air forces of any country, international organization or combination of countries."  N.Y. Ins. Law § 4510(b)(2)(A) (McKinney 2000).

[8]     *See* Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field, August 12, 1949, 6 U.S.T. 3114; Geneva Convention for the Amelioration of the Condition of Wounded, Sick, and Shipwrecked Members of the Armed Forces at Sea, August 12, 1949, 6 U.S.T. 3217; The Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949, Int'l Comm. Of the Red Cross, art. 118, 6 U.S.T. 3316 ("Third Geneva Convention"); Geneva Convention Relative to the Protection of Civilian Persons in Time of War, August 12, 1949, Int'l Comm. Of the Red Cross, art. 6, 6 U.S.T. 3516).

[9]     *See* Convention for the Amelioration of the Condition of the Wounded Armies in the Field, signed at Geneva, Aug. 22, 1864, 129 Consol. T.S. 361.

[10]     *See* Hague Convention No. IV Respecting the Laws and Customs of War on Land, Oct. 18, 1907, 36 Stat. 2277, 205 Consol. T.S. 277.

*Cas. & Sur. Co.*, 505 F.2d 989, 1013-15 (2d Cir. 1974) (finding that the hijacking of an aircraft by a non-state actor was not an act of war for purposes of invoking the "act of war" exclusionary clause in an insurance policy). Further supporting the Second Circuit's holding in the *Pan Am.* case is the fact that the United States refused to ratify Additional Protocol I to the 1949 Geneva Conventions on the Protection of War Victims which sought to extend coverage to non-international "warlike" conflicts. The reason given by the United States was that to recognize groups like terrorists as "combatants" under the treaty would allow them to "enjoy many of the benefits of the law of war without fulfilling its duties, and with the confidence that the belligerent state has no real remedy under the Protocol to deal with this matter." *See* Abraham D. Sofaer, *The U.S. Decisions Not to Ratify Protocol I to the Geneva Conventions on the Protection of War Victims*, 82 A.J.I.L. 784, 786 (1988).

As noted at p. 8 *supra*, Title 18 of the U.S. Code defines an act of war as "any act occurring in the course of (A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin." 18 U.S.C. § 2331(4)

Title 18 separately defines both international terrorism and domestic terrorism as something different from an act of war. *See* 18 U.S.C. §§ 2331, 2332b (2000), amended by USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001) ("USA PATRIOT Act"). To constitute an act of international terrorism, an activity must satisfy three criteria. First, the activity must "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. § 2331(1)(A) (2000). Second, the activity must be intended "(i) to intimidate or coerce a civilian population;

11

(ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the

conduct of a government by mass destruction,[11] assassination or kidnapping." 18 U.S.C.

§ 2331(1)(B) (20001).  Third, the activity must occur outside of the United States.  *See* 18 U.S.C.

§ 2331(1)(C) (2000).

Activities constituting domestic terrorism are defined similarly, except that the acts of the

terrorists must occur primarily within the United States.[12]  Specific acts constituting the federal

crime of terrorism include destruction, violence or piracy performed at any aircraft facility or

international airport or directed against any aircraft, flight crew or passenger.  *See* 18 U.S.C.

§ 2332b(g)(5)(B)(i-iii) (2000).

That a terrorist group may believe itself to be prosecuting a war in the course of its

operations does not convert its acts of terrorism into acts of war.  *See Pan Am. World Airways,*

*Inc.,* 505 F.2d at 1019 n.15 ("The fact that the PFLP [Popular Front for the Liberation of

Palestine] was fighting the United States does not mean there was a 'war' between the United

States and this tiny non-governmental entity").  Rather, as defined by the Second Circuit after

extensive review of the historical precedents in the *Pan Am.* case, war is "a course of hostility

engaged in by entities that have at least significant attributes of sovereignty.  Under international

law war is waged by states or state-like entities." *Id.* at 1012.

Sovereign states and state-like entities in the context of the Second Circuit's definition of

war are those that (1) "stake out and maintain adverse claims to territory," *Holiday Inns Inc. v.*

---

[11]     The term "mass destruction" was inserted into this section by the USA PATRIOT Act.
*See* USA PATRIOT Act § 802(a)(1).

[12]     Domestic terrorism, as amended by the USA PATRIOT Act, is defined as activities that:
"(A) involve acts dangerous to human life that are a violation of the criminal laws of the United
States or of any State; (B) appear to be intended—(i) to intimidate or coerce a civilian population;
(ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the
conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur
primarily within the territorial jurisdiction of the United States."  18 U.S.C. § 2331(5) (2001).

*Aetna Ins. Co.* 571 F. Supp. 1460, 1500 (S.D.N.Y. 1983); (2) proclaim sovereignty over the

territory they occupy, *id.*; and (3) are recognized as sovereign and accorded the "rights of a

government" by members of the international community, *see id.* at 1465.

