UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :
IN RE SEPTEMBER 11 LITIGATION         :  21 MC 101 (AKH)
                                      :
------------------------------------- x
WORLD TRADE CENTER PROPERTIES LLC, et :
al.,                                  :
                                      :
        Plaintiffs,                   :  08 CIV 3719 (AKH)
                                      :
    v.                                :
                                      :
UNITED AIRLINES, INC., et al.,        :
                                      :
        Defendants.                   :
------------------------------------- x
WORLD TRADE CENTER PROPERTIES LLC, et :
al.,                                  :
                                      :
        Plaintiffs,                   :  08 CIV 3722 (AKH)
                                      :
    v.                                :
                                      :
AMERICAN AIRLINES, INC., et al.,      :
                                      :
        Defendants.                   :
------------------------------------- x

**THE AVIATION DEFENDANTS' PROPOSED FINDINGS OF FACT**

CONDON & FORSYTH LLP
Desmond T. Barry, Jr. (DB 8066)
7 Times Square
New York, New York 10036
Telephone: (212) 490-9100
Fax: (212) 370-4453
dbarry@condonlaw.com

*Aviation Defendants' Liaison Counsel*

## AVIATION DEFENDANTS' PROPOSED FINDINGS OF FACT

The Aviation Defendants[1] respectfully submit their Proposed Findings of Fact relating to the July 15, 2013 Correspondence Trial.[2]

## WTC Complex

### *WTCP's Leases and Insurance Coverage for the WTC Complex*

1. On July 16, 2001, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC (formerly known as 5 World Trade Center LLC), 4 World Trade Center LLC, and World Trade Center Properties LLC and the Port Authority of New York and New Jersey executed four 99-year net leases (the "Net Leases") for World Trade Center Towers One, Two, Four and Five (the "WTC Complex"). Agreed Statement of Stipulated Facts for Use During the July 15, 2013 Trial ("Stipulated Facts") ¶ 2.

2. In connection with the acquisition of the Net Leases, WTCP purchased property casualty and business interruption/lost rental value insurance from a consortium of insurers in the aggregate amount of $3.5468 billion per occurrence (the "WTC Insurance Program"). Stipulated Facts ¶ 4.

3. The insurance coverage that WTCP purchased for the WTC Complex obligated the insurers to make payments in response to losses arising out of covered property damage. The insurers' obligations to pay were not on account of or triggered by WTCP's alleged contractual obligation to rebuild the WTC Complex. Stipulated Facts ¶ 18; Dep. of Edward R. Reilly Tr. 92:24–93:16, 129:12–20 (Jan. 4, 2013); Testimony of Michael S. Beach.

4. During the two-year period immediately preceding September 11, 2001, WTCP paid a total of $5,898,714 in insurance premiums for property insurance. Stipulated Facts ¶ 5.

---

[1] The Aviation Defendants are American Airlines, Inc.; AMR Corp.; United Airlines, Inc.; United Continental Holdings (f/k/a UAL Corporation); US Airways, Inc.; US Airways Group, Inc.; Colgan Air, Inc.; Globe Aviation Services Corporation; Huntleigh USA Corporation; The Boeing Company; and Massachusetts Port Authority.

[2] There is some overlap between the Aviation Defendants' Proposed Findings of Fact and Conclusions of Law, because some of the issues herein present mixed questions of fact and law.

5.  There were almost ninety-nine (99) years remaining in the Net Leases as of September 11, 2001. Stipulated Facts ¶ 20.

6.  The fair market value of WTCP's net leasehold interest in the WTC Complex immediately prior to the terrorist attacks on September 11, 2001 was $2.805 billion. *See In re Sept. 11 Litig.*, 590 F. Supp. 2d 535, 547 (S.D.N.Y. 2008); *In re Sept. 11 Litig.*, 2009 WL 1181057, at *4 (S.D.N.Y. Apr. 30, 2009); *In re Sept. 11 Litig.*, 889 F. Supp. 2d 616, 622 (S.D.N.Y. 2012). All parties agree that the replacement cost of the WTC Complex would be in excess of $2.805 billion. Therefore, under the lesser of two rule, WTCP's maximum potential tort damages award is $2.805 billion. *See In re Sept. 11 Litig.*, 590 F. Supp. 2d at 547; *In re Sept. 11 Litig.*, 2009 WL 1181057, at *4; *In re Sept. 11 Litig.*, 889 F. Supp. 2d at 622.[3]

