UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
IN RE SEPTEMBER 11 LITIGATION                          :
-------------------------------------------------------------------
WORLD TRADE CENTER PROPERTIES LLC, 1                   :
WORLD TRADE CENTER LLC, 2 WORLD TRADE                  :
CENTER LLC, 3 WORLD TRADE CENTER LLC and 4             :
WORLD TRADE CENTER LLC,                                :
                                                       :
                Plaintiffs,                               :
                                                       :
   -against-                                         :
                                                       :
GREAT LAKES REINSURANCE (UK) PLC,                      :
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON                :
SYNDICATES NUMBERED 33, 1003, 2003, 1208,              :
1243, 0376, 1225, 1212, 79, 506, 2791, QBE             :
INSURANCE (EUROPE) LTD. f/k/a QBE                      :
INTERNATIONAL INSURANCE LTD. and                       :
INDUSTRIAL RISK INSURERS,                              :
                                                       :
                Defendants.                               :
------------------------------------------------------------------- x

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

21 MC 101 (AKH)

10 Civ. 1642

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs, the companies associated with World Trade Center developer Larry Silverstein, filed this action against many of their insurers in 2010. Defendants had won a settlement with several airlines and airport security companies (the "Aviation Defendants") based on Defendants' contention that the negligence of the Aviation Defendants had forced them to pay out claims related to the destruction of the World Trade Center. In this action, Plaintiffs seek to recover the funds that Defendants had received in settling with the Aviation Defendants.

      Defendants now move for summary judgment on the ground that two of my recent decisions foreclose Plaintiffs from recovering any damages in this action. I agree that Plaintiffs are not entitled to any damages, and I therefore grant Defendants' motions for summary judgment and dismiss the case.

1

**Background**

On July 16, 2001, Plaintiffs paid $2.805 billion to the Port Authority of New York and New Jersey for 99-year leases to World Trade Center Towers One, Two, Four and Five. In accordance with provisions of the leases that required Plaintiffs to insure the World Trade Center against potential damage, Plaintiffs procured, from multiple insurers that included Defendants, insurance aggregating $3,546,800,000 "per occurrence." Following the destruction of the World Trade Center on September 11, 2001, Plaintiffs filed suit against their insurers in order to recover the amounts owed to Plaintiffs under the insurance agreements. After Plaintiffs and their insurers litigated the issue of whether the two plane crashes into the World Trade Center constituted one or two occurrences, Plaintiffs settled their claims against their insurers, including Defendants, for $4.091 billion.

Following the completion of Plaintiff's settlement with its insurers in 2007, the insurers, including Defendants, filed tort claims against the Aviation Defendants in a subrogation action. In February 2010, the insurers settled their claims with the Aviation Defendants for $1.2 billion. I approved the settlement as "fair and reasonable" on July 1, 2010, and the Second Circuit affirmed my decision. See In re September 11 Litigation, 723 F. Supp. 2d 534, 538 (S.D.N.Y. 2010), aff'd, 650 F.3d 145 (2d Cir. 2011).

Plaintiffs filed this action on March 1, 2010, seeking a declaration that Defendants, under the terms of the insurance policies they issued, were required to turn over whatever funds they recovered in their action against the Aviation Defendants. There are two different insurance policies at issue in this case. The first is the WilProp 2000 policy form, used by Defendants QBE Insurance (Europe) Ltd. and Lloyd's, London Syndicates Numbered 1212, 79 and 2791 and providing in relevant part: "[i]f any amount is recovered as a result of

[subrogation] proceedings, the net amount recovered after deducting the costs of recovery shall be distributed first to the Insured in reimbursement for the deductible amount retained and for any uninsured loss or damage resulting from the exhaustion of limits under this policy or primary or excess policy(ies)." The second is the Comprehensive All Risk Form, used by Industrial Risk Insurers, which provides: "[t]he net amount of any recovery after deducting the costs of subrogation proceedings shall be divided between each party instituting such proceedings in the same proportion as each such party has borne the provable loss."[1]

The parties disputed whether these provisions required Defendants to turn over all funds they recovered from the Aviation Defendants, or whether Defendants only had to pay Plaintiffs to the extent Plaintiffs had uninsured, legally recoverable tort damages. On December 27, 2012, I held that the latter interpretation was the correct one, and I ruled for Defendants. I held that under both policy forms, "Plaintiffs must establish legally recoverable tort damages exceeding their insurance recovery before they can seek recovery of any Defendant's Settlement Proceeds." In re September 11 Litigation, 906 F. Supp. 2d 295, 304-05 (S.D.N.Y. 2012). Nevertheless, because it was possible at that time for Plaintiffs to recover tort damages against the Aviation Defendants, I declined both parties' motions for summary judgment.

