HCFVSEPC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

IN RE: SEPTEMBER 11 PROPERTY DAMAGE       21 MC 101 (AKH)
AND BUSINESS LOSS LITIGATION

------------------------------------x
                                          CONFERENCE


                                          New York, N.Y.
                                          December 15, 2017
                                          10:36 a.m.
Before:

             HON. ALVIN K. HELLERSTEIN,

                                          District Judge

                       APPEARANCES

WILMER HALE
     Attorneys for Plaintiffs
BY:  HOWARD M. SHAPIRO
     JONATHAN E. PAIKIN
     MICHAEL GOTTESMAN

CONDON & FORSYTH
     Attorneys for Defendants
BY:  DESMOND T. BARRY, JR.
     EVAN M. KWARTA
     -AND-
LOCKE LORD
BY:  T. PATRICK BYRNES
     ANN C. TAYLOR
     -AND-
O'MELVENY & MYERS
BY:  MARK WOOD
     -AND-
DEBEVOISE & PLIMPTON
BY:  ERICA S. WEISGERBER
     -AND-
JOON H. KIM, Acting United States Attorney
BY:  SARAH S. NORMAN, Assistant United States Attorney
     -AND-
CLYDE & CO.
BY:  JEFFREY J. ELLIS
```

1           THE COURT:  This case is In Re:  September 11th
2    Litigation, 21 MC 101.  It's for the purpose of reviewing a
3    settlement that was reached in this case.  I called you because
4    I had three issues that I wish to discuss with you.
5           The first is justification for sealing the documents.
6    I felt that there wasn't adequate justification to overcome the
7    Second Circuit presumption against sealing.  I wanted to let
8    you know that before it was in the final state.
9           MR. BARRY:  Your Honor, we filed publicly the amount
10   of the settlement.
11          THE COURT:  And the agreement?
12          MR. SHAPIRO:  Yes.
13          MR. BARRY:  And the agreement.
14          THE COURT:  So it's a moot issue.
15          MR. BARRY:  Moot issue.
16          MR. SHAPIRO:  We were persuaded by you on the
17   telephone, your Honor.
18          THE COURT:  This is Howard Shapiro.
19          When you speak, give your names.
20          So that leaves two issues:  One is a settlement
21   excepts the *Great Lakes* case.  It took me a while to remember
22   what that case is all about.  I'm loathed to leave a piece
23   hanging, particularly since it seems to be related to this
24   particular case.  I want to discuss that.
25          And third, in approving protective orders, at the

1  close of a case I generally require that exhibits be retained.
2  By "exhibits" I mean every document that was ever used in
3  connection with any court proceeding; and that they should be
4  retained for a reasonable period, and you'll tell me what a
5  reasonable period might be; ten years, six years, something
6  like that.
7       This case is of historical interest.  It's been the
8  subject of extensive judicial opinions.  It may be that
9  historians want to go into this at some point.  It would have
10 to be after a motion made to me on notice to you, but there
11 should be the opportunity to do so.
12      So those are the issues.
13      Mr. Shapiro, do you want to report?
14      MR. SHAPIRO:  Thank you, your Honor.
15      Good to see you.  We're happy to be here today.
16      I think that this is a --
17      THE COURT:  Can I interrupt you?
18      MR. SHAPIRO:  Yes.
19      THE COURT:  I don't think I've ever acknowledged the
20 wonderful notes I received from attorneys on both sides upon
21 the death of my wife.  I want to publicly acknowledge how
22 deeply they affected me.
23      We've been working together for a long time.  I think
24 a bond of affection has grown up in this context.  You
25 expressed it by these warm and sincere letters.  I can't tell

1   you how much I appreciate it.

2           Mr. Shapiro.

3           MR. SHAPIRO:  Thank you, your Honor.

4           And, indeed, you correctly perceived all of the

5   lawyers' feelings towards you and the Court.

6           Just on the overall settlement, we don't think there

7   is any dispute or objections from any corners that we are aware

8   of.

9           Let me just briefly address the *Great Lakes* issue.

10  Although World Trade Center Properties is the plaintiff in that

11  matter, we don't represent them in that case; that's a case

12  handled by Jones Day and Flemming Zulack.  It's a priority

13  dispute between World Trade Center and the property insurance

14  companies.

15          The intent here is for this settlement not to affect

16  that one way or the other.  They are aware of this matter; I

17  believe that the parties to that case intend to submit a letter

18  to your Honor in the near future about their views of what

19  should happen with that case in the wake of this settlement.

20          THE COURT:  The issue, as I recall it, is whether

21  there is a value in a potential tort recovery that would exceed

22  the insurance collected by the World Trade Center properties.

23  It was reversed at the same time as the Court of Appeals