Al Qaeda and the September 11th hijackers have none of the significant attributes of

sovereign or quasi-sovereign states identified by the Second Circuit in *Pan Am.* as necessary for

their acts to be considered acts of war.  Indeed, there is no meaningful distinction between al

Qaeda and the September 11th hijackers, on the one hand, and the PFLP hijackers in the *Pan Am.*

case, on the other hand.  Consequently, the terrorist attacks of September 11th were not "acts of

war."

## POINT III

### IF TERRORISTS WERE DEEMED CAPABLE OF COMMITING ACTS OF WAR, THERE WOULD BE UNACCEPTABLE AND UNINTENDED CONSEQUENCES

If this Court were to find, contrary to the foregoing authorities, that the acts of the

September 11th terrorists were acts of war, not acts of terrorism, the first casualty would be the

victims of terrorists, both domestic and international, who would, prior to this Court's decision,

be entitled to seek damages from the terrorists and the organizations that sponsor them under the

civil provisions of the ATA.  The ATA prohibits claims for injuries or losses caused by acts of

war.  18 U.S.C. § 2336(a); *see also* H.R. REP. 102-1040, at *7 (Sec. 2336) ("The intention of

this provision is to bar actions for injuries that result from military action by recognized

governments *as opposed to terrorists*") (emphasis added).

United States citizens injured in Israel by international terrorism[13] were empowered by

the United States District Court for the Southern District in *Sokolow v. Palestine Liberation*

*Organization*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008), to continue their quest for justice when the

---

[13]     18 U.S.C. § 2331(1) (2001).  *See* pp. 11-12, *supra.*

court rejected the terrorists' baseless contention that their acts of terrorism were really acts of war, and as such, could not serve as the predicate for a civil claim under the ATA. The district court correctly held that "the [terrorist] attacks . . . do not constitute acts of war nor do they, as a matter of law, fall outside the statutory definition of 'international terrorism' [as defined in 18 U.S.C. § 2331(1)(A-C)]." *Sokolow*, 583 F. Supp. 2d at 458.

A second unintended and unacceptable consequence of categorizing terrorist acts as acts of war would be to endow terrorists with the rights of soldiers under the laws of war and under international treaties without requiring them to fulfill any of the concomitant duties imposed upon soldiers by the laws of war.

Soldiers (as opposed to terrorists) have the legal right to engage in acts of war against the enemy without penalties under the enemy state's domestic law.[14] A combatant can kill enemy soldiers without being guilty of murder. A combatant can capture and detain people without being guilty of kidnapping. A combatant can destroy enemy property without being liable for torts. *See, e.g., Freeland v. Williams*, 131 U.S. 405, 416, 19 S. Ct. 763, 766 (1889) ("[F]or an act done in accordance with the usages of civilized warfare under and by military authority of either party, no civil liability attached to the officers or soldiers who acted under such authority"). A soldier is entitled to rights upon capture that have not yet been afforded by the United States

---

[14]     *See* War Dep't, Instructions for the Gov't of Armies of the United States in the Field, General Orders No. 100, § III, art. 57 (1863) ("[K]illing, wounding, or other warlike acts [of a combatant] are not individual crimes or offenses . . . ."); Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts, art. 43(2), June 8, 1977, 1125 U.N.T.S. 3 ("[C]ombatants . . . have the right to participate directly in hostilities."). The combatant's privilege can be inferred from provisions of the Third Geneva Convention. *See U.S. v. Lindh*, 212 F. Supp. 2d 541, 553 (E.D. Va. 2002) (interpreting articles 87 and 99 of the Third Geneva Convention to "make clear that a belligerent in a war cannot prosecute the soldiers of its foes for the soldiers' lawful acts of war"); *U. S. v. Khadr*, 717 F. Supp. 2d. 1215, 1222 n.7 (Ct. Mil. Comm'n Rev. 2007) (same); *U. S. v. Pineda*, No. CR. 04-232 (TFH), 2006 WL 785287 at *6-8 (D.D.C. Mar. 28, 2006) (same).

14

government to terrorists, such as the right to be held as a prisoner of war rather than as a criminal.[15]

Thus, if this Court were to find that the September 11th terrorists perpetrated acts of war, al Qaeda terrorists could intentionally and brutally attack and kill thousands of civilians, and the civilian victims would be powerless to seek civil justice against the terrorist perpetrators and their organizational masters under the ATA.

One final example of an unintended and unacceptable consequence of holding that the September 11th terrorists committed acts of war is the negation of the goal of the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, 116 Stat. 2322 (2002).  In response to the events of September 11th, Congress passed this act to provide federal assistance to private insurers that provide insurance coverage for damage caused by an act of terrorism that meets a specific definition.  Acts committed in the course of a war as declared by the U.S. Congress are specifically excluded from the definition of terrorism.  *See id.*, § 102(1)(B)(i).  Many insurers have an "act of war" exclusion from coverage in their policies.