7.  On September 11, 2001, the WTC Complex was destroyed as a result of a terrorist attack. Stipulated Facts ¶ 6.

***The Nature of WTCP's Insurance Claims and Recoveries***

8.  WTCP suffered business interruption and property damage losses as a result of the destruction of the WTC Complex. *See, e.g.*, Stipulated Facts ¶¶ 56–63, 66–81; Testimony of Michael S. Beach.

9.  As a result of these losses, from September 11, 2001 through 2007, WTCP submitted to their property insurers 16 Sworn Statements – Preliminary Proofs of Partial Losses (individually, "Preliminary Proof of Partial Losses") and Proofs of Partial Losses (individually, "Proof of Partial Losses"), two supplements, and one corrected supplement (collectively "the Supplements")—three for actual cash value/replacement cost of the leased properties and thirteen for business interruption losses. *See* Stipulated Facts ¶¶ 56–62, 65–81; PPOL Nos. 1–16; Testimony of Michael S. Beach; *see also* Revised Expert Report of Edward R. Reilly, Jr. ¶ 15 (Apr. 23, 2013) ("2013 Reilly Rep.").

10. Under the terms of WTCP's insurance, the direct physical damage to the WTCP's interest in their covered property for a total loss could be calculated either by the actual cash value (*i.e.*, essentially replacement cost minus depreciation) or replacement cost. *See* Testimony of Michael S. Beach.

---

[3] For purposes of this correspondence trial, the Aviation Defendants have agreed to treat $2.805 billion as the amount to use as a maximum in determining whether WTCP's insurance recoveries offset their potential tort damages award.

11. In the Partial Claims Summary and Supporting Documentation prepared by Cambridge Horizon Consultants, Inc. for the WTC Complex, WTCP identified as potential losses "additional building items" (such as demolition and debris removal, pollution cleanup and removal, and transmission antennae dishes); "business personal property"; "other covered property"; and "additional covered costs and expenses." Partial Claim Summary & Supporting Documentation prepared by Cambridge Horizon Consultants, Inc., Jan. 18, 2002 [WTCP 0017683-92]. In each instance, WTCP itemized the potential losses as "T.B.D." ("to be determined"). *See id.*; Testimony of Michael S. Beach.

12. WTCP never provided their insurers with actual amounts for any of the items that were listed as "T.B.D," nor has WTCP documented, quantified, or submitted proof of those amounts to date. *See, e.g.*, Stipulated Facts ¶¶ 56–81; 2013 Reilly Rep. ¶¶ 9, 11, 13, 15; WTCP's Responses to Aviation Defendants' Third Set of Interrogatories to WTCP, Apr. 7, 2011; PPOL Nos. 1–16.

13. Damages relating to debris removal and transmission antenna dishes, which were listed as "T.B.D." on the Partial Claims Summary and Supporting Documentation were never actually incurred by WTCP. Dep. of Michael Levy Tr. 83:7–84:25 (June 2, 2009) ("2009 Levy Dep. Tr.").

14. A list of the Preliminary Proofs of Partial Losses, Proofs of Partial Losses, and the Supplements attached thereto is attached as Exhibit JSX-4 to the Stipulated Facts.

15. WTCP have not documented, quantified, or submitted to their insurers claims for any type of losses other than property damage losses relating to the replacement cost and actual cash value of the WTC Complex and business interruption/rental income losses caused by the destruction of the WTC Complex. *See, e.g.*, Stipulated Facts ¶¶ 56–81; 2013 Reilly Rep. ¶¶ 9, 11, 13, 15; WTCP's Responses to Aviation Defendants' Third Set of Interrogatories to WTCP, Apr. 7, 2011; PPOL Nos. 1–16; 2009 Levy Dep. Tr. 25:6–15.

16. In 2001, WTCP and those of their insurers who had not already paid their policy limits engaged in litigation in connection with WTCP's claims (the "Insurance Coverage Litigation"). The Insurance Coverage Litigation was resolved by means of settlements with individual WTC Complex insurers and groups of insurers (the "Settlement Agreements"). Stipulated Facts ¶ 83.

17. The Settlement Agreements did not allocate the settlement payments made by insurers among any types of loss. Stipulated Facts ¶ 84.

18. As a result of the destruction of the WTC Complex on September 11, 2001, WTCP received from their insurers a total of $4,091,364,040. Stipulated Facts ¶¶ 22–46.

4

19. WTCP received insurance payments for two types of property damage coverage: physical damage to the destroyed buildings (payable in the form of actual cash and/or replacement cost values) and business interruption (rental value). Both types of damages were payable under WTCP's insurance policies only to the extent that they resulted from the loss, damage, or destruction of the covered property, the WTC Complex. *See* Testimony of Michael S. Beach.

20. In their financial statements, WTCP disclosed a settlement of the Insurance Coverage Litigation with their insurers as follows: "The claims and litigation with respect to the property and business interruption/lost rental value insurance for the Properties have been resolved." *See* World Trade Ctr. Props. LLC & Subsidiaries Consol. Fin. Statements (Income Tax Basis) Years Ended Dec. 31, 2007 & 2006, & Indep. Auditors' Report, July 17, 2008 (at WTCP0362732).

21. The Aviation Defendants have submitted substantial evidence that WTCP only submitted proofs of claim for real property damage and business interruption to their insurers and never substantiated nor quantified any claimed losses for, nor received insurance payments for, any other types of damages or categories of loss. *See* Testimony of Michael S. Beach. Further, as testified to by the Aviation Defendants' insurance expert, Michael S. Beach, insurers do not issue payments based upon losses that are not claimed, well founded, and documented. *See* Testimony of Michael S. Beach.

22. The Court previously ruled that insurance proceeds that WTCP received from their insurers are allocable only to business interruption and replacement cost, unless WTCP pleads and proves specific facts supporting allocation to additional components. *See In re Sept. 11 Litig.*, No. 21 MC 101 (AKH), slip op. at 1 (S.D.N.Y. Sept. 30, 2009). The WTCP Plaintiffs have failed to put forward any specific evidence rebutting this presumption.

23. The Court concludes that WTCP's $4.091 billion in insurance payments are entirely allocable to property damage/replacement costs and business interruption/lost rental income.

24. No further allocation of WTCP's insurance recoveries between property damage/replacement costs and business interruption/lost rental income is necessary because WTCP's business interruption and replacement cost insurance recoveries both compensate WTCP for the same category of loss as does a tort damages award measured by the lesser of replacement costs or diminution in market value—the reduction in value of their net leasehold interests in the WTC buildings as a result of the destruction of the leased buildings in the terrorist attacks. *See* Testimony of Daniel R. Fischel.

### *Pre-judgment Interest and Claims Preparation Fees*

25. At the rate earned by short-term Treasury instruments (compounded annually), as of the end of the week of September 7, 2001, with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion loss accrues to roughly $3.1 billion. *See* Declaration of Rajiv Gokhale in Support of Aviation Defendants' Memorandum of Law in Support of Their Motion For Summary Judgment Dismissing All Claims for the Destruction of WTC 1, 2, 4 and 5, at ¶ 8, Ex. B-1 (June 20, 2008) (the "Gokhale Complex Decl.").

26. Using a simple annual interest rate of 6%, with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion "Loss" accrues to roughly $3.2 billion. Gokhale Complex Decl. ¶ 9; Ex. B-2.

27. Using a simple annual interest rate of 9%, with interest running to the date that each insurance payment has been or is projected to be received, WTCP's $2.8 billion "Loss" accrues to roughly $3.4 billion. Gokhale Complex Decl. ¶ 10; Ex. B-3.

28. After September 11, 2001, WTCP paid $10,352,540 in claims preparation fees (exclusive of amounts of fees and costs that WTCP expended in the appraisal involving certain of WTCP's insurers) relating to the destruction of the WTC Complex. Stipulated Facts ¶ 87.

29. After September 11, 2001, WTCP paid $31,030,471 in fees and costs associated with the appraisal involving certain of WTCP's insurers. Stipulated Facts ¶ 87(a).

## WTC 7

*7WTCo.'s Leases and Insurance Coverage for WTC 7*

30. 7 World Trade Company, L.P. ("7WTCo.") is the net lessee of 7 World Trade Center ("WTC 7") pursuant to a ground lease, which has since been restated and amended, with the Port Authority of New York and New Jersey. The WTC 7 net lease required 7WTCo. to insure against real property damage and business interruption losses and had up to eighty-five years remaining in its term as of September 11, 2001. Stipulated Facts ¶ 88.

31. On or about June 1, 2000, IRI issued Policy No. 31-3-67626 (the "IRI Policy") to Silverstein Properties, Inc. and its affiliates, including 7WTCo. The policy insured several listed buildings, including WTC 7. The original term of the policy expired on June 1, 2001, but the policy was renewed for an additional one-year period ending on June 1, 2002. In addition to other coverages, the IRI Policy provided coverage for: Property Damage (Part A); Extra Expense (Part C); and Rent Insurance (Part D). Stipulated Facts ¶ 89; Testimony of Michael S. Beach.

32. The insurance policy that 7WTCo. purchased for WTC 7 obligated IRI to make payments in response to losses caused by physical loss or damage to covered property arising out of covered property damage. IRI's obligation to pay was not contingent on any provision in the WTC 7 Lease requiring 7WTCo. to rebuild WTC 7. Stipulated Facts ¶ 90; Testimony of Michael S. Beach.

33. During the two-year period immediately preceding September 11, 2001, 7WTCo. paid a total of $482,793 in insurance premiums for property insurance coverage for WTC 7 and paid a total of $3,500.17 in insurance premiums for fine arts coverage for paintings and other artwork at WTC 7. Stipulated Facts ¶ 95.

34. WTC 7 was destroyed on September 11, 2001 as a result of terrorist attacks. Stipulated Facts ¶ 96.

35. 7WTCo.'s expert has asserted that the fair market value of 7WTCo.'s net leasehold interest in WTC 7 immediately prior to the terrorist attacks on September 11, 2001 was $737 million. *See id.* For purposes of this correspondence trial, the Aviation Defendants have agreed to treat the diminution in the fair market value of 7WTCo.'s net leasehold interest in WTC 7 as $737 million. The parties have also assumed, for the purposes of the correspondence trial, that the replacement cost of WTC 7 would be in excess of $737 million. Therefore, under the lesser of two rule, for the purposes of this correspondence trial, 7WTCo.'s maximum potential tort damages award relating to its net leasehold interest in WTC 7 is $737 million. *In re Sept. 11 Litig.*, 908 F. Supp. 2d 442, 448 (S.D.N.Y. 2012).

### *The Nature of 7WTCo.'s Insurance Claims and Recoveries*

36. 7WTCo. suffered business interruption and property damage losses as a result of the destruction of WTC 7. *See, e.g.*, Stipulated Facts ¶¶ 98, 100–102, 104–128; Testimony of Michael S. Beach.

37. 7WTCo. filed nine payment direction letters after September 11, 2001 relating to WTC 7—four payment direction letters seeking property damage insurance proceeds and five payment direction letters seeking rental insurance proceeds. *See, e.g.*, Stipulated Facts ¶ 98–113; Testimony of Michael S. Beach.

38. Under the terms of 7WTCo.'s insurance, the direct physical damage to 7WTCo.'s interest in its covered property for a total loss could be calculated either by the actual cash value (*i.e.*, essentially replacement cost minus depreciation) or replacement cost. *See* Testimony of Michael S. Beach.

39. 7WTCo. also submitted a claim for $1,846,139.43 to IRI for damage to personal property in WTC 7 on September 11, 2001. Stipulated Facts ¶ 124; 7 World Trade Company, L.P., 7 World Trade Center, Catastrophic Events of September 11, 2001 Personal Property Claim Summary & Supporting Documentation [WCP039146-WTCP0391825]; Testimony of Michael S. Beach.

40. 7WTCo. did not document, quantify, or submit to its insurers claims for any type of losses other than property damage and business interruption. *See* Stipulated Facts ¶¶ 98–113, 118–128; *see also* Expert Report of Jeffrey G. McKinley at 8, 9, 12, 15 (Apr. 12, 2013); Supplemental Declaration of Michael S. Beach re: WTC 7 ¶¶ 7, 10 (March 1, 2013); Testimony of Michael S. Beach.

41. On January 3, 2005, 7WTCo. and IRI entered into a Settlement Agreement and Release (the "WTC 7/IRI Settlement Agreement"). Stipulated Facts ¶ 135.

42. The WTC 7/IRI Settlement Agreement recognized that IRI had previously paid to 7WTCo., as an advance, $515,554,889 for property damage and rental income losses. As part of the settlement, IRI agreed to pay 7WTCo. an additional $303,445,111, which, in addition to all amounts previously paid or advanced in respect of WTC 7, "result[ed] in a complete and final settlement of all claims against IRI, including those for property damage and rental income losses, associated with this Policy." Stipulated Facts ¶ 136.

43. The settlement of all claims associated with the IRI policy included settlement of 7WTCo.'s claims for personal property losses. Stipulated Facts ¶ 137; Dep. of Michael Levy Tr. 165:13–21 (Jan. 5, 2012).

44. The WTC7/IRI Settlement Agreement does not allocate the total payments of $819,000,000 by IRI to 7WTCo. Stipulated Facts ¶ 138.

45. On December 2, 2011, 7WTCo. and IRI entered into a separate settlement agreement (the "Arbitration Settlement Agreement"), settling certain claims by 7WTCo. that IRI had violated the terms of the WTC/IRI Settlement Agreement. Under the Arbitration Settlement Agreement, IRI and 7WTCo. agreed that 7WTCo. was entitled to 9.8 percent, or $11,936,584.28, of IRI's subrogation recovery from the Aviation Defendants; this 9.8 percent share increased 7WTCo.'s total insurance recoveries for WTC 7 to $830,936,584.28. *See* Settlement Agreement and Release between Industrial Risk Insurers and 7WTCo. and its Affiliates, dated December 2, 2011 [WTCP ATTORNEYS EYES ONLY 000001-07]; Testimony of Michael S. Beach.

46. 7WTCo.'s financial statements and audit reports characterized the payments it received from its insurer as being for "replacement property" and "business interruption." *See* 7 World Trade Company, L.P., Consolidated Financial Statements (Income Tax Basis), Year Ended December 31, 2005 and Independent Auditors' Report [WTCP0258284-99]; *see also* 7 World Trade Company, L.P. Consolidated Financial Statements with Supplementary Information (Income Tax Basis) Year Ended December 31, 2007 and Independent Auditors' Report [WTCP0374469-88]; Testimony of Michael S. Beach.

47. Internal documents from 7WTCo.'s insurer characterized the insurance payments as payments for property damage or business interruption damages only. *See, e.g.*, IRI worksheet, dated April 16, 2004 [IRI-0000882]; Internal IRI chart listing payments to Silverstein Properties from 10/29/2001 – 11/10/2004 [IRI-0103505]; IRI Claim Check Voucher [IRI-0000865]; LOSS HANDLING INSTRUCTIONS, dated December 6, 2004 [IRI-0000904]; IRI Payment Receipt dated 10-16-02 [IRI-0005755]; Email from David Dicenso (IRI) to Bob Petrilli (CAP, GEGAP), dated January 9, 2002 [IRI-0000682]; Testimony of Michael S. Beach.

48. 7WTCo. received insurance payments for two types of damage: property damage (which included physical damage to the destroyed WTC 7, payable in the form of actual cash and/or replacement cost values, and personal property within WTC 7 at the time of its destruction) and business interruption (rental value). Both property damage and business interruption were payable under 7WTCo.'s insurance policies only to the extent that they resulted from the loss, damage, or destruction of the covered property. *See* Testimony of Michael S. Beach.

49. The Aviation Defendants have submitted substantial evidence that 7WTCo. only submitted proofs of claim for real and personal property damage and business interruption to their insurers and never substantiated nor quantified any claimed losses for, nor received insurance payments for, any other types of damages or

9

categories of loss. *See* Testimony of Michael S. Beach. Further, as testified to by the Aviation Defendants' insurance expert, Michael S. Beach, insurers do not issue payments based upon losses that are not claimed, well founded, and documented. *See* Testimony of Michael S. Beach.

50. 7WTCo. has failed to put forward any specific evidence demonstrating that its insurance recoveries were for any type of damage other than property damage and business interruption/lost rental income.

51. The Court concludes that the $831 million in insurance proceeds that 7WTCo. received from its insurers were for business interruption and property damage only.[4]

52. No further allocation of 7WTCo.'s insurance recoveries between property damage and business interruption/lost rental income is necessary because 7WTCo.'s business interruption and property damage insurance recoveries both compensate 7WTCo. for the same category of loss as does a tort damages award measured by the lesser of replacement costs or diminution in market value—the reduction in value of 7WTCo.'s net leasehold interest in 7WTCo. as a result of the destruction of the leased building in the terrorist attacks. *See* Testimony of Daniel R. Fischel.

***Pre-judgment Interest and Claims Preparation Fees***

53. Based upon the dates and amount of payments reflected in the General Ledgers of 7WTCo., 7WTCo.'s insurance recoveries of roughly $830,936,584.28 exceed its assumed loss of $737 million plus interest calculated at 3.43% (the Weekly Average 1-Year Constant Maturity Treasury Yield for the Week Ending 9/7/2001) by $35,293,137.97. *See* Declaration of Rajiv Gokhale re WTC 7 ¶ 3 & Ex. A-1 (Feb. 28, 2013) ("Gokhale WTC 7 Decl.").

54. Based upon the dates and amounts of payments reflected in the General Ledgers of 7WTCo., 7WTCo.'s insurance recoveries of roughly $830,936,584.28 exceed its assumed loss of $737 million plus interest calculated using the weekly average

---

[4] 7WTCo. owned two Frank Stella acrylic paintings (the "Paintings") located at 7 World Trade Center. 7WTCo.'s appraiser appraised the Paintings' value, as of September 11, 2001, to be $1 million. The Paintings were destroyed on September 11, 2001. 7WTCo. received $700,000 in insurance proceeds for the loss of the Paintings under its fine arts insurance policy with AXA Nordstern Art Insurance Corporation. For the purposes of the correspondence trial only, the parties agree that a jury could award 7WTCo. up to $1,000,000 in damages for the loss of the Paintings and that, of that amount, any award in excess of $700,000 would not be subject to any offset or reduction. Stipulated Facts ¶ 142.

interest rates for each week in the number of days from September 11, 2001 until the date of receipt by 7WTCo. of each insurance payment by $63,272,502.93. *See* Gokhale WTC 7 Decl. ¶ 4 & Ex. A-2.

55. Based upon the dates and amounts of payments reflected in the General Ledgers of 7WTCo., 7WTC.o's insurance recoveries of $830,936,584.28 exceed its assumed loss of $737 million plus interest calculated at 0.18% (the Weekly Average 1-Year Constant Maturity Yield for the Week Ending 3/2/2012) by $91,010,105.33. *See* Gokhale WTC 7 Decl. ¶ 5 & Ex. A-3.

56. Even if principal and interest on 7WTCo.'s alleged personal property claim were added to the $737 million claim, 7WTCo.'s insurance recoveries would still substantially exceed the combined principal and interest on all of 7WTCo.'s claims at any properly calculated federal interest rate. *See* Gokhale WTC 7 Decl. ¶¶ 12–13.

57. After September 11, 2001, 7WTCo. paid a total of $1,587,410 in claims preparation fees relating to the destruction of WTC 7. Stipulated Facts ¶ 141.

Dated: New York, New York
July 8, 2013

Respectfully submitted,

CONDON & FORSYTH LLP

By _____
Desmond T. Barry, Jr. (DB 8066)
Times Square Tower
New York, New York 10036
Tel.: (212) 490-9100
Fax: (212) 370-4483

*Aviation Defendants' Liaison Counsel*