Meanwhile, Plaintiffs' lawsuit against the Aviation Defendants proceeded, and I held a bench trial in that case in July. At issue was whether the $4.091 billion in insurance recoveries that Plaintiffs received for the main site of the World Trade Center (comprising almost entirely of payments for loss rental income and replacements costs for rebuilding the site) compensated Plaintiffs for the same categories of losses that Plaintiffs might have recovered from the Aviation Defendants. I held at the conclusion of trial, as expressed in findings issued

---

[1] Lloyd's of London Syndicates Numbered 1212, 79, 2791, QBE Insurance (Europe) Ltd., and Industrial Risk Insurers are the only defendants left in the case. On November 20, 2012, I signed the parties' stipulation that dismissed the other named defendants.

after trial, that Plaintiffs' insurance recovery "correspond[ed] completely to Plaintiffs' potential tort recoveries related to the lost value of their leaseholds, and that the insurance recoveries should be set off against such potential tort recoveries, reducing them to zero."[2] In re September 11 Litigation, 21 MC 101, 2013 WL 3948342, at *7 (S.D.N.Y. Aug. 1, 2013).

Following my decision in the bench trial, Defendants QBE Insurance (Europe) Ltd. and Lloyd's, London Syndicates Numbered 1212, 79 and 2791 moved for summary judgment on August 7, 2013. Industrial Risk Insurers separately moved for summary judgment on August 21, 2013.

**Discussion**

My previous two holdings are determinative of this case. In December 2012, I held that Plaintiffs could only recover from their insurers if they had "legally recoverable tort damages exceeding their insurance recovery" in their case against the Aviation Defendants. In re September 11 Litigation, 906 F. Supp. 2d at 304-05. At the conclusion of the July 2013 bench trial, I held that Plaintiffs did not have any legally recoverable tort damages because they had been fully compensated by their insurance. Thus, it follows that Plaintiffs have no right to the Defendants' settlement proceeds.

Plaintiffs do not seriously question this logic. Instead, Plaintiffs argue that since my ruling at the correspondence trial was made in a different case, it does not apply to this one. The fact that a key holding was made in a separate action, however, does not prevent me from applying that holding to this case. The doctrine of collateral estoppel, also known as issue preclusion, applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and

---

[2] I held also that Plaintiffs could recover losses associated with the destruction of artworks and personal property at Tower 7, but this case does not involve Tower 7.

4

fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Bank of New York v. First Millennium, Inc., 607 F.3d 905, 918 (2d Cir. 2010) (citation omitted). All of these elements are met here. Plaintiffs presented extensive arguments at the correspondence trial as to why they should be allowed to recover against the Aviation Defendants, and I ruled against Plaintiffs. The fact that an appeal of the correspondence trial decision is pending does not prevent the doctrine of collateral estoppel from being applied. See Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988).

However, even if collateral estoppel was not appropriate in this case, see Indus. Risk Insurers v. Port Auth. of N.Y. and N.J., 493 F.3d 283, 287-89 (2d Cir. 2007), I would reach the same result. I am fully familiar with the arguments raised by Plaintiffs, and nothing Plaintiffs have raised in their briefing in this case or any other case has persuaded me to change my holdings. I therefore reaffirm my decisions that Plaintiffs' recovery against the Aviation Defendants is limited to $2.805 billion, the price they paid for the 99-year leases of the World Trade Center, and that the $4.091 billion in insurance recoveries that Plaintiffs received for the World Trade Center fully compensated Plaintiffs for any potential tort recoveries against the Aviation Defendants. Accordingly, Plaintiffs are not entitled to the settlement funds obtained by Defendants.

### Conclusion

For the foregoing reasons, I grant Defendants' motions for summary judgment. The Clerk shall terminate the motions (Doc. Nos. 155 and 160) and mark the case closed.

SO ORDERED.

Dated:  September 18, 2013
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

5