24  reversed and remanded them, aspects of my rulings leading to

25  the proceedings of experts valuing property and the lease

1   construction on my part, issues that we found much more
2   difficult than was anticipated.
3            Judge Livingston commented one time, How come you're
4   still not finished?  Part of it was -- a major part was it was
5   so hard really to understand the economics of the relationship.
6            I don't appreciate that there's significant
7   differences in these kinds of issues here compared to the
8   issues in *Great Lakes*.  Although there is separate counsel,
9   there's no reason why there can't be a joint negotiation.
10           I would like to defer approval because I think that
11  the case should settle on the same principle as this one.
12           MR. SHAPIRO:  Speaking for the parties to this
13  settlement --
14           THE COURT:  Maybe Mr. Barry is in a better position,
15  except that you're different insurers, aren't they?
16           MR. BARRY:  Oh, yes, your Honor.  This is totally
17  different.  None of the insurers involved in that case are
18  involved as the contributing insurers to this settlement.  So
19  it's totally separate.  The issues are certainly totally
20  different from the issues in this case that we have now
21  resolved.
22           THE COURT:  So it would be unfair for me to hold up
23  this settlement.
24           MR. BARRY:  I really believe that, your Honor, it
25  would be.

1           MR. SHAPIRO:  As do we, your Honor.  Thank you.

2           THE COURT:  The issue is not really totally different.

3           MR. BARRY:  I'm sorry?

4           THE COURT:  Both cases involve an economic valuation
5   of property based on a construction of the net lease.  There's
6   no difference in issues; there's difference in parties.

7           MR. BARRY:  The principal issue, as I understand it in
8   that case, your Honor, and I'm not involved in it, is a
9   contractual issue based upon the language of the will prop
10  forms and other forms that were involved.  I think the issue is
11  whether or not they have recoverable damages now in excess of
12  what they've already been paid.

13          THE COURT:  That was your issue too.

14          MR. BARRY:  I think that's different from the
15  situation we have in our case.

16          THE COURT:  That was your issue too.

17          I held that the insurance recoveries exceeded the
18  potential tort recovery.  The Second Circuit said I was hasty
19  in coming to that conclusion because there was potentially a
20  negative value that I did not consider.  But the same issue
21  will arise in that case, because I also held in that case that
22  the insurance recovery exceeded the potential tort recovery.

23          MR. BARRY:  That's correct.  But, at the same time, I
24  think to hold up this settlement would be unfair to the parties
25  who have worked so hard to get it resolved.  I do feel badly

1    that you have one little thing hanging out there, but it's
2    something that I can't control.  I have no control over it.
3            THE COURT:  In short, any leverage that I can apply
4    here would not be useful.
5            MR. BARRY:  It would be detrimental, your Honor.
6            THE COURT:  Okay.  I'm persuaded.  I will deal with
7    the *Great Lakes* case on its own merits.
8            The last issue has to do with retention of exhibits,
9    that is anything used in a court proceeding.
10           How do you feel about the issue, Mr. Shapiro?  How
11   long a period -- actually, Mr. Barry is more affected than you
12   are.
13           MR. BARRY:  Your Honor, I'm not quite understanding.
14   Are you talking about documents that were filed in court,
15   exhibits to motions and things like that?
16           THE COURT:  Yes.  They weren't always filed.  The
17   Court filings are not always adequate; some of these exhibits
18   were bulky.  I'd like you to keep those documents.  They won't
19   be public unless I order it.
20           MR. BARRY:  Right.
21           THE COURT:  But to keep those documents for a period
22   of time.  Ten years.
23           MR. BARRY:  Ten years?
24           THE COURT:  From this date.
25           MR. SHAPIRO:  Fine.  No objection from us.

1    MR. BARRY: We've got issues with the government in
2  respect of --
3    THE COURT: Ms. Normand, you've been hiding.
4    MS. NORMAND: Good morning, your Honor.
5    Sarah Normand.
6    THE COURT: Assistant U.S. Attorney.
7    MS. NORMAND: I think if the Court is referring to
8  publicly filed documents, we shouldn't have any issue relating
9  to sensitive security information.
10   THE COURT: That's what I'm referring to. The
11  discovery is more extensive.
12   MS. NORMAND: That's right.
13   THE COURT: I don't assume to impose an order on what
14  to do with the documents of discovery. But if they were used
15  in court, then they are public and I want those kept.
16   MS. NORMAND: Understood, your Honor.
17   We will be talking to counsel over the next several
18  weeks and months to address the issues that will remain about
19  sensitive security information in the possession of various
20  counsel who were cleared to have access to it. The various
21  papers, protective orders, call for the return or destruction
22  of SSI that are in various counsels' presence. We are going to
23  try to work with counsel to come up with a reasonable and
24  effective and efficient way of doing that.
25   THE COURT: Counsel wants to close before the end of

1    the year, right, Mr. Shapiro?

2             MR. SHAPIRO:  Yes, your Honor.

3             THE COURT:  How are those two goals going to mesh?

4             MR. BARRY:  I don't think that will affect the

5    conclusion of the settlement, your Honor.  You've got

6    protective orders that are fully in force that will govern the

7    destruction or return of documents and the SSI.

8             THE COURT:  So you can provide in the settlement

9    agreement by adding a clause that the protective orders will

10   remain outstanding pending further order of the Court, save

11   exhibits.

12            MR. BARRY:  Okay.

13            THE COURT:  Those will be preserved for ten years.

14            MS. NORMAND:  Very good, your Honor.

15            As I understand it, the orders that are in place call

16   for a destruction or return only at the conclusion of the

17   proceedings.  The Court would need to complete the approvals

18   and the settlement would have to be finalized before that

19   obligation would even be triggered.

20            THE COURT:  Probably not only this proceeding, but all

21   proceedings.

22            MS. NORMAND:  I'm actually not certain whether there

23   would be any SSI at issue in the *Great Lakes* case.  I don't

24   know the answer to that.  So we would have to be in touch with

25   those counsel to determine whether there are any outstanding

HCFVSEPC

1    issues.
2             THE COURT:  If you simply provide a clause that the
3    protective orders will remain outstanding until further order
4    of the Court, you are protected.
5             MS. NORMAND:  Thank you, your Honor.
6             MR. BARRY:  That's fine.
7             THE COURT:  That won't slow up the settlement.
8             MR. SHAPIRO:  Thank you, your Honor.
9             THE COURT:  I have no other issues.
10            So if you make that one amendment, the documents are
11   already filed, I'll be able to sign this settlement and we can
12   go ahead and proceed.
13            Can I ask another question?  There's a reference to
14   remaining known claims.  To what does that refer?
15            MR. BARRY:  It's defined as remaining known claims.
16   We are not aware of any known claims that are remaining.
17            THE COURT:  This settlement would not affect those.
18            MR. BARRY:  No, because they are unknown.
19            THE COURT:  But the remaining known claims, not
20   unknown claims.
21            MR. BARRY:  I'm not aware of any remaining known
22   claims.
23            THE COURT:  So perhaps you add a representation that
24   counsel do not know of any such claims.
25            MR. BARRY:  I'm not aware of any.

1           THE COURT:  Would you do that?

2           MR. BARRY:  I can't hear you.

3           THE COURT:  I suggest a clause, a representation,

4    after that definition, that because the case has been so

5    complicated, there have been so many parties, there may remain

6    claims.  These will not be affected by the settlement.  That

7    would accomplish the purpose and remove this ambiguity.

8           Can you do that?  I want you to consult.

9           MR. BARRY:  The known claims that we're aware of are

10   released already, so I don't think -- I don't know what purpose

11   it would serve to amend that.

12          THE COURT:  I don't know why it's in this document.

13          MR. BARRY:  This is the same language, Judge, that we

14   used in the 2010 settlement.  And at that time there were known

15   claims.

16          THE COURT:  There were many known claims then; but now

17   there aren't any.

18          MR. BARRY:  Not that I'm aware of.

19          THE COURT:  So you can just express that.  To the

20   extent that there are any claims filed in court, they are not

21   settled by this agreement.

22          MR. BARRY:  That's certainly true.

23          THE COURT:  The clause in question is page 4.

24          MR. SHAPIRO:  I'm sorry, your Honor, I'm not seeing

25   where you're --

1    THE COURT: It's page 4 and 5 of the settlement
2 agreement, Exhibit B of the submission to me. Paragraph 6 of
3 the document refers to provisions relating to the remaining
4 known claims other than the Cantor claims.
5    Subparagraph C provides: As a condition to becoming
6 effective, any settlement of the remaining known claims must
7 contain a full and complete release of all claims against the
8 parties hereto.
9    MR. BARRY: Your Honor, isn't that the allocation
10 agreement that you're referring to?
11    MR. SHAPIRO: That's not the settlement agreement.
12    MR. BARRY: That's not the settlement agreement.
13    THE COURT: But nevertheless --
14    MR. BARRY: That's an agreement among the contributing
15 insurers.
16    MR. SHAPIRO: We're not parties to that.
17    MR. BARRY: That's the same agreement that we had
18 among the contributing insurers that led to the settlement of
19 the property damage claims.
20    THE COURT: This affects the parties' ability to
21 settle other claims. I'm uncomfortable with this clause.
22    MR. BARRY: Your Honor, you had this agreement before
23 you in 2010, when we settled the --
24    THE COURT: Yes.
25    MR. BARRY: It's the same language. Nothing has

1 changed.

2 THE COURT: Okay. I'll relent.

3 Make the amendments that we talked about and I'll sign
4 it.

5 MR. SHAPIRO: Okay. Thank you, your Honor.

6 THE COURT: Anything further?

7 MR. SHAPIRO: Not from us, your Honor. Thank you.

8 THE COURT: Thank you, Mr. Shapiro. Thank you,
9 Mr. Barry. Thank you, Ms. Normand.

10 MR. BARRY: Your Honor, on the off chance that we will
11 not see you again, I would like to express on behalf of all the
12 lawyers on both sides, going back to Mr. Clifford and
13 Mr. Migliori and all the defendants, a debt of gratitude to you
14 for your handling of this very unique and complex litigation.
15 You have earned the respect, admiration, and affection of all
16 of us. And I want to put that on the record.

17 THE COURT: Thank you.

18 MR. BARRY: Thank you very much.

19 THE COURT: It's been an extraordinary effort. I
20 never made an accurate tally of the cases that I had, but I
21 think the number is somewhere about 15,000. There were 95
22 cases that involved direct actions against the airlines; there
23 were about 11,000 cases brought against the city for the first
24 responders; there was another several thousand cases brought
25 against the neighboring property owners by the first

1    responders; there are a batch of cases against the Battery Park

2    City Authority which are coming back to me.  We had a whole

3    range of property cases.  This is the last of it.

4            Where does Cantor stand?  Did we settle Cantor

5    Fitzgerald?

6            MR. BARRY:  Yes, your Honor.

7            MR. SHAPIRO:  Yes.

8            THE COURT:  So this is the end.

9            MR. BARRY:  This is the end.

10           THE COURT:  Mr. Barry, the sentiments you express on

11   behalf of your colleagues and on behalf of adversary counsel

12   are deeply appreciated.  This has really been an extraordinary

13   effort.  I was deeply affected by 9/11, as were all people

14   living in this area, all residents of New York.

15           I resolved that I would work these cases as hard as I

16   could to bring about the swiftest administration of justice.

17   So it has taken a long time.  The first cases were begun in

18   1902 -- in 2002, I'm sorry, in 2002.  So it's 15 years now.

19           But over 15 years, there's still cases to go.  But I

20   dealt with the cases in relationship to commonality of issues.

21   Most of the cases were dealt with and resolved much before

22   this.  All cases having to do with personal injuries, deaths,

23   and the like received the highest priority.  Cases involving

24   first responders had the next priority.  The property damage

25   cases had a third priority.  Intermingled among them were

1  disputes among the insurers which I had to take ahead of
2  priority because resolution of those cases would affect how the
3  insurers defended the rest of the cases.
4      I had a case involving claims to a cemetery, wanting
5  to make the dumping ground in Staten Island into a cemetery;
6  because I think that 60 percent of the deaths suffered in the
7  World Trade Center were not -- people just vanished; they were
8  not reflected in any corporeal remnant.  Indeed the ashes were
9  sifted to the size of a fingernail.  After that sifting, I
10 think it was 60 percent of the bodies were not identified.
11 There was nothing.  Swallowed up by the air.
12     Since there was an intermingling of these remnants and
13 the debris that was dumped in the Fresh Kills dumping ground,
14 people wanted to make a cemetery of Fresh Kills, and that
15 became a case.
16     It's been an extraordinary experience.  I think I was
17 benefited by outstanding counsel in this case and the others;
18 some more outstanding than others, but that's the way it goes.
19 It's an achievement for which I am proud.  And to receive
20 sentiments like Mr. Barry expressed makes me even prouder.
21     Thank you very much.  So maybe we will see each other
22 again.
23          MR. BARRY:  Socially, your Honor.
24          THE COURT:  Social occasions.  Thank you very much.
25          We are recessed.            (Adjourned)