If this Court were to characterize acts of terrorists such as those of September 11th as "acts of war," insurance coverage might be denied by insurers to the victims of terrorists on the ground that the insurance policy provides no coverage for the damage caused by terrorists' acts of war.  For this reason alone, extreme caution is warranted.  The determination of whether the September 11th terrorists committed acts of war ought not to be decided on a motion for judgment on the pleadings.

---

[15]     *See, e.g.,* Third Geneva Convention, art. 43 (requiring the Detaining Power to "recognize promotions in rank which have been accorded to prisoners of war"); *id.*, art. 60 (requiring that the Detaining Power give prisoners of war a monthly advance of pay); *id.* art., 72 (explaining that prisoners of war are entitled to receive, *inter alia*, sports outfits and musical instruments by mail).

## CONCLUSION

"To recognize terrorists as *lawful* combatants would upend the entire system and cause predictably grim humanitarian consequences."  William H. Taft IV, *The Law of Armed Conflict After 9/11: Some Salient Features,* 28 Yale J. Int'l L. 319, 321 (2003) (emphasis supplied).  Al Qaeda's goal is to kill Americans.  Nat'l Comm'n on Terrorist Attacks upon the United States, *The 9/11 Commission Report* 47 (2004) (quoting Bin Laden as saying, "We do not have to differentiate between military or civilian.  As far as we are concerned [Americans] are all targets.").

The Supreme Court in *Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S. Ct. 2749 (2006) recognized that the *key* difference between soldiers and al Qaeda terrorists is the latter's willingness to violate the laws of war.  Specifically, the Court held that "the capture, detention, and *trial* of unlawful combatants, by 'universal agreement and practice,' are 'important incidents of war,' and are therefore an exercise of the 'necessary and appropriate force' Congress has authorized the President to use . . . .  [A]n important incident to the conduct of war is the adoption of measures by the military commander, not only to repel and defeat the enemy, but to seize and subject to disciplinary measures those enemies who, in their attempt to thwart or impede our military effort, have violated the law of war."  548 U.S. at 681, 126 S. Ct. at 2824 (internal citations and quotations omitted).  This effort would be substantially thwarted if this Court were to find that the September 11th terrorists perpetrated acts of war, not acts of terror.

For the foregoing reasons, this Court should not apply the CERCLA "act of war" statutory defense to the resolution of the defendants' motions for judgment on the pleadings.

Dated: June 20, 2012
New York, New York

Respectfully submitted,


BY:  /s/  Richard A. Williamson

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP
One Liberty Plaza
New York, NY 10006
Tel:  (212) 412-9500

*Attorneys for Silverstein Properties, Inc.,*
*World Trade Center Properties LLC, Silverstein*
*WTC Mgmt. Co. LLC, 1 World Trade Center*
*LLC, 2 World Trade Center LLC, 3 World Trade*
*Center LLC, and 4 World Trade Center LLC*

TO (via ECF):

Peter L. Winik, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2224
*Attorneys for Westfield WTC LLC and*
*Westfield Corporation, Inc.*

Jay B. Spievack, Esq.
Sari E. Kolatch, Esq.
COHEN TAUBER SPIEVACK &
WAGNER P.C.
420 Lexington Avenue; Suite 2400
New York, New York  10170
Tel: (212) 586-5800
*Attorneys for Plaintiff*
*Cedar & Washington*
*Associates, LLC*

Charles F. Rysavy, Esq.
K&L GATES LLP
One Newark Center, 10th floor
Newark, NJ 07102
Tel: (973) 848-4000
*Attorneys for Consolidated Edison Company of*
*New York, Inc.*

Leah Ward Sears, Esq.
SCHIFF HARDIN LLP
900 Third Avenue
New York, NY  10022
900 Third Avenue
New York, NY  10022
Tel:  (212) 743-5000
*Attorneys for The Port Authority of New*
*York and New Jersey*

Christopher Walsh, Esq.
Paul M. Hauge, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Tel:  (973) 596-4500
*Attorneys for HMH WTC LLC (improperly*
*sued as HMH WTC, Inc.) and Host Hotels and*
*Resorts, Inc.*

Jeffrey J. Ellis, Esq.
QUIRK & BAKALOR, P.C.
845 Third Avenue
New York, NY 10022
Tel:  (212) 319-1000
*Attorneys for UAL Inc. and*
*United Air Lines, Inc*

Desmond Barry, Esq.
CONDON & FORSYTH LLP
Times Square Tower
7 Times Square
New York, NY  10036
Tel:  (212) 490-9100
*Attorneys for AMR Corp. and*
*American Airlines, Inc.*

Maura Monaghan, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  1002
Tel:  (212) 909-6000
*Attorneys for AMR Corp. and*
*American Airlines, Inc.*